UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:25-cv-39 (JJM) |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*, | |
| Defendants. | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED
## TEMPORARY RESTRAINING ORDER

Defendants respectfully submit this response to Plaintiffs' proposed temporary restraining order. No relief is appropriate in this case, for the numerous reasons discussed below. To the extent relief is awarded, however, it should comply with several further limits.

## I.     No Relief is Appropriate for Numerous Reasons

The President of the United States, along with the chief agency responsible for overseeing expenditures—the Office of Management and Budget (OMB)—plainly have authority to direct agencies to fully implement the President's agenda, consistent with each individual agency's underlying statutory authorities. That is what President Trump has done in several Executive Orders including directions on federal spending, and that is what OMB did in the now-withdrawn Memorandum that is the focus of Plaintiffs' claims in this case. *See* OMB Mem. M-25-13, *Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs*

(Jan. 27, 2025) ("OMB Memo"). The President's authority to direct subordinate agencies to implement his agenda, subject to those agencies' own statutory authorities, is well-established. *See Bldg. & Const. Trades Dep't v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) ("[T]he President's power necessarily encompasses 'general administrative control of those executing the laws,' throughout the Executive Branch of government, of which he is the head." (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926), citation omitted)); *see also, e.g.*, *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012) ("[A]s an agency under the direction of the executive branch, it must implement the President's policy directives to the extent permitted by law."); *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981) ("The authority of the President to control and supervise executive policymaking is derived from the Constitution.").

Notwithstanding this clear authority, Plaintiffs here request sweeping relief, on an emergency basis, that would effectively disable the President and OMB from providing these types of instructions to agencies. There is no valid basis for awarding such relief, and Plaintiffs' motion for a temporary restraining order should be denied.

**First**, this Court lacks jurisdiction. Plaintiffs' claims in this case are directed solely against the OMB Memo, which has now been withdrawn thereby rendering their claims moot. *See Harris v. Univ. of Massachusetts Lowell,* 43 F.4th 187, 192 (1st Cir. 2022) ("claims for injunctive relief are inescapably moot" when a "polic[y] no longer appl[ies]"). Whatever challenges they may wish to bring against other

actions, that is properly the subject of separate litigation. But Plaintiffs cannot use a Complaint and TRO motion directed against an OMB Memorandum as a basis for obtaining significantly broader relief against Defendants' federal funding decisions writ large.

Indeed, even with respect to the now-withdrawn OMB Memo, Plaintiffs have not established that they would have suffered irreparable injury as a result of the Memo's direction to agencies that they temporarily pause certain funding, to the extent permissible by law, pending a review to ensure that such funding is consistent with the President's priorities. Plaintiffs' filings portray the OMB Memo as an across-the-board suspension of all Federal financial assistance. Although Plaintiffs acknowledged that OMB had subsequently issued additional Guidance clarifying that the OMB Memo did *not* apply across-the-board and did *not* apply to many types of funding, *see, e.g.*, Compl. ¶ 3, Plaintiffs opted not to file that Guidance with the Court. *See* OMB Guidance (attached hereto).

Importantly, that Guidance makes plain that many of Plaintiffs' claimed harms and sources of funding would not be subject to the pause. *See id.* at 1 ("Any program not implicated by the President's Executive Orders is not subject to the pause."); *id.* at 1-2 ("[A]ny program that provides direct benefits to Americans is explicitly excluded from the pause and exempted from this review process. In addition to Social Security and Medicare, already explicitly excluded in the guidance, mandatory programs like Medicaid and SNAP will continue without pause. Funds for small businesses, farmers, Pell grants, Head Start, rental

3

assistance, and other similar programs will not be paused.").  Particularly in light of this Guidance, Plaintiffs have not carried their burden of establishing the need for immediate relief in the short timeframe relevant to litigating a preliminary-injunction motion.

**Second,** Plaintiffs cannot transform their lawsuit into a vehicle to seek relief against other actions, such as the President's Executive Orders or agencies' ongoing implementation of those Orders.  The President's Executive Orders are not subject to direct challenge; the Supreme Court has made clear that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867); *see also Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part).  And with respect to agency actions, the Administrative Procedure Act (APA) permits review only over "final agency action," 5 U.S.C. § 704, and such final agency actions must be "circumscribed [and] discrete." *Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 62 (2004).  The APA does not provide for "general judicial review of [an agency's] day-to-day-operations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1999).  But that is precisely what Plaintiffs seek here, by demanding ongoing judicial oversight over twenty-six Defendants' funding decisions.  And they seek such relief despite their Complaint identifying only one agency action—the OMB Memo—that has now been withdrawn and was not itself a final agency action determining rights and consequences with respect to any particular funding award.

