No. 1:24-cv-03143 CRC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ARTHUR S. WEST, <br>       Plaintiff, <br><br> Vs. <br><br> NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, WASHINGTON STATE DEPARTMENT OF ENTERPRISE SERVICES, VIA DIRECTOR TARA C. SMITH, STATE OF WASHINGTON, VIA GOVERNOR JAY INSLEE, THE UNITED STATES ARMY CORPS OF ENGINEERS, THE UNITED STATES DEPARTMENT OF COMMERCE, THE SQUAXIN ISLAND TRIBE, <br>       Defendants. | Case No. 1:24-cv-03143 CRC <br><br> PLAINTIFF'S 1st AMENDED NEPA COMPLAINT |

## I. INTRODUCTION

**1.1.** This is an action for actual, declaratory and injunctive relief in regard to the interrelated Deschutes Estuary Restoration and Budd Inlet Remediation Projects, which, by any standard, singly and/or collectively[1] constitute "Major Federal Action" as defined in NOAA, Army Corps of Engineers, and CEQ regulations, and which defendant NOAA has funded with a Six Million Four Hundred Thousand Dollar, ($6,400,000.00), Cooperative Agreement Grant prior to any NEPA analysis.

---

[1] See 32 CFR 651.16(a): NEPA analyses must assess cumulative effects, which are the impact on the environment resulting from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions. Actions by federal, non-federal agencies, and private parties must be considered ( 40 CFR 1508.7).

PLAINTIFF'S 1st                    **1**                    ARTHUR S. WEST
AMENDED NEPA        Awestaa@Gmail.com        120 State Ave NE #1497
COMPLAINT           No. 1:24-cv-03143 CRC         Olympia, WA. 98501

**1.2.** Plaintiff seeks to require compliance with the National Environmental Policy Act in regard to the proposed, improperly segmented, and consultant controlled Deschutes Estuary Restoration Project, along with the inextricably interrelated toxic waste remediation project in Budd Inlet in Olympia and Thurston County, Washington.

**1.3.** Plaintiff seeks an order requiring appropriate NEPA documentation for the entire project[2] in the form of a NEPA EIS and the appropriate environmental impact, traffic, economic, and cumulative impact studies, in addition to a full consideration of alternatives before commitment of federal funds and resources to what is palpably, clearly and undeniably a Major Federal Action with the obvious potential for significant adverse impacts on the environment.

## II. JURISDICTION

**2.1.** The jurisdiction of this Court is conferred by and invoked pursuant to federal question jurisdiction under 28 U.S.C. 1331, the Administrative Procedure

---

[2] To include a joint NEPA review wirth, or at the very least a full cumulative and related impact analysis of, the necessarily interrelated remediation of toxic waste project in Budd Inlet and at the Port of Olympia.

PLAINTIFF'S 1st
AMENDED NEPA
COMPLAINT

2

Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

Act, 5 U.S.C. 702, and 704, and the National Environmental Policy Act, 42 USC 4331, et sequ.

**2.2.** The jurisdiction of this Court in the venue of the District of Columbia is also conferred by and invoked pursuant to 28 U.S.C. 1346 by virtue of the naming of an agency of the U.S. Government as defendant to this action.

**2.3.** This Court has jurisdiction over the parties and subject matter of this claim.

## III. PARTIES

**3.1.** Plaintiff West is a landowner in fee simple of a residential property in Olympia on Berry Street NE, overlooking the Deschutes Estuary Restoration Project and the Bud Bay Dioxin Remediation Sites. West traverses the project site on a daily basis and regularly employs the shoreline area and areas in the vicinity of Budd Inlet for recreation and other activities.

**3.2.** West also owns 100 feet of waterfront property adjacent to the Evergreen State College on Eld Inlet along with approximately an acre of shellfish bearing tidelands. West is, and has been subject to the prospect of imminent and

PLAINTIFF'S 1st AMENDED NEPA COMPLAINT

3

Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

substantial harm from the proposed project, especially if the remediation of toxic waste in Budd inlet is interfered with or delayed by a failure of the defendants to conduct a timely and comprehensive NEPA review.

**3.3.** Plaintiff West has been actively involved with water quality and environmental issues in the Puget Sound region for over 25 years. West, through litigation, was instrumental in uncovering and publicizing the presence of Dioxin in Budd Inlet that the Port of Olympia attempted to conceal and obscure. West also was the plaintiff in the landmark 9th Circuit NEPA case of West v. Secretary of Transportation, 206 F.3d 920 (9th Cir. 2000), involving the improper use of a Categorical Exemption for infrastructure for a proposed Intel-Weyerhaeuser project in Dupont.

