# Thomas-Jensen Affirmation (redacted)

# Exhibit # 20

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF NEW YORK; et al., | |
| Plaintiffs, | |
| v. | C.A. No. 1:25-cv-00039-JJM-PAS |
| DONALD TRUMP, in his official capacity as President of the United States; et al., | |
| Defendants. | |

**DECLARATION OF JOHN MCCLEVE**

I, John McCleve, declare as follows:

1.    I am a resident of the State of Arizona and over the age of 18. I have served as the CFO/Comptroller of the Arizona Office of the Governor for over 30 years. My team provides accounting and other administrative support to the Governor's Office of Resiliency ("Office of Resiliency"). I make this declaration as a representative of the State of Arizona in part based on knowledge acquired by me in the performance of my official duties and in conjunction with my review of information and records gathered by my staff and the Office of Resiliency. If called as a witness, I could and would testify competently to the matters set forth below.

2.    The Office of Resiliency addresses the compounding threats to Arizona's water and natural resources, and impacts of the climate crisis through policy analysis, recommendations, planning, and program administration. The Office of Resiliency also functions as the State's energy office, and applies for and administers state energy program formula dollars through the Federal State Energy Program, administered by the U.S. Department of Energy.

1

**Federal Funds Awarded to the Office of Resiliency**

3.      As of February 4, 2025, the Office of Resiliency has received federal financial assistance totaling approximately $365,033,006 to support programs and services through 2029. This federal grant funding was made available through the Inflation Reduction Act ("IRA") [$332,317,334] and the Infrastructure Investment and Jobs Act ("IIJA") [$32,715,672].

4.      The Governor's Accounting Office typically submits draw requests for federal funds on behalf of the Office of Resiliency every two weeks. The amounts requested in each draw fluctuate depending on payroll expenses and any invoices in the queue for reimbursement.

5.      Examples of funding awards the Office of Resiliency received through the IRA include the following:

6.      By July 15, 2024, the Office of Resiliency had been awarded $76,421,080 from the U.S. Department of Energy through the Home Electrification and Appliances Rebates Program. True and accurate copies of the grant award documents are attached hereto as Exhibit A.

   a.   The purpose of this grant is to provide significant rebates for efficient electric appliances to low- and moderate-income households. Under the initial phase of this program, eligible households receive up to $8,000 to replace their nonfunctioning air conditioning systems with new efficient heat pumps. These rebates are provided through a qualified contractor network and significantly decrease the costs of cooling system replacement.

   b.   This program provides critical health and safety interventions during Arizona's long and intense heat seasons. Without these rebates, Arizona households will suffer detrimental impacts, such as acute illness and cost-prohibitive expenses related to seeking alternate shelters, including cooling

2

centers, hotel rooms, or short-term rentals. Approximately 18,388 rebates are expected to be issued to households in Arizona through this program.

c. The Office of Resiliency receives these funds via reimbursement for expenses incurred from the Automated Standard Application for Payments ("ASAP") System, operated by the Bureau of the Fiscal Service. As of February 4, 2025, the Office of Resiliency has requested and received reimbursement for $1,265,990 of that award funding.

d. As of February 4, 2025, the Office of Resiliency's obligations incurred in reliance upon this award include payroll expenses for internal staff, approximately $14.7 million for eligible household rebates, and approximately $1.9 million in contracted vendor services, to be paid in bi-weekly and monthly intervals through August 31, 2025.

7.    On June 28, 2023, the Office of Resiliency was awarded $3,000,000 from the U.S. Environmental Protection Agency ("EPA") through the Climate Pollution Reduction Planning Grant Program. True and accurate copies of the grant award documents are attached hereto as Exhibit B.

a. The purpose of this grant is to create a statewide greenhouse gas and air-quality emissions inventory and to develop two Climate Action Plans that outline paths to a carbon neutral economy by 2050.

b. The Office of Resiliency receives these funds via reimbursement for expenses incurred from the ASAP System. As of February 4, 2025, the Office of Resiliency has requested and received reimbursement for approximately $852,524 of that award funding.

3

    c.  As of February 4, 2025, the Office of Resiliency's obligations incurred in reliance upon this award include internal staff payroll and contracts with two state universities totaling approximately $1.6 million, to be paid in monthly intervals through March 1, 2027.

8.      On July 8, 2024 the Office of Resiliency was awarded $155,720,000 from the EPA through the Solar for All Grant Program. True and accurate copies of the grant award documents are attached hereto as Exhibit C.

    a.  The purpose of this grant is to reduce energy bills for eligible low- and moderate-income households by an average of 20% through the development and implementation of three statewide, residential and small utility-scale solar deployment programs.

    b.  The Office of Resiliency spent approximately 300 hours developing a Solar for All workplan that was submitted to the EPA by the October 1, 2024 deadline. The Office of Resiliency has conducted internal planning meetings, participated in check in meetings with EPA Project Officers, reviewed and updated the Solar for All budget, drafted job descriptions, reviewed resumes and conducted interviews, established a Civil Rights (Title IV) Compliance process, attended virtual webinars and office hours (from EPA and other groups including NASEO, CESA, and USCA) and completed compliance and reporting requirements.

    c.  Just prior to the federal funding freeze, the Office of Resiliency interviewed candidates for three program management positions and one program compliance position. Three of the positions will manage each of the Solar

4

for All programs and the compliance position will develop the Quality Management Plan, which is due to the EPA on March 1, 2025. Failing to meet this deadline will result in noncompliance with grant's terms and conditions. The Office of Resiliency has not extended offers given the uncertainty of federal funding.

d. As of February 4, 2025, the Office of Resiliency had not sought reimbursement for expenses through the ASAP system.

9.    On January 13, 2025, the U.S. Department of Energy provided a conditional award of $74,956,915 to the Office of Resiliency through the Energy Efficiency Performance-Based, Whole-House Rebates Program. Prior to this conditional award, the Office of Resiliency had been awarded approximately $1.7 million from this same grant program to use for administrative expenses and program development purposes. As specified in the award's terms and conditions, the State is prohibited from using the conditional award funding without written approval from the awarding agency. True and accurate copies of the grant award documents are attached hereto as Exhibit D.

a. The purpose of this grant is to provide at least 20% energy savings for approximately 11,000 low- and moderate-income households, while supporting and developing Arizona's energy efficiency workforce.

b. Through a qualified contractor network, eligible households receive significant discounts to implement energy efficiency measures, like adding home insulation. These small measures can be lifesaving during the summer, where temperatures are at or above 100 degrees for more than 110 days in a row. Indeed, from 2012-2023, 425 people died *indoors* in

5

Maricopa County due to the heat despite living in a home with air conditioning.

c. The Office of Resiliency receives the authorized funds via reimbursement for expenses incurred from the ASAP System. As of February 4, 2025, the Office of Resiliency has requested and received reimbursement for $445,979 of that award funding.

d. As of February 4, 2025, the Office of Resiliency's obligations incurred in reliance upon the authorized administrative expenses portion of these funds include payroll expenses for internal staff and approximately $615,000 in vendor expenses, to be paid in monthly intervals through August 2025.

10. Examples of funding awards the Office of Resiliency received through the IIJA include the following:

11. By June 24, 2024, the Office of Resiliency had been awarded $21,558,912 from the U.S. Department of Energy through the Preventing Outages and Enhancing the Resilience of the Electrical Grid Grant Program. True and accurate copies of the grant award documents are attached hereto as Exhibit E.

a. The purpose of this program is to direct funding to utilities to harden the electrical grid and decrease risks from wildfires, extreme heat, and other climate-related threats. This program directly reduces outage durations and wildfire risks to more than 280,000 Arizona residents.

b. This program would result in 11 new jobs and workforce development opportunities.

6

c.  The Office of Resiliency expects to receive these funds via reimbursement from the ASAP System. As of February 4, 2025, the Office of Resiliency has not incurred any expenses against this award and has not requested reimbursement for any of that award funding.

12.  On May 25, 2023, the Office of Resiliency was awarded $7,398,110 from the U.S. Department of Energy through the State Energy Program's IIJA Grant Program ("SEP IIJA"). True and accurate copies of the grant award documents are attached hereto as Exhibit F.

a.  The purpose of this grant is to support the State Energy Office's efforts in the following areas: state energy security planning; workforce and economic development, energy efficiency; and renewable energy project implementation.

b.  Grant funds have been used for several critical projects, including purchasing a new energy-efficient chiller for the historic State Fair building and installing public electric vehicle chargers. Additionally, the Office of Resiliency has submitted plans to use SEP IIJA funds to support an Energy Security and Resilience Plan, and to fund one staff position at the Navajo County Economic Development Office, which will support energy-efficient economic development in rural Arizona.

c.  The Office of Resiliency receives these funds via reimbursement for expenses incurred from the ASAP System. As of February 4, 2025, the Office of Resiliency has requested and received reimbursement for $1,169,879 of that award funding.

7

    d.  As of February 4, 2025, the Office of Resiliency's obligations incurred in reliance upon this award include internal staff payroll and approximately $2.9 million in contractual obligations for State projects, to be paid in regular intervals through February 2026.

### Inability to Access Federal Funds

13.    On January 27, 2025, Governor's Office staff received a memorandum from the U.S. Department of Energy's Acting Head of Contracting Activity for Energy Efficiency & Renewable Energy directing the Office of Resiliency to cease any activities, including contracted activities, and stop incurring costs associated with diversity, equity and inclusion (DEI) programs, Community Benefits Plans, and Justice40 requirements. The memorandum stated that any costs incurred after January 27, 2025 would not be reimbursed. A true and accurate copy of the memorandum is attached hereto as Exhibit G.

14.    On January 28, 2025, Governor's Office staff received an email from EPA_Grants_Info@epa.gov stating that as a result of President Trump's Executive Order *Unleashing American Energy* the EPA had paused all funding actions related to IRA and IIJA funds. A true and accurate copy of the email is attached hereto as Exhibit H.

15.    On January 28, 2025, Governor's Office staff received a memorandum from the U.S. Department of Energy's National Energy Technology Laboratory directing the Office of Resiliency to cease any activities, including contracted activities, and stop incurring costs associated with DEI programs, Community Benefits Plans, and Justice40 requirements. The memorandum stated that any costs incurred after January 28, 2025 would not be reimbursed. A true and accurate copy of the memorandum is attached hereto as Exhibit I.

16.     On January 22, 2025, the Governor's Accounting Office accessed the ASAP System and completed draw requests for IRA and IIJA funded awards. That requested funding was received on January 23, 2025.

17.     On January 28, 2025, the Governor's Accounting Office accessed the ASAP System and completed draw requests for IRA and IIJA funded awards. That requested funding was received by January 30, 2025.

18.     On January 30, 2025, the Governor's Accounting Office accessed the ASAP System and observed that all IRA and IIJA-funded awards from the U.S. Department of Energy had new notices that the awards were subject to agency review and/or agency approval. As of February 4, 2025, these messages continue to be displayed on the ASAP System for IRA and IIJA-funded awards from the U.S. Department of Energy. The following is an accurate reflection of the notice in ASAP:

| | |
|---|---|
| Agency Review : | Yes |
| Threshold Amount : | $1.00 |
| Default Action : | Hold |
| Reason for Review : | AGENCY HOLD |

19.     On January 30, 2025, the Governor's Accounting Office accessed the ASAP System and observed that IRA-funded awards from the EPA, including the Solar for All and Climate Pollution Reduction Planning Grant awards, were not available to request to draw funds. As of February 4, 2025, that status has not changed.

20.     On January 31, 2025, the Governor's Accounting Office accessed the ASAP System and entered a draw request for approximately $37,000 in funding from the Home Electrification and Appliances Rebates Program. As of February 4, 2025, that requested funding

has not yet been received and the ASAP System status indicates "Awaiting Federal Program Agency Approval."

21.    On February 4, 2025, the Governor's Accounting Office accessed the ASAP system and entered draw requests for the following four IRA and IIJA-funded awards, totaling $130,725:

    a.  State Energy Program's IIJA Formal Grant Program ($58,910);

    b.  Energy Efficiency Performance-Based, Whole-House Rebates Program ($16,000);

    c.  Home Electrification and Appliances Rebates Program ($52,815); and

    d.  Energy Efficiency and Conservation Block Grant Program ($3,000).

22.    As of February 4, 2025, that requested funding has not yet been received and the ASAP System status indicates "Awaiting Federal Program Agency Approval."

23.    On February 4, 2025, the Governor's Accounting Office accessed the ASAP system but could not access the IRA-funded Climate Pollution Reduction Grant award from the EPA. The Governor's Accounting Office was not able to request to draw funds for expenses incurred against that award.

24.    The Office of Resiliency has already incurred obligations against its awarded IRA and IIJA funds, including vendor contracts, hiring and training staff, developing and publishing program marketing materials, and establishing critical private sector partnerships. Thus, any further pause in or disruption to federal funding will cause immediate financial harm to the Office of Resiliency.

25.    We continue to be concerned that funding will again be delayed or denied because two grants have completely disappeared from the ASAP system and, as of February 4, 2025, the Governor's Accounting Office is still unable to draw funds for incurred expenses.

26.    In addition, staff in the U.S. Department of Energy and the EPA have cancelled scheduled meetings to discuss these issues, will not respond substantively to email requests, and appear to be completely unavailable to answer these time-sensitive grant-related questions or offer guidance. This is especially troubling because the Office of Resiliency relies on Project Officers at the federal agencies to approve plans and provide guidance so that the Office can progress with work under these grants. Without these approvals and communications, we risk missing deadlines that harm our long-term compliance with the grant programs' conditions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 5, 2025, at Phoenix, Arizona.

_John L. McCleve_                    02/05/2025
John McCleve
CFO/Comptroller
Arizona Office of the Governor

11

# EXHIBIT A

**ASSISTANCE AGREEMENT**

| 1. Award No. DE-SE0000078 | 2. Modification No. 0001 | 3. Effective Date 09/01/2023 | 4. CFDA No. 81.041 |
|---|---|---|---|

| 5. Awarded To | 6. Sponsoring Office | 7. Period of Performance |
|---|---|---|
| EXECUTIVE OFFICE OF STATE OF ARIZONA<br>Attn: TRAVIS PRICE<br>1700 WEST WASHINGTON<br>SUITE 500<br>PHOENIX AZ 850072812 | State and Community Energy Programs<br>U.S. Department of Energy<br>1000 Independence Ave, SW<br>Washington DC 20585 | 09/01/2023<br>through<br>08/31/2025 |

| 8. Type of Agreement | 9. Authority | 10. Purchase Request or Funding Document No. |
|---|---|---|
| [X] Grant<br>[ ] Cooperative Agreement<br>[ ] Other | IRA PL 117-169, 2022<br>PL 109-58 EPACT, 2005 | 24SE000706 |

| 11. Remittance Address | 12. Total Amount | 13. Funds Obligated |
|---|---|---|
| EXECUTIVE OFFICE OF STATE OF ARIZONA<br>Attn: TRAVIS Price<br>1700 WEST WASHINGTON, SUITE #101<br>PHOENIX AZ 850072812 | Govt. Share: $76,421,080.00<br><br>Cost Share : $0.00<br><br>Total    : $76,421,080.00 | This action:<br>$74,660,842.00<br><br>Total    :<br>$76,421,080.00 |

| 14. Principal Investigator | 15. Program Manager<br>Bobbie R. Coon<br>Phone: 240-388-5311 | 16. Administrator<br>Golden Field Office<br>U.S. Department of Energy<br>Golden Field Office<br>15013 Denver West Parkway<br>Golden CO 80401 |
|---|---|---|

| 17. Submit Payment Requests To<br>Payment - Direct Payment<br>from U.S. Dept of Treasury | 18. Paying Office<br>Payment - Direct Payment<br>from U.S. Dept of Treasury | 19. Submit Reports To<br>See Attachment 2 |
|---|---|---|

20. Accounting and Appropriation Data

███████████████████████████████████

21. Research Title and/or Description of Project
Inflation Reduction Act (IRA) Section 50122 - Home Efficiency Rebates Program Early Administrative Funds

| For the Recipient | For the United States of America |
|---|---|
| 22. Signature of Person Authorized to Sign | 25. Signature of Grants/Agreements Officer<br>*Stephanie Sites* |
| 23. Name and Title | 24. Date Signed | 26. Name of Officer<br>Stephanie D. Sites | 27. Date Signed<br>07/15/2024 |

NSO

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED DE-SE0000078/0001 | | | PAGE 2 | OF 4 |
|---|---|---|---|---|---|

**NAME OF OFFEROR OR CONTRACTOR**
EXECUTIVE OFFICE OF STATE OF ARIZONA

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | UEI: EL9HZNBAN1B9 | | | | |

UEI: EL9HZNBAN1B9
-
The purposes of this modification are to:

1) Provide incremental funding, as shown in Block 13;

2) Extend the Project Period end date to 08/31/2028. The Period of Performance will remain the same, as shown in Block 7;

3) Update the DOE Project Officer, Recipient Principal Investigator, and Recipient Business Officer Contact, as shown below;

4) Delete and replace Attachment 1 "Narrative"; Attachment 2, "Federal Assistance Reporting Checklist"; Attachment 3, Budget Information"; and Attachment 5, "NEPA Determination";

5) Delete and replace the Special Terms and Conditions.

The current Project Period for this award is 09/01/2023 through 08/31/2028, consisting of the following Tranches:

Tranche 1: 09/01/2023 through 08/31/2025
Tranche 2-4: TBD

In Block 7 of the Assistance Agreement, the Period of Performance reflects the beginning of the Project Period through the end of the current Budget Period.

In addition to this Assistance Agreement, this award consists of the items listed on the Cover Page of the Special Terms and Conditions.

Recipient acknowledges the activities approved by this award are listed in the NEPA determination, Attachment 5 of this Award. If new activities, or activities that do not fit within the restrictions listed in the NEPA determination are proposed, additional NEPA review and Contracting Officer approval are required. Contact your DOE Project Officer, as shown below. This award is subject to the Financial Assistance regulations contained in 2 CFR 200 as amended by 2 CFR Part 910.

Continued ...

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DE-SE0000078/0001 | | | PAGE<br>3 | OF<br>4 |
|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
EXECUTIVE OFFICE OF STATE OF ARIZONA

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | Funding for all awards and future budget periods is contingent upon the availability of funds appropriated by Congress for the purpose of this program and the availability of future-year budget authority. | | | | |
| | The Special Terms and Conditions for this award contain specific funding restrictions. Please review the applicable terms for procedures required to lift the restrictions. Specifically, Term 7 which restricts access to funding outside of your current tranche. This Administrative and Legal Requirements Document (ALRD) for this Award establishes funding tranches. The Recipient's approved use of funds is only for the tranche that DOE has approved the recipient for. The Recipient is not approved to use funds in other tranches beyond those it is approved for. If the Recipient uses funds beyond what it has been approved to use, SCEP reserves the right to disallow associated funds as well as take other actions as listed in Term 7 of the Special Terms and Conditions. | | | | |
| | All other Terms and Conditions remain unchanged. | | | | |
| | DOE Award Administrator: Walda Jacobs<br>Email: Walda.Jacobs@ee.doe.gov<br>Phone: 720-262-0214 | | | | |
| | DOE Project Officer: Bobbie Coon<br>E-mail: Bobbie.Coon@hq.doe.gov<br>Phone: 240-388-5311 | | | | |
| | Recipient Business Officer: Jean Bell<br>E-mail: JBell@az.gov<br>Phone: 602-542-1337 | | | | |
| | Recipient Principal Investigator: Blaise Caudill<br>E-mail: BCaudill@az.gov<br>Phone: 520-312-5854 | | | | |
| | Electronic signature or signatures as used in this document means a method of signing an electronic message that— | | | | |
| | (A) Identifies and authenticates a particular person as the source of the electronic message;<br>(B) Indicates such person's approval of the information contained in the electronic message; and,<br>Continued ... | | | | |

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED DE-SE0000078/0001 | | | PAGE 4 | OF 4 |
|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
EXECUTIVE OFFICE OF STATE OF ARIZONA

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | (C) Submission via FedConnect constitutes electronically signed documents.<br><br>ASAP: YES Extent Competed: NOT AVAIL FOR COMP Davis-Bacon Act: NO PI: Caudill, Blaise Fund: 05479 Appr Year: 2022 Allottee: 31 Report Entity: 200835 Object Class: 41020 Program: 1800008 Project: 0000000 WFO: 0000000 Local Use: 0000000 | | | | |

NSO

JULY 2004

# EXHIBIT B

5D - 98T67401 - 0    Page 1

| U.S. ENVIRONMENTAL PROTECTION AGENCY<br><br>Grant Agreement | GRANT NUMBER (FAIN): 98T67401<br>MODIFICATION NUMBER: 0<br>PROGRAM CODE: 5D | DATE OF AWARD<br>06/28/2023 |
|---|---|---|
| | TYPE OF ACTION<br>New | MAILING DATE<br>07/03/2023 |
| | PAYMENT METHOD:<br>ASAP | ACH#<br>90711 |

| RECIPIENT TYPE:<br>State | Send Payment Request to:<br>Contact EPA RTPFC at: rtpfc-grants@epa.gov |
|---|---|
| RECIPIENT:<br>Executive Office of The State of Arizona<br>1700 West Washington, Ste. 101<br>Phoenix, AZ 85007<br>EIN: 86-6004791 | PAYEE:<br>Executive Office of the State of Arizona<br>1700 West Washington, Ste 101<br>Phoenix, AZ 85007-2831 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Blaise Caudill<br>1700 W. Washington Street Ste. 500<br>Phoenix, AZ 85007-2815<br>**Email:** bcaudill@az.gov<br>**Phone:** 520-312-5854 | Asia Yeary<br>75 Hawthorne Street, AIR-1-1<br>San Francisco, CA 94105<br>**Email:** yeary.asia@epa.gov<br>**Phone:** 808-342-5675 | Matthew Null<br>Grants Branch, MSD-6<br>75 Hawthorne Street<br>San Francisco, CA 94105<br>**Email:** Null.Matthew@epa.gov<br>**Phone:** 213-244-1827 |

**PROJECT TITLE AND DESCRIPTION**

Inflation Reduction Act – Climate Pollution Reduction Planning

See Attachment 1 for project description.

| BUDGET PERIOD<br>06/01/2023 - 05/31/2027 | PROJECT PERIOD<br>06/01/2023 - 05/31/2027 | TOTAL BUDGET PERIOD COST<br>$3,000,000.00 | TOTAL PROJECT PERIOD COST<br>$3,000,000.00 |
|---|---|---|---|

## NOTICE OF AWARD

Based on your Application dated 04/27/2023 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $3,000,000.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $3,000,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| ORGANIZATION / ADDRESS | ORGANIZATION / ADDRESS |
| U.S. EPA, Region 9 , U.S. EPA, Region 9 Grants Branch, MSD-6<br>75 Hawthorne Street<br>San Francisco, CA 94105 | U.S. EPA, Region 9, Air and Radiation Division, Air 1-1<br>R9 - Region 9<br>75 Hawthorne Street<br>San Francisco, CA 94105 |

| THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY | |
|---|---|
| **Digital signature applied by EPA Award Official**    Carolyn Truong - Grants Management Officer | DATE<br>06/28/2023 |

5D - 98T67401 - 0    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $0 | $3,000,000 | $3,000,000 |
| EPA In-Kind Amount | $0 | $0 | $0 |
| Unexpended Prior Year Balance | $0 | $0 | $0 |
| Other Federal Funds | $0 | $0 | $0 |
| Recipient Contribution | $0 | $0 | $0 |
| State Contribution | $0 | $0 | $0 |
| Local Contribution | $0 | $0 | $0 |
| Other Contribution | $0 | $0 | $0 |
| Allowable Project Cost | $0 | $3,000,000 | $3,000,000 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.046 - Climate Pollution Reduction Grants | Clean Air Act: Sec. 137 | 2 CFR 200, 2 CFR 1500 and 40 CFR 33 |

| Fiscal | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Site Name | Req No | FY | Approp. Code | Budget Oganization | PRC | Object Class | Site/Project | Cost Organization | Obligation / Deobligation |
| - | 2309M9S022 | 2231 | E4SFX | 09M1 | 000ACGXJ1 | 4132 | - | - | $3,000,000 |
| | | | | | | | | | $3,000,000 |

5D - 98T67401 - 0     Page 3

Budget Summary Page

| Table A - Object Class Category<br>(Non-Construction) | Total Approved Allowable<br>Budget Period Cost |
|---|---|
| 1. Personnel | $716,000 |
| 2. Fringe Benefits | $236,279 |
| 3. Travel | $76,560 |
| 4. Equipment | $0 |
| 5. Supplies | $40,025 |
| 6. Contractual | $1,605,001 |
| 7. Construction | $0 |
| 8. Other | $23,680 |
| 9. Total Direct Charges | $2,697,545 |
| 10. Indirect Costs: 0.00 % Base see T/C's | $302,455 |
| 11. Total (Share: Recipient ___0.00 % Federal _100.00 %) | $3,000,000 |
| 12. Total Approved Assistance Amount | $3,000,000 |
| 13. Program Income | $0 |
| 14. Total EPA Amount Awarded This Action | $3,000,000 |
| 15. Total EPA Amount Awarded To Date | $3,000,000 |

5D - 98T67401 - 0    Page 4

## *Attachment 1 - Project Description*

The agreement provides funding under the Inflation Reduction Act (IRA) to the Executive Office of the State of Arizona to develop a comprehensive, economy-wide climate mitigation plan or update an existing plan in collaboration with air pollution control districts, and large and small municipalities statewide, and tribal governments that will support actions to reduce greenhouse gases (GHG) and harmful air pollutants and to conduct meaningful engagement with low- income and disadvantaged communities.