**Third,** even if the Court were willing to consider Plaintiffs' claims on the

merits, Plaintiffs have not established a likelihood of success. The overarching theme of Plaintiffs' claims is that OMB's categorical pause in funding was unlawful. But as a factual matter, OMB did not direct a categorical pause—it directed that agencies pause certain funding, to the extent permissible by law, consistent with their own individual authorities. Courts have routinely upheld such orders. *See, e.g.*, *Allbaugh*, 295 F.3d at 32; *Common Cause v. Trump*, 506 F. Supp. 3d 39, 47 (D.D.C. 2020). Definitionally, directing executive agencies to take action *to the extent consistent with applicable law* cannot be interpreted as an order to violate the law.

As a legal matter, moreover, temporary pauses in funding are commonplace and accepted by the Legislative Branch. *See City of New Haven v. United States*, 809 F.2d 900, 901 (D.C. Cir. 1987) (explaining how Congress has previously "acknowledged that 'the executive branch necessarily withholds funds on hundreds of occasions during the course of a fiscal year' and such delays may result from the 'normal and orderly operation of the government'" (quoting H.R. Rep. No. 658, 93d Cong., 1st Sess. 41 (1971)). The Government Accountability Office (GAO), itself an entity within the Legislative Branch, has approved of agencies "taking the steps it reasonably believes are necessary to implement a program efficiently and equitably, even if the result is that funds temporarily go unobligated." *In re James R. Jones, House of Representatives*, B-203057 L/M, 1981 WL 23385 (Comp. Gen. Sept. 15, 1981). The OMB Memo fits comfortably within this Executive Branch practice of short-term delays in order to determine how best to implement programs consistent

with the President's policy objectives and consistent with the underlying law governing each program.

**Fourth**, the balance of the equities here weighs in favor of denying relief. Plaintiffs have not established irreparable harm based on the actual terms of the OMB Memo and OMB Guidance, and meanwhile they seek relief that would effectively prohibit twenty-six federal agency Defendants, as well as the President himself, from implementing the President's priorities consistent with their constitutional and statutory authorities. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (brackets omitted).

Thus, the proper course here is to deny relief entirely. To the extent the Court issues injunctive relief, the United States respectfully requests that such relief be stayed pending the disposition of any appeal that is authorized, or at a minimum that such relief be administratively stayed for a period of seven days to allow the United States to seek an emergency, expedited stay from the court of appeals if an appeal is authorized.

## II. Relief Should Be Limited In Five Ways

To the extent the Court considers entering Plaintiffs' proposed temporary restraining order, that order should be limited in five ways to mitigate (albeit not eliminate) the significant harms it would cause Defendants.

### 1. Limit Relief Only to What Is Challenged In This Case

It is axiomatic that Plaintiffs are not entitled to emergency injunctive relief that goes beyond the scope of what they challenge in this case. *See, e.g., Bird v. Barr*, No. 19-cv-1581, 2020 WL 4219784, at *2 (D.D.C. July 23, 2020) (a preliminary injunction "is not a generic means by which a plaintiff can obtain auxiliary forms of relief that may be helpful to them while they litigate unrelated claims"); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011) ("An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation."). Here, Plaintiffs' Complaint challenges only the now-rescinded OMB Memo, not any independent Executive Orders—which were issued prior to the OMB Memo and which Plaintiffs elected not to challenge. The scope of Plaintiffs' challenge is clear from Plaintiffs' Prayer for Relief, which asks for various forms of relief relating only to the "OMB Directive," and not to any Executive Orders. See Compl. at 35–36.

Thus, the Court's Order should make clear that it does not prohibit agencies from implementing the President's Executive Orders, to the extent permissible within the agency's underlying statutory authorities. Failure to include that clarification would highlight the extraordinarily intrusive nature of Plaintiffs' relief, prohibiting twenty-six Defendants from implementing the President's priorities consistent with their authorities, as they are required to do. *Sherley*, 689 F.3d at 784.

### 2. Limit Relief Only to Awards Involving Plaintiffs

It is a bedrock principle of equity that "injunctive relief should be no more

burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). In some provisions, Plaintiffs' proposed TRO seems to request relief only to awards involving the Plaintiffs here. *E.g.*, Prop. TRO at 3 ("Defendants shall not impede Plaintiffs' access to such awards and obligations"). Other provisions, however, would seem to restrict Defendants' activities with respect to *all* federal financial assistance, regardless of recipient. *E.g.*, *id.* at 2 ("Defendants shall refrain from pausing, freezing, impeding, blocking, canceling, or terminating Defendants' compliance with awards and obligations to provide federal financial assistance").

There is no basis for extending relief to non-parties in this suit, and absent that limitation, Plaintiffs' requested TRO would threaten to interfere with implementation of Executive Orders that do not appear to have any effect on Plaintiffs. *See, e.g.*, Reevaluating and Realigning United States Foreign Aid (Jan. 20, 2025), [https://www.whitehouse.gov/presidential-actions/2025/01/reevaluating-and-realigning-united-states-foreign-aid/](https://www.whitehouse.gov/presidential-actions/2025/01/reevaluating-and-realigning-united-states-foreign-aid/). Accordingly the Court should include a paragraph confirming that all obligations in the TRO apply only with respect to awards involving Plaintiffs.