**3.4.** Plaintiff West lives within one mile of, and has aesthetic and recreational interests in, the project site. West regularly traverses the actual project site, frequently walking on the existing trail circumscribing Capitol Lake for exercise and recreation, and driving across the existing 5th Avenue Bridge on a daily basis.

**3.5.** West holds a current salt water fishing license, employs lower Budd

PLAINTIFF'S 1st AMENDED NEPA COMPLAINT

4

Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

inlet for waterborne and water related recreation, and frequents restaurants located on the inlet in the vicinity of the project site. West is specially and particularly impacted by water quality in lower Puget Sound and other environmental conditions that have been and will be harmed by and/or are threatened by the defendants' project, their interference with timely, effective and comprehensive environmental review under NEPA, and their delay of, and attempt to interfere with and obstruct, by devious means, the necessary remediation of toxic dioxin bearing sediments in Capitol Lake and Budd Inlet.

**3.6.** Plaintiff West has standing in that he has suffered a concrete and particularized injury that is: (1) actual or imminent, (2) caused by or fairly traceable to an act that the litigant challenges in the instant litigation, and (3) redressable by the court." See *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (internal quotation marks and citations omitted), cited in *Fund Democracy, LLC v. Securities & Exchange Securities*, 278 F.3d 21, 25 (D.C. Cir. 2002), or such lesser standing standard currently prevailing in 9th Circuit precedent.

**3.7.** Defendant National Oceanographic and Atmospheric Administration,

(NOAA), is a federal agency required to comply with the laws of the State of Washington, and those of the United States of America, including the National Environmental Policy Act (NEPA).

**3.8.** Defendant Department of Commerce is a federal agency with supervisory administrative jurisdiction over the NOAA, which is required to comply with the laws of the State of Washington, and those of the United States of America, including the National Environmental Policy Act (NEPA).

**3.9.** Defendant Tara Smith is the ex parte Young "legal fiction" representative of the Washington State Department of Enterprise Services, an agency of the State of Washington.

**3.10.** Defendant U. S. Army Corps of Engineers is a federal agency required to comply with the laws of the State of Washington and those of the United States of America, including the National Environmental Policy Act (NEPA). It is liable for failing to participate in and/or conduct a NEPA analysis of the known and reasonably foreseeable major significant impacts upon its interests of the interrelated Deschutes Estuary Restoration and the Budd Bay Dioxin Remediation projects at the earliest possible time.

PLAINTIFF'S 1st AMENDED NEPA COMPLAINT

6

Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**3.11.** Defendant Jay Inslee is the ex parte Young "legal fiction" representative of the State of Washington.

**3.12.** The Squaxin Island Tribe is a sovereign entity under federal law, subject to the jurisdiction of this Court.

**3.13.** The Federal District Court for the District of Columbia has jurisdiction over the parties and subject matter of this claim.

## IV. ALLEGATIONS

**4.1.** This is a case involving defendant NOAA's funding of the *Deschutes Estuary Restoration Project*, an admittedly **"Monumental"** undertaking that is, by any rational analysis, undeniably a "Major Federal Action" as defined in the CEQ regulations, with reasonably foreseeable significant impacts subject to mandatory review under NEPA, due to its potential impact on toxic sediment and water quality in Budd Bay, federal funding, presence in and upon federal waters, required federal permitting, its recognized adverse impact on defendant ACOE's interests, and its undeniable interrelation with the ongoing remediation of toxic dioxin bearing sediment in adjacent areas of Budd Bay.

PLAINTIFF'S 1st
AMENDED NEPA
COMPLAINT

7
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**4.2.** As the map appended as Exhibit 1 demonstrates, the area of Budd Inlet adjacent to the project site is heavily contaminated by Dioxin bearing toxic waste.

**4.3.** As the map appended as Exhibit 2 demonstrates, the area of Budd inlet adjacent to the project site is a 303(d) listed impaired body of water.

**4.4.** As the Exhibit appended as Exhibit 3, an excerpt from a 2007 Final Deschutes Estuary Feasibility Study by Moffat and Nichol, demonstrates, the defendant State of Washington was aware that federal funding was reasonably foreseeable for such a large project, which would require NEPA Review[3], as well as the circumstance that the (then) recent discovery of dioxin bearing sediments in Budd Inlet[4] highlighted the risks associated with dredging in urbanized areas.