This assistance agreement provides full federal funding in the amount of $3,000,000. Preaward costs are approved back to 6/1/2023.

In general, activities include the development, updating, and evaluation of plans to reduce climate pollution (i.e., to reduce GHG emissions and/or enhance carbon sinks). Specific activities include developing an greenhouse gas inventory, quantifying greenhouse gas reduction measures, conducting a low income and disadvantaged communities benefit analysis, review of authority to implement and stakeholder engagement. Three key deliverables will be produced and submitted over the course of the four-year program period, including: a Priority Climate Action Plan (PCAP), due March 1, 2024; a Comprehensive Climate Action Plan (CCAP), due two years from the date of the award; and a Status Report, due at the close of the grant period. Expected outcomes include a PCAP and CCAP that identifies: tons of pollution (GHGs and co-pollutants) reduced over the lifetime of the measures; tons of pollution (GHGs and co-pollutants) reduced annually; and tons of pollution (GHGs and co-pollutants) reduced with respect to low-income and disadvantaged communities. The intended beneficiaries include Arizona residents and visitors, including low-income and disadvantaged community members.   No subawards are included in this assistance agreement.

5D - 98T67401 - 0    Page 5

## *Administrative Conditions*

**General Terms and Conditions**

The recipient agrees to comply with the current EPA general terms and conditions available at:
https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2022-or-later.

These terms and conditions are in addition to the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

**A.  Federal Financial Reporting (FFR)**

For awards with cumulative project and budget periods greater than 12 months, the recipient will submit an annual FFR (SF 425) covering the period from "project/budget period start date" to **June 30** of each calendar year to the EPA Finance Center in Research Triangle Park, NC.  The annual FFR will be submitted electronically to rtpfc-grants@epa.gov no later than **September 30** of the same calendar year. Find additional information at https://www.epa.gov/financial/grants. (NOTE: The grantee must submit the Final FFR to rtpfc-grants@epa.gov within 120 days after the end of the project period.)

**B.  Procurement**

The recipient will ensure all procurement transactions will be conducted in a manner providing full and open competition consistent with 2 CFR Part 200.319.  In accordance with 2 CFR Part 200.324, the grantee and subgrantee(s) must perform a cost or price analysis in connection with applicable procurement actions, including contract modifications.

*State recipients must follow procurement procedures as outlined in 2 CFR Part 200.317.*

**C.  MBE/WBE Reporting, 40 CFR, Part 33, Subpart E (EPA Form 5700-52A)**

The recipient agrees to submit a "MBE/WBE Utilization Under Federal Grants and Cooperative Agreements" report (EPA Form 5700-52A) annually for the duration of the project period. The current EPA Form 5700-52A with instructions is located at https://www.epa.gov/grants/epa-grantee-forms

This provision represents an approved exception from the MBE/WBE reporting requirements as described in 40 CFR Section 33.502.

Reporting is required for assistance agreements where funds are budgeted for procuring construction, equipment, services and supplies (including funds budgeted for direct procurement by the recipient or procurement under subawards or loans in the "Other" category) with a cumulative total that exceed the Simplified Acquisition Threshold (SAT) currently set at $250,000 (the dollar threshold will be automatically revised whenever the SAT is adjusted; See 2 CFR Section 200.1), including amendments and/or modifications. All procurement actions are reportable when reporting is required, not just the portion which exceeds the SAT.

Recipients with expended and/or budgeted funds for procurement are required to report annually whether the planned procurements take place during the reporting period or not. If no budgeted procurements take place during the reporting period, the recipient should check the box in section 5B when completing the form.

When completing the annual report, recipients are instructed to check the box titled "annual" in section 1B of the form. For

5D - 98T67401 - 0    Page 6

the final report, recipients are instructed to check the box indicated for the "last report" of the project in section 1B of the form.  For section 2B, the Region 9 EPA DBA Coordinator is Alexandrea Perez, email: GrantsRegion9@epa.gov, phone: 415-972-3826.

The annual reports are due by October 30th of each calendar year and the final report is due within 120 days after the end of the project period, whichever comes first.  The recipient will submit the MBE/WBE report(s) and/or questions to GrantsRegion9@epa.gov and the EPA Grants Specialist identified on page 1 of the award document.

## *Programmatic Conditions*

**a.]  Performance Reporting and Final Performance Report**

**Performance Reports - Content**

In accordance with 2 CFR 200.329, the recipient agrees to submit performance reports that include brief information on each of the following areas:  1) A comparison of actual accomplishments to the outputs/outcomes established in the assistance agreement work plan for the period; 2) The reasons why established outputs/outcomes were not met; and 3) Additional pertinent information, including, when appropriate, analysis and explanation of cost overruns or high-unit costs.  Additionally, the recipient agrees to inform EPA as soon as problems, delays, or adverse conditions which will materially impair the ability to meet the outputs/outcomes specified in the assistance agreement work plan are known.

**Performance Reports - Frequency**

Quarterly performance reports are required to be submitted electronically to the EPA Project Officer within 30 calendar days after the reporting period (every three-month period). Quarterly reports are due according to the following schedule. If a due date falls on a weekend or holiday, the report will be due on the next business day. If a project start date falls within a defined reporting period, the recipient must report for that period by the given due date unless otherwise noted. This quarterly reporting schedule shall be repeated for the duration of the award agreement.

July 1 – September 30 Reporting Period: report due date October 30 (Note: In year 1, this reporting period should begin at the project start date)

October 1 – December 31 Reporting Period: report due date January 30

January 1 – March 31 Reporting Period: report due date April 30

April 1 – June 30 Reporting Period: report due date July 30

**The recipient must submit the final performance report no later than 120 calendar days after the end date of the period of performance.**

**b.]  Deliverables and Requirements**

**States that accept an award are required to produce and electronically submit the following three deliverables by the date specified:**

1.) By March 1, 2024, a Priority Climate Action Plan (PCAP), which is a narrative report that includes a focused list of near-

term, high-priority, implementation ready measures to reduce Greenhouse Gas (GHG) pollution and an analysis of GHG emissions reductions that would be achieved through implementation. These initial plans can focus on a specific sector or selected sectors, and do not need to comprehensively address all sources of GHG emissions and sinks in the jurisdiction. The PCAP must include: a GHG inventory; quantified GHG reduction measures; a low-income and disadvantaged communities benefits analysis; and a review of authority to implement.

2.) A Comprehensive Climate Action Plan (CCAP), due 2 years from the date of the award. The CCAP is a narrative report that should touch on all significant GHG sources/sinks and sectors present in a state or metropolitan area, establish near-term and long-term GHG emission reduction goals, and provide strategies and identify measures to achieve those goals. Each CCAP must include: a GHG inventory; GHG emissions projections; GHG reduction targets; quantified GHG reduction measures; a benefits analysis for the full geographic scope and population covered by the plan; a low-income and disadvantaged communities benefits analysis; a review of authority to implement; a plan to leverage other federal funding; and, a workforce planning analysis.

3.) A Status Report, due at the closeout of the 4-year grant period. This report should include the implementation status of the quantified GHG reduction measures included in the CCAP; any relevant updated analyses or projections supporting CCAP implementation; and, next steps and future budget/staffing needs to continue CCAP implementation.

States must coordinate with municipalities and air pollution control agencies within their state to include priority measures that are implementable by those entities. States are further encouraged to similarly coordinate with tribes. In all cases, the lead organization for a state or metropolitan area PCAP funded through the CPRG program must make the PCAP available to other entities by March 1, 2024 for their use in developing an implementation grant application.

State lead organizations must involve stakeholder groups and the public in the process for developing the PCAP and CCAP. Potential stakeholders include urban, rural, and underserved or disadvantaged communities as well as the general public, governmental entities, federally recognized tribes, Port Authorities, labor organizations, community and faith-based organizations, and private sector and industry representatives.

**c.] State Grant Cybersecurity**

(a) The recipient agrees that when collecting and managing environmental data under this assistance agreement, it will protect the data by following all applicable State law cybersecurity requirements.

(b) (1) EPA must ensure that any connections between the recipient's network or information system and EPA networks used by the recipient to transfer data under this agreement, are secure.

For purposes of this Section, a connection is defined as a dedicated persistent interface between an Agency IT system and an external IT system for the purpose of transferring information. Transitory, user-controlled connections such as website browsing are excluded from this definition.

If the recipient's connections as defined above do not go through the Environmental Information Exchange Network or EPA's Central Data Exchange, the recipient agrees to contact the EPA Project Officer (PO) and work with the designated Regional/Headquarters Information Security Officer to ensure that the connections meet EPA security requirements, including entering into Interconnection Service Agreements as appropriate. This condition does not apply to manual entry of data by the recipient into systems operated and used by EPA's regulatory programs for the submission of reporting and/or compliance data.

(2) The recipient agrees that any subawards it makes under this agreement will require the subrecipient to comply with the

requirements in (b)(1) if the subrecipient's network or information system is connected to EPA networks to transfer data to the Agency using systems other than the Environmental Information Exchange Network or EPA's Central Data Exchange. The recipient will be in compliance with this condition: by including this requirement in subaward agreements; and during subrecipient monitoring deemed necessary by the recipient under 2 CFR 200.332(d), by inquiring whether the subrecipient has contacted the EPA Project Officer. Nothing in this condition requires the recipient to contact the EPA Project Officer on behalf of a subrecipient or to be involved in the negotiation of an Interconnection Service Agreement between the subrecipient and EPA.

**d.] Competency of Organizations Generating Environmental Measurement Data**

In accordance with Agency Policy Directive Number FEM-2012-02, Policy to Assure the Competency of Organizations Generating Environmental Measurement Data under Agency-Funded Assistance Agreements, the Recipient agrees, by entering into this agreement, that it has demonstrated competency prior to award, or alternatively, where a pre-award demonstration of competency is not practicable. Recipient agrees to demonstrate competency prior to carrying out any activities under the award involving the generation or use of environmental data. Recipient shall maintain competency for the duration of the project period of this agreement and this will be documented during the annual reporting process.  A copy of the Policy is available online at https://www.epa.gov/sites/production/files/2015-03/documents/competency-policy-aaia-new.pdf or a copy may also be requested by contacting the EPA Project Officer for this award.

**e.] Public or Media Events**

The Recipient agrees to notify the EPA Project Officer listed in this award document of public or media events related to activities accomplished as a result of this agreement, and provide the opportunity for attendance and participation by federal representatives with at least ten (10) working days' notice.

**f.] Quality Assurance**

Authority: Quality Assurance applies to all assistance agreements involving environmental information as defined in 2 C.F.R. § 1500.12 Quality Assurance.

The recipient shall ensure that subawards involving environmental information issued under this agreement include appropriate quality requirements for the work. The recipient shall ensure sub-award recipients develop and implement Quality Assurance (QA) planning documents in accordance with this term and condition; and/or ensure sub-award recipients implement all applicable approved QA planning documents.

**Quality Assurance Project Plan (QAPP)**

Prior to beginning environmental information operations, the recipient must:

i. Develop a QAPP (for existing environmental information),

ii. Prepare QAPP in accordance with the current version of EPA QA/R-5: EPA Requirements for Quality Assurance Project Plans,

iii. Submit the document for EPA review, and

iv. Obtain EPA Quality Assurance Manager or designee approval.

**For Reference:**

• Quality Management Plan (QMP) Standard and EPA QA/R-5: *EPA Requirements for Quality Assurance Project Plans*; contain quality specifications for EPA and non-EPA organizations and definitions applicable to these terms and conditions.

• EPA QA/G-5: *Guidance for Quality Assurance Project Plans*, Appendix C provides a QAPP Checklist.

• (QAM and/or PO may insert QA references that inform or assist the recipient here).

• EPA's Quality Program website has a list of QA managers, and Non-EPA Organizations Quality Specifications.

• The Office of Grants and Debarment Implementation of Quality Assurance Requirements for Organizations Receiving EPA Financial Assistance.

**g.]  Use of Logos**

If the EPA logo is appearing along with logos from other participating entities on websites, outreach materials, or reports, it must **not** be prominently displayed to imply that any of the recipient or subrecipient's activities are being conducted by the EPA. Instead, the EPA logo should be accompanied with a statement indicating that grantee received financial support from the EPA under an Assistance Agreement. More information is available at: https://www.epa.gov/stylebook/using-epa-seal-and-logo#policy

**\*\*\*END OF DOCUMENT\*\*\***

# EXHIBIT C

5H - 84092001 - 1    Page 1

| U.S. ENVIRONMENTAL PROTECTION AGENCY **Assistance Amendment** | GRANT NUMBER (FAIN): 84092001 | | DATE OF AWARD |
|---|---|---|---|
| | MODIFICATION NUMBER: 1 | | 12/04/2024 |
| | PROGRAM CODE: 5H | | |
| | TYPE OF ACTION | | MAILING DATE |
| | No Cost Amendment | | 12/04/2024 |
| | PAYMENT METHOD: | | ACH# |
| | ASAP | | 90711 |

| RECIPIENT TYPE: | Send Payment Request to: |
|---|---|
| State | Contact EPA RTPFC at: rtpfc-grants@epa.gov |
| **RECIPIENT:** | **PAYEE:** |
| EXECUTIVE OFFICE OF STATE OF ARIZONA | EXECUTIVE OFFICE OF STATE OF ARIZONA |
| 1700 WEST WASHINGTON SUITE 500 | 1700 WEST WASHINGTON SUITE 500 |
| PHOENIX, AZ 85007-2812 | PHOENIX, AZ 85007-2812 |
| EIN: 86-6004791 | |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Blaise Caudill | Melissa Hopkinson | Jennifer Brooks |
| 1700 W. Washington St Suite 500 | 1200 Pennsylvania Ave NW, 1101R | 1200 Pennsylvania Ave, NW, 3903R |
| Phonex, AZ 85007-2815 | Washington, DC 20460 | Washington , DC 20460 |
| **Email:** bcaudill@az.gov | **Email:** Hopkinson.Melissa@epa.gov | **Email:** brooks.jennifer@epa.gov |
| **Phone:** 520-312-5854 | **Phone:** 202-566-0810 | **Phone:** 202-564-6374 |

PROJECT TITLE AND EXPLANATION OF CHANGES

Solar for All Arizonans: Enhancing Access to Solar Energy for Low-Income and Disadvantaged Communities in Arizona

This amendment removes the 2% funding restriction from the Solar for All award and incorporates the necessary budget and workplan documentation.

| BUDGET PERIOD | PROJECT PERIOD | TOTAL BUDGET PERIOD COST | TOTAL PROJECT PERIOD COST |
|---|---|---|---|
| 05/01/2024 - 04/30/2029 | 05/01/2024 - 04/30/2029 | $ 156,120,000.00 | $ 156,120,000.00 |

## NOTICE OF AWARD

Based on your Application dated 10/12/2023 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $ 0.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 156,120,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| ORGANIZATION / ADDRESS | ORGANIZATION / ADDRESS |
| Environmental Protection Agency, Grants Management & Business Operations Division | Environmental Protection Agency, Office of the Greenhouse Gas Reduction Fund |
| 1200 Pennsylvania Ave, NW Mail code 3903R | OA - Office of the Administrator |
| Washington, DC 20460 | 1200 Pennsylvania Ave, NW |
| | Washington , DC 20460 |

| THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY | |
|---|---|
| Digital signature applied by EPA Award Official LaShaun Phillips - Associate Award Official | DATE 12/04/2024 |

5H - 84092001 - 1    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $ 155,720,000 | $ 0 | $ 155,720,000 |
| EPA In-Kind Amount | $ 400,000 | $ 0 | $ 400,000 |
| Unexpended Prior Year Balance | $ 0 | $ 0 | $ 0 |
| Other Federal Funds | $ 0 | $ 0 | $ 0 |
| Recipient Contribution | $ 0 | $ 0 | $ 0 |
| State Contribution | $ 0 | $ 0 | $ 0 |
| Local Contribution | $ 0 | $ 0 | $ 0 |
| Other Contribution | $ 0 | $ 0 | $ 0 |
| Allowable Project Cost | $ 156,120,000 | $ 0 | $ 156,120,000 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.959 - Zero-Emissions Technology Grant Program | National Environmental Policy Act: Sec. 102(2)(I)<br><br>Clean Air Act: Sec. 134(a)(1)<br><br>2023 Consolidated Appropriations Act (PL 117-328) | 2 CFR 200, 2 CFR 1500 and 40 CFR 33 |

5H - 84092001 - 1    Page 3

Budget Summary Page

| Table A - Object Class Category<br>(Non-Construction) | Total Approved Allowable<br>Budget Period Cost |
|---|---|
| 1. Personnel | $ 3,375,000 |
| 2. Fringe Benefits | $ 1,113,750 |
| 3. Travel | $ 66,450 |
| 4. Equipment | $ 0 |
| 5. Supplies | $ 87,500 |
| 6. Contractual | $ 8,225,188 |
| 7. Construction | $ 0 |
| 8. Other | $ 142,037,800 |
| 9. Total Direct Charges | $ 154,905,688 |
| 10. Indirect Costs: 20.52 % Base MTDC | $ 1,214,312 |
| 11. Total (Share: Recipient ___0.00 % Federal __100.00 %) | $ 156,120,000 |
| 12. Total Approved Assistance Amount | $ 156,120,000 |
| 13. Program Income | $ 24,000,000 |
| 14. Total EPA Amount Awarded This Action | $ 0 |
| 15. Total EPA Amount Awarded To Date | $ 156,120,000 |

5H - 84092001 - 1    Page 4

## Administrative Conditions

### A. General Terms and Conditions

The Recipient agrees to comply with the current EPA general terms and conditions available at: https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2024-or-later. These terms and conditions are in addition to the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award. The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

### B. Correspondence Condition

The terms and conditions of this agreement require the submittal of reports, specific requests for approval, or notifications to EPA.  Unless otherwise noted, all such correspondence should be sent to the following email addresses:

- Federal Financial Reports (SF-425): rtpfc-grants@epa.gov and EPA **Grants Specialist listed on the award**
- MBE/WBE reports (EPA Form 5700-52A):  Debora Bradford (Bradford.Debora@epa.gov), OMS-OGD-MBE_WBE@epa.gov, and the **EPA Grants Specialist listed on the award**
- All other forms/certifications/assurances, Indirect Cost Rate Agreements, Requests for Extensions of the Budget and Project Period, Amendment Requests, Requests for other Prior Approvals, updates to Recipient information (including email addresses, changes in contact information or changes in authorized representatives) and other notifications: **EPA Grants Specialist listed on the award and EPA Project Officer listed on the award**
- Quality Assurance documents, workplan revisions, equipment lists, programmatic reports and deliverables: **EPA Project Officer listed on the award**

### C. Intergovernmental Review Period

In accordance with 40 CFR Part 29, EPA must allow for an intergovernmental review comment period when a Recipient or Subrecipient intends to provide financial assistance to a project that involves construction or land use planning. With the exception of projects that will be carried out in the State of California, the Recipient must ensure that directly affected State, areawide, regional, and local government entities have 60 calendar days to review the description of the project contained in the application for funding for the project and provide comments to the EPA Project Officer. Applications for funding for projects that will be carried out in the State of California must be submitted to the California Single Point of Contact at https://cfda.opr.ca.gov for review as provided in California law.

EPA has initiated the intergovernmental review process on behalf of the Recipient and will direct any pertinent comments from directly affected State, areawide, regional, and local government entities to the Recipient as needed.

The Recipient agrees to comply with the provisions of 40 CFR Part 29, implementing the Demonstration Cities, Metropolitan Development Act, the Intergovernmental Cooperation Act, and Executive Order 12372 as amended in 1983, to ensure that projects funded under federal programs are consistent with local planning requirements.