### 3. Eliminate Paragraph on Purported Re-Issuance of OMB Memo, or Clarify Defendants Are Allowed to Advise Agencies on Exercising Their Own Authority

Plaintiffs' proposed TRO includes a paragraph requesting that the Court "restrain[] and prohibit[] [Defendants] from reissuing, adopting, implementing, or otherwise giving effect to the OMB Directive under any other name or title or through

any other Defendants . . . such as the continued implementation identified by the White House Press Secretary statement of January 29, 2025." Prop. TRO at 3.

Defendants do not understand the meaning of this paragraph or how they could be expected to determine whether any particular funding decision could be construed as "giving effect to the OMB Directive under any other name or title." *Id.* In particular, the OMB Memo instructed agencies to act "to the extent permissible under applicable law." OMB Memorandum M-25-13 at 2, ECF No. 1-1. And as discussed above, there is no apparent dispute that agencies are allowed to exercise their own independent authorities in administering their federal funding, as the preceding paragraphs of Plaintiffs' proposed TRO reflect. But any of those actions— *e.g.*, further instructions from OMB that agencies should act consistent with their own authorities, or any individual agency's own funding-related decision pursuant to its own authorities—could be construed as "giving effect to the OMB Directive under" a different "name or title," or through a different Defendant. Thus, this paragraph threatens to prohibit actions that are plainly lawful, and that are expressly permitted elsewhere in Plaintiffs' proposed TRO.

Moreover, the second half of the paragraph—prohibiting "the continued implementation identified by the White House Press Secretary statement"—is further problematic for failing to "state its terms specifically," and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed R. Civ. P. 65(d)(1)(C).

Given the problems inherent in this paragraph's vague language, and the risk

that this paragraph could enjoin large swaths of lawful efforts to implement Federal financial assistance, the simplest solution would be to delete the paragraph entirely. Notably, the paragraph is not necessary to address concerns about ensuring that funding continues, which would already be addressed by other paragraphs in Plaintiffs' proposed order. Thus, it should be deleted as unnecessary and overbroad. *Cf. Mickalis Pawn Shop*, 645 F.3d at 145 ("An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation.").

Regardless of whether the Court deletes the above-referenced paragraph, Defendants request that the Court include an additional paragraph making clear that nothing in the order interferes with Defendants' ability to exercise their lawful authorities, *i.e.*: "Nothing in this Order prohibits Defendants from giving directions to federal agencies regarding how to exercise their legal authority, or from exercising their own authorities pursuant to applicable authorizing statutes, regulations, and terms."

### 4. Eliminate Two-Hour Written Notice Requirement

Plaintiffs also request that the Court Order the twenty-six Defendants to "provide written notice of this order to all Defendants and agencies and their employees, contractors, and grantees within two hours of the issuance of this Order."

It is simply not feasible for twenty-six federal Defendants to disseminate the Court's Order, without knowing when that Order will issue, to the extraordinarily large universe of all "employees, contractors, and grantees" in a matter of only two

hours, especially in the absence of any demonstrated need. That order is far more "burdensome . . . than is necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017). When "fashioning interim relief," balancing the equities requires "focusing specifically on the concrete burdens that would fall on [both parties]." *Id.* at 580-81. Given the impracticability of providing notice in this short a time frame, Defendant respectfully requests this requirement be struck, or at least modified so as not to include an arbitrary timeframe for provision of notice.

### 5. Eliminate Relief Against the President

Plaintiffs' requested temporary restraining order seeks relief against all Defendants, which includes the President. But as discussed above, the Supreme Court has made clear that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." *Mississippi*, 71 U.S. at 501 (1867); *see also Franklin*, 505 U.S. at 827 (Scalia, J., concurring in part). Thus, any relief entered must not apply to the President.

*     *     *

Plaintiffs have not established the need for emergency, expedited relief in this matter, and any such relief would be highly burdensome to the Government. Thus, relief should be denied. To the extent the Court enters Plaintiffs' proposed temporary

restraining order, however, at a minimum it should be modified as set forth above.

Dated: January 30, 2025

Respectfully Submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

*/s/ Daniel Schwei*
DANIEL SCHWEI
Special Counsel
ANDREW F. FREIDAH
EITAN R. SIRKOVICH
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.: (202) 305-8693
Fax: (202) 616-8470
Email: daniel.s.schwei@usdoj.gov

*Counsel for Defendants*

## CERTIFICATION OF SERVICE

 I hereby certify that on January 30, 2025, I electronically filed the within Certification with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System, thereby serving it on all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 305.

     /s/ *Daniel Schwei*
     Daneil Schwei