**4.5.** The defendant US Army Corps of Engineers (ACOE) has also long known that the proposed estuary restoration project would pose serious adverse impacts to their interests, which would require NEPA review. A series of Emails between the ACOE and Senaror Fraser in 2015 (See Exhibit 4) show that defendant ACOE determined that the increased sedimentation in the Federal

---

[3] See: 2007 Deschutes Estuary Feasibility Study by Moffat and Nichol at page 23: *"The following list outlines the most likely regulatory and permitting requirements. NEPA: Federal funds may be needed for a project of this magnitude, which would trigger specific NEPA requirements..."*

[4] See: 2007 Deschutes Estuary Feasibility Study by Moffat and Nichol at page 24: *In particular, the recent discovery of dioxins at the Port of Olympia's dredged navigation channel highlights the risks associated with dredging in urbanized areas.*

authorized navigation channel of the Port of Olympia that would result from removing the dam would cause unacceptable negative impacts to the Corps' operations and maintenance of that channel.

**4.6.** Defendant (ACOE) then stated it could not support a restoration project that would increase costs for its primary responsibility to maintain navigation. In an email to then State Senator Karen Fraser, Jessica Winkler from the ACOE wrote, "If a non-Federal entity proposed to remove the dam at Deschutes, they would be required to coordinate that proposal with the Corps under our Section 408 permitting process (33 U.S.C. 408)." (See Exhibit 4)

**4.7.** Despite these circumstances and the prior knowledge of the defendants, DES envisioned that it would enjoy **"*a really cool role*"** in which it would advance the project and make binding and irrevocable decisions in the complete absence of any required comprehensive review under NEPA.

**4.8.** According to Ann Larson, Special Assistant to defendant DES Director Smith, *"The Deschutes Estuary Restoration Project is the largest estuary restoration in an urban setting in the nation*[5]" in regard to which the "*DES has a really cool role*".

---

[5] See: https://capitol.wa.gov/our-story/news-updates/overview-deschutes-estuary-restoration-project

PLAINTIFF'S 1st
AMENDED NEPA
COMPLAINT

9

Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**4.9.** Unfortunately, this "really cool role" has not been officially perceived by the defendants to include the necessary NEPA review "at the earliest possible time" required under the National Environmental Policy Act, despite defendant DES's own website describes the project as "Monumental":

> The Department of Enterprise Services (DES) is undertaking a ***monumental*** estuary restoration project in the heart of the Washington State capitol. The Deschutes Estuary Restoration Project will restore 260 acres of estuarine and salt-marsh habitat in South Puget Sound. The estuary is at the mouth of the Deschutes River, on the footsteps of the Washington State Capitol Campus, along the shoreline of downtown Olympia, and within the Usual and Accustomed Fishing Grounds of the Squaxin Island Tribe. The project will remove the 5th Avenue Dam and associated tide gate, which were built in 1951 to make the Deschutes Estuary into a freshwater reflecting pool for the Washington State Capitol Campus. (Emphasis added)

**4.10.** Despite undeniably being aware for over a decade that the restoration of the Deschutes Estuary would inevitably be a "Monumental" Major Federal Action requiring review under NEPA at the earliest possible time, and that it would necessarily implicate the remediation of toxic sediments in Budd Inlet, defendants, and each of them, deliberately flaunted their disregard of the requirements of NEPA and attempted to advance a Major Federal Action and make substantive binding determinations under cover of a woefully inadequate and piece-metaled analysis and in the absence of the legally mandated NEPA review.

PLAINTIFF'S 1st AMENDED NEPA COMPLAINT

10

Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**4.11.** In May of 2024, it was reported that defendant NOAA would be awarded a 6.4 Million Dollar Grant[6] to the Squaxin tribe for this "Monumental" project. As the DES website explains further:

> The project is now in design and permitting, and is funded for a portion of this work through a NOAA Fish Barrier Removal grant[7] and an initial appropriation by the Washington State Legislature.

**4.12.** On August 31, 2024, NOAA awarded defendant Squaxin Island Tribe 6.4 Million Dollars under Cooperative Agreement NA24NMFX463C0024. NOAA's described the award as follows:

> The Squaxin Island Tribe was awarded a $6,437,390 Cooperative Agreement from the National Oceanic and Atmospheric Administration (NOAA) under the Habitat Conservation program (CFDA 11.463). Through this funding, the Tribe will work to remove the 5th Avenue Dam, a barrier across the mouth of the Deschutes River in Shelton, Washington. Removing the dam and restoring the estuary will create significant habitat for the recovery of threatened Puget Sound Chinook salmon. The project will also support the Tribe's capacity to expand their barrier removal efforts and engagement in salmon recovery planning in South Puget Sound. The award period is from Sep 1, 2024 to Jan 31, 2028.