## D. Pre-Award Costs

As provided in 2 CFR 200.458, Recipients are authorized to incur pre-award costs, which are costs that would have been allowable if incurred after the date of the Federal award. For competitive grants, EPA interprets the requirement in the regulation that pre-award costs be incurred "directly pursuant to the negotiation and in anticipation of the Federal award" to limit allowable pre-award costs to those a Recipient incurs after EPA has notified the Recipient that its application has been selected for award consideration. The pre-award costs must be included in the workplan and budget to be eligible. As provided in 2 CFR 1500.9, Recipients incur pre-award costs at their own risk. Please refer to *Section I.C: Pre-Award Costs* of the Interim General Budget Development Guidance for Applicants and Recipients of EPA Financial Assistance for additional information

## E. New Recipient Training Requirement

The Recipient agrees to complete the EPA Grants Management Training for Applicants and Recipients and the How to Develop a Budget training within 90 calendar days of the date of award of this agreement. The Recipient must notify the Grant Specialist via email when the required training is complete. For additional information on this training requirement, the Recipient should refer to RAIN-2024-G01

# Programmatic Conditions

## Solar For All (SFA) Programmatic Terms and Conditions (Updated 12/032024)

## I. DEFINITIONS

**Air Pollutant:** "Air Pollutant" means any air pollutant that is listed pursuant to Section 108(a) of the Clean Air Act (or any precursor to such an air pollutant). This includes particulate matter, ozone, carbon monoxide, sulfur dioxide, nitrogen dioxide, and lead (see 40 CFR Part 50) and their precursors (e.g., volatile organic compounds).

**Award Agreement:** Award Agreement means the set of legally binding documents between EPA and the Recipient under the federal award. Award Agreement is used interchangeably with Assistance Agreement and Notice of Award.

**Apprentice:** Apprentice means an individual working on a project receiving Financial Assistance who is participating in a Registered Apprenticeship program under the National Apprenticeship Act that meets the requirements of 29 CFR Parts 29 and 30.

**Contracts for Delivery of Financial Assistance:** 2 CFR 200.1 defines a contract as "for the purpose of Federal financial assistance, a legal instrument by which a recipient or subrecipient conducts procurement transactions under a Federal award." Contracts for Delivery of Financial Assistance involve the provision of services through procurement contracts. In this program, Contracts for Delivery of Financial Assistance are a form of Financial Assistance to projects which enable Low-Income and Disadvantaged Communities to deploy or benefit from zero-emissions technologies.

**Eligible Recipient:** Eligible Recipients under the Solar for All program include: (1) states (including territories as defined below), (2) municipalities, (3) Tribal governments, or (4) eligible nonprofit Recipients, each of which is defined in accordance with the Clean Air Act as described below:

- **State:** Section 302(d) of the Clean Air Act defines a state as a state, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands. Eligible Recipients that are states are identified on the Notice of Award as a "state" Recipient type.

- **Municipality:** Section 302(f) of the Clean Air Act provides that a municipality is a city, town, borough, county, parish, district, or other public body created by or pursuant to state law. This term may include councils of government (COGs) created by or pursuant to the laws of one or more states even if a COG is incorporated as a nonprofit organization. Eligible Recipients that are municipality are identified on the Notice of Award as either a "municipal", "county", or "township" Recipient type.

- **Tribal Government:** Section 302(r) of the Clean Air Act "Indian Tribe" as any "Indian Tribe, band, nation, or other organized group or community, including any Alaska Native village, which is Federally recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." EPA includes Intertribal Consortia that meet the requirements of 40 CFR § 35.504 as an eligible Recipient under this category pursuant to the authority in 40 CFR § 35.501(b) to issue guidance extending Intertribal Consortia eligibility to environmental programs established subsequent to the effective date of 40 CFR Part 35, Subpart B. As provided in 40 CFR 35.504(a) all members of the Intertribal consortium must meet the definition of "Indian Tribe" in Section 302(r) of the Clean Air Act. Eligible Recipients that are Tribal

governments are identified on the Notice of Award as an Indian Tribe Recipient type. Eligible Recipients that are defined as Tribal governments because they are Intertribal Consortia may be identified as a not for profit on the Notice of Award. In these cases, the EPA-approved Solar for All workplan will identify the Recipient type as an Intertribal Consortia.

- **Eligible Nonprofit Recipient:** In accordance with Section 134(c)(1) of the Clean Air Act, a nonprofit organization must satisfy each of the below requirements to be deemed an eligible nonprofit Recipient under the Solar for All program:

    a. Meeting the definition of *Nonprofit organization* set forth in 2 CFR 200.1;

    b. Having an organizational mission consistent with being "designed to provide capital, leverage private capital, and provide other forms of financial assistance for the rapid deployment of low- and zero-emission products, technologies, and services;"

    c. Not receiving any "deposit" (as defined in Section 3(l) of the Federal Deposit Insurance Act) or "member account" or "account" (as defined in Section 101 of the Federal Credit Union Act);

    d. Being funded by public or charitable contributions; and

    e. Having the legal authority to invest in or finance projects.

Eligible Recipients that are eligible nonprofit Recipients are identified on the Notice of Award as a not for profit Recipient type, excluding Recipients that are identified as Intertribal Consortia on the EPA-approved Solar for All workplan.

**Eligible Zero-Emissions Technology**: Section 134(a)(1) of the Clean Air Act provides that grants be used to provide financial assistance and technical assistance "to enable low-income and disadvantaged communities to deploy or benefit from zero-emissions technologies." Section 134(c)(4) of the Clean Air Act provides that the term zero-emissions technology means any technology that produces zero emissions of (a) any air pollutant that is listed in Section 108(a) (or any precursor to such an air pollutant) and (b) any greenhouse gas. There are four eligible zero-emissions technology categories. The four categories are:

- **Residential Rooftop Solar:** Behind-the-meter solar photovoltaic (PV) power-producing facilities, including rooftop, pole-mounted, and ground-mounted PV systems, that deliver all the power generated from the facilities to residential customers in existing and new single-family homes, manufactured homes, or multifamily buildings. Residential rooftop solar includes behind-the-meter solar facilities serving multifamily buildings classified as commercial buildings so long as the solar facility benefits residential customers either directly or indirectly such as through tenant benefit agreements. Residential rooftop solar includes properties that are both rented and owned.
- **Residential-Serving Community Solar:** A solar PV power-producing facility or solar energy purchasing program from a power-producing facility, with up to 5 MW$_{ac}$ nameplate capacity, that delivers at least 50% of the power generated from the system—by delivering at least 50% of the benefits (e.g., financial savings, renewable energy credits) derived from the power generated by the community solar system—to residential customers within the same utility territory as the facility.
- **Associated Storage:** Infrastructure to store solar-generated power for the purposes of maximizing

residential rooftop and residential-serving community solar deployment that is deployed in conjunction with an eligible residential rooftop solar or residential-serving community solar project. Stand-alone energy storage infrastructure is not an eligible zero-emissions technology.

- **Enabling Upgrades:** Investments in energy and building infrastructure that are necessary to deploy or maximize the benefits of a residential rooftop and residential-serving community solar project. Enabling upgrades must satisfy all of the following criteria to be an eligible zero-emissions technology: (1) an investment in energy or building infrastructure and (2) necessary to deploy or maximize the benefits (i.e., financial savings or resiliency benefits) of a residential rooftop and residential-serving community solar project as defined above.

**Environmental Information:** Environmental Information is defined in EPA's [Environmental Information Quality Policy](#). Environmental Information includes "data and information that describe environmental processes or conditions which support EPA's mission of protecting human health and the environment. Examples include but are not limited to: direct measurements of environmental parameters or processes; analytical testing results of environmental conditions (e.g., geophysical or hydrological conditions); information on physical parameters or processes collected using environmental technologies; calculations or analyses of environmental information; information provided by models; information compiled or obtained from databases, software applications, decision support tools, websites, existing literature, and other sources; development of environmental software, tools, models, methods and applications; and design, construction, and operation or application of environmental technology."

**Environmental Information Operations:** Environmental Information Operations is defined in EPA's [Environmental Information Quality Policy](#). Environmental Information Operations means "[a] collective term for work performed to collect, produce, evaluate, or use environmental information and the design, construction, operation or application of environmental technology."

**EPA Project Officer**: EPA Project Officer means the project officer from the Office of the Greenhouse Gas Reduction Fund that is assigned, along with the EPA Grants Specialist, to monitor the Recipient on programmatic and technical aspects of the project and is typically authorized to make programmatic approvals on behalf of the EPA. Where required, the Recipient must notify or request approval from the EPA Project Officer through the EPA Project Officer's individual EPA email address as well [SFA@epa.gov](#) such that the Office of the Greenhouse Gas Reduction Fund may delegate an alternative EPA Project Officer in the case of any absence.

**EPA Award Official**: "EPA Award Official" means the award official from the Office of Grants and Debarment that is authorized to execute the award agreement, as well as any subsequent amendments to the award agreement, and to make any other final determinations required by law or regulation on behalf of the EPA.

**Financial Assistance:** Section 134(a)(1) of the Clean Air Act directs that Recipients use funds to provide financial assistance "to enable low-income and disadvantaged communities to deploy or benefit from zero-emissions technologies." Consistent with the definition of Federal financial assistance in 2 CFR 200.1, Financial Assistance means financial products, including debt (such as loans, partially forgivable loans, forgivable loans, zero-interest and below-market interest loans, loans paired with interest rate buydowns, secured and unsecured loans, lines of credit, subordinated debt, warehouse lending, and other debt instruments), credit enhancements (such as loan guarantees, loan guarantee funds, loan loss reserves, and other credit enhancement instruments that are not acquisitions of intangible property), subgrants, subsidies, and rebates. Expenditures for Financial Assistance are in the form of Contracts for

Delivery of Financial Assistance, Subawards, or Participant Support Costs, as defined in this Award Agreement. For the avoidance of doubt, financial products that build the capacity of communities and businesses to deploy solar including but not limited to predevelopment loans and grants or working capital lines of credit to businesses or other forms of financing to build the solar project pipeline are classified as Financial Assistance for the purposes of this program.

*Freely Associated States:* *Freely Associated States means the Republic of the Marshall Islands (the Marshalls), the Federated States of Micronesia (FSM), and the Republic of Palau (Palau).*

**Greenhouse Gas:** Greenhouse Gas means carbon dioxide, hydrofluorocarbons, methane, nitrous oxide, perfluorocarbons, and sulfur hexafluoride, as defined in Section 134(c)(2) of the Clean Air Act. Greenhouse Gas Emissions mean emissions of Greenhouse Gases.

**Low-Income and Disadvantaged Communities**: Section 134(a)(1) of the Clean Air Act directs that Recipients use funds for Financial Assistance and technical assistance "to enable low-income and disadvantaged communities to deploy or benefit from zero-emissions technologies." "Low-income and disadvantaged communities" means CEJST-identified disadvantaged communities, EJScreen-identified disadvantaged communities, geographically dispersed low-income households, and properties providing affordable housing, as defined below.

- *CEJST-Identified Disadvantaged Communities:* All communities identified as disadvantaged through version 1.0 of the Climate and Economic Justice Screening Tool (CEJST), released on November 22, 2022, which includes census tracts that meet the thresholds for at least one of the tool's categories of burden and land within the boundaries of Federally Recognized Tribes.

- *EJScreen-Identified Disadvantaged Communities:* **All communities** within version 2.3 of EJScreen **that fall within either (a)** the limited supplemental set of census block groups that are at or above the 90th percentile for any of EJScreen's supplemental indexes when compared to the nation or state or (b) geographic areas within Tribal lands as included in EJScreen, which includes the following Tribal lands: Alaska Native Allotments, Alaska Native Villages, American Indian Reservations, American Indian Off-reservation Trust Lands, and Oklahoma Tribal Statistical Areas.

- *Geographically Dispersed Low-Income Households:* Low-income individuals and households living in Metropolitan Areas with incomes not more than 80% AMI or 200% FPL (whichever is higher), and low-income individuals and households living in Non-Metropolitan Areas with incomes not more than 80% AMI, 200% FPL, or 80% Statewide Non-Metropolitan Area AMI (whichever is highest). Federal Poverty Level (FPL) is defined using the latest publicly available figures from the U.S. Department of Health and Human Services. Area Median Income (AMI) is defined using the latest publicly available figures from the U.S. Department of Housing and Urban Development (HUD). Metropolitan Area and Non-Metropolitan Area are defined using the latest publicly available figures for county-level designations from the Office of Management and Budget. Statewide Non-Metropolitan Area AMI is defined using the latest publicly available figures from the U.S. Department of the Treasury's CDFI Fund, with an adjustment for household size using HUD's Family Size Adjustment factor.

- *Properties Providing Affordable Housing:* Properties providing affordable housing that fall within either of the following two categories: (a) multifamily housing with rents not exceeding 30% of 80% AMI for at least half of residential units and with an active affordability covenant from one of the following housing assistance programs: (1) Low-Income Housing Tax Credit; (2) a housing assistance program administered by HUD, including Public Housing, Section 8 Project-Based

Rental Assistance, Section 202 Housing for the Elderly, Section 811 Housing for Disabled, Housing Trust Fund, Home Investment Partnership Program Affordable Rental and Homeowner Units, Permanent Supportive Housing, and other programs focused on ending homelessness that are funded under HUD's Continuum of Care Program; (3) a housing assistance program administered by USDA under Title V of the Housing Act of 1949, including under Sections 514 and 515; (4) a housing assistance program administered by a tribally designated housing entity, as defined in Section 4(22) of the Native American Housing Assistance and Self-Determination Act of 1996 (25 USC § 4103(22)); or (5) a housing assistance program administered by the Department of Hawaiian Homelands as defined in Title VIII of the Native American Housing Assistance and Self-Determination Act of 1996 (24 CFR 1006.10) or (b) naturally-occurring (unsubsidized) affordable housing with rents not exceeding 30% of 80% AMI for at least half of residential units.

- *Federally Recognized Tribal Entities:* All Federally Recognized Tribal entities, which are considered disadvantaged regardless of whether a Federally Recognized Tribe has land, consistent with M-23-09 (memorandum dated as of January 27, 2023) and CEJST. A "Federally Recognized Tribal Entity" means (i) any individual member of a Federally Recognized Tribe; (ii) any for-profit business that has at least 51 percent of its equity ownership (or the equivalent in limited liability companies) by members of Federally Recognized Tribes; (iii) any non-profit entity with at least 51 percent of its Board of Directors (i.e., Governing Board) comprised of members of Federally Recognized Tribes; or (iv) any Federally Recognized Tribal government entity. Under this definition, any Federally Recognized Tribal Entity is included within the definition of Low-Income and Disadvantaged Communities, regardless of where that entity is located (i.e., the entity may be located in areas outside of the CEJST land area dataset, including but not limited to tribal service areas or counties).

**Materially Impaired**: For the definition and application of these terms under this Assistance Agreement (e.g. the Clarifications to EPA General Terms and Conditions) and any associated legal documentation related to the Assistance Agreement, note that EPA defines "Materially Impaired" in the context of effective performance of the Assistance Agreement as 1) the issuance of a written determination and finding from EPA that the Recipient has failed to achieve sufficient progress in accordance with the Sufficient Progress clause under the Clarifications to EPA General Terms and Conditions Programmatic Term and Condition and 2) if EPA in its sole discretion determines that a corrective action plan is an appropriate means of remedying the lack of sufficient progress, the subsequent issuance of a separate written determination and finding from EPA that the Recipient has not materially addressed its failure to achieve sufficient progress after implementing a corrective action plan concurred on by the EPA Project Officer and approved by the Award Official or Grants Management Officer pursuant to 2 CFR 200.208.

**Participant Support Costs**: 2 CFR 200.1 defines Participant Support Costs as "direct costs that support participants (see definition for Participant in § 200.1) and their involvement in a Federal award, such as stipends, subsistence allowances, travel allowances, registration fees, temporary dependent care, and per diem paid directly to or on behalf of participants." EPA regulations at 2 CFR 1500.1(a)(1) expand the definition of Participant Support Costs to include "subsidies, rebates, and other payments to Program Beneficiaries to encourage participation in statutorily authorized environmental stewardship programs," which includes the Greenhouse Gas Reduction Fund. In this program, Participant Support Costs are primarily a form of Financial Assistance to projects which enable Low-Income and Disadvantaged Communities to deploy or benefit from zero-emissions technologies.

**Period of Closeout**: Period of Closeout means the time interval between the beginning of the closeout

period (the date that the award has been closed out, in accordance with 2 CFR 200.344) to the end of the closeout period (the date that the Closeout Agreement has been terminated). The Period of Closeout may also be referred to as the Closeout Period.

**Period of Performance**: 2 CFR 200.1 defines Period of Performance as "the time interval between the start and end date of a Federal award, which may include one or more budget periods." For the purposes of this Award Agreement, the Period of Performance means the time interval between the start of the Federal award (either the first date that the Recipient has incurred allowable pre-award costs or the date on the Notice of Award, whichever is earlier) and the end of the Federal award (the date that the award has been closed out, in accordance with 2 CFR 200.344). The Period of Performance may also be referred to as the Performance Period.

**Post-Closeout Program Income**: Post-Closeout Program Income means Program Income retained at the end of the Period of Performance, which is subject to the terms and conditions of the Closeout Agreement, as well as Program Income earned by the Recipient during the Period of Closeout that is directly generated by a supported activity or earned as a result of the Federal award, which is also subject to the terms and conditions of the Closeout Agreement. Under the Closeout Agreement, the Recipient is authorized to deduct the cost of generating Post-Closeout Program Income under 2 CFR 200.307(d) and 2 CFR 1500.8(b), provided the costs are reasonable and necessary for performance under the federal award and the costs are not charged to the EPA award. Costs incidental to the generation of Post-Closeout Program Income include origination, servicing, and management costs that are not charged as direct costs to the Federal award or to Post Closeout Program Income. Costs of generating Post-Closeout Program Income can be incurred in advance of receiving the gross income, with the Recipient incurring the costs and later using gross income to reimburse itself for no more than the actual costs incurred to generate the Post-Closeout Program Income, provided the Recipient can account for the actual costs incurred.

**Program Administration Activities:** "Program administration activities" means activities that support administration of the grant program, to the extent such activities meet the requirements for allowability under 2 CFR Part 200, Subpart E as well as applicable provisions of 2 CFR Part 1500. Expenditures for program administration activities could include those for program performance, financial and administrative reporting, and compliance, including but not limited to activities to support, monitor, oversee, and audit Subrecipients, Contractors, and Program Beneficiaries. Program administration costs include procuring services and tools that support the Recipient in program design. Program administration activities may also include establishing and convening advisory councils, as described in Item 2 of EPA's Guidance on Selected Items of Cost for Recipients, and fundraising, as described in Item 4 of EPA's Guidance on Selected Items of Cost for Recipients.

**Program Beneficiary:** Program Beneficiary means an entity (either an individual or an organization) that receives Financial Assistance or Project Deployment Technical Assistance from the Recipient as an end-user. Expenditures for Financial Assistance or Project Deployment Technical Assistance to Program Beneficiaries are in the form of Participant Support Costs, as defined in 2 CFR 1500.1. A Program Beneficiary is distinct from a Subrecipient, as defined in 2 CFR 200.1.

**Program Income:** 2 CFR 200.1 defines Program Income as "gross income earned by the recipient or subrecipient that is directly generated by a supported activity or earned as a result of the Federal award during the period of performance except as provided in § 200.307(c)". 2 CFR 200.1 notes that Program Income "includes but is not limited to income from fees for services performed, the use or rental or real or personal property acquired under Federal awards, the sale of commodities or items fabricated under a

Federal award, license fees and royalties on patents and copyrights, and principal and interest on loans made with Federal award funds." For this program, Program Income also includes but is not limited to income from origination fees, servicing fees, and asset management fees; revenue from asset sales; release of grant funds previously used as Financial Assistance (such as through loan guarantees, loan loss reserves, or similar transactions); interest and other earnings on disbursements of grant funds that have not been transferred to third parties; and funds raised with costs charged against the grant award (such as private debt, philanthropic contributions, and other funds raised). EPA-specific rules on Program Income are provided at 2 CFR 1500.8, and rules on allowable fundraising costs are provided under 2 CFR 200.442 (with additional details in Item 4 of the EPA Guidance on Selected Items of Cost for Recipients). Under this program, the Recipient is authorized to deduct the cost of generating program income under 2 CFR 200.307(d) and 2 CFR 1500.8(b), provided the costs are reasonable and necessary for performance under the federal award and the costs are not charged to the EPA award. Costs incidental to the generation of program income include origination, servicing, and management costs that are not charged as direct costs to the Federal award or to Program Income. Costs of generating program income can be incurred in advance of receiving the gross income, with the Recipient incurring the costs and later using gross income to reimburse itself for no more than the actual costs incurred to generate the program income, provided the Recipient can account for the actual costs incurred. Program Income requirements flow down to Subrecipients but not to Contractors or Program Beneficiaries.

**Project-Deployment Technical Assistance:** Section 134(a)(1) of the Clean Air Act provides that funds for this competition be used for "technical assistance." Technical assistance is defined as "Project-Deployment Technical Assistance" and is services and tools provided by Recipients to enable Low-Income and Disadvantaged Communities to overcome non-financial barriers to rooftop residential solar or residential-serving community solar deployment or build the capacity of communities and businesses to deploy solar. Examples of these services and tools include workforce training, customer outreach and education, project deployment assistance such as siting, permitting, and interconnection support, coordination with utilities for the purposes of project deployment, distributed solar deployment training for developers, and other services and tools that enable Low-Income and Disadvantaged Communities to deploy or benefit from rooftop residential solar, and residential-serving community solar.

**Subaward:** 2 CFR 200.1 defines a Subaward as "an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor, beneficiary, or participant". A Subgrant refers to a Subaward in the form of a grant.

**Subrecipient:** Consistent with 2 CFR 200.1, Subrecipient means an entity that receives a Subaward from a pass-through entity to carry out part of a Federal award but does not include an entity that is a Program Beneficiary of such an award. A Subrecipient is distinct from a Program Beneficiary, which is referenced in 2 CFR 1500.1.

**Waste, Fraud, or Abuse:** For the definition and application of these terms under this Assistance Agreement (e.g. under the Financial Risk Management Requirements and Clarifications to EPA General Terms and Conditions) and any associated legal documentation related to the Assistance Agreement, refer to their use in the *Reporting Waste, Fraud, and Abuse* clause in the EPA General Terms and Conditions effective October 1, 2024 and 2 CFR 200.113: "credible evidence of the commission of a violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 of the United States Code or a violation of the civil False Claims Act 31 U.S.C. 3729-3733."