---

[6] See https://www.theolympian.com/news/local/article288644850.html
[7] See https://deschutesestuaryproject.org

**4.13.** Significantly, the NOAA notice associated with the Cooperative agreement highlights that NOAA intends to have substantial involvement in the project, including participating in meetings, reviewing documents such as design plans, and providing other technical assistance (for example, with permitting and monitoring):

> Your award is a cooperative agreement. This means that NOAA intends to keep in regular contact and have substantial involvement in award activities, including participating in meetings, reviewing documents such as design plans, and providing other technical assistance (for example, with permitting and monitoring).
> If there are any changes in your plans, such as modifications to your project scope, budget, or timeline, please let your NOAA project team know. There may be implications under the National Environmental Policy Act...

**4.14.** As an example of how the defendant DES implicitly and explicitly recognizes that the Estuary Restoration and dioxin sediment remediation are inextricably interrelated and involve substantial interests of defendant ACOE, it recently executed a Memorandum of Understanding between the State and local municipal and Quasi-municipal entities that stated:

> Prior to and separate from construction of the Estuary Alternative, known sediment contamination in lower Budd

PLAINTIFF'S 1st  
AMENDED NEPA  
COMPLAINT

12  
Awestaa@Gmail.com  
No. 1:24-cv-03143 CRC

ARTHUR S. WEST  
120 State Ave NE #1497  
Olympia, WA. 98501

>  Inlet will be remediated to conditions satisfactory to the Washington State Department of Ecology and the US Army Corps of Engineers….The 5th Avenue Dam will not be removed until this work is complete to help ensure that the Port of Olympia-led remediation and DES-led estuary construction do not interfere with each other and, to the extent feasible, complement each other.

**4.15.** However, under a newly proposed Inter-local Agreement between the same parties the portion stating that the sediment contamination will be removed prior to breaching 5th Avenue Dam is absent.

**4.16.** Regardless, the dioxin containing sediment remediation and the Deschutes Estuary Restoration are clearly, palpably, and undeniably related Major Federal Actions that must be assessed together in the context of a full NEPA EIS <u>prior to</u> irreversible commitment of federal resources.

**4.17.** Beyond any reasonable debate, the Deschutes Estuary Restoration Project is a major federal action with reasonably foreseeable significant impacts, including significant alteration in traffic patterns, significant environmental, socioeconomic, and regional direct and cumulative impacts.

**4.18.** The failure of the defendants to assess and remediate the dioxin related sediment contamination in coordination with the Estuary Project will cause

PLAINTIFF'S 1st AMENDED NEPA COMPLAINT

13

Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

reasonably foreseeable adverse impact to the specific areas that plaintiff employs, and a favorable decision will redress this condition.

**4.19.** The project has been impermissibly segmented and approved before key conditions and components have been defined, the current documentation prepared for the project is woefully inadequate to meet the requirements of NEPA, and SEPA and NEPA authority have been improperly delegated to a private consultant in a manner at variance with the clear and unambiguous remedial intent of both SEPA and NEPA.

**4.20.** Significantly, the consultant selected by DES for the project, Floyd Snider, in their Consultant Selection Contact form, submitted to defendant DES, at page 14-15 (See Exhibit 5) states:

> Modeling will also show how sediment deposition can support Port remedial designs and significantly reduce (the) costs of that project.

**4.21.** This demonstrates that both defendant DES and their consultant were, and are, well aware of the interconnected nature of the two (restoration and remediation) projects, but are deliberately delaying comprehensive NEPA review in an underhanded manner to attempt to unlawfully "significantly reduce the costs

of the (remediation) project" most probably by employing the restoration project as a vehicle to covertly skimp on the actual remediation necessary to clean up the Inlet.

**4.22.** Neither the Estuary Project or the Dioxin Remediation project meet the definition of Categorically Excluded Actions as defined in the CFR, and in any event, exceptional circumstances exist making a CE improper under the CEQ regulations. (See, generally, West v. Secretary of Transportation, 206 F.3d 920, (9th Circuit, 2000)

**4.23.** To the extent that the defendants have delegated any NEPA responsibility to a third party, this was an unlawful delegation under the doctrine of delegatus non potest delegare, and evidence of impermissible privatization and segmentation.

**4.24.** Defendants have taken final action in awarding and/or accepting and expending federal funds.

**4.25.** Plaintiff West is a citizen and a member of that discreet class of persons residing on property in the vicinity of and overlooking the project site. He

PLAINTIFF'S 1st
AMENDED NEPA
COMPLAINT

**15**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

has travelled repeatedly upon the project site, and employs the immediate vicinity of the project sites for leisure, recreation, business and entertainment purposes.