## II. NATIONAL PROGRAMMATIC TERMS AND CONDITIONS

### A. Performance Reporting

In accordance with 2 CFR 200.329 and 2 CFR 200.337, the Recipient agrees to the following two requirements of performance reporting: (1) progress reports, (2) transaction and-project level report. These performance reporting requirements "flow-down" as needed to enable the Recipient to comply with the requirements described in this term and condition. The Recipient must ensure that these reports cover its own grant-related activities, and where applicable to a certain performance report or element of a performance report, the grant-related activities of its Subrecipients, Contractors, and/or Program Beneficiaries. The Recipient agrees that EPA may amend the Award Agreement to reflect information collection instruments authorized by GGRF Accomplishment Reporting (EPA ICR Number 2783.01, OMB Control Number 2090-NEW), once such instruments are authorized; to the extent that the information is not available for transactions that were closed prior to the amendment, the Recipient will not be out of compliance with the reporting requirements.

The Recipient acknowledges that knowingly and willfully making a material false statement may be subject to criminal prosecution under 18 U.S.C. 1001 and/or other civil and administrative sanctions.

EPA intends to make performance reporting information available to the public, either in whole or in part, through disclosing copies of the reports as submitted or using the content of the reports to prepare EPA reporting documents. Pursuant to 2 CFR 200.338, the Recipient agrees to redact personally identifiable information (PII) and mark confidential business information (CBI) prior to submission to EPA. Information claimed as CBI will be disclosed only to the extent, and by means of the procedures, set forth in 40 CFR Part 2, Subpart B. As provided at 40 CFR 2.203(b), if no claim of confidential treatment accompanies the information when it is received by EPA, it may be made available to the public by EPA without further notice to the Recipient. Recipient agrees that submitted information that does not include PII or CBI may be shared for program evaluation purposes, including with third parties.

The EPA Project Officer may extend the due date for performance reporting requirements to the extent authorized by 2 CFR 200.329 and 2 CFR 200.344. On a case-by-case basis, the EPA Project Officer may waive or modify performance reporting requirements to the extent authorized by 2 CFR 200.329 and 2 CFR 200.344. Notwithstanding any other provision of this Assistance Agreement, if Recipient's inability to submit the required performance reporting is due to issues with EPA systems, the Recipient shall be granted a reasonable extension to submit the reports after the technical issue has been corrected.

***The following additional term and condition applicable to performance reporting applies if the Recipient is an Eligible Nonprofit Recipient as defined in the Eligible Recipient definition:***

The Recipient agrees to have its chief executive officer (or equivalent) and chief reporting officer (or equivalent) review, sign, and submit performance reporting electronically to the EPA Project Officer. To the extent it is known, or should have been known, by the chief executive officer (or equivalent) and chief reporting officer (or equivalent) that the reporting is not materially compliant with the terms and conditions, or demonstrates material noncompliance with the terms and conditions, the chief executive officer (or equivalent) and chief reporting officer (or equivalent) must note such noncompliance to the EPA Project Officer alongside the submission. Should the chief executive officer (or equivalent) and chief reporting officer (or equivalent) signing the submission knowingly and willfully make any material false statement, they may be subject to criminal prosecution under 18 U.S.C. 1001 and/or other civil and administrative sanctions.

## 1. Progress Reports

### *Semi-Annual Report*

The Recipient agrees to submit semi-annual reports covering six months of the calendar year in accordance with information collection instruments approved through GGRF Accomplishment Reporting (EPA ICR Number 2783.01, OMB Control Number 2090-NEW). A single semi-annual report must be submitted to cover grant-related activities of the Recipient as well as Subrecipients as well as the grant-related activities of its Contractors and/or Program Beneficiaries where applicable to a certain element of the semi-annual report.

The Recipient agrees to submit semi-annual reports electronically to the EPA Project Officer within 30 calendar days after the semi-annual reporting period ends. The Recipient may submit a request to the Project Officer for a permanent extension to 60 calendar days. A request may be made once, and it must include (i) an explanation of the Recipient's unique circumstance as to why they need the extension; (ii) the length of the extension (i.e., up to but not more than 60 calendar days after the semi-annual reporting period ends); and (iii) the duration of the extension (i.e., up to the remainder of the Period of Performance).

The semi-annual reporting periods are as follows: July 1 to December 31; January 1 to June 30. The first semi-annual reporting period ends on December 31 and covers all activities beginning on the first day of the Period of Performance.

### *Final Report*

The Recipient agrees to submit a final report containing two documents. First, the Recipient must submit a report containing detailed narratives describing program performance for the entire Period of Performance, representing an overall assessment of the Recipient's implementation of its EPA-approved Solar for All Workplan, supported with qualitative discussions and quantitative metrics. The Recipient must include the following broad, non-exhaustive elements in its narrative report:

- Progress towards objectives on key performance metrics over the entire Period of Performance,
- Summary of key activities completed in the entire Period of Performance, including case studies across different types of Financial Assistance and Project-Deployment Technical Assistance undertaken to enable Low-Income and Disadvantaged Communities to deploy or benefit from zero-emissions technologies,
- Geographic coverage of Financial Assistance and Project-Deployment Technical Assistance deployed in the entire Period of Performance,
- Descriptions and examples of actions the program took over the entire Period of Performance to meaningfully involve the communities the program serves in program design and operations,
- Plans for key activities (including anonymized current transaction pipeline) to be completed as well as outputs and outcomes to be achieved under the Closeout Agreement.

Second, the Recipient must submit its program strategy for the Closeout Period to detail its use of Post-Closeout Program Income over the Closeout Period.

The two documents for the final report must be submitted to cover the grant-related activities of the

Recipient and its Subrecipients as well as the grant-related activities of its Contractors and/or Program Beneficiaries where applicable to a certain element of the final report.

The two documents for the final report must be submitted ready to be published on the EPA website for public consumption and must not include any material that the Recipient considers to be Confidential Business Information (CBI) or Personal Identifiable Information (PII). All reports will undergo an EPA review process to verify that there is no PII or claims of CBI. Should EPA identify PII or claims of CBI in reports, the EPA Project Officer will require that the Recipient re-submit the report without the PII or claims of CBI so that it can be published without redaction.

The Recipient agrees to submit the two documents for the final report electronically to the EPA Project Officer no later than 120 calendar days after the end date of the Period of Performance.

## 2. Transaction and Project-Level Report

The Recipient agrees to submit semi-annual transaction and project-level reporting in accordance with information collection instruments approved through GGRF Accomplishment Reporting (EPA ICR Number 2783.01, OMB Control Number 2090-NEW). The data submission must cover the grant-related activities of the Recipient and Subrecipients as well as the grant-related activities of its Contractors and/or Program Beneficiaries where applicable to a certain element of the data submission.

The Recipient agrees to submit the transaction and project-level report electronically to the EPA Project Officer within 30 calendar days after the semi-annual reporting period ends. The Recipient may submit a request to the EPA Project Officer for a permanent extension to 60 calendar days. A request may be made once, and it must include (i) an explanation of the Recipient's unique circumstance as to why they need the extension; (ii) the length of the extension (i.e., up to but not more than 60 calendar days after the semi-annual reporting period ends); and (iii) the duration of the extension (i.e., up to the remainder of the Period of Performance).

The semi-annual reporting periods for data submission are as follows: October 1 to March 31; April 1 to September 30. The data submissions must cover transactions originated in the preceding two quarters. For the semi-annual reporting period that ends March 31, the Recipient must provide information on transactions originated from July 1 to December 31 rather than from October 1 to March 31. For the semi-annual reporting period that ends September 30, the Recipient must provide information on transactions originated from January 1 to June 30 rather than from April 1 to September 30. The first transaction and project-level report is due 30 calendar days after March 31, 2025, and must cover all transactions originated from the beginning of the Performance Period through December 31, 2024.

## B. Cybersecurity Condition

*The following terms and conditions applicable to cybersecurity apply if the Recipient is a State as defined in the Eligible Recipient definition:*

(a) The Recipient agrees that when collecting and managing environmental data under this assistance agreement, it will protect the data by following all applicable State law cybersecurity requirements.

(b) (1) EPA must ensure that any connections between the Recipient's network or information system and EPA networks used by the Recipient to transfer data under this agreement, are secure.

For purposes of this Section, a connection is defined as a dedicated persistent interface between an Agency IT system and an external IT system for the purpose of transferring information. Transitory, user-controlled connections such as website browsing are excluded from this definition.

If the Recipient's connections as defined above do not go through the Environmental Information Exchange Network or EPA's Central Data Exchange, the Recipient agrees to contact the EPA Project Officer and work with the designated Regional/Headquarters Information Security Officer to ensure that the connections meet EPA security requirements, including entering into Interconnection Service Agreements as appropriate. This condition does not apply to manual entry of data by the Recipient into systems operated and used by EPA's regulatory programs for the submission of reporting and/or compliance data.

(2) The Recipient agrees that any Subawards it makes under this agreement will require the Subrecipient to comply with the requirements in (b)(1) if the Subrecipient's network or information system is connected to EPA networks to transfer data to the Agency using systems other than the Environmental Information Exchange Network or EPA's Central Data Exchange. The Recipient will be in compliance with this condition: by including this requirement in Subaward agreements; and during Subrecipient monitoring deemed necessary by the Recipient under 2 CFR 200.332(e), by inquiring whether the Subrecipient has contacted the EPA Project Officer. Nothing in this condition requires the Recipient to contact the EPA Project Officer on behalf of a Subrecipient or to be involved in the negotiation of an Interconnection Service Agreement between the Subrecipient and EPA.

***The following terms and conditions applicable to cybersecurity apply if the Recipient is a Tribal Government as defined in the Eligible Recipient definition so long as the Recipient is not identified as a not for profit on the Notice of Award:***

(a) The Recipient agrees that when collecting and managing environmental data under this assistance agreement, it will protect the data by following all applicable Tribal law and policy cybersecurity requirements.

(b) (1) EPA must ensure that any connections between the Recipient's network or information system and EPA networks used by the Recipient to transfer data under this agreement, are secure. For purposes of this Section, a connection is defined as a dedicated persistent interface between an Agency IT system and an external IT system for the purpose of transferring information. Transitory, user-controlled connections such as website browsing are excluded from this definition.

If the Recipient's connections as defined above do not go through the Environmental Information Exchange Network or EPA's Central Data Exchange, the Recipient agrees to contact the EPA Project Officer no later than 90 calendar days after the date of this award and work with the designated Regional/Headquarters Information Security Officer to ensure that the connections meet EPA security requirements, including entering into Interconnection Service Agreements as appropriate. This condition does not apply to manual entry of data by the Recipient into systems operated and used by EPA's regulatory programs for the submission of reporting and/or compliance data.

(2) The Recipient agrees that any Subawards it makes under this agreement will require the Subrecipient to comply with the requirements in (b)(1) if the Subrecipient's network or information system is connected to EPA networks to transfer data to the Agency using systems other than the Environmental Information Exchange Network or EPA's Central Data Exchange. The Recipient will be in compliance with this condition: by including this requirement in Subaward agreements; and during Subrecipient monitoring

deemed necessary by the Recipient under 2 CFR 200.332(e), by inquiring whether the Subrecipient has contacted the EPA Project Officer. Nothing in this condition requires the Recipient to contact the EPA Project Officer on behalf of a Subrecipient or to be involved in the negotiation of an Interconnection Service Agreement between the Subrecipient and EPA.

***The following terms and conditions applicable to cybersecurity apply if the Recipient is a Municipality or Eligible Nonprofit Recipient as defined in the Eligible Recipient definition and if the Recipient is both a Tribal government as defined in the Eligible Recipient definition and denoted as a not for profit in the Notice of Award:***

(a) The Recipient agrees that when collecting and managing environmental data under this assistance agreement, it will protect the data by following all applicable State or Tribal law cybersecurity requirements.

(b) (1) EPA must ensure that any connections between the Recipient's network or information system and EPA networks used by the Recipient to transfer data under this agreement, are secure. For purposes of this Section, a connection is defined as a dedicated persistent interface between an Agency IT system and an external IT system for the purpose of transferring information. Transitory, user-controlled connections such as website browsing are excluded from this definition.

If the Recipient's connections as defined above do not go through the Environmental Information Exchange Network or EPA's Central Data Exchange, the Recipient agrees to contact the EPA Project Officer no later than 90 calendar days after the date of this award and work with the designated Regional/Headquarters Information Security Officer to ensure that the connections meet EPA security requirements, including entering into Interconnection Service Agreements as appropriate. This condition does not apply to manual entry of data by the Recipient into systems operated and used by EPA's regulatory programs for the submission of reporting and/or compliance data.

(2) The Recipient agrees that any Subawards it makes under this agreement will require the Subrecipient to comply with the requirements in (b)(1) if the Subrecipient's network or information system is connected to EPA networks to transfer data to the Agency using systems other than the Environmental Information Exchange Network or EPA's Central Data Exchange. The Recipient will be in compliance with this condition: by including this requirement in Subaward agreements; and during Subrecipient monitoring deemed necessary by the Recipient under 2 CFR 200.332(e), by inquiring whether the Subrecipient has contacted the EPA Project Officer. Nothing in this condition requires the Recipient to contact the EPA Project Officer on behalf of a Subrecipient or to be involved in the negotiation of an Interconnection Service Agreement between the Subrecipient and EPA.

## C. Competency Policy

In accordance with Agency Policy Directive Number FEM-2012-02, Policy to Assure the Competency of Organizations Generating Environmental Measurement Data under Agency-Funded Assistance Agreements, the Recipient agrees, by entering into this agreement, that it has demonstrated competency prior to award, or alternatively, where a pre-award demonstration of competency is not practicable, the Recipient agrees to demonstrate competency prior to carrying out any activities under the award involving the generation or use of environmental data. The Recipient shall maintain competency for the duration of the project period of this agreement and this will be documented during the annual reporting process. A copy of the Policy is available online at https://www.epa.gov/sites/production/files/2015-03/documents/competency-policy-aaia-new.pdf or a copy may also be requested by contacting the EPA

Project Officer for this award.

## D. Public or Media Events

For public or media events that are planned more than 15 calendar days in advance, the Recipient agrees to notify the EPA Project Officer of public or media events it has organized publicizing the accomplishment of significant activities related to execution of the EPA-approved Solar for All workplan and provide the opportunity for attendance and participation by federal representatives with at least 15 calendar days' notice.

## E. In-Kind Assistance

This action awards federal funds in the amount specified on the Notice of Award of which $400,000 is anticipated to be through in-kind assistance. The in-kind assistance will include but is not limited to convenings and peer networking, market data collection, research and analysis, tool building, and education and outreach, to assist Recipients in achieving the objectives of the Solar for All program.

## F. Geospatial Data Standards

All geospatial data created must be consistent with Federal Geographic Data Committee (FGDC) endorsed standards. Information on these standards may be found at https://www.fgdc.gov/.

## G. Leveraging and Fundraising

### 1. Leveraging

The Recipient agrees to make commercially reasonable efforts to provide the proposed leveraged funding that is described in its EPA-approved Solar for All workplan. If the proposed leveraging does not substantially materialize during the Period of Performance, and the Recipient does not provide a satisfactory explanation, the Agency may consider this factor in evaluating future grant applications from the Recipient. In addition, if the proposed leveraging does not substantially materialize during the Period of Performance and the Recipient does not provide a satisfactory explanation, then EPA may reconsider the legitimacy of the award; if EPA determines that the Recipient knowingly or recklessly provided inaccurate information regarding the leveraged funding described in the EPA-approved Solar for All workplan, EPA may take action as authorized by 2 CFR Part 200 and/or 2 CFR Part 180 as applicable.

### 2. Fundraising

2 CFR 200.442 provides coverage on allowable fundraising costs, with additional details contained in Item 4 of the EPA Guidance on Selected Items of Cost for Recipients. Fundraising costs described in the EPA-approved Solar for All Workplan are an allowable cost and may include costs that are reasonable and necessary for raising additional capital to provide Financial Assistance to eligible zero emissions technologies or Project-deployment Technical Assistance to enable Low-Income and Disadvantaged Communities to deploy and benefit from eligible zero emission technologies.

Allowable fundraising costs must meet the following two criteria, in addition to meeting the requirements for allowability under 2 CFR Part 200, Subpart E as well as applicable provisions of 2 CFR Part 1500: (1) must be in support of the Greenhouse Gas Reduction Fund's third program objective to mobilize financing and private capital and (2) must be reasonable and necessary to raise capital from private

investors. Funds a Recipient raises for its own use with costs borne by an EPA Financial Assistance Agreement are considered Program Income, which must be treated in accordance with the Program Income Programmatic Term and Condition. When fundraising costs are paid for by both the award as well as other sources, a portion of the funds raised equal to the share of fundraising costs charged to the award will be treated as Program Income.

## H. Quality Assurance

Authority: Quality Assurance applies to all assistance agreements involving Environmental Information as defined in 2 C.F.R. § 1500.12 Quality Assurance.

The Recipient shall ensure that Subawards involving Environmental Information issued under this agreement include appropriate quality requirements for the work. The Recipient shall ensure Subrecipients develop and implement Quality Assurance (QA) planning documents in accordance with this term and condition; and/or ensure Subrecipients implement all applicable approved QA planning documents. EPA will not approve any QA planning documents developed by a Subrecipient; the Recipient is responsible for reviewing and approving its Subrecipient QA planning document(s), if required based on the Subrecipient's Environmental Information Operations.

## 1. Quality Management Plan (QMP)

Prior to beginning Environmental Information Operations necessary to comply with the requirements specified in the Performance Reporting Programmatic Term and Condition, the Recipient must: (i) develop a QMP, (ii) prepare the QMP in accordance with the current version of EPA's Quality Management Plan (QMP) Standard and submit the document for EPA review, and (iii) obtain EPA Quality Assurance Manager or designee (hereafter referred to as QAM) approval. Alternatively, the Recipient may (i) submit a previously EPA-approved and current QMP and (ii) the EPA Quality Assurance Manager or designee (hereafter referred to as QAM) will notify the Recipient and EPA Project Officer (PO) in writing if the QMP is acceptable for this agreement.

The Recipient must submit the QMP within 90 calendar days after the date this amendment to the Award Agreement becomes effective, unless the Recipient requests an extension(s) that is granted by the QAM.

The Recipient must review their approved QMP at least annually. These documented reviews shall be made available to the sponsoring EPA organization if requested. When necessary, the Recipient shall revise its QMP to incorporate minor changes and notify the EPA PO and QAM of the changes. If significant changes have been made to the Quality Program that affect the performance of environmental information operations, it may be necessary to re-submit the entire QMP for re-approval. In general, a copy of any QMP revision(s) made during the year should be submitted to the EPA PO and QAM in writing when such changes occur. Conditions requiring the revision and resubmittal of an approved QMP can be found in section 6 of EPA's Quality Management Plan (QMP) Standard.

## 2. Quality Assurance Project Plan (QAPP)

Prior to beginning Environmental Information Operations necessary to comply with the requirements specified in the Performance Reporting Programmatic Term and Condition, the Recipient must: (i) develop a QAPP, (ii) prepare the QAPP in accordance with the current version of EPA's Quality Assurance Project Plan (QAPP) Standard, (iii) submit the document for EPA review, and (iv) obtain EPA Quality Assurance Manager or designee (hereafter referred to as QAM) approval. Alternatively, the

Recipient may (i) submit a previously EPA-approved QAPP proposed to ensure the collected, produced, evaluated, or used environmental information is of known and documented quality for the intended use(s) and (ii) the EPA Quality Assurance Manager or designee (hereafter referred to as QAM) will notify the Recipient and EPA Project Officer (PO) in writing if the previously EPA-approved QAPP is acceptable for this agreement.

The Recipient must submit the QAPP within 90 calendar days after the date this amendment to the Award Agreement becomes effective, unless the Recipient requests an extension(s) that is granted by the QAM.

The Recipient must notify the PO and QAM when substantive changes are needed to the QAPP. EPA may require the QAPP be updated and re-submitted for approval.

The Recipient must review their approved QAPP at least annually. The results of the QAPP review and any revisions must be submitted to the PO and the QAM at least annually and may also be submitted when changes occur.

### For Reference:

• Quality Management Plan (QMP) Standard and EPA's Quality Assurance Project Plan (QAPP) Standard; contain quality specifications for EPA and non-EPA organizations and definitions applicable to these terms and conditions.

• EPA QA/G-5: *Guidance for Quality Assurance Project Plans*.

• EPA's Quality Program website has a list of QA managers, and Non-EPA Organizations Quality Specifications.

### I. Real Property

In accordance with 2 CFR 200.311, title to Real Property acquired or improved under this agreement will vest upon acquisition by the Recipient, including but not limited to title to Real Property acquired through exercise of a remedy for default of a Financial Assistance arrangement. This Real Property must be used for the originally authorized purpose as long as needed for that purpose, during which time the Recipient must not dispose of or encumber its title or other interests. The Real Property Programmatic Term and Condition flows down to Subrecipients but not to Program Beneficiaries or Contractors that receive Financial Assistance, which may acquire title to Real Property after receiving Financial Assistance.

The Recipient must obtain prior approval from the EPA Award Official for the acquisition of Real Property. Note that the Recipient may meet this requirement by specifying the types of acquisitions of Real Property it plans to carry out in its EPA-approved Solar for All Workplan.

### Disposition

If the Recipient disposes of the property and uses the proceeds for the originally authorized purpose (i.e., under the terms and conditions of the Award Agreement), then the proceeds will be treated as Program Income and there are no further disposition requirements.

Otherwise, when Real Property is no longer needed for the originally authorized purpose, the Recipient

must obtain disposition instructions from EPA. The instructions will provide for one of the following alternatives:

1. Retain title after compensating EPA. The amount paid to EPA will be computed by applying EPA's percentage of participation in the cost of the original purchase (and costs of any improvements) to the fair market value of the property. However, in those situations where Recipient is disposing of Real Property acquired or improved with a Federal award and acquiring replacement Real Property under the same Federal award, the net proceeds from the disposition may be used as an offset to the cost of the replacement property.

2. Sell the property and compensate EPA. The amount due to EPA will be calculated by applying EPA's percentage of participation in the cost of the original purchase (and cost of any improvements) to the proceeds of the sale after deduction of any actual and reasonable selling and fixing-up expenses. If the Federal award has not been closed out, the net proceeds from sale may be offset against the original cost of the property. When the Recipient is directed to sell property, sales procedures must be followed that provide for competition to the extent practicable and result in the highest possible return.