**4.26.** West's interests are within the zone of interests protected by NEPA. He has standing to maintain this action because the alteration of traffic patterns caused by the project will impact the safety of travel near and upon the site, because of his continuing esthetic and recreational enjoyment of the area, which will be degraded by the increase in traffic, noise, air and water pollution, and the cumulative impacts of the proposed action, especially if it is not coordinated with remediation of the toxic, dioxin containing sediment that plaintiff's previous litigation with the Port of Olympia uncovered. He also has procedural standing to require a proper consideration of environmental, social, and economic factors of the project in a NEPA EIS <u>before</u> the project is constructed and <u>before</u> potentially irremediable damage is inflicted upon the environment.

**4.27.** The defendants, by deliberately proceeding with and/or aquiescing in the advancement of the Deschutes Estuary Restoration Project in the absence of comprehensive NEPA review, have done the public a disservice, and have attempted to define the project parameters of Major Federal Actions prior to any

form of required NEPA documentation. For the foregoing reasons, plaintiff West is entitled to the relief requested below.

## V. CAUSES OF ACTION

### 5.1. NEPA-APA CLAIM

By authorizing the expenditure of, and in receiving and expending Six Million, Four Hundred Thousand Dollars, ($6,400,000.00), for a project that was a Major Federal Project with a reasonably foreseeable significant adverse impact, and which was incomplete, segmented, and not properly exempt from NEPA, in the absence of compliance with NEPA in the form of an EIS, or other adequate documentation, and/or in failing to conduct a joint NEPA review for both of the interrelated projects described above at the earliest possible time, the State and Federal defendants violated the National Environmental Policy Act, for which relief is appropriate under the Administrative Procedures Act.

### 5.2. DECLARATORY JUDGMENTS ACT CLAIM

By making an irreversible commitment of a significant amount of federal funds for a project that was incomplete, segmented, and not properly exempt, in the absence of compliance with NEPA in the form of an EIS, or other appropriate

PLAINTIFF'S 1st AMENDED NEPA COMPLAINT

17

Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

documentation, by failing to conduct a NEPA review at the earliest possible time, and in improperly sidestepping NEPA authority, the State and federal defendants acted unlawfully and violated the National Environmental Policy Act, for which relief is appropriate under the Federal Declaratory Judgments Act.

## VI. REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief:

**6.1.** That a Declaratory Judgment issue declaring that the Deschutes Estuary Restoration Project and the Budd Bay Dioxin Sediment Remediation Project are both interrelated Major Federal Actions as defined in NEPA and CEQ regulations, with the potential for significant impacts, and for which a joint NEPA EIS or other adequate form of NEPA documentation is required.

**6.2.** That an actual and/or Declaratory Judgment issue declaring that the award of 6.4 Million Dollars to the Squaxin Tribe without NEPA review violated NEPA, declaring the Grant in violation of NEPA and void, and prohibiting further awards to, or expenditure of federal funds by, the State defendants pending a full NEPA EIS of the Deschutes Estuary Restoration Project in conjunction with NEPA review of the Budd Inlet Remediation, or in the alternate, at the very least, a full

PLAINTIFF'S 1st  
AMENDED NEPA  
COMPLAINT

**18**

Awestaa@Gmail.com  
No. 1:24-cv-03143 CRC

ARTHUR S. WEST  
120 State Ave NE #1497  
Olympia, WA. 98501

NEPA analysis of the cumulative impacts of restoration project on the Dioxin Remediation in Budd Inlet.

**6.3.** That the State and Federal defendants be compelled to comply with the requirements of NEPA in regard to assessment of appropriate environmental impacts of the Deschutes Estuary Restoration Project, including the interrelated Budd Inlet Toxic Sediment Remediation project in a NEPA EIS and/or prior to any further grant of or expenditure of federal funds.

**6.4.** That the Court grant an injunction pendente lite and/or a permanent injunction barring the defendants from proceeding with, orreceiving or expending any further federal funds in relation to, the Deschutes Estuary Restoration Project until such point as a full and adequate NEPA EIS is completed.

**6.5.** That the Court grant costs to plaintiff and order such relief as may be just, and as may be necessary to protect the status quo pending the ultimate determination of this case.

Respectfully submitted this 25th day of November, 2024.

*ARTHUR S. WEST*
ARTHUR S. WEST

PLAINTIFF'S 1st AMENDED NEPA COMPLAINT

**19**

Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501