3. Transfer title to EPA or to a third party designated/approved by EPA. The Recipient is entitled to be paid an amount calculated by applying the Recipient's percentage of participation in the purchase of the Real Property (and cost of any improvements) to the current fair market value of the property.

<u>Recordation</u>

As authorized by 2 CFR 200.316, EPA requires that Recipients who use EPA funding to purchase and improve Real Property through an EPA funded construction project record a lien or similar notice in the Real Property records for the jurisdiction in which the Real Property is located, which indicates that the Real Property has been acquired and improved with federal funding and that use and disposition conditions apply to the Real Property.

## J. Program Income

In accordance with 2 CFR 200.307(c) and 2 CFR 1500.8(b), the Recipient must retain Program Income earned during the Period of Performance. Program Income will be added to funds committed to the program by EPA and used for the purposes and under the conditions of the Assistance Agreement and beyond the Period of Performance based on a Closeout Agreement.

In any period of time before such a Closeout Agreement is effective but after the Recipient has fully used the award for allowable activities, the Recipient is authorized to use Program Income under the terms and conditions of the Assistance Agreement, as opposed to the terms and conditions outlined under the Closeout Agreement Programmatic Term and Condition. The terms and conditions outlined under the Closeout Agreement Programmatic Term and Condition will supplant the terms and conditions of the Assistance Agreement once the Closeout Agreement becomes effective.

In accordance with 2 CFR 1500.8(d) as supplemented by the Period of Performance Programmatic Term and Condition, under ordinary circumstances, the Recipient may only use Program Income once the initial award funds are fully used for allowable activities or the Period of Performance ends for a different reason. However, Program Income may be used by the Recipient in advance of the initial award funds being fully used where reasonable and necessary to execute the activities in the EPA-approved Solar for All workplan.

## K. Use of Logos

If the EPA logo is appearing along with logos from other participating entities on websites, outreach materials, or reports, it must **not** be prominently displayed to imply that any of the Recipient or Subrecipient's activities are being conducted by the EPA. Instead, the EPA logo should be accompanied with a statement indicating that the Recipient received financial support from the EPA under an Assistance Agreement. More information is available at: https://www.epa.gov/stylebook/using-epa-seal-and-logo#policy.

## III. ADDITIONAL PROGRAMMATIC TERMS AND CONDITIONS

### A. Solar for All Workplan

#### 1. EPA-approved Solar for All Workplan

The Recipient agrees to implement this grant in accordance with its EPA-approved Solar for All Workplan. The Recipient agrees that the public laws, regulations, applicable notices, Executive Orders, and these award agreement terms and conditions supersede the EPA-approved Solar for All Workplan in the event there are conflicting provisions in the EPA-approved Solar for All Workplan.

#### 2. Specific condition on revisions to EPA-approved Solar for All workplan in the one-year planning period

The Recipient's EPA-approved Solar for All Workplan may include work to refine the program during the one-year planning period. Pursuant to 2 CFR 200.206(b) and (c), 2 CFR 200.208(b)(1), and 2 CFR 200.208(c)(2) and (6), EPA has determined that a specific condition is necessary to ensure that the further revisions to the Recipient's EPA-approved Solar for All Workplan allow the Recipient to effectively carry out the significant scale, complexity, and novelty of the Solar for All program. Based on this determination, if the Recipient makes revisions to its EPA-approved Solar for All Workplan during the one-year planning period, the Recipient must first receive approval from the EPA Project Officer on the revised Solar for All Workplan prior to requesting drawdown on any revised work. EPA will not make payments for unapproved work and any costs incurred for unapproved work by the Recipient are at its own risk.

The Recipient may continue to request payments and EPA will make payments for costs covered by the EPA-approved Solar for All Workplan while the EPA Project Officer, as appropriate, reviews any revised Solar for All Workplan.

*Action Required to remove the specific condition.* If the Recipient makes revisions to its workplan during the planning period, the Recipient must submit the revised workplan to EPA no later than 365 calendar days after the date of award for the first amendment of the agreement. Upon completion and EPA approval of any revisions to the EPA-approved Solar for All Workplan, timeline, budget narrative, budget detail, and SF-424A (if applicable), EPA will provide email confirmation that the grant recipient has met the Planning Period Term and Condition. The email confirmation from EPA will serve as evidence that this specific condition has been satisfied, with the specific condition removed without further action from the Recipient required upon receipt of the email in accordance with 2 CFR 200.208(e).

*Method for Reconsideration.* If the Recipient believes that this specific condition is not warranted or

requires modification, the Recipient must file a written objection within 21 calendar days of the EPA award or amendment mailing date and must not draw down funds until the objection is resolved.  The Recipient must submit the written objection via email to the Award Official, Grant Specialist and Project Officer identified in the Notice of Award.

## B. Allowable and Unallowable Activities

The Recipient agrees to only use the award to support the following allowable activities: Financial Assistance and Project-Deployment Technical Assistance that enable Low-Income and Disadvantaged Communities to deploy and benefit from eligible zero emissions technologies as well as Participant Support Costs for trainees in workforce development programs. All costs charged to the award to support these activities must meet the requirements for allowability under 2 CFR Part 200, Subpart E as well as applicable provisions of 2 CFR Part 1500.

The Recipient agrees to not use the award for the following unallowable activities: (a) activities that support deployment of projects that do not meet the definition of eligible zero-emissions technologies; (b) Costs of acquiring "intangible property," as defined in 2 CFR 200.1; and (c) activities that support deployment of projects outside the boundaries of the ten EPA regions or in the Freely Associated States. The allowability of legal costs incurred in connection with the award shall be governed by applicable provisions of 2 CFR Part 200, Subpart E, including but not limited to 2 CFR 200.403, 2 CFR 200.435, 2 CFR 200.441 and 2 CFR 200.459.

## C. Foreign Entity of Concern

As part of carrying out this award, the Recipient agrees to ensure that entities the Recipient contracts with, the Recipient makes Subawards to, or that receive funds as Program Beneficiaries at any tier of funding under this grant agreement are not—

(A) an entity owned by, controlled by, or subject to the direction of a government of a covered nation under 10 U.S.C. 4872(d);

(B) an entity headquartered in a covered nation under 10 U.S.C. 4872(d); or

(C) a subsidiary of an entity described in (A) or (B).

As of the date these terms and conditions become effective, covered nations under 10 U.S.C. § 4872(d) are the Democratic People's Republic of North Korea; the People's Republic of China; the Russian Federation; and the Islamic Republic of Iran.

## D. Low-Income and Disadvantaged Communities Expenditure Requirement

The Recipient agrees to ensure that 100% of the award is used for the purposes of enabling Low-Income and Disadvantaged Communities to deploy and benefit from eligible zero emissions technologies. This requirement applies to the entire award provided to the Recipient and "flows down" to each Subrecipient.

## E. Revolving Loan Fund Characterization

EPA considers the portion of the award used to provide Financial Assistance, which may generate Program Income, as a capitalization of a revolving loan fund for the purposes of 2 CFR 1500.8(d). Such

Financial Assistance may include Subawards, Contracts for Delivery of Financial Assistance, or Participant Support Costs. In accordance with section 2.0 *Applicability and Effective Date* and the definition of *Subaward* in section 3.0 of the EPA Subaward Policy, the EPA Subaward Policy does not apply to the Recipient's Subawards from the capitalization of a revolving loan fund.

## F. Subawards to For-Profit Entities

The Recipient is authorized to provide Subawards to for-profit entities as included in the EPA-approved Solar for All Workplan. The Recipient agrees to require that for-profit entities that receive such Subawards:

1. Can only recover their eligible and allowable direct and indirect costs from EPA-funded activities, including recovering the portion of their overhead costs attributable to the activities by applying either a Federally approved indirect cost rate, as authorized by 2 CFR 200.414(f), or the de-minimis rate if the Subrecipient does not have a Federally approved rate;

2. Comply with the Management Fees General Term and Condition, which is incorporated by reference into the Establishing and Managing Subawards General Term and Condition;

3. Account for and use Program Income under the rules for Program Income pursuant to 2 CFR 1500.8 (b) and the terms and conditions of the award agreement;
4. Be subject to the same requirements as non-profit Subrecipients under 2 CFR Part 200 Subparts A through E, as federal awarding agencies are authorized to apply 2 CFR Part 200 Subparts A through E to for-profit entities in accordance with 2 CFR 200.101(a)(2); and

5. Select an independent auditor consistent with the criteria set forth in 2 CFR 200.509 and obtain an independent audit substantially similar in scope and quality to that of the Single Audit (see 2 CFR 200.500 et. seq.); the Subrecipient must submit the audit to the Recipient within 9 months of the end of the Recipient's fiscal year or 30 calendar days after receiving the report from an independent auditor, whichever is earlier; as provided in 2 CFR 200.337(a) the Recipient must provide EPA, the EPA Office of Inspector General, and the Comptroller General with access to the Subrecipient's independent auditor reports.

## G. Subawards as Part of Revolving Loan Funds

The following requirements apply when the Recipient provides Subawards under 2 CFR 200.1 as part of a revolving loan fund. These requirements apply to the Recipient and Subrecipient in lieu of those specified in the Establishing and Managing Subawards General Term and Condition.

1. For all Subawards as part of a revolving loan fund, the Recipient agrees to provide written documentation including the following information, unless already described in the EPA-approved Solar for All workplan. The Recipient is precluded from drawing down funds for such uses until the EPA Project Officer provides written approval of the submitted documentation. The documentation must: (a) describe the activities that will be supported by the Subawards; (b) specify the range of funding to be provided through the Subawards; (c) identify which types of entities (i.e., governmental, non-profit, for-profit) will receive the Subawards; and (d) specify how the Subrecipients are eligible Subrecipients in accordance with EPA's Subaward Policy. Additionally, if a Recipient plans to Subaward to a for-profit entity the Recipient's response to (d) must specifically describe how the for-profit Subrecipient will only receive reimbursement for their actual direct or approved indirect costs such that the Subrecipient does not

"profit" from the transaction.

2. The Recipient must establish and follow a system that ensures all Financial Assistance agreements are in writing and contain all of the elements required by 2 CFR 200.332(b), including the indirect cost provision of 2 CFR 200.332(b)(4) for Subawards. EPA has developed an optional template for Subaward agreements available in Appendix D of the EPA Subaward Policy, which may also be used for such Subaward agreements.

3. The Subrecipient must comply with the internal control requirements specified at 2 CFR 200.303 and is subject to the 2 CFR Part 200, Subpart F, *Audit Requirements*. The pass-through entity must include a condition in all Financial Assistance agreements that requires Subrecipients to comply with these requirements.

4. Prior to making the Subaward, the Recipient must ensure that the Subrecipient has a "unique entity identifier." This identifier is required for registering in the System for Award Management (SAM) and by 2 CFR Part 25 and 2 CFR 200.332(b)(1). The unique entity identifier (UEI) is generated when an entity registers in SAM. Information on registering in SAM and obtaining a UEI is available in the General Condition of the pass-through entity's agreement with EPA entitled *"System for Award Management and Universal Identifier Requirements."*

## H. Participant Support Costs

The Recipient may provide Financial Assistance and Project-Deployment Technical Assistance to enable Low-Income and Disadvantaged Communities to deploy and benefit from eligible zero emissions technologies in the form of Participant Support Costs.

The Recipient agrees to the following eligibility, restrictions, timelines, and other programmatic requirements on Participant Support Costs, in addition to other requirements included in the terms and conditions of this award agreement:

A. The Recipient and Program Beneficiaries are responsible for taxes, if any, on payments made to or on behalf of entities participating in this program that are allowable as Participant Support Costs under 2 CFR 200.1, 2 CFR 200.456, or 2 CFR 1500.1. EPA encourages the Recipient and Program Beneficiaries to consult their tax advisers, the U.S. Internal Revenue Service, or state and local tax authorities regarding the taxability of subsidies, rebates and other Participant Support Cost payments. However, EPA does not provide advice on tax issues relating to these payments.

B. Participant Support Cost payments are lower tiered covered Nonprocurement transactions for the purposes of 2 CFR 180.300 and the Suspension and Debarment General Term and Condition. The Recipient, therefore, may not make Participant Support Cost payments to entities excluded from participation in Federal Nonprocurement programs under 2 CFR Part 180 and must ensure that Subrecipients adhere to this requirement as well. The Recipient is responsible for checking that program participants are not excluded from participation through either (1) checking the System for Award Management (SAM) or (2) obtaining eligibility certifications from the program participants.

For all Financial Assistance provided in the form of Participant Support Costs specifically, the Recipient agrees to provide written documentation including the following information, unless already described in

the EPA-approved Solar for All workplan. The Recipient is precluded from drawing down funds for such uses until the EPA Project Officer provides written approval of the submitted documentation. This documentation must: (a) describe the activities that will be supported by the Participant Support Costs; (b) specify the range of funding to be provided through the Participant Support Costs; (c) identify which types of entities will have title to equipment (if any) purchased with a rebate or subsidy; (d) establish source documentation requirements (e.g., invoices) for accounting records; and (e) describe purchasing controls to ensure that the amount of the Participant Support Cost is determined in a commercially reasonable manner as required by 2 CFR 200.404.

## I. Contracts for Delivery of Financial Assistance

### 2 CFR 200 Procurement Standards

The Recipient may provide Financial Assistance to enable Low-Income and Disadvantaged Communities to deploy and benefit from eligible zero emissions technologies in the form of procurement contracts (Contracts for Financial Assistance). The Recipient agrees to provide Contracts for Financial Assistance in compliance with the conflict of interest and competition requirements described in the 2 CFR Part 200 Procurement Standards. This includes but is not limited to the requirements at 2 CFR 200.318 to:

- Have and use documented procurement procedures to govern Contracts for Financial Assistance;
- Maintain oversight to ensure that contractors perform in accordance with the terms, conditions, and specifications of their contracts;
- Maintain written standards of conduct covering conflicts of interest and governing the actions of employees engaged in the selection, award, and administration of contracts as well as maintain written standards of conduct covering organizational conflicts of interest;
- Prioritize entering into inter-entity agreements where appropriate for procurement or use of common or shared goods and services as the Recipient seeks to mobilize financing and private capital;
- Award contracts only to responsible contractors possessing the ability to perform successfully under the terms and conditions of the proposed procurement; and
- Maintain records sufficient to detail the history of procurement.

Additional guidance is available at [Best Practice Guide for Procuring Services, Supplies, and Equipment Under EPA Assistance Agreements](#).

## J. Labor and Equitable Workforce Development Requirements

### 1. Davis-Bacon and Related Acts (DBRA)

### A. Program Applicability

As provided in Section 314 of the Clean Air Act (42 USC § 7614) (DBRA), Davis-Bacon Act (42 USC §§ 3141-3144) labor standards apply to projects assisted by grants and cooperative agreements made under the Greenhouse Gas Reduction Fund. Accordingly, all laborers and mechanics employed by contractors or subcontractors on projects assisted under this Award Agreement shall be paid wages at rates not less than those prevailing for the same type of work on similar construction in the locality as

determined by the Secretary of Labor in accordance with 40 USC Subtitle II, Part A, Chapter 31, Subchapter IV (Wage Rate Requirements). Under the Greenhouse Gas Reduction Fund, the relevant construction type and prevailing wage classifications would be "Building" or "Residential." The Secretary of Labor's wage determinations are available at https://sam.gov/content/wage-determinations.

Under the Greenhouse Gas Reduction Fund, Davis-Bacon and Related Act requirements apply to forms of Financial Assistance that directly fund and are directly linked to specific construction projects that were not completed prior to the execution of the final binding documentation governing the use of the Financial Assistance. The Recipient must ensure that any construction work financed in whole or in part with such Financial Assistance, as defined in these Terms and Conditions, provided under this agreement complies with Davis-Bacon and Related Act requirements and the requirements of these Terms and Conditions.

Note, however, that under the Greenhouse Gas Reduction Fund, Davis-Bacon and Related Act requirements do not apply to any form of Financial Assistance which meets any of the following criteria:

- Financial Assistance which exclusively funds pre-construction (e.g. permitting or design work) or post-construction activities (e.g. subsidies for subscriptions to already constructed solar assets).
- Financial Assistance which serves end-users who are individual homeowners or tenants of single-family homes or multifamily buildings when these individual end-users ultimately select the contractor(s) and execute the contract(s) for the construction work, as opposed to the Recipient, Subrecipient, or a contractor hired by the Recipient or Subrecipient.
- Financial Assistance which serves end-users who meet the definition of Federally Recognized Tribal Entities, as defined under this Assistance Agreement, when these Federally Recognized Tribal Entities ultimately select the contractor(s) and execute the contract(s) for the construction work, as opposed to the Recipient, Subrecipient, or a contractor hired by the Recipient or Subrecipient.
- Financial Assistance which serves any end-user when such Financial Assistance is less than $250,000 for a project and the end-user ultimately selects the contractor(s) and executes the contract(s) for the construction work, as opposed to the Recipient, Subrecipient, or a contractor hired by the Recipient or Subrecipient.

If the Recipient encounters a situation that presents uncertainties regarding DBRA applicability under this Assistance Agreement, the Recipient must discuss the situation with the EPA Project Officer before authorizing work on the project.

In the event that a periodic project site visit, audit, or routine communication with a Subrecipient, Program Beneficiary, contractor, or subcontractor determines any instances of non-compliance or potential non-compliance with the requirements of this Term and Condition or the Davis-Bacon and Related Act, the Recipient agrees to promptly inform the EPA Project Officer for possible referral to the U.S. Department of Labor for guidance or enforcement action.

Consistent with the definitions at 29 CFR § 5.2, the term "construction" refers to all types of work done on a particular building or work at the site of the work by laborers and mechanics employed be a contractor or subcontractor. Additional guidance is available in the definition of the term "building or work" in 29 CFR § 5.2.

## B. Davis-Bacon and Related Acts

Davis-Bacon and Related Acts (DBRA) is a collection of labor standards provisions administered by the Department of Labor, that are applicable to grants involving construction. These labor standards include the:

- Davis-Bacon Act, which requires payment of prevailing wage rates for laborers and mechanics on construction contracts of $2,000 or more;
- Copeland "Anti-Kickback" Act, which prohibits a contractor or subcontractor from inducing an employee into giving up any part of the compensation to which he or she is entitled; and
- Contract Work Hours and Safety Standards Act, which requires overtime wages to be paid for over 40 hours of work per week, under contracts in excess of $100,000.

**C. Recipient Responsibilities When Entering Into and Managing Contracts:**

    **a. Solicitation and Contract Requirements:**

        **i. Include the Correct Wage Determinations in Bid Solicitations and Contracts:** Recipients are responsible for complying with the procedures provided in 29 CFR 1.6(b) when soliciting bids and awarding contracts.

        **ii. Include DBRA Requirements in All Contracts:** Include "By accepting this contract, the contractor acknowledges and agrees to the terms provided in the DBRA Requirements for Contractors and Subcontractors Under EPA Grants."

    **b. After Award of Contract:**

        **i. Approve and Submit Requests for Additional Wages Rates:** Work with contractors to request additional wage rates if required for contracts under this grant, as provided in 29 CFR 5.5(a)(1)(iii).

        **ii. Provide Oversight of Contractors to Ensure Compliance with DBRA Provisions:** Ensure contractor compliance with the terms of the contract, as required by 29 CFR 5.6.

**D. Recipient Responsibilities When Establishing and Managing Additional Subawards:**

    **a. Include DBRA Requirements in All Subawards (including Loans):** Include the following text on all Subawards under this grant: "By accepting this award, the EPA Subrecipient acknowledges and agrees to the terms and conditions provided in the DBRA Requirements for EPA Subrecipients."

    **b. Provide Oversight to Ensure Compliance with DBRA Provisions:** Recipients are responsible for oversight of Subrecipients and must ensure Subrecipients comply with the requirements in 29 CFR 5.6.

    **c. Provide Oversight to Ensure Compliance with Participant Support Cost Requirements:** Recipients are responsible for oversight of Subrecipients and must ensure that Subrecipients comply with the requirements in subsection E, below.

**E. Recipient/Subrecipient Responsibilities When Managing Participant Support Costs to Program**

Beneficiaries

When DBRA is applicable, Financial Assistance provided in the form of a Participant Support Cost to a Program Beneficiary shall include the following text:

"[Name of Recipient/Subrecipient providing the Financial Assistance] retains the following responsibilities for all contracts and subcontracts assisted by this [form of Financial Assistance]:

**a. Solicitation and Contract Requirements:**

**i. Include the Correct Wage Determinations in Bid Solicitations and Contracts:** "[Name of Recipient/Subrecipient providing the Financial Assistance] is responsible for ensuring that any contracts or subcontracts made by Program Beneficiaries and/or assisted by Participant Support Costs comply with the procedures provided in 29 CFR 1.6(b) when soliciting bids and awarding contracts.

**ii. Include DBRA Requirements in All Contracts:** Include the following text "By accepting this contract, the contractor acknowledges and agrees to the terms provided in the DBRA Requirements for Contractors and Subcontractors Under EPA Grants."

**b. After Award of Contract:**

**i. Approve and Submit Requests for Additional Wages Rates:** Work with contractors to request additional wage rates if required for contracts under this grant, as provided in 29 CFR 5.5(a)(1)(iii).

**ii. Provide Oversight of Contractors to Ensure Compliance with DBRA Provisions:** Ensure contractor compliance with the terms of the contract, as required by 29 CFR 5.6.

The contract clauses set forth in this term and condition, along with the correct wage determinations, will be considered to be a part of every prime contract covered by Davis-Bacon and Related Acts (see 29 CFR 5.1), and will be effective by operation of law, whether or not they are included or incorporated by reference into such contract, unless the Department of Labor grants a variance, tolerance, or exemption. Where the clauses and applicable wage determinations are effective by operation of law under this paragraph, the prime contractor must be compensated for any resulting increase in wages in accordance with applicable law.

## F. DBRA Compliance Monitoring Requirement

Reasonable and necessary costs for DBRA compliance are allowable and allocable grant costs. Such costs include, but are not limited to, the procurement of a payroll reporting and compliance management software product to meet the documentation and reporting requirements under 29 CFR 5.5(a)(3)(ii) for all construction projects assisted under this award.

## 1. Compliance with Federal Statutes and Regulations

The Recipient agrees to comply with other applicable federal statutes and regulations related to labor and equitable workforce development as well as to enforce compliance with Subrecipients, contractors, and other partners (e.g., by including such provisions in contractual agreements). This includes but is not

limited to applicable health and safety regulations as administered by the Occupational Safety and Health Administration.

## 2. Free and Fair Choice to Join a Union

In accordance with Executive Order 14082 (Implementation of the Energy and Infrastructure Provisions of the Inflation Reduction Act of 2022), the Recipient agrees to design and implement a policy to increase high-quality job opportunities for American workers and improving equitable access to these jobs, including in traditional energy communities, through the timely implementation of requirements for prevailing wages and registered apprenticeships and by focusing on high labor standards and the free and fair chance to join a union.

In accordance with the EPA General Terms and Conditions, grant funds may not be used to support or oppose union organizing, whether directly or as an offset for other funds.

## K. Build America, Buy America Act

The Build America, Buy America Act – Public Law 117-58, requires the EPA to ensure that for any activity related to the construction, alteration, maintenance, or repair of infrastructure, "none of the funds made available for a Federal Financial Assistance program for infrastructure, including each deficient program, may be obligated for a project unless all of the iron, steel, manufactured products, and construction materials used in the project are produced in the United States." (P.L. 117-58, Secs 70911 – 70917).

The Recipient is bound to the EPA Build America, Buy America General Term and Condition, which outlines the Build America, Buy America (BABA) requirements that all Recipients of EPA Financial Assistance awards must comply with.

Under the Greenhouse Gas Reduction Fund, BABA requirements apply to forms of Financial Assistance that directly fund and are directly linked to specific infrastructure projects that were not completed prior to the date the Recipient's award funds were obligated by the EPA.

EPA interprets the definition of infrastructure consistent with 2 CFR 184 and M-24-02 (memorandum dated as of October 23, 2023), including the "public function" test, when determining whether projects qualify as public infrastructure, based on the Civil Rights Act definition of public accommodation.

The following types of Greenhouse Gas Reduction projects are deemed infrastructure for the purposes of BABA applicability:

  1. The public infrastructure portion of any property (e.g., retail in a mixed-use multi-family property) where the principal purpose of the Financial Assistance is to directly benefit such portion of the property;

  2. Privately-owned commercial buildings when they meet the "public function" test;

  3. Residential-serving community solar projects, which EPA deems "structures, facilities, and equipment that generate, transport, and distribute energy" per 2 CFR 184.4(c).

The following types of Greenhouse Gas Reduction projects are not deemed infrastructure for the

purposes of BABA applicability:

    1. Single family homes;

    2. Privately-owned, non-mixed-use, multi-family housing properties;

    3. Privately-owned residential portions of mixed-use properties;

    4. Any privately-owned, behind-the-meter energy generation and storage project that does not otherwise meet the definition of infrastructure.

The inclusion of the following types of funding, support, guarantee, or sponsorship in the funding stack of any Greenhouse Gas Reduction fund project does not trigger BABA, in and of itself or in combination:

    1. Low-Income Housing Tax Credit (LIHTC);

    2. Fannie Mae and Freddie Mac Backed Multifamily Mortgages;

    3. Federal Housing Administration Insured Multifamily Mortgages;

    4. HUD Section 8 Funding;

    5. Other Federal, State, Tribal, or Local Housing Assistance Funding Sources: in general, subsidies issued by federal, state, Tribal, or local housing assistance funding sources that do not confer equity or ownership stakes for the governmental funding source do not trigger BABA applicability.

BABA applicability is assessed at the time of provision of Financial Assistance based on the terms, limitations, and requirements of the Financial Assistance. Applicability does not change retroactively based on a change of use (e.g., if a ground floor apartment is re-zoned for a restaurant). Recipients may not temporarily modify or mischaracterize usage to intentionally avoid BABA compliance.

If the Recipient encounters a situation that presents uncertainties regarding Build America, Buy America applicability under this Assistance Agreement, the Recipient must discuss the situation with the EPA Project Officer before authorizing work on the project.

## L. Consumer Protection Requirements

The Recipient agrees to carry out the following consumer protection requirements to the extent that the Recipient directly interacts, transacts, or contracts with consumers in the provision of Financial Assistance:

    1. Comply with the Equal Credit Opportunity Act, the Truth in Lending Act, the Consumer Financial Protection Act, and other federal consumer protection laws that apply;

    2. Provide written disclosures to consumers containing information in clear and understandable language regarding purchasing, leasing, or financing as well as the costs associated with a consumer's transaction;

5H - 84092001 - 1    Page 32

3. With regard to solar products or services, provide written disclosures on the impact of the solar project on the consumer's ability to sell or refinance their home and recording of any liens on the home; consumer rights; contact information for the solar project provider; and complaint procedures for the consumer if they have a problem with the solar project or sales process;

4. Require that all in-person and telephone marketing that directly interacts, transacts, or contracts with consumers be conducted in a language in which the consumer subject to the marketing is able to understand and communicate; and

5. Maintain a process for receiving, monitoring, and resolving consumer complaints, including ensuring that complaints are appropriately addressed and referring complaints, when necessary, to the appropriate government regulatory agency.

The Recipient agrees to monitor and oversee Subrecipients and contractors with respect to these consumer financial protection requirements to the extent that they directly interact, transact, or contract with consumers, in accordance with 2 CFR 200.332(e) and 2 CFR 200.318.

## M. Financial Risk Management Requirements

### 1. Cash Management Requirements

The Recipient must deposit and maintain advance payments of Federal funds exclusively in insured accounts, in accordance with 2 CFR 200.305(b)(10). As provided in 2 CFR 200.1, an advance payment is "a payment that a Federal agency or pass-through entity makes by any appropriate payment mechanism and payment method before the recipient or subrecipient disburses the funds for program purposes." A Recipient drawing down funds from ASAP prior to disbursement for actual and allowable project costs constitutes an advance payment. Interest income earned on the advance payment from EPA to the Recipient prior to disbursement is subject to the requirements on interest earned within 2 CFR 200.305(b)(11) and 2 CFR 200.305(b)(12); consequently, such interest earned in excess of $500 must be remitted annually to the Department of Health and Human Services Payment Management System.

The Recipient is authorized to maintain Program Income in two types of accounts:

1. Insured accounts, including in amounts in excess of the federal insurance limit of $250,000.
2. Accounts where such income is used to purchase (i) U.S. Savings Bonds, U.S. Treasury Marketable Securities, and U.S. Agency Marketable Securities, provided the duration of such instruments is no longer than 90 calendar days (if purchased directly) and that such instruments are held-to-maturity (if purchased directly), or (ii) short-term money market funds consisting solely of the aforementioned investment instruments and offering daily investor redemptions. Note, the underlying instruments included in a short-term money market fund consisting solely of U.S. Savings Bonds, U.S. Treasury Marketable Securities, and U.S. Agency Marketable Securities and offering daily investor redemptions need not be of a particular duration or held-to-maturity.

Interest income and other returns earned on funds that have already been disbursed is considered additional Program Income consistent with 2 CFR 1500.8(d) and is not subject to the requirements on interest earned within 2 CFR 200.305(b)(11) and 2 CFR 200.305(b)(12).

### 2. Climate-Related Financial Risks

The Recipient agrees to comply with Executive Order 11988 (Floodplain Management). This may include accounting for and evaluating practicable alternatives or other mitigation related to ameliorating flood risks and protecting flood plains as part of its financial risk management policies and procedures.

The Recipient agrees to comply with Executive Order 14030 (Climate-Related Financial Risk). This may include accounting for climate-related financial risks—including physical and transition risks—in its financial risk management policies and procedures.

## 3. Additional Requirements

The Recipient agrees to not subordinate its interests in any asset that the Recipient acquires with EPA funds or Program Income in a manner that waives EPA's claim for compensation under any applicable statutory claims, 2 CFR Part 200, or common law. Once a Recipient uses grant funds for program purposes and incurs a financial obligation, as defined under 2 CFR 200.1, EPA will only seek claims on those funds in the event that they were used for costs that do not comply with the terms and conditions of the Award Agreement or if there is adequate evidence of Waste, Fraud, or Abuse, prompting adverse action by EPA per 2 CFR 200.339. This does not prohibit the use of subordinated debt as a form of Financial Assistance.

The Recipient agrees to apply [EPA's Final Financial Assistance Conflict of Interest Policy](#) to all Subawards  and Participant Support Costs made to entities receiving Financial Assistance or Project-Deployment Technical Assistance. Notwithstanding the statement in section 2.0 of the Conflict of Interest (COI) Policy that it does not apply to "Subawards in the form of loans, loan guarantees, interest subsidies and principal forgiveness, purchases of insurance or similar transactions entered into with borrowers by Recipients of revolving loan fund capitalization grants or other EPA Financial Assistance agreements where Agency funds may be used for lending activities," EPA is applying the COI Policy to these transactions through this term and condition.

The Recipient agrees to provide Subrecipients that receive Subawards to provide Financial Assistance or Project-Deployment Technical Assistance with training and technical assistance on program-related matters, including on prudent financial risk management practices, in accordance with 2 CFR 200.332(f).

## N. Historic Preservation

## National Historic Preservation Act (NHPA)

Section 106 of the NHPA requires all federal agencies to consider the effects of their undertakings, including the act of awarding a grant, on historic properties, and to provide the Advisory Council on Historic Preservation (ACHP) a reasonable opportunity to comment on such undertakings. The Recipient must assist the EPA Project Officer in complying with NHPA if any activities funded under this grant impact a historic property. Historic properties can include: (a) land or buildings listed in or eligible for listing on the National Register of Historic Places; (b) archaeologically sensitive areas or in an area where traditional cultural properties are located; and (c) properties that are associated with significant historic events, are associated with significant people, embody distinctive characteristics, and contain important precontact information.

The Recipient should work with their Project Officer to ensure that Subrecipients are available to work with EPA on any required consultation process with the State Historic Preservation Office (SHPO) or Tribal Historic Preservation Office (THPO) prior to commencing the project to ensure compliance with

Section 106 of the NHPA.

If NHPA compliance is required, necessary Section 106 consultation activities, such as historic or architectural surveys, structural engineering analysis of buildings, public meetings, and archival photographs, can be considered allowable and allocable grant costs.

<u>Archeological and Historic Preservation Act (AHPA)</u>

This law applies if archeologically significant artifacts or similar items are discovered after an EPA-funded construction project has begun, and compliance may be coordinated with the NHPA, discussed above. The AHPA requires federal agencies to identify relics, specimens, and other forms of scientific, prehistorical, historical, or archaeologic data that may be lost during the construction of federally-sponsored projects to ensure that these resources are not inadvertently transferred, sold, demolished or substantially altered, or allowed to deteriorate significantly. The Recipient must ensure that Subrecipients performing construction projects are aware of this requirement, and the Recipient must notify EPA if the AHPA is triggered.

## O. Uniform Relocation Assistance and Real Property Acquisition Policies Act

The Uniform Relocation Assistance and Real Property Acquisition Policies Act (URA) applies to acquisitions of property and displacements of individuals and businesses that result from federally assisted programs. The URA and Federal Highway Administration's implementing regulations at 49 CFR Part 24 require the Recipient to follow certain procedures for acquiring property for purposes under the federal award, such as notice, negotiation, and appraisal requirements. The statute and regulations also contain requirements for carrying out relocations of displaced persons and businesses, such as reimbursement requirements for moving expenses and standards for replacement housing. The Recipient must comply with, and ensure Subrecipients comply with, the URA and 49 CFR Part 34 if an EPA-funded acquisition of property results in permanent displacement of individuals or businesses. Note that although the URA does not apply to temporary displacement of residents, the cost for temporary relocation of residents may be an allowable cost under the "necessary and reasonable for the performance of the Federal award" provision of 2 CFR 200.403(a). The Recipient must obtain prior approval of the EPA Project Officer and EPA Award Official for the allowability of costs for temporary relocation of residents.

## P. Remedies for Non-Compliance

The Recipient agrees to comply with the terms and conditions of the Award Agreement. Should the Recipient fail to adhere to the terms and conditions of the Award Agreement, the EPA may impose additional conditions as set forth in 2 CFR 200.208. If the EPA determines that noncompliance cannot be remedied by imposing additional conditions, the EPA may seek remedies under 2 CFR 200.339 up to and including termination and the recovery of unallowable costs as provided in 2 CFR 200.343. As specified in 2 CFR 200.343, which will remain in effect throughout the term of this award, costs during suspension or after termination are allowable if (a) the costs result from financial obligations which were properly incurred by the non-Federal entity before the effective date of suspension or termination, are not in anticipation of it, and (b) the costs would be allowable if the Federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect.

The Recipient agrees to comply with the statutory requirements of Section 134 of the Clean Air Act. Should the Recipient violate the statutory requirements of Section 134 by failing to use grant funds in

accordance with Section 134 or by failing to ensure that the activities of Subrecipients are in accordance with Section 134, EPA may seek remedies under Section 113, which may subject the Recipient to civil administrative penalties through an EPA administrative enforcement action, civil penalties and/or injunctive relief through a civil judicial enforcement action by the U.S. Department of Justice (DOJ), or criminal penalties through a DOJ criminal judicial enforcement action.

Notwithstanding any other provision of this Award Agreement, EPA will not determine that Recipient has failed to comply with the terms and conditions of the Award Agreement, without providing a reasonable opportunity to remedy under 2 CFR 200.208, for good faith efforts to comply with the Performance Reporting National Programmatic Term and Condition, Additional Programmatic Terms and Conditions regarding Build America, Buy America or Labor and Equitable Workforce Development Requirements, requirements for Subrecipient oversight, or to obligate or expend funds for allowable activities.

## Q. Clarifications to EPA General Terms and Conditions

EPA agrees to make the following clarifications to the EPA General Terms and Conditions. These clarifications expand on, rather than replace or modify, the EPA General Terms and Conditions. The Recipient agrees to comply with these clarifications.

## 1. Automated Standard Application Payments (ASAP) and Proper Payment Draw Down

*The following clarification to the ASAP and Proper Payment Draw Downs General Term and Condition applies if the Recipient is a Municipality, Tribal Government, or Eligible Nonprofit Recipient as defined in the Eligible Recipient definition. States, as defined in the Eligible Recipient definition, are subject to the Proper Payment Drawdown for State Recipients General Term and Condition:*

The Recipient is subject to the Automated Standard Application Payments (ASAP) and Proper Payment Draw Down General Term and Condition.

The Recipient is required to notify the EPA Project Officer of draws from ASAP in excess of the following amounts: $10,000,000 within a 24-hour period or $50,000,000 within a 7-day period. The Recipient is required to provide such notification within 3 business days of the draw amount being surpassed.

## 2. Establishing and Managing Subawards

2 CFR 200.308 requires the Recipient to obtain prior agency approval for "Subaward activities not proposed in the application and approved in the Federal award."

EPA will not require additional written approval from the EPA Award Official for a Subaward to a Subrecipient that is named in the Recipient's EPA-approved Solar for All Workplan.

When the Subrecipient is not named in the EPA-approved Solar for All Workplan, the Recipient agrees to provide written documentation that must be approved by the EPA Project Officer. The Recipient is precluded from drawing down funds for Subawards not named in the EPA-approved Solar for All workplan until the EPA Project Officer provides written confirmation of the documentation. The documentation must: (a) describe the activities that will be supported by the Subawards; (b) specify the range of funding to be provided through the Subawards; (c) identify which types of entities (i.e., governmental, non-profit, for-profit) will receive the Subawards; and (d) specify how the Subrecipients are eligible Subrecipients in accordance with EPA's Subaward Policy, and specifically how the

Subrecipients will comply with the requirement that the Subrecipient must only receive reimbursement for their actual direct or approved indirect costs such that they do not "profit" from the transaction.

### 3. Indirect Cost Rate

The Recipient should note that Subrecipients that receive loans cannot charge an indirect cost rate against their loans and that entities that receive Participant Supports Costs cannot charge an indirect cost rate against their Participant Support Cost payments, unless a class exception to this policy is issued by EPA.

Modified total direct costs (MTDC), as defined in 2 CFR 200.1, means all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and up to the first $50,000 of each Subaward (regardless of the period of performance of the Subawards under the award). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, Participant Support Costs and the portion of each Subaward in excess of $50,000.

Notwithstanding the General Term and Condition "Indirect Cost Rate Agreements," the Recipient may claim up to a 15% de minimis rate of modified total direct costs authorized by 2 CFR 200.414(f).

### 4. Sufficient Progress

The EPA Project Officer may assess whether the Recipient is making sufficient progress in implementing the EPA-approved Solar for All workplan under this Assistance Agreement within 90 calendar days of June 30, 2025 as well as within 90 calendar days of June 30 of each year thereafter during the Period of Performance. "Sufficient progress" shall be assessed based on a comparison of the Recipient's planned versus actual expenditures as well as planned versus actual outputs/outcomes. This term and condition "flows down" to Subrecipients, with the Recipient required to assess whether each Subrecipient is making sufficient progress in implementing the workplan under its Subaward Agreement; the Recipient may increase the frequency and scope of the review of sufficient progress of Subrecipients, in accordance with 2 CFR 200.332 *Requirements for Pass-Through Entities.*

If the EPA Project Officer determines that the Recipient has not made sufficient progress in implementing its EPA-approved Solar for All workplan, the Recipient, if directed to do so, must implement a corrective action plan concurred on by the EPA Project Officer and approved by the Award Official or Grants Management Officer pursuant to 2 CFR 200.208.

EPA will not find that the Recipient has failed to make sufficient progress in implementing its EPA-approved Solar For All workplan based on shifts between types of Financial Assistance over the Period of Performance (or other shifts in portfolio allocation, to the extent applicable, such as by region or market segment, over the Period of Performance). If EPA finds the Recipient has failed to achieve sufficient progress on deployment of Financial Assistance in general, or is achieving progress at a slower rate than projected under the EPA-approved Solar for All workplan, the Recipient will have an opportunity to implement a corrective action plan pursuant to 2 CFR 200.208.

### 5. Termination

EPA maintains the right to terminate the Assistance Agreement only as specified in 2 CFR 200.339 and the version of 2 CFR 200.340 effective as of October 1, 2024, when the noncompliance with the terms and conditions is substantial such that effective performance of the Assistance Agreement is Materially

Impaired or there is adequate evidence of Waste, Fraud, or Abuse, or material misrepresentation of eligibility status, prompting adverse action by EPA per 2 CFR 200.339, through either a partial or full termination. If EPA partially or fully terminates the Assistance Agreement, EPA must (1) de-obligate uncommitted funds and re-obligate them to another Eligible Recipient selected under Funding Opportunity Number 66.959 (Zero Emissions Technologies Grant Program, also known as Solar For All) to effectuate the objectives of Section 134 of the Clean Air Act, 42 USC § 7434 within 90 days of the de-obligation and (2) amend the Recipient's Assistance Agreement to reflect the reduced amount, based on the de-obligation. In accordance with 2 CFR 200.341, EPA will provide the Recipient notice of termination. If an Eligible Recipient has assumed a legal obligation properly incurred for an allowable activity entered into by a suspended or terminated Recipient, EPA will re-obligate funds to the Eligible Recipient to satisfy the legal obligation and accept an amended workplan and budget to that effect.

## R. Period of Performance

The Period of Performance under this Award Agreement will end on the date specified in the Notice of Award. However, the Period of Performance may end prior to the date specified in the Notice of Award if all required work of the Federal award has been completed, in accordance with 2 CFR 200.344. In accordance with 2 CFR 200.344(b), the Recipient agrees to liquidate all financial obligations incurred under the award no later than 120 calendar days after the end date of the Period of Performance. In this context, to "liquidate all financial obligations" means to pay outstanding bills, such as the payment of staff salaries accrued during the Period of Performance but for which the due date falls after the end date of the Period of Performance. To "liquidate all financial obligations" does not mean to liquidate, terminate, or accelerate outstanding obligations related to the provision of Financial Assistance to Qualified Projects at the end of the Period of Performance, which would continue to be subject to the Closeout Agreement.

The Recipient should note that the Recipient will not be considered to have met the requirements for closeout under its award under 2 CFR 200.344 so long as any Subrecipient has not met the requirements for closeout under its subaward under 2 CFR 200.344.

Notwithstanding the Extension of Project/Budget Period Expiration Date General Term and Condition, in accordance with 2 CFR 200.308(g)(2), the Recipient is authorized to initiate a one-time extension of the Period of Performance by up to 12 months without prior EPA approval, provided that the extension complies with the requirements 2 CFR 200.308(g)(2). In accordance with 2 CFR 200.308(g)(2), the Recipient must "notify the Federal agency in writing with the supporting justification and a revised period of performance at least 10 calendar days before the conclusion of the period of performance."

## S. Closeout Agreement

As provided at 2 CFR 200.307(c) and 2 CFR 1500.8(d), after the end of the Period of Performance of the Assistance Agreement, the Recipient may keep and use Program Income remaining at the end of the Assistance Agreement and use Post-Closeout Program Income in accordance with this term and condition. The Closeout Agreement goes into effect for this Assistance Agreement the earlier of 1) the day after the Assistance Agreement Period of Performance ends, 2) the first date when all required work of the Federal award has been completed in accordance with 2 CFR 200.344 and the Recipient has met the requirements for closeout (including but not limited to submitting the final report as specified in the Performance Reporting Programmatic Term and Condition) or 3) an alternative date that is mutually agreed by the Recipient and the EPA Grants Management Officer or Award Official.

In accordance with 2 CFR 200.344, EPA will proceed to closeout the Award Agreement and enter the

Closeout Period even if the Recipient has not met the requirements for closeout (including but not limited to submitting the final report as specified in the Performance Reporting Programmatic Term and Condition). As provided in 2 CFR 200.344: "When the recipient or subrecipient fails to complete the necessary administrative actions or the required work for an award, the Federal agency or pass-through entity must proceed with closeout based on the information available." This Closeout Agreement is therefore self-executing.

This term and condition is the entire Closeout Agreement between the EPA and the Recipient. If any provisions of this Closeout Agreement are invalidated by a court of law, the parties shall remain bound to comply with the provisions of this Closeout Agreement that have not been invalidated. The Closeout Agreement will be interpreted and, if necessary, enforced under Federal law and regulations. The Recipient shall comply with the requirements specified below as part of the Closeout Agreement. Definitions within 2 CFR 200.1, including as supplemented through *I. Definitions* of this award agreement, apply identically to how they do under the Period of Performance, unless otherwise noted.

As specified in the Flow-Down Requirements Programmatic Term and Condition, the Closeout Agreement Programmatic Term and Condition flows down to Subrecipients such that the Recipient must enter into a corresponding Closeout Agreement with any Subrecipient that has Program Income or anticipates generating Post-Closeout Program Income at the end of the Subrecipient's Period of Performance.

## 1. Allowable Activities

The Recipient shall use Post-Closeout Program Income in accordance with the Allowable and Unallowable Activities Programmatic Term and Condition, as applicable.

## 2. Reporting Requirements

After the Closeout Agreement becomes effective, the Recipient shall disclose annual reports publicly, in lieu of any of the reporting requirements described in the Performance Reporting Programmatic Term and Condition. The Recipient's public annual reports under the Closeout Agreement must meet the following broad requirements:

- Progress towards objectives on key performance metrics over the annual reporting period,
- Summary of key activities completed over the annual reporting period, including case studies across different types of Financial Assistance and Project-Deployment Technical Assistance undertaken to enable Low-Income and Disadvantaged Communities to deploy or benefit from zero-emissions technologies,
- Geographic coverage of Financial Assistance and Project-deployment Technical Assistance deployed over the annual reporting period,
- Descriptions and examples of actions the program took over the annual reporting period to meaningfully involve the communities the program serves in program design and operations,
- Plans for key activities (including anonymized current transaction pipeline) to be completed as well as outputs and outcomes to be achieved in the next annual reporting period.

## 3. Low-Income and Disadvantaged Communities Expenditure Requirements

The Recipient shall expend 100% of Program Income for the purposes of providing Financial Assistance and Technical Assistance in and benefiting Low-Income and Disadvantaged Communities to deploy and benefit from eligible zero emissions technologies and comply with this requirement in accordance with the Low-Income and Disadvantaged Communities Expenditure Requirements Programmatic Term and Condition, as applicable.

## 4. Cash Management Requirements

The Recipient must maintain Post-Closeout Program Income in accordance with the Cash Management Requirements in the Financial Risk Management Requirements Programmatic Term and Condition, as applicable. However, the Recipient may submit a Cash Management Policy for review and approval by the EPA Project Officer, which can authorize the Recipient to deviate from the aforementioned Cash Management Requirements.

## 5. Remedies for Non-Compliance

The Recipient agrees to identical remedies for non-compliance that are specified in the Remedies for Non-Compliance Programmatic Term and Condition, as applicable. During the Closeout Period, the workplan and budget submitted for the Period of Performance are no longer applicable.

## 6. Suspension and Debarment

The Recipient agrees to ensure that Post-Closeout Program Income is not transferred to entities that are currently suspended, debarred, or otherwise declared ineligible under 2 CFR Part 180. The Recipient can maintain compliance with this requirement through either (1) checking the System for Award Management (for Subrecipients, Contractors, or Program Beneficiaries) or (2) obtaining eligibility certifications from counterparties (for Program Beneficiaries). The Recipient may access the System for Award Management (SAM) exclusion list at https://sam.gov/SAM to determine whether an entity or individual is presently excluded or disqualified.

## 7. Non-Discrimination

The Recipient must use Post-Closeout Program Income in compliance with EPA regulations at 40 CFR Part 7 regarding non-discrimination in EPA-funded programs, as applicable.

**Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, The Age Discrimination Act of 1975.** The Recipient agrees to comply with these laws, prohibiting discrimination in the provision of services or benefits, on the basis of race, color, national origin, sex, disability or age, in programs or activities receiving federal financial assistance.

Pursuant to EPA's regulations on "Nondiscrimination in Programs receiving Federal Assistance from the Environmental Protection Agency" in 40 CFR Part 5 and 40 CFR Part 7, the Recipient agrees, and will require all Subrecipients to agree, not to discriminate on the basis of race, color, national origin, sex, disability or age.

**Executive Order 11246 Part III of Executive Order No. 11246 (September 24, 1965) as amended prohibits discrimination in Federally assisted construction activities.** As provided in section 301 of the Executive Order, the Recipient will ensure that Subrecipients include the seven clauses specified in section 202 of the Order in all construction contracts. Section 302 defines "Construction contract" as "any

5H - 84092001 - 1     Page 40

contract for the construction, rehabilitation, alteration, conversion, extension, or repair of buildings, highways, or other improvements to Real Property." Contracts less than $10,000 are exempt from the requirements of the Order.

## 8. Record-Keeping

In accordance with 2 CFR 200.334(e), the Recipient shall maintain appropriate records to document compliance with the requirements of the Closeout Agreement (i.e., records relating to the use of Post-Closeout Program Income) for a three-year period following the end of the Closeout Agreement, unless one of the conditions specified in the regulation applies. Note that this requirement applies if and when the Closeout Agreement is terminated, in accordance *with Item 14. Termination of the Closeout Agreement*. EPA may obtain access to these records to verify that Post-Closeout Program Income has been used in accordance with the terms and conditions of this Closeout Agreement. Records and documents relating solely to performing the grant agreement prior to closeout may be disposed of in accordance with 2 CFR 200.334.

Additionally, the Recipient must maintain adequate accounting records for how Post-Closeout Program Income is managed and spent as well as all other appropriate records and documents related to the activities conducted using Program Income.

The Recipient agrees to ensure that Subrecipients comply with Federal Funding Accountability and Transparency Act (FFATA) reporting requirements. The Recipient may use the terms of its Subaward Agreements or other effective means to meet its responsibilities.

## 9. Other Federal Requirements

The following other federal requirements apply to the use of Post-Closeout Program Income under the Closeout Period to the same extent they do under the terms of the Performance Period:

- Davis-Bacon and Related Acts, as specified in the Labor and Equitable Workforce Development Requirements Programmatic Term and Condition;
- Build America, Buy America Act, as specified in the Build America, Buy America Act Programmatic Term and Condition; and
- National Historic Preservation Act, as specified in the Historic Preservation Programmatic Term and Condition.

No other federal requirements apply to the use of Post-Closeout Program Income under the terms of this Closeout Agreement, other than those specified in this Closeout Agreement.

## 10. Amendments to the Closeout Agreement

The EPA Award Official or Grants Management Officer and the Recipient must agree to any modifications to the terms and conditions of this Closeout Agreement. Agreed-upon modifications must be in writing. Oral or unilateral modifications shall not be effective or binding.

## 11. Audit Requirements

The Recipient agrees to meet the requirements of 2 CFR Subpart F—Audit Requirements during the Closeout Period, as activities related to the Federal award referenced in 2 CFR 200.502(a) include activities during the Closeout Period.

Through September 30, 2031, the Recipient agrees to notify the EPA Project Officer within 30 calendar days of the submission of the Recipient's Single Audit to the Federal Audit Clearinghouse's Internet Data Entry System. This requirement "flows-down" to each Subrecipient in that the Recipient must also notify the EPA Project Officer within 30 calendar days of the Subrecipient's Single Audit to the Federal Audit Clearinghouse's Internet Data Entry System.

## 12. Termination of the Closeout Agreement

The Closeout Agreement terminates when either of the following situations occur: (1) the Recipient holds a de minimis amount of Post-Closeout Program Income and does not anticipate generating more than a de minimis amount of additional Post-Closeout Program Income or (2) the Recipient and the EPA Award Official or Grants Management Officer mutually agree to terminate the Closeout Agreement, with the Recipient remitting current and future Post-Closeout Program Income to the federal government.

The ability to terminate the Closeout Agreement flows down to Subrecipients, as a Closeout Agreement between the Recipient and Subrecipient terminates when either (1) the Subrecipient holds a de minimis amount of Post-Closeout Program Income and does not anticipate generating more than a de minimis amount of additional Post-Closeout Program Income or (2) the Subrecipient and the Recipient mutually agree to terminate the Closeout Agreement, with the Subrecipient remitting current and future Post-Closeout Program Income to the Recipient.

The de minimis amount must be agreed-upon in writing by the Recipient and the Director of the Office of the Greenhouse Gas Reduction Fund (or equivalent), prior to the Recipient using the "de minimis" criteria to terminate the Closeout Agreement.

## 13. Points of Contact

The points of contact for the Closeout Agreement are the EPA Project Officer (for the EPA) and the Authorized Representative on the EPA Key Contacts Form most recently submitted to the EPA Project Officer (for the Recipient). If changes are made to these points of contact, the respective party must notify the other within 30 calendar days of the planned change.

## T. Accounting Principles

The Recipient must account for all award funds in accordance with Generally Accepted Accounting Principles (GAAP) as in effect in the United States.

The Recipient must segregate and account for the award funds separately from all other program and business accounts. Additionally, the Recipient must segregate and account for Program Income separately from all other program and business accounts.

## U. Internal Controls

The Recipient must comply with standards for internal controls described at 2 CFR 200.303. The "Standards for Internal Control in the Federal Government" issued by the Comptroller General of the United States referenced in § 200.303 are available online at https://www.gao.gov/assets/gao-14-704g.pdf

## V. Audits

5H - 84092001 - 1    Page 42

The Recipient agrees to meet the requirements of 2 CFR Subpart F—Audit Requirements during the Period of Performance, as described in the Audit Requirements General Term and Condition.

Additionally, in accordance with 2 CFR 200.332 and 2 CFR 200.501(i), the Recipient agrees to disclose directly to the EPA Project Officer audited financial statements from any for-profit Subrecipient that expends $1,000,000 or more of EPA funds from the Recipient's grant program in the Subrecipient's fiscal year. Any for-profit Subrecipient that must disclose such financial statements is required to select an independent auditor consistent with the criteria set forth in 2 CFR 200.509 and obtain an independent audit substantially similar in scope and quality to that of the Single Audit (see 2 CFR 200.500 et. seq.). The Subrecipient must submit the audit to the Recipient within 9 months of the end of the Recipient's fiscal year or 30 days after receiving the report from an independent auditor, whichever is earlier.

The Recipient agrees to notify the EPA Project Officer within 30 calendar days of the submission of the Recipient's Single Audit to the Federal Audit Clearinghouse's Internet Data Entry System. This requirement "flows-down" to each Subrecipient in that the Recipient must also notify the EPA Project Officer within 30 calendar days of the Subrecipient's Single Audit to the Federal Audit Clearinghouse's Internet Data Entry System.

## W. EPA Project Officer Oversight and Monitoring

Pursuant to 2 CFR 200.206(b) and (c), 2 CFR 200.208(b)(1), and 2 CFR 200.208(c)(3)(4) and (6), EPA has determined that a specific condition is necessary to ensure that eligible Recipients effectively carry out the significant scale, complexity, and novelty of the Solar for All program. This specific condition will remain in effect throughout the period of performance unless the EPA Award Official determines, based on a request by the Recipient or EPA Project Officer, that some or all of the specific conditions are no longer necessary for EPA to manage programmatic or financial risks.

The EPA Project Officer, or other EPA staff designated by the EPA Project Officer or the Division Director of the Solar for All program, will oversee and monitor the grant agreement through activities, if determined necessary, including:

1. Upon request, requiring the Recipient to participate in an annual workshop (i.e., one workshop per calendar year) with other Recipients under the Solar for All program; the EPA Project Officer will contact the Recipient to finalize details for each annual workshop.

2. Participating in project activities, to the extent permissible under EPA policies, such as: consultation on effective methods of carrying out the EPA-approved Solar for All Workplan, provided the Recipient makes the final decision on how to perform authorized activities; coordination by EPA staff with other Recipients under the Greenhouse Gas Reduction Fund and with other EPA programs, and other federal programs to avoid duplication of effort;

3. Reviewing the qualifications of key personnel, including senior management and board-level committee members or contractors employed by Recipients. Note that EPA does not have the authority to select employees or contractors, including consultants, employed by the Recipient;

4. Closely monitoring the Recipient's management and oversight of Subrecipients and procedures for ensuring that program beneficiaries adhere to program participation guidelines;

5. Closely monitoring the Recipient's performance to verify compliance with the EPA-approved

Solar for All Workplan and achievement of environmental results;

6. Participating in periodic telephone conference calls with Recipient personnel to discuss project successes and challenges, and similar items impacting Recipient performance;

7. Reviewing and commenting on performance reports prepared under the Award Agreement. Note that the final decision on the content of performance reports rests with the Recipient;

8. Verifying that the Recipient is expending the award on allowable activities, including but not limited to asking for information on draws from ASAP or reviewing a sample of Financial Assistance transactions to verify compliance with regulatory requirements and the terms and conditions of this award;

9. Periodically reviewing costs incurred by the Recipient as well as its contractors and Subrecipients if needed to ensure appropriate expenditure of grant funds. Note that Recipients are not required to submit documentation of costs incurred before obtaining payments of grant funds;

10. Working with other EPA officials, including but not necessarily limited to the EPA QAM, to review and approve QAPPs and related documents or verifying that appropriate Quality Assurance requirements have been met where quality assurance activities are being conducted pursuant to an EPA-approved QMP; and

11. Monitoring the use of Program Income after the Period of Performance ends, in accordance with the terms of the Closeout Agreement.

*Method for Reconsideration.* If the Recipient believes that this specific condition is not warranted or requires modification, the Recipient must file a written objection within 21 calendar days of the EPA award or amendment mailing date and must not draw down funds until the objection is resolved. The Recipient must submit the written objection via email to the Award Official, Grant Specialist and Project Officer identified in the Notice of Award.

Subject to approval by the EPA Award Official, the EPA Project Officer and the Recipient may mutually agree to additional areas of oversight and monitoring.

## X. Compliant URL Links

The EPA may elect to develop informational materials to publicize the key characteristics of the Recipient's Solar for All award. These materials may include links to Recipient and/or Subrecipients' websites. The Recipient agrees to work with the EPA Project Officer or another member of Solar for All program staff to ensure any such links are compliant with pertinent EPA and government-wide standards.

## Y. Flow-Down Requirements

As described in 2 CFR 200.101(b)(1), the terms and conditions of Federal awards flow down to Subawards unless a particular section of 2 CFR 200.101 or the terms and conditions of the Federal award specifically indicate otherwise. As required by 2 CFR 200.332(b), the Recipient agrees to ensure that Subrecipients are aware of the requirements that apply to the Subrecipient.

For the purposes of this Award Agreement, all terms and conditions must flow down to Subawards to the extent they are applicable. The EPA Project Officer is authorized to waive the applicability of programmatic terms and conditions to Subawards, unless the term and condition implements statutory, regulatory, or executive order requirements.

## Z. Financial Assistance in the Form of Credit Enhancements

If the Recipient's EPA-approved Solar for All Workplan includes providing Financial Assistance in the form of credit enhancements such as loan loss reserves or loan guarantees, the Recipient is authorized to draw down funds as c**ash reserves.** "Cash reserves" means cash that is drawn down and subsequently held in order to support the Recipient's deployment of Financial Assistance in the form of credit enhancements. Cash reserves involve the drawdown and disbursement of grant funds into an escrow account meeting the following standards: (1) the Recipient does not retain possession of the grant funds; (2) the Recipient cannot get the funds back from the escrow account upon demand; (3) the entity providing the escrow account is independent from the Recipient; (4) the Recipient is able to use the funds in the escrow account to support eligible uses of cash reserves, as defined here; and (5) the escrow account is with an "insured depository institution," as defined in 12 USC 1813. The Recipient is not authorized to use an escrow account until the substantive terms of the escrow account have been reviewed and approved by the EPA Project Officer.

The Recipient agrees to provide written documentation for all Financial Assistance in the form of credit enhancements that must be approved by the EPA Project Officer prior to the Recipient implementing its strategy, unless already described in the EPA-approved Solar for All workplan. This documentation must describe how the expenditure enables Low-Income and Disadvantaged Communities to deploy and benefit from eligible zero-emissions technologies.

Any obligations that the Recipient incurs in excess of the grant award funds allocated and expended to execute its credit enhancement strategy are the Recipient's responsibility. This limitation on the extent of the Federal Government's financial commitment to the Recipient's credit enhancement strategy shall be communicated to all participating banks, borrowers, Subrecipients, or Program Beneficiaries prior to the execution of any documentation governing such transactions with any such parties.

## AA. Additional Requirements for Eligible Nonprofit Recipients

*The following terms and conditions apply if the Recipient is an Eligible Nonprofit Recipient as defined in the Eligible Recipient definition:*

## 1. Incorporation and Control

**The Recipient agrees to maintain its incorporation in the United States and to maintain its status as not being controlled by** one or several entities that are not eligible Recipients. Control is defined by either (i) control in any manner over the election of a majority of the directors, trustees, or general partners (or individuals exercising similar functions) or (ii) the power to exercise, directly or indirectly, a controlling influence over management policies or investment decisions.

## 2. Governance Requirements

## A. Board Size and Composition

5H - 84092001 - 1     Page 45

The Recipient agrees to ensure that its board size in terms of number of members (excluding advisory committees) is commensurate with the scope of oversight and monitoring activities as well as the scale, complexity, and risk profile of the Recipient's EPA-approved Solar for All Workplan as well as other business activities. The board must have a sufficient number of members to adequately staff each of its committees.

The Recipient agrees to ensure that its board consists of members that are qualified with relevant expertise, skills, and track record as well as representative members (including from Low-Income and Disadvantaged Communities).

## B. Board Independence

The Recipient agrees to ensure that the majority of the board is independent, in accordance with the Internal Revenue Service's definition of "independent" for the purposes of Form 990 reporting.

## C. Board Policies and Procedures

The Recipient agrees to enforce board policies and procedures including, among others, those that ensure strong ethics and mitigate conflicts of interest; ensure appropriate board training to review and assess internal risk assessments for all of the organization's significant activities; and ensure regular board engagement, including frequency of meetings and attendance procedures.

The Recipient agrees to require recusals from any officers or members of the board of directors with a personal or organizational conflict of interest in the decision-making and management related to financial transactions under this award. Such recusals must include but not be limited to decision-making and management of Subawards and Participant Support Cost payments to or from any organization in which an officer or member of the board of directors or their immediate family is directly employed by or has a consulting or other contractual relationship with, serves on the board, or is otherwise affiliated with the organization. The term "immediate family" has the same meaning as that term in the EPA's Final Financial Assistance Conflict of Interest Policy.

## 3. Legal Counsel

The Recipient agrees to appoint or consult appropriate legal counsel if counsel is not already available.

## AB. Amendments to Award Agreement

The EPA Award Official or Grants Management Officer and the Recipient must agree to any modifications to the terms and conditions of this Award Agreement. Agreed-upon modifications must be in writing. Oral or unilateral modifications shall not be effective or binding.

## AC. Preservation of Guidance and Data

Any statutes, regulations, agency documents, policies, and guidance (including FAQs and EPA's Implementation Framework for the Greenhouse Gas Reduction Fund), or executive orders referenced herein are incorporated by reference into the Award Agreement as of the effective date of this amended Award Agreement. These incorporated documents will be controlling on Recipient and Subrecipients in the event such documents are deleted, repealed, rescinded, or replaced unless a statute provides otherwise. This includes, but is not limited to, the Uniform Administrative Requirements, Cost Principles

and Audit Requirements for Federal Awards; Title 2 CFR Part 200 effective October 1, 2024, and the EPA General Terms and Conditions effective October 1, 2024.

This provision cannot be changed without the consent of the Recipient.

# EXHIBIT D

## ASSISTANCE AGREEMENT

| 1. Award No. | 2. Modification No. | 3. Effective Date | 4. CFDA No. |
|---|---|---|---|
| DE-SE0000022 | 0001 | 09/01/2023 | 81.041 |

| 5. Awarded To | 6. Sponsoring Office | 7. Period of Performance |
|---|---|---|
| EXECUTIVE OFFICE OF THE STATE OF ARIZONA<br>Attn: TRAVIS Price<br>1700 WEST WASHINGTON<br>SUITE 500<br>PHOENIX AZ 850072812 | State and Community Energy Programs<br>U.S. Department of Energy<br>1000 Independence Ave, SW<br>washington DC 20585 | 09/01/2023<br>through<br>08/31/2028 |

| 8. Type of Agreement | 9. Authority | 10. Purchase Request or Funding Document No. |
|---|---|---|
| [X] Grant<br>[ ] Cooperative Agreement<br>[ ] Other | 117-169 Inflation Reduction Act 2022<br>109-58 EPACT (2005) | 25SE000514 |

| 11. Remittance Address | 12. Total Amount | 13. Funds Obligated |
|---|---|---|
| EXECUTIVE OFFICE OF THE STATE OF ARIZONA<br>Attn: TRAVIS Price<br>1700 WEST WASHINGTON, SUITE #101<br>PHOENIX AZ 850072812 | Govt. Share: $76,717,153.00<br><br>Cost Share : $0.00<br><br>Total    : $76,717,153.00 | This action:<br>$74,956,915.00<br><br>Total    :<br>$76,717,153.00 |

| 14. Principal Investigator | 15. Program Manager | 16. Administrator |
|---|---|---|
| | Bobbie R. Coon<br>Phone: 240-388-5311 | Golden Field Office<br>U.S. Department of Energy<br>Golden Field Office<br>15013 Denver West Parkway<br>Golden CO 80401 |

| 17. Submit Payment Requests To | 18. Paying Office | 19. Submit Reports To |
|---|---|---|
| Payment - Direct Payment<br>from U.S. Dept of Treasury | Payment - Direct Payment<br>from U.S. Dept of Treasury | See Attachment 2 |

**20. Accounting and Appropriation Data**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**21. Research Title and/or Description of Project**

IRA SECTION 50121 - HOME ENERGY EFFICIENCY REBATE PROGRAM

| For the Recipient | For the United States of America |
|---|---|
| **22. Signature of Person Authorized to Sign** | **25. Signature of Grants/Agreements Officer**<br>*Laura Merrick* |
| **23. Name and Title**    **24. Date Signed** | **26. Name of Officer**<br>Laura Merrick    **27. Date Signed**<br>01/13/2025 |

NSO

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DE-SE0000022/0001 | PAGE<br>2 | OF<br>4 |
|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
EXECUTIVE OFFICE OF THE STATE OF ARIZONA

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | UEI: EL9HZNBAN1B9 | | | | |

UEI:  EL9HZNBAN1B9

The purposes of this modification are to:

1) Extend the Period of Performance end date, as shown in Block 7;

2) Provide fully conditioned incremental funding, as shown in Block 13;

3) Update the DOE Award Administrator, as shown below;

4) Delete and replace the Special Terms and Conditions. Term 58. Conditional Availability of Funds is being added to the Award;

5) Conditionally obligate funding. Upon successful completion of negotiations, this award will be modified to lift its conditional status, to revise the Special Terms and Conditions, and to delete and replace Award Attachments;

6) This modification was prepared using the proposed budget information in the Recipient's Full Program ALRD 2 application. Term 58 of the Special Terms and Conditions states that the Recipient is prohibited from spending any unapproved Full Program ALRD 2 Federal funds at this time. DOE will not release the funding obligated by this modification until successful completion of negotiations are reached to the satisfaction of the Contracting Officer. Performance against this award is, therefore, at the Recipient's own risk, and payments for costs incurred for Recipient's project will not be made until the parties complete negotiations and the Contracting Officer issues a modification to this award; and

7) A representative of the DOE office will contact the Recipient to request additional and/or revised information needed to supplement and clarify the Recipient's application, to complete the negotiations of an amended award.

The current Project Period for this award is 09/01/2023 through 08/31/2028.

In Block 7 of the Assistance Agreement, the Period of Performance reflects the beginning of the Project Period through the end of the current

Continued ...

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DE-SE0000022/0001 | | | PAGE<br>3 | OF<br>4 |
|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
EXECUTIVE OFFICE OF THE STATE OF ARIZONA

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | Budget Period.<br><br>In addition to this Assistance Agreement, this award consists of the items listed on the Cover Page of the Special Terms and Conditions.<br><br>Recipient acknowledges the activities approved by this award are listed in the NEPA determination, Attachment 5 of this Award. If new activities, or activities that do not fit within the restrictions listed in the NEPA determination are proposed, additional NEPA review and Contracting Officer approval are required. Contact your DOE Project Officer, as shown below.<br><br>This award is subject to the Financial Assistance regulations contained in 2 CFR 200 as amended by 2 CFR Part 910.<br><br>Additional future DOE funding and additional budget periods are not contemplated under this award.  Funding for all awards and future budget periods is contingent upon the availability of funds appropriated by Congress for the purpose of this program and the availability of future-year budget authority.<br><br>All other Terms and Conditions remain unchanged.<br><br>DOE Award Administrator: Lindsay Eaves<br>Email: lindsay.eaves@ee.doe.gov<br>Phone: 603-359-9887<br><br>DOE Project Officer: Bobbie Coon<br>E-mail: bobbie.coon@hq.doe.gov<br>Phone: 240-388-5311<br><br>Recipient Business Officer: Blaise Caudill<br>E-mail: bcaudill@az.gov<br>Phone:  520-312-5854<br><br>Recipient Principal Investigator: Jean Bell<br>E-mail: jbell@az.gov<br>Phone:  602-542-1337<br><br>Electronic signature or signatures as used in this document means a method of signing an electronic message that—<br>(A) Identifies and authenticates a particular person as the source of the electronic message;<br>(B) Indicates such person's approval of the<br>Continued ... | | | | |

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED DE-SE0000022/0001 | | | PAGE 4 | OF 4 |
|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
EXECUTIVE OFFICE OF THE STATE OF ARIZONA

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | information contained in the electronic message; and, (C) Submission via FedConnect constitutes electronically signed documents.<br><br>ASAP: YES Extent Competed: NOT AVAIL FOR COMP Davis-Bacon Act: NO PI: Bell, Jean Fund: 05478 Appr Year: 2022 Allottee: 31 Report Entity: 200835 Object Class: 41020 Program: 1800007 Project: 0000000 WFO: 0000000 Local Use: 0000000 | | | | |

# EXHIBIT E

**ASSISTANCE AGREEMENT**

| 1. Award No.<br>DE-GD0000003 | | 2. Modification No.<br>0001 | 3. Effective Date<br>06/24/2024 | 4. CFDA No.<br>81.254 | |
|---|---|---|---|---|---|

| 5. Awarded To<br>EXECUTIVE OFFICE OF STATE OF ARIZONA<br>Attn: TRAVIS PRICE<br>1700 WEST WASHINGTON<br>SUITE 500<br>PHOENIX AZ 850072812 | 6. Sponsoring Office<br>Grid Deployment Office (GD)<br>U.S. Department of Energy<br>1000 Independence Avenue, SW<br>Forrestal Building , GD-1<br>Washington DC 20585 | 7. Period of Performance<br>09/19/2023<br>through<br>04/30/2032 |
|---|---|---|

| 8. Type of Agreement<br>[X] Grant<br>[ ] Cooperative Agreement<br>[ ] Other | 9. Authority<br>Infrastructure Investment and Jobs Act o | 10. Purchase Request or Funding Document No.<br>24GD000367 |
|---|---|---|

| 11. Remittance Address<br>EXECUTIVE OFFICE OF STATE OF ARIZONA<br>Attn: TRAVIS Price<br>1700 WEST WASHINGTON, SUITE #101<br>PHOENIX AZ 850072812 | 12. Total Amount<br>Govt. Share: $21,558,912.00<br><br>Cost Share : $3,233,837.00<br><br>Total    : $24,792,749.00 | 13. Funds Obligated<br>This action: $8,271,079.00<br><br>Total    :<br>$21,558,912.00 |
|---|---|---|

| 14. Principal Investigator | 15. Program Manager<br>Phuong Nguyen<br>Phone: 681-212-7925 | 16. Administrator<br>U.S. DOE/NETL<br>NATIONAL ENERGY TECH LAB<br>3610 Collins Ferry Road<br>Morgantown WV 26505-2353 |
|---|---|---|

| 17. Submit Payment Requests To<br>Payment - Direct Payment<br>from U.S. Dept of Treasury | 18. Paying Office<br>Payment - Direct Payment<br>from U.S. Dept of Treasury | 19. Submit Reports To<br>See Attachment 3 |
|---|---|---|

| 20. Accounting and Appropriation Data<br>See Schedule |
|---|

| 21. Research Title and/or Description of Project<br>BIPARTISAN INFRASTRUCTURE LAW (BIL). PREVENTING OUTAGES AND ENHANCING THE RESILIENCE OF THE ELECTRIC<br>GRID FORMULA GRANTS TO STATES AND INDIAN TRIBEs |
|---|

| For the Recipient | For the United States of America |
|---|---|
| 22. Signature of Person Authorized to Sign | 25. Signature of Grants/Agreements Officer<br>*Sheldon E. Funk* |
| 23. Name and Title | 24. Date Signed | 26. Name of Officer<br>Sheldon E. Funk | 27. Date Signed<br>06/24/2024 |

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DE-GD0000003/0001 | | | | PAGE<br>2 | OF<br>4 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
EXECUTIVE OFFICE OF STATE OF ARIZONA

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | UEI:  EL9HZNBAN1B9<br>Project Period of Performance:<br>09/19/2023 - 04/30/2032<br><br>Block 9 Authority:<br>Infrastructure Investment and Jobs Act of 2021,<br>Section 40101(d), 42 U.S.C. . § 18711(d) (2023).<br><br>(DOE) Award Administrator:<br>Colleen DiCola<br>colleen.dicola@netl.doe.gov<br>(412)484-8517<br><br>(DOE) Program Manager:<br>Phuong Nguyen<br>Phuong.Nguyen@netl.doe.gov<br>(681)212-7925<br><br>Recipient Business Point of Contact:<br>Blaise Caudill<br>bcaudill@az.gov<br>(520)312-5854<br><br>Principal Investigator:<br>Jean Bell<br>jbell@az.gov<br>(602)542-1337<br>ASAP: YES Extent Competed: NOT COMPETED<br>Davis-Bacon Act: YES | | | | |

JULY 2004

DE-GD0000003
Amendment 0001
Page 4 of 4

The purpose of this amendment is to authorize the Fiscal Year (FY) 2024 funding allocation, extend the period of performance, increase the Total Estimated Cost of the Award, incrementally fund the award, change the Department of Energy Award Administrator, change the Department of Energy Program Manager, incorporate the revised Attachment 3 - Federal Assistance Reporting Checklist, and incorporate the revised Special Terms and Conditions. Accordingly, the agreement is amended as follows:

1.  In accordance with the "Annual Allocation Request" award term and the Recipient's annual allocation application dated 04/16/2024, the Recipient is hereby authorized Fiscal Year 2024 allocated funding. The authorization results in no change to the Statement of Project Objectives.

2.  As reflected in Block 7, the Period of Performance end date is changed to 04/30/2032.

3.  As reflected in Block 12 of the Assistance Agreement, the Total Amount is increased by $9,511,741. This is inclusive of $8,271,079 FY2024 Funding Allocation and $1,240,662 Recipient Share (inclusive of the 15% Cost Match requirement and any approved resilience project cost match requirement at the time of this amendment).

4.  As reflected in Block 13, the DOE Funds Obligated is increased by $8,271,079 from $13,287,833 to $21,558,912. This is inclusive of the FY 2024 funding allocation.

5.  As reflected in Block 15, the DOE Program Manager is changed to Phuong Nguyen.

6.  As reflected on Page 2 of the Assistance Agreement, the Department of Energy's Award Administrator is changed to Colleen DiCola.

7.  As reflected on Page 2 of the Assistance Agreement, the Period of Performance and Budget Period end date is changed to 4/30/2032.

8.  Attachment 3 – Federal Assistance Reporting Checklist (FARC) is deleted in its entirety and replaced with the attached Attachment 3 - Federal Assistance Reporting Checklist. Changes to the FARC are highlighted in yellow.

9.  The Special Terms and Conditions have been deleted in its entirety and replaced with the attached Special Terms and Conditions. Changes to the Special Terms are highlighted in yellow.

10. All other terms and conditions remain the same and in full force and effect.

- END OF AMENDMENT 0001 -

# EXHIBIT F

# ASSISTANCE AGREEMENT

| 1. Award No.<br>DE-EE0010058 | 2. Modification No. | 3. Effective Date<br>05/01/2023 | 4. CFDA No.<br>81.041 |
|---|---|---|---|

| 5. Awarded To<br>EXECUTIVE OFFICE OF THE STATE OF ARIZONA<br>Attn: TRAVIS PRICE<br>1700 WEST WASHINGTON<br>SUITE 500<br>PHOENIX AZ 850072812 | 6. Sponsoring Office<br>Energy Effcy & Renewable Energy<br>EE-1<br>U.S. Department of Energy<br>1000 Independence Avenue, S.W.<br>Washington DC 20585 | 7. Period of Performance<br>05/01/2023<br>through<br>04/30/2028 |
|---|---|---|

| 8. Type of Agreement<br>[X] Grant<br>[ ] Cooperative Agreement<br>[ ] Other | 9. Authority<br>117-58 Infrastructure Investment and Job<br>109-58 Energy Policy Act 2005 | 10. Purchase Request or Funding Document No.<br>23EE001111 |
|---|---|---|

| 11. Remittance Address<br>EXECUTIVE OFFICE OF THE STATE OF ARIZONA<br>Attn: TRAVIS Price<br>1700 WEST WASHINGTON, SUITE #101<br>PHOENIX AZ 850072812 | 12. Total Amount<br>Govt. Share: $7,398,110.00<br><br>Cost Share : $0.00<br><br>Total     : $7,398,110.00 | 13. Funds Obligated<br>This action: $7,398,110.00<br><br>Total     : $7,398,110.00 |
|---|---|---|

| 14. Principal Investigator | 15. Program Manager<br>Henry D. Fowler<br>Phone: 240-562-1595 | 16. Administrator<br>Golden Field Office<br>U.S. Department of Energy<br>Golden Field Office<br>15013 Denver West Parkway<br>Golden CO 80401 |
|---|---|---|

| 17. Submit Payment Requests To<br>Payment - Direct Payment<br>from U.S. Dept of Treasury | 18. Paying Office<br>OR for Golden<br>U.S. Department of Energy<br>Oak Ridge Financial Service Center<br>P.O. Box 6017<br>Oak Ridge TN 37831 | 19. Submit Reports To<br>See Attachment #2 |
|---|---|---|

20. Accounting and Appropriation Data

████████████████████████████████

21. Research Title and/or Description of Project
BIL: SEP - ARIZONA

| For the Recipient | For the United States of America |
|---|---|
| 22. Signature of Person Authorized to Sign | 25. Signature of Grants/Agreements Officer<br>*Stephanie Sites* |
| 23. Name and Title | 24. Date Signed | 26. Name of Officer<br>Stephanie D. Sites | 27. Date Signed<br>05/25/2023 |

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED | PAGE | OF |
|---|---|---|---|
| | DE-EE0010058 | 2 | 3 |

NAME OF OFFEROR OR CONTRACTOR
EXECUTIVE OFFICE OF THE STATE OF ARIZONA

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | DUNS Number:  Not Available | | | | |
| | The purpose of this action is to obligate BIL SEP funds and to authorize activities under Section 40109. | | | | |
| | The Project Period for this award is 05/01/2023 through 04/30/2028. | | | | |
| | In Block 7 of the Assistance Agreement, the Period of Performance reflects the beginning of the Project Period through the end of the current Budget Period. | | | | |
| | In addition to this Assistance Agreement, this award consists of the items listed on the Cover Page of the Special Terms and Conditions. | | | | |
| | This award is subject to the Financial Assistance regulations contained in 2 CFR 200 as amended by 2 CFR Part 910. | | | | |
| | Block 9 Authority reads as follows: SEP is authorized under the Energy Policy and Conservation Act, as amended (42 U.S.C. 6321 et seq.). All grant awards made under this program shall comply with applicable laws including, but not limited to, the SEP statutory authority (42 U.S.C. § 6321 et seq.), 10 CFR 420, and 2 CFR 200 as amended by 2 CFR Part 910. | | | | |
| | Funding for all awards and future budget periods is contingent upon the availability of funds appropriated by Congress for the purpose of this program and the availability of future-year budget authority. | | | | |
| | DOE Award Administrator: Walda Jacobs Email: walda.jacobs@ee.doe.gov Phone: 720-262-0214 | | | | |
| | DOE Project Officer: Henry Fowler E-mail: henry.fowler@hq.doe.gov Phone: 720-356-1595 | | | | |
| | Recipient Business Officer: Jean Bell E-mail:  jbell@az.gov Phone: (602) 542-1337 | | | | |
| | Recipient Principal Investigator: Blaise Caudill E-mail: bcaudill@az.gov Phone:(520) 312-5854 | | | | |
| | Continued ... | | | | |

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>DE-EE0010058 | | | | PAGE<br>3 | OF<br>3 |

NAME OF OFFEROR OR CONTRACTOR
EXECUTIVE OFFICE OF THE STATE OF ARIZONA

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | Electronic signature or signatures as used in this document means a method of signing an electronic message that— | | | | |
| | (A) Identifies and authenticates a particular person as the source of the electronic message;<br>(B) Indicates such person's approval of the information contained in the electronic message; and,<br>(C) Submission via FedConnect constitutes electronically signed documents.<br>ASAP: YES Extent Competed: NOT AVAIL FOR COMP<br>Davis-Bacon Act: YES PI: Caudill, Blaise<br>Fund: 05461 Appr Year: 2022 Allottee: 31 Report<br>Entity: 200835 Object Class: 41020 Program:<br>1004901 Project: 0000000 WFO: 0000000 Local Use:<br>0000000 | | | | |

# EXHIBIT G



# Department of Energy
Golden Field Office
15013 Denver West Parkway
Golden CO 80401

January 27, 2025

**MEMORANDUM FOR ALL DOE FUNDING AGREEMENTS OR AWARDS**

FROM:        SARA WILSON
             ACQUISITION DIRECTOR
             ACTING HEAD OF CONTRACTING ACTIVITY
             ENERGY EFFICIENCY & RENEWABLE ENERGY

SUBJECT:     Cease all activities associated with DEI and CBP

The President has issued 43 Executive Orders, Presidential Memoranda, and Proclamations, including an Executive Order entitled *Ending Radical and Wasteful Government DEI Programs and Preferencing*.  DOE is moving aggressively to implement this Executive Order by directing the suspension of the following activities in any loans, loan guarantees, grants, cost sharing agreements, contracts, contract awards, or any other source of DOE funding:

- diversity, equity, and inclusion (DEI) programs and activities involving or relating to DEI objectives and principles; and
- Community Benefits Plans (CBP); and
- Justice40 requirements, conditions, or principles.

Recipients and subrecipients must cease any activities, including contracted activities, and stop incurring costs associated with DEI and CBP activities effective as of the date of this letter for all DOE grants, cooperative agreements, loans, loan guarantees, cost sharing agreements, or other DOE funding of any kind. Recipients are responsible for communicating and enforcing this direction with all subrecipients and contractors. Costs incurred after the date of this letter will not be reimbursed. This letter will be incorporated into your award with the next modification.

Additional guidance will be forthcoming. Recipients who have DEI and CBP activities in their awards will be contacted by their Grants Officer to initiate award modifications consistent with this Order.

1/29/25, 9:33 AM Case 1:25-cv-00039-JJM-PAS State of Arizona Mail - Fwd: Attachment: Notification of immediate changes to award terms and conditions Page 94 of 101

PageID #: 2055



Rosa Ellis <rellis@az.gov>

---

## Fwd: Attachment: Notification of immediate changes to award terms and conditions
1 message

---

**Travis Price** <tprice@az.gov>                                                        Wed, Jan 29, 2025 at 9:06 AM
To: Rosa Ellis <rellis@az.gov>

---------- Forwarded message ---------
From: **GO Financial Assistance Policy** <fapolicy@ee.doe.gov>
Date: Tue, Jan 28, 2025 at 7:05 AM
Subject: Attachment: Notification of immediate changes to award terms and conditions
To: GO Financial Assistance Policy <fapolicy@ee.doe.gov>

Please read the attached notification memo signed by the EERE, Golden Field Office, Head of Contracting Activity (HCA).  Promptly notify appropriate Principal Investigators, Business Contacts, and others within your organization about these changes.

--

**Travis Price, CPA**
Compliance & Procurement Manager
Arizona Office of the Governor
1700 West Washington Street Ste. 500
Phoenix, AZ 85007-2888
tprice@az.gov
(602) 694-7175

---

 **CBP and DEI Notification to existing recipients - 1.27.2025.pdf**
1435K

 **Gmail**

Rosa Ellis <rellis@az.gov>

## Fwd: Notification of immediate changes to award terms and conditions
1 message

**Travis Price** <tprice@az.gov>                                                       Wed, Jan 29, 2025 at 9:06 AM
To: Rosa Ellis <rellis@az.gov>

---------- Forwarded message ---------
From: **GO Financial Assistance Policy** <fapolicy@ee.doe.gov>
Date: Mon, Jan 27, 2025 at 1:55 PM
Subject: Notification of immediate changes to award terms and conditions
To: GO Financial Assistance Policy <fapolicy@ee.doe.gov>

Please read the attached notification memo signed by the EERE, Golden Field Office, Head of Contracting
Activity (HCA).  Promptly notify appropriate Principal Investigators, Business Contacts, and others within
your organization about these changes.

--

**Travis Price, CPA**
Compliance & Procurement Manager
Arizona Office of the Governor
1700 West Washington Street Ste. 500
Phoenix, AZ 85007-2888
tprice@az.gov
(602) 694-7175

📄 **CBP and DEI Notification to existing recipients - 1.27.2025.pdf**
  1435K



Rosa Ellis <rellis@az.gov>

---

## Fwd: Notification of immediate changes to award terms and conditions
1 message

**Travis Price** <tprice@az.gov>
To: Rosa Ellis <rellis@az.gov>

Wed, Jan 29, 2025 at 9:06 AM

---------- Forwarded message ---------
From: **GO Financial Assistance Policy** <fapolicy@ee.doe.gov>
Date: Mon, Jan 27, 2025 at 1:51 PM
Subject: Notification of immediate changes to award terms and conditions
To: GO Financial Assistance Policy <fapolicy@ee.doe.gov>

Please read the attached notification memo signed by the EERE, Golden Field Office, Head of Contracting Activity (HCA).  Promptly notify appropriate Principal Investigators, Business Contacts, and others within your organization about these changes.

--

**Travis Price, CPA**
Compliance & Procurement Manager
Arizona Office of the Governor
1700 West Washington Street Ste. 500
Phoenix, AZ 85007-2888
tprice@az.gov
(602) 694-7175

---

 **CBP and DEI Notification to existing recipients - 1.27.2025.pdf**
1435K



Rosa Ellis <rellis@az.gov>

---

## Fwd: Notification of immediate changes to award terms and conditions
1 message

**Travis Price** <tprice@az.gov>                                    Wed, Jan 29, 2025 at 9:05 AM
To: Rosa Ellis <rellis@az.gov>

---------- Forwarded message ---------
From: **GO Financial Assistance Policy** <fapolicy@ee.doe.gov>
Date: Mon, Jan 27, 2025 at 1:47 PM
Subject: Notification of immediate changes to award terms and conditions
To: GO Financial Assistance Policy <fapolicy@ee.doe.gov>

Please read the attached notification memo signed by the EERE, Golden Field Office, Head of Contracting Activity (HCA).  Promptly notify appropriate Principal Investigators, Business Contacts, and others within your organization about these changes.

--

**Travis Price, CPA**
Compliance & Procurement Manager
Arizona Office of the Governor
1700 West Washington Street Ste. 500
Phoenix, AZ 85007-2888
tprice@az.gov
(602) 694-7175

---

CBP and DEI Notification to existing recipients - 1.27.2025.pdf
1435K

# EXHIBIT H

From: **EPA_Grants_Info** <EPA_Grants_Info@epa.gov>
Date: Tue, Jan 28, 2025 at 2:41 PM
Subject: Pause EPA Grants
To:

Dear Grant Recipient,

EPA is working diligently to implement President Trump's *Unleashing American Energy* Executive Order issued on January 20 in coordination with the Office of Management and Budget. The agency has paused all funding actions related to the Inflation Reduction Act and the Infrastructure Investment and Jobs Act at this time. EPA is continuing to work with OMB as they review processes, policies, and programs, as required by the Executive Order.

Thank you.

*Please do not reply to this message. This mailbox is not monitored.*

——

# EXHIBIT I



**NATIONAL ENERGY TECHNOLOGY LABORATORY**
Albany, OR • Houston, TX • Morgantown, WV • Pittsburgh, PA



January 28, 2025

**MEMORANDUM FOR ALL DOE FUNDING AGREEMENTS OR AWARDS**

FROM:          RUSSELL EURY
               PROCUREMENT DIRECTOR
               NATIONAL ENERGY TECHNOLOGY LABORATORY

SUBJECT:       Cease All Activities Associated with DEI and CBP

The President has issued 43 Executive Orders, Presidential Memoranda, and Proclamations, including an Executive Order entitled *Ending Radical and Wasteful Government DEI Programs and Preferencing*.  DOE is moving aggressively to implement this Executive Order by directing the suspension of the following activities in any loans, loan guarantees, grants, cost sharing agreements, contracts, contract awards, or any other source of DOE funding:

- diversity, equity, and inclusion (DEI) programs and activities involving or relating to DEI objectives and principles; and
- Community Benefits Plans (CBP); and
- Justice40 requirements, conditions, or principles.

Recipients and subrecipients must cease any activities, including contracted activities, and stop incurring costs associated with DEI and CBP activities effective as of the date of this letter for all DOE grants, cooperative agreements, loans, loan guarantees, cost sharing agreements, or other DOE funding of any kind. Recipients are responsible for communicating and enforcing this direction with all subrecipients and contractors. Costs incurred after the date of this letter will not be reimbursed. This letter will be incorporated into your award with the next modification.

Additional guidance will be forthcoming. Recipients who have DEI and CBP activities in their awards will be contacted by their Grants Officer to initiate award modifications consistent with this Order.