Thomas-Jensen Affirmation (redacted)

Exhibit # 27

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF RHODE ISLAND; STATE OF NEW JERSEY; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NORTH CAROLINA; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT STATE OF WASHINGTON; STATE OF WISCONSIN, | C.A. No. 25-cv-39-JJM-PAS |
| Plaintiffs, | |
| v. | |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; U.S. OFFICE OF MANAGEMENT AND BUDGET; MATTHEW J. VAETH, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR OF THE U.S. OFFICE OF MANAGEMENT AND BUDGET; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY; PATRICIA COLLINS IN HER OFFICIAL CAPACITY AS TREASURER OF THE U.S.; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY A. FINK, M.D., IN HER OFFICIAL CAPACITY AS ACTING SECRETARY OF HEALTH AND HUMAN SERVICES; U.S. DEPARTMENT OF EDUCATION; DENISE CARTER, IN HER OFFICIAL CAPACITY AS ACTING SECRETARY OF EDUCATION; U.S. FEDERAL EMERGENCY MANAGEMENT AGENCY; CAMERON HAMILTON, IN HIS OFFICIAL CAPACITY AS ACTING ADMINISTRATOR OF THE U.S. FEDERAL EMERGENCY MANAGEMENT | |

1

AGENCY; U.S. DEPARTMENT OF
TRANSPORTATION;
JUDITH KALETA, IN HER OFFICIAL
CAPACITY AS ACTING SECRETARY OF
TRANSPORTATION;
U.S. DEPARTMENT OF LABOR; VINCE
MICONE, IN HIS OFFICIAL CAPACITY AS
ACTING SECRETARY OF LABOR; U.S.
DEPARTMENT OF ENERGY; INGRID KOLB, IN
HER OFFICIAL CAPACITY AS ACTING
SECRETARY OF THE U.S. DEPARTMENT OF
ENERGY; U.S. ENVIRONMENTAL
PROTECTION AGENCY; JAMES PAYNE, IN HIS
OFFICIAL CAPACITY AS ACTING
ADMINISTRATOR OF THE U.S.
ENVIRONMENTAL PROTECTION AGENCY;
U.S. DEPARTMENT OF HOMELAND
SECURITY; KRISTI NOEM, IN HER CAPACITY
AS SECRETARY OF THE U.S. DEPARTMENT
OF HOMELAND SECURITY; U.S.
DEPARTMENT OF JUSTICE; JAMES R.
McHENRY III, IN HIS OFFICIAL CAPACITY AS
ACTING ATTORNEY GENERAL OF THE U.S.
DEPARTMENT OF JUSTICE; THE NATIONAL
SCIENCE FOUNDATION and DR.
SETHURAMAN PANCHANATHAN, IN HIS
CAPACITY AS DIRECTOR OF THE NATIONAL
SCIENCE FOUNDATION,

      Defendants.

## DECLARATION OF JENNIFER BLACK GLENNON

I, Jennifer Black Glennon, declare as follows:

1.    I am a resident of the State of California. I am over the age of 18 and have

personal knowledge of all the facts stated herein, except to those matters stated upon information

and belief; as to those matters, I believe them to be true. If called as a witness, I could and would

testify competently to the matters set forth below.

2

2.      I am currently employed by the California Department of Toxic Substances Control ("DTSC") as Staff Services Manager II.

3.      DTSC is a California state agency responsible for regulating toxic substances by implementing and enforcing state hazardous waste laws.

4.      As Staff Services Manager II, my staff and I administer the Site Mitigation and Restoration Program (SMRP) grants and coordinate with the other Programs for applications, awards, and requests for information. My knowledge of the federal funding received by DTSC is based on my review of financial records and agreements and communications with my staff and other financial and administrative staff within the agency. My knowledge of the status of DTSC's federal grants on the Automated Standard Application for Payments (ASAP), the federal government's electronic system for transferring money to grant recipients, is based on information conveyed to me through communications with Leslie Lee, Accounting Administrator I, Supervisor.

5.      Between 2021 and the present, DTSC applied for and was awarded the following federal grants: State and Tribal Response (4W-98T51201) and Pollution Prevention (4U-98T49101).  I understand that the funds for these grant programs were appropriated by Congress as part of the Infrastructure Investment and Jobs Act (P.L. 117-58) ("IIJA").

6.      True and accurate copies of the grant award documents are attached hereto as Exhibit A, each reflecting the date these award documents were executed.  True and accurate copies of the terms and conditions applicable to those grants are included in those award documents.

7.       The State and Tribal Response program is administered by the U.S. Environmental Protection Agency (EPA).  DTSC periodically submits eligible expenses incurred

in carrying out the State Tribal Response program, up to the award amount.  DTSC's State and Tribal Response award is $3.6 million over a period of 3 years, with approximately $1.3 million apportioned for federal fiscal year 2025.

8.      The goals of the State and Tribal Response program are to provide financial support for the elements of an effective state or tribal response program, as specified in Comprehensive Environmental Response, Compensation, and Liability Act Section 128, and to ensure that states and tribes maintain a public record of sites included in their programs. The Infrastructure Investment and Jobs Act ("IIJA") provided additional funding to carry out the Section 128(a) grant program. The purpose of this award is to enhance the capacity of DTSC brownfields response program to meet the Section 128(a) elements. DTSC will oversee and perform planning, assessment, and cleanup of brownfields sites throughout the state, and conduct environmental outreach.

9.      The Pollution Prevention (P2) program, administered by EPA, grants funds to DTSC to develop and adopt practices that reduce or eliminate pollutants from entering any waste stream or otherwise being released into the environment prior to recycling, treatment, or disposal.  DTSC periodically submits eligible expenses incurred in carrying out the Pollution Prevention program, up to the award amount.  DTSC's Pollution Prevention award is $350,000 over a period of 3 years.

10.      This Infrastructure Investment and Jobs Act (IIJA) project will provide technical assistance (e.g., information, training, tools) to businesses to help them develop and adopt source reduction practices (also known as pollution prevention (P2)). P2 means reducing or eliminating pollutants from entering any waste stream or otherwise being released into the environment prior to recycling, treatment, or disposal. P2 practices can help businesses save money by reducing

4

their resource use, expenditures, waste and liability costs, while at the same time reducing their environmental footprint and helping to protect human health and the environment. Specifically, the project will reduce the amount of hazardous chemicals in the marketplace by providing product manufacturers and their formulators tools to assess safer chemicals, disseminating best practices, and creating and publicizing public reports and case studies to the wider sector through webinars, and industry and community roundtables.

11.     DTSC has already been unable to access disbursements to which it is entitled under the State and Tribal Response and Pollution Prevention grants.  On January 31, 2025, at approximately 12:41 p.m. Pacific Standard Time, access-credentialed staff of DTSC accessed ASAP.  At that time, both the State and Tribal Response and Pollution Prevention grants had been removed from ASAP, meaning DTSC could not draw down against these grants to pay for any work performed under these grants.

12.     Again, on February 3, 2025, at approximately 9:03 a.m. Pacific Standard Time, access-credentialed staff of DTSC accessed ASAP.  At that time, both the State and Tribal Response and Pollution Prevention grants were still missing from ASAP, meaning DTSC could not draw down against these grants to pay for any work performed under these grants.

13.     Again, on February 3, 2025, at approximately 3:34 p.m. Pacific Standard Time, access-credentialed staff of DTSC accessed ASAP.  At that time, both the State and Tribal Response and Pollution Prevention grants were still missing from ASAP, meaning DTSC could not draw down against these grants to pay for any work performed under these grants.

14.     Again, on February 4, 2025, at approximately 9:32 a.m. Pacific Standard Time, access-credentialed staff of DTSC accessed ASAP.  At that time, both the State and Tribal

Response and Pollution Prevention grants were still missing from ASAP, meaning DTSC could
not draw down against these grants to pay for any work performed under these grants.

15.     Again, on February 4, 2025, at approximately 2:29 p.m. Pacific Standard Time,
access-credentialed staff of DTSC accessed ASAP.  As of that time, the Pollution Prevention
grant had been restored; however, the State and Tribal Response grant was still missing from
ASAP, meaning DTSC could not draw down against the State and Tribal Response grant to pay
for any work performed under this grant.

16.     Again, on February 4, 2025, at approximately 4:33 p.m. Pacific Standard Time,
access-credentialed staff of DTSC accessed ASAP. At that time, the Pollution Prevention grant
was still accessible in ASAP, while the State and Tribal Response grant continued to be missing
from ASAP.

17.     On February 5, 2025, at approximately 11:56 a.m. Pacific Standard Time, access-
credentialed staff of DTSC accessed ASAP.  At that time, the State and Tribal Response grant
had been restored.  Both the Pollution Prevention and the State and Tribal Response grants were
accessible in ASAP.

18.     I sent an email on February 3, 2025, at 5:24 pm Pacific Standard Time to the
relevant EPA officials inquiring about DTSC's State and Tribal Resources Program and
Pollution Prevention grants missing from ASAP. A true and correct copy of this February 3,
2025, email sent to EPA is attached hereto as Exhibit B.  On February 5, 2025, at 11:20 am
Pacific Standard Time, DTSC received a response email from Lisa Hanusiak (EPA) indicating
the State and Tribal Resources Program grant has been restored in ASAP.

19.     Attached as Exhibit C is a true and correct screen capture of the ASAP portal on January 31, 2025.  The rows on Exhibit C correspond to federal awards that DTSC has received, which can be accessed for drawdowns to reimburse DTSC for eligible program expenses.

20.     Attached as Exhibit D is a true and correct screen capture of the same ASAP portal on the morning of February 3, 2025.

21.     Attached as Exhibit E is a true and correct screen capture of the same ASAP portal on the afternoon of February 3, 2025.

22.     Attached as Exhibit F is a true and correct screen capture of the same ASAP portal on the morning of February 4, 2025.

23.     Attached as Exhibit G is a true and correct screen capture of the same ASAP portal on the afternoon February 4, 2025.

24.     Attached as Exhibit H is a true and correct screen capture of the same ASAP portal on the afternoon February 4, 2025.

25.     Attached as Exhibit I is a true and correct screen capture of the same ASAP portal on the afternoon February 5, 2025.

26.     The ASAP screens on Exhibits C, D, E and F are missing two rows corresponding to the State and Tribal Response (4W-98T51201) and Pollution Prevention (4U-98T49101) grants that DTSC has been awarded.  Those rows should read:

| Account ID | Account Status | Available Balance |
|---|---|---|
| ███████ | Open | $3,283,409.34 |
| ███████ | Open | $305,430.02 |

27.     The ASAP screen on Exhibit G and H are missing the first of the above two rows, indicating the State and Tribal Response (4W-98T51201) grant is still inaccessible on ASAP.

28.     The ASAP screen on Exhibit I shows both the above two rows have been restored.

29.     DTSC's budget for this year has relied on funding from the State and Tribal Response grant.  We use the money for staff costs, overhead, travel, and contracts.

30.     It is my understanding that the balance in these grant accounts corresponded to funds Congress appropriated in the IIJA for the purpose of carrying out State and Tribal Response and Pollution Prevention activities, which were duly apportioned and obligated to DTSC.

31.     We continue to be concerned that the funding will again be delayed or denied. This uncertainty over these grants has disrupted DTSC's ability to budget, plan for brownfields and pollution prevention services, and carry out its mission under these programs.  Under an extended freeze of these disbursements, DTSC would have to pay staff using funds redirected from the State's Toxic Substances Control Account, which could limit other DTSC programs that rely on funds from the same Account.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 6, 2025, at Carmichael, California.

_____
Jennifer Black Glennon

# EXHIBIT A

4U - 98T49101 - 0    Page 1

| | **U.S. ENVIRONMENTAL PROTECTION AGENCY**  Cooperative Agreement | **GRANT NUMBER (FAIN):** 98T49101  **MODIFICATION NUMBER:** 0  **PROGRAM CODE:** 4U | **DATE OF AWARD** 09/28/2022 |
|---|---|---|---|
| | | **TYPE OF ACTION** New | **MAILING DATE** 10/03/2022 |
| | | **PAYMENT METHOD:** ASAP | **ACH#** 90008 |

| **RECIPIENT TYPE:** State | **Send Payment Request to:** Contact EPA RTPFC at: rtpfc-grants@epa.gov |
|---|---|
| **RECIPIENT:** | **PAYEE:** |
| CA Dept of Toxic Subs Control 1001 I St., P.O. Box 806 Sacramento, CA 95812-0806 EIN: 68-0281381 | CA Dept of Toxic Subs Control 1001 I St., P.O. Box 806 Sacramento, CA 95812-0806 |

| **PROJECT MANAGER** | **EPA PROJECT OFFICER** | **EPA GRANT SPECIALIST** |
|---|---|---|
| Xiaoying Zhou 1001 I St., P.O. Box 806 Sacramento, CA 95812-0806 **Email:** Xiaoying.Zhou@dtsc.ca.gov **Phone:** 916-323-3527 | John Katz 75 Hawthorne Street, LND-2-3 San Francisco, CA 94105 **Email:** katz.john@epa.gov **Phone:** 415-972-3744 | Katya Obrez Grants Branch, MSD-6 75 Hawthorne Street San Francisco, CA 94105 **Email:** obrez.katya@epa.gov **Phone:** 415-972-3744 |

**PROJECT TITLE AND DESCRIPTION**

POLLUTION PREVENTION GRANTS PROGRAM - BIL - Environmental Justice Impacts

See Attachment 1 for project description.

| **BUDGET PERIOD** 11/01/2022 - 10/31/2024 | **PROJECT PERIOD** 11/01/2022 - 10/31/2024 | **TOTAL BUDGET PERIOD COST** $350,000.00 | **TOTAL PROJECT PERIOD COST** $350,000.00 |
|---|---|---|---|

## NOTICE OF AWARD

Based on your Application dated 04/08/2022 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $350,000.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $350,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| **ISSUING OFFICE (GRANTS MANAGEMENT OFFICE)** | **AWARD APPROVAL OFFICE** |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| U.S. EPA, Region 9 , U.S. EPA, Region 9 Grants Branch, MSD-6 75 Hawthorne Street San Francisco, CA 94105 | U.S. EPA, Region 9, Land, Chemicals and Redevelopment Division, LND-1 R9 - Region 9 75 Hawthorne Street San Francisco, CA 94105 |

| **THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY** | |
|---|---|
| **Digital signature applied by EPA Award Official** Carolyn Truong - Grants Management Officer | **DATE** 09/26/2022 |

4U - 98T49101 - 0    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $0 | $350,000 | $350,000 |
| EPA In-Kind Amount | $0 | $0 | $0 |
| Unexpended Prior Year Balance | $0 | $0 | $0 |
| Other Federal Funds | $0 | $0 | $0 |
| Recipient Contribution | $0 | $0 | $0 |
| State Contribution | $0 | $0 | $0 |
| Local Contribution | $0 | $0 | $0 |
| Other Contribution | $0 | $0 | $0 |
| Allowable Project Cost | $0 | $350,000 | $350,000 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.708 - Pollution Prevention Grant Program | Pollution Prevention Act of 1990: Sec. 6605 & Infrastructure Investment and Jobs Act (IIJA) (PL 117-58) | 2 CFR 200, 2 CFR 1500, 40 CFR 33 and 40 CFR 35 Subpart A |

| Fiscal | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Site Name | Req No | FY | Approp. Code | Budget Oganization | PRC | Object Class | Site/Project | Cost Organization | Obligation / Deobligation |
| - | 2209QE0104 | 22 | E1SD | 09Q2 | 000C13X91 | 4183 | - | - | $350,000 |
| | | | | | | | | | $350,000 |

4U - 98T49101 - 0     Page 3

Budget Summary Page

| Table A - Object Class Category (Non-Construction) | Total Approved Allowable Budget Period Cost |
|---|---|
| 1. Personnel | $0 |
| 2. Fringe Benefits | $0 |
| 3. Travel | $0 |
| 4. Equipment | $0 |
| 5. Supplies | $0 |
| 6. Contractual | $350,000 |
| 7. Construction | $0 |
| 8. Other | $0 |
| 9. Total Direct Charges | $350,000 |
| 10. Indirect Costs: 0.00 % Base | $0 |
| 11. Total (Share: Recipient ___0.00 % Federal _100.00 %) | $350,000 |
| 12. Total Approved Assistance Amount | $350,000 |
| 13. Program Income | $0 |
| 14. Total EPA Amount Awarded This Action | $350,000 |
| 15. Total EPA Amount Awarded To Date | $350,000 |

## *Attachment 1 - Project Description*

This Infrastructure Investment and Jobs Act (IIJA) project will provide technical assistance (e.g., information, training, tools) to businesses to help them develop and adopt source reduction practices (also known as pollution prevention (P2)). P2 means reducing or eliminating pollutants from entering any waste stream or otherwise being released into the environment prior to recycling, treatment, or disposal. P2 practices can help businesses save money by reducing their resource use, expenditures, waste and liability costs, while at the same time reducing their environmental footprint and helping to protect human health and the environment. Specifically, the project will reduce the amount of hazardous chemicals in the marketplace by providing product manufacturers and their formulators tools to assess safer chemicals, disseminating best practices, and creating and publicizing public reports and case studies to the wider sector through webinars, and industry and community roundtables.

This assistance agreement provides full federal funding in the amount of $350,000.

The priorities for P2 technical assistance (information, training, and tools) align with one or more of the program's national emphasis areas (NEAs). Specifically, the project(s) will address the following industries: Chemical Manufacturing, Processing, and Formulation. This project will engage chemical manufacturers and product formulators to identify safer alternatives to priority chemicals in consumer products. The focus of the grant is to develop and expand the community of alternatives assessment (AA) practice: assessing tools for environmental justice (EJ) impacts evaluation to select safer alternatives to reduce the impacts resulting from hazardous substances used in consumer products, piloting AA case studies to apply the recommended EJ tools and data to address equity and EJ issue across the life cycle of consumer products, conducting stakeholder roundtable, and developing guidance and nationally accessible training modules on tools, databases, and methodologies needed to evaluate EJ impacts in AA. The technical assistance conducted by the grantee will benefit facilities and, if applicable, may address underserved communities. The grantee is expected to report on P2 performance measures (outputs and outcomes) and note who will benefit from the technical assistance as well as commit to following-up with facilities to find out whether the technical assistance was adopted and implemented. Specifically, the grantee anticipates providing: a compendium of EJ impact assessment tools to incorporate into chemical hazard assessments; case studies on how those tools are used; rouadtables and workshops to engage industry stakeholders to share information on tools and methods, webinar to train practitioners on use of tools. DTSC will track uptake of the tools by workshop and training participants, and document how the tools are used by stakeholders.Output will include a case study of EJ impact asssessment. Beneficiaries will be chemical and consumer product manufacturers who are interested in reducing EJ impacts associated with chemicals in products. No subawards are included in this assistance agreement.

## *Administrative Conditions*

Administrative Terms and Conditions "A" through "D" and General Terms and Conditions below apply.

**General Terms and Conditions**

The recipient agrees to comply with the current EPA general terms and conditions available at: https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2021-or-later.

These terms and conditions are in addition to the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

**A.  Federal Financial Reporting (FFR)**

For awards with cumulative project and budget periods greater than 12 months, the recipient will submit an annual FFR (SF 425) covering the period from "project/budget period start date" to **September 30** of each calendar year to the EPA Finance Center in Research Triangle Park, NC.  The annual FFR will be submitted electronically to rtpfc-grants@epa.gov no later than **December 30** of the same calendar year. Find additional information at https://www.epa.gov/financial/grants. (NOTE: The grantee must submit the Final FFR to rtpfc-grants@epa.gov within 120 days after the end of the project period.)

**B.  Procurement**

The recipient will ensure all procurement transactions will be conducted in a manner providing full and open competition consistent with 2 CFR Part 200.319.  In accordance 2 CFR Part 200.324 the grantee and subgrantee(s) must perform a cost or price analysis in connection with applicable procurement actions, including contract modifications.

*State recipients must follow procurement procedures as outlined in 2 CFR Part 200.317.*

**C.  MBE/WBE Reporting, 40 CFR, Part 33, Subpart E (EPA Form 5700-52A)**

The recipient agrees to submit a "MBE/WBE Utilization Under Federal Grants and Cooperative Agreements" report (EPA Form 5700-52A) annually for the duration of the project period. The current EPA Form 5700-52A with instructions can be found at https://www.epa.gov/grants/epa-form-5700-52a-united-states-environmental-protection-agency-minority-business

This provision represents an approved exception from the MBE/WBE reporting requirements as described in 40 CFR Section 33.502.

Reporting is required for assistance agreements where funds are budgeted for procuring construction, equipment, services and supplies (including funds budgeted for direct procurement by the recipient or procurement under subawards or loans in the "Other" category) with a cumulative total that exceed the Simplified Acquisition Threshold (SAT) currently set at $250,000 (the dollar threshold will be automatically revised whenever the SAT is adjusted; See 2 CFR Section 200.1), including amendments and/or modifications. When reporting is required, all procurement actions are reportable, not just the portion which exceeds the SAT.

Recipients with expended and/or budgeted funds for procurement are required to report annually whether the planned procurements take place during the reporting period or not. If no budgeted procurements take place during the reporting period, the recipient should check the box in section 5B when completing the form.

When completing the annual report, recipients are instructed to check the box titled "annual" in section 1B of the form. For the final report, recipients are instructed to check the box indicated for the "last report" of the project in section 1B of the form. For section 2B, the Region 9 EPA DBA Coordinator is Alexandrea Perez, email: GrantsRegion9@epa.gov, phone: 415-972-3826.

The annual reports are due by October 30th of each calendar year and the final report is due within 120 days after the end of the project period, whichever comes first. The recipient will submit the MBE/WBE report(s) and/or questions to GrantsRegion9@epa.gov and the EPA Grants Specialist identified on page 1 of the award document.

**D. Indirect Costs**

The Cost Principles under 2 CFR Part 200, Subpart E apply to this award. Since there are no indirect costs included in the assistance budget, they are not allowable under this Assistance Agreement.

# *Programmatic Conditions*

Programmatic Conditions 'a' through 'h' below apply.

**a]. ERFORMANCE REPORTING AND FINAL PERFORMANCE REPORT**

**1. Performance Reports – Frequency:** Grant recipients will be required to submit electronically semi-annual progress reports and a final technical report as defined below:

- **Semiannual Reports**: Once the project period is over 1-month old, recipients are required to submit electronically semiannual progress reports to the EPA project officer every March 1st and September 1st. Deliverables (e.g., advertising flyers, fact sheets, pamphlets, guides, curricula, checklists, videos, etc.) required under the grant should be submitted along with the first progress report that follows the date the deliverable was due to be produced.
- **Final Technical Report:** A final report is due within 120 days of the end of the grant period. The final report should summarize all activities, accomplishments, outputs and outcomes as defined below and in Section I.I., Section VI.C.3., and Appendix E of RFA; and financial expenditures for the entire grant period and include any deliverables not yet submitted.

**2. Performance Reports – Content:** Recipients must submit semi-annual and final performance reports on the schedule described above.

   **a. Semi-annual reports:** The purpose of the performance reports is to report on the progress of the project and on the tasks and activities agreed upon in the final workplan. At a minimum, the progress reports should include the following elements:

- A short summary of the accomplishments for the reporting period
- Progress on completing individual project tasks.
- The planned and actual schedules for task completion. Any substantial diversion from a stated objective or any deviation from the approved timeline should be explained.
- Projected accomplishments for the next reporting period
- Any problems encountered and their resolution.

- Data on financial expenditures by budget category. The Financial Status Report must accurately account for all federal funds expended and identify appropriate use of federal funds
- Progress on outputs and outcomes as defined below in #3. This should include a comparison of actual accomplishments to the outputs/outcomes established in the assistance agreement work plan for the period; and any reasons why established outputs/outcomes were not met.
- Any available environmental results reported in pounds of hazardous materials reduced, metric tons of CO2 equivalent (MTCO2e) avoided, gallons of water conserved, and/or dollars saved. See below for more guidance on calculating and reporting results. Recipients are expected to provide quantitative estimates and actual results for outcomes and/or outputs on a semi-annual basis during the grant period.

**b. Final Reports:** The purpose of the final report is to provide complete information on the activities completed under the grant and final compilation of outputs and outcomes. Specifically, final reports must include:

- Summary of all activities, by task, with explanation of how each task objective was achieved, or explanation of why or how the final tasks deviated from the approved workplan.
- Description of lessons learned, obstacles encountered and how they were overcome, or any related information that would facilitate replication of project approach and activities by others.
- Case studies, as specified in Section B below.
- All deliverables (fact sheets, reports, tools, outreach materials, etc).
- Complete and final report on financial expenditures, including explanation of any shortfalls, unspent funds, deviations from approved budget, or cost overruns.
- Environmental results reported in pounds of hazardous materials reduced, metric tons of CO2 equivalent (MTCO2e) avoided, gallons of water conserved, and/or dollars saved. See below for more guidance on calculating and reporting results.
- Reporting on facility-level outputs and outcomes, as described in C below.

**3. Reporting on Outputs and Outcomes:** All reports (both semi-annual and final) submitted must follow the requirements for reporting facility-level outputs and outcomes as described in the Request for Applications (see Section I.I., Section VI.C.3., and Appendix E of RFA)

This reporting includes all P2 recommendations the recipients provide to business facilities as part of the P2 technical assistance they conduct under the grant and, as determined by follow-up with those business facilities, the P2 recommendations actually implemented by those facilities, and the costs, savings and outcomes resulting from that implementation. If recipients perform only one round of follow-up to learn what actions the facility implemented, that follow-up should occur at an interval long enough to allow for some facility implementation planning and follow through.

These reporting requirements depend on the type of grant work performed as specified below. For the convenience of the recipients, Excel spreadsheet templates are available from EPA's Grant Programs for P2 Website and EPA Regional P2 Program Offices may be used for the required reporting. When the new P2 Grants Database is complete and available, and the Information Collection Budget has been approved, grant recipients will be required to report this information into the P2 Grants Reporting Database.

**a. Grant Work Providing Direct P2 Technical Assistance to Individual Facilities:** Report as described in Section IV.C.3, pages 26-28 of the RFA (link: https://www.epa.gov/system/files/documents/2022-02/fy22-23-p2-

grant-rfa_bipartisan-infrastructure-law_final.pdf)

**b. Grant Work Involving Green Certification or Leadership Programs:** Report as described in Section IV.C.3, pages 26-28 of the RFA (link: https://www.epa.gov/system/files/documents/2022-02/fy22-23-p2-grant-rfa_bipartisan-infrastructure-law_final.pdf)

**c. Grant Work Providing P2 Technical Assistance to Multiple Facilities at a Time (e.g., P2 training, webinars, roundtables, and other outreach):** Report as described in Section IV.C.3, pages 29-30 of the RFA (link: https://www.epa.gov/system/files/documents/2022-02/fy22-23-p2-grant-rfa_bipartisan-infrastructure-law_final.pdf)

**d. Grant Work using P2 Technical Assistance to Develop P2 Tools or Products: Report as described in** Section IV.C.3, page 30 of the RFA (link: https://www.epa.gov/system/files/documents/2022-02/fy22-23-p2-grant-rfa_bipartisan-infrastructure-law_final.pdf)

## b]. DEVELOPMENT OF CASE STUDIES

Recipients must develop at least one case study describing P2 actions implemented by facilities receiving technical assistance during the grant period. P2 Case studies should not describe all P2 practices implemented at a facility. They should only describe one or two specific P2 practices that the grantee believes are new or not widely known or adopted, or where the grantee believes other businesses or P2 technical assistance providers would benefit from the additional technical detail that a case study would provide. These P2 Case studies will be used by EPA to build and share a body of knowledge about P2 practices that could be replicated and implemented at similar businesses.

P2 case studies should provide information describing the P2 practice with enough detail that others could generally understand what was done, why it was implemented, and the costs, savings and environmental outcomes (P2 measures). A clear case study allows readers to determine if the practice is relevant to their circumstance and whether they could replicate the practice. If applicable, the case study should also provide information on the financing mechanism, model or approach used to implement the P2 practices, particularly if that information could be useful to others who may want to replicate the P2 practices described in the case study.

The guidance for case studies is provided in Appendix F of Request for Applications.

## c]. State Grant Cybersecurity

(a) The recipient agrees that when collecting and managing environmental data under this assistance agreement, it will protect the data by following all applicable State law cybersecurity requirements.

(b) (1) EPA must ensure that any connections between the recipient's network or information system and EPA networks used by the recipient to transfer data under this agreement, are secure.

For purposes of this Section, a connection is defined as a dedicated persistent interface between an Agency IT system and an external IT system for the purpose of transferring information. Transitory, user-controlled connections such as website browsing are excluded from this definition.

If the recipient's connections as defined above do not go through the Environmental Information Exchange Networkor EPA's Central Data Exchange, the recipient agrees to contact the EPA Project Officer (PO) and work with the designated Regional/Headquarters Information Security Officer to ensure that the connections meet EPA security requirements, including entering into Interconnection Service Agreements as appropriate. This condition does not apply to manual entry of

data by the recipient into systems operated and used by EPA's regulatory programs for the submission of reporting and/or compliance data.

(2) The recipient agrees that any subawards it makes under this agreement will require the subrecipient to comply with the requirements in (b)(1) if the subrecipient's network or information system is connected to EPA networks to transfer data to the Agency using systems other than the Environmental Information Exchange Network or EPA's Central Data Exchange. The recipient will be in compliance with this condition: by including this requirement in subaward agreements; and during subrecipient monitoring deemed necessary by the recipient under 2 CFR 200.332(d), by inquiring whether the subrecipient has contacted the EPA Project Officer. Nothing in this condition requires the recipient to contact the EPA Project Officer on behalf of a subrecipient or to be involved in the negotiation of an Interconnection Service Agreement between the subrecipient and EPA.

### d]. Competency of Organizations Generating Environmental Measurement Data

In accordance with Agency Policy Directive Number FEM-2012-02, Policy to Assure the Competency of Organizations Generating Environmental Measurement Data under Agency-Funded Assistance Agreements, the Recipient agrees, by entering into this agreement, that it has demonstrated competency prior to award, or alternatively, where a pre-award demonstration of competency is not practicable, Recipient agrees to demonstrate competency prior to carrying out any activities under the award involving the generation or use of environmental data. Recipient shall maintain competency for the duration of the project period of this agreement and this will be documented during the annual reporting process. A copy of the Policy is available online at https://www.epa.gov/sites/production/files/2015-03/documents/competency-policy-aaia-new.pdf or a copy may also be requested by contacting the EPA Project Officer for this award.

### e]. PAPERWORK REDUCTION ACT

Notwithstanding any references to collection of information in the recipient's application or proposal for EPA funding, the scope of work for this cooperative agreement does not include a survey or other information collection of identical information from 10 or more parties. No EPA funds (directly paid by EPA or from the recipient's cost share) may be used for the design or administration of such an information collection, and EPA personnel may not participate in such activities. Reasonable costs for analyzing independently collected information and publishing the results of such information collections are allowable to the extent authorized in the EPA approved budget for this agreement.

### f]. SUBSTANTIAL INVOLVEMENT

EPA will be substantially involved in this agreement. Substantial involvement by the EPA Project Officer may include:

1. monthly telephone calls and other monitoring,

2. reviewing project phases and providing approval to continue to the next phase,

3. reviewing and commenting on any documents, web content, or other materials developed under this agreement (the recipient will make final decisions on these matters),

4. approving substantive terms included in contracts or subawards (EPA's Project Officer will not suggest, recommend, nor direct the recipient to select any particular contractor or subrecipient except to the extent permitted in Section 10 of EPA's Subaward Policy).

5. reviewing and commenting on the programmatic progress reports

6. Consultation with EPA regarding the selection of key personnel (EPA's involvement is limited to reviewing the technical qualifications of key personnel and the recipient will make the final decisions on selection. EPA's Project Officer will not suggest, recommend or direct the recipient to select any individual).

7. Joint operational involvement, participation, and/or collaboration between EPA and the recipient.

## g]. SIGNIFICANT CHANGES

To determine if a postaward change in work plan commitments is significant and requires prior written approval for the purposes of 40 CFR §35.114(a) or 40 CFR §35.514(a), the recipient agrees to consult the EPA Project Officer (PO) before making the change. The term work plan commitments is defined at 40 CFR §35.102. If the PO determines the change is significant, the recipient cannot make the change without prior written approval by the EPA Award Official.

In addition, the recipient must provide written notice to EPA's PO and Grant Specialist (GS) of proposed transfers of funds of among direct budget categories, programs, functions and activities or transfers that change amounts budgeted for indirect costs, pursuant to the "Transfer of Funds" General Term and Condition. If the PO determines that a proposed transfer of funds significantly changes work plan commitments, the recipient must consult with the PO and obtain written approval by the EPA Award Official prior to making the transfer of funds. All transfers must be reported in required performance reports.

## h]. CONDITIONAL AWARD

EPA has conditionally approved the workplan to allow the recipient to proceed to work on approved workplan components. The recipient may incur costs on eligible activities associated with the approved workplan components up to **$50,000** until a final revised workplan has been approved by EPA:

1) the recipient should not request payments and EPA will not make payments for unapproved work; and

2) any costs incurred for unapproved work by the recipient are at its own risk.

### *** END OF ASSISTANCE AGREEMENT ***

4U - 98T49101 - 1     Page 1

 **U.S. ENVIRONMENTAL PROTECTION AGENCY**

Assistance Amendment

| GRANT NUMBER (FAIN): | 98T49101 | |
|---|---|---|
| MODIFICATION NUMBER: | 1 | DATE OF AWARD |
| PROGRAM CODE: | 4U | 05/23/2023 |
| TYPE OF ACTION | | MAILING DATE |
| No Cost Amendment | | 05/23/2023 |
| PAYMENT METHOD: | | ACH# |
| ASAP | | 90008 |

| RECIPIENT TYPE: | Send Payment Request to: |
|---|---|
| State | Contact EPA RTPFC at: rtpfc-grants@epa.gov |

| RECIPIENT: | PAYEE: |
|---|---|
| CA Dept of Toxic Subs Control | CA Dept of Toxic Subs Control |
| 1001 I St., P.O. Box 806 | 1001 I St., P.O. Box 806 |
| Sacramento, CA 95812-0806 | Sacramento, CA 95812-0806 |
| EIN: 68-0281381 | |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Xiaoying Zhou | Megan Luo | Katya Obrez |
| 1001 I St., P.O. Box 806 | 75 Hawthorne Street, LND-2-3 | Grants Branch, MSD-6 |
| Sacramento, CA 95812-0806 | San Francisco, CA 94105 | 75 Hawthorne Street |
| **Email:** Xiaoying.Zhou@dtsc.ca.gov | **Email:** Luo.Megan@epa.gov | San Francisco, CA 94105 |
| **Phone:** 916-323-3527 | **Phone:** 415-972-3058 | **Email:** obrez.katya@epa.gov |
| | | **Phone:** 415-972-3744 |

**PROJECT TITLE AND EXPLANATION OF CHANGES**

POLLUTION PREVENTION GRANTS PROGRAM - BIL - Environmental Justice Impacts

This Infrastructure Investment and Jobs Act (IIJA) project will provide technical assistance (e.g., information, training, tools) to businesses to help them develop and adopt source reduction practices (also known as pollution prevention (P2)). P2 means reducing or eliminating pollutants from entering any waste stream or otherwise being released into the environment prior to recycling, treatment, or disposal. P2 practices can help businesses save money by reducing their resource use, expenditures, waste and liability costs, while at the same time reducing their environmental footprint and helping to protect human health and the environment. Specifically, the project will reduce the amount of hazardous chemicals in the marketplace by providing product manufacturers and their formulators tools to assess safer chemicals, disseminating best practices, and creating and publicizing public reports and case studies to the wider sector through webinars, and industry and community roundtables.

This amendment extends the budget and project period end dates from 10/31/2024 to 10/31/2025. There is no change to the federal assistance amount.

| BUDGET PERIOD | PROJECT PERIOD | TOTAL BUDGET PERIOD COST | TOTAL PROJECT PERIOD COST |
|---|---|---|---|
| 11/01/2022 - 10/31/2025 | 11/01/2022 - 10/31/2025 | $350,000.00 | $350,000.00 |

## NOTICE OF AWARD

Based on your Application dated 04/08/2022 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $0.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $350,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| U.S. EPA, Region 9 , U.S. EPA, Region 9 Grants Branch, MSD-6 | U.S. EPA, Region 9, Land, Chemicals and Redevelopment Division, LND-1 |
| 75 Hawthorne Street | R9 - Region 9 |
| San Francisco, CA 94105 | 75 Hawthorne Street |
| | San Francisco, CA 94105 |

| THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY | |
|---|---|
| Digital signature applied by EPA Award Official for Carolyn Truong | DATE |
| Digital signature applied by EPA Award Official    Katya Obrez | 05/23/2023 |

4U - 98T49101 - 1    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $350,000 | $0 | $350,000 |
| EPA In-Kind Amount | $0 | $0 | $0 |
| Unexpended Prior Year Balance | $0 | $0 | $0 |
| Other Federal Funds | $0 | $0 | $0 |
| Recipient Contribution | $0 | $0 | $0 |
| State Contribution | $0 | $0 | $0 |
| Local Contribution | $0 | $0 | $0 |
| Other Contribution | $0 | $0 | $0 |
| Allowable Project Cost | $350,000 | $0 | $350,000 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.708 - Pollution Prevention Grant Program | Pollution Prevention Act of 1990: Sec. 6605 & Infrastructure Investment and Jobs Act (IIJA) (PL 117-58) | 2 CFR 200, 2 CFR 1500, 40 CFR 33 and 40 CFR 35 Subpart A |

4U - 98T49101 - 1    Page 3

Budget Summary Page

| Table A - Object Class Category (Non-Construction) | Total Approved Allowable Budget Period Cost |
|---|---|
| 1. Personnel | $0 |
| 2. Fringe Benefits | $0 |
| 3. Travel | $0 |
| 4. Equipment | $0 |
| 5. Supplies | $0 |
| 6. Contractual | $350,000 |
| 7. Construction | $0 |
| 8. Other | $0 |
| 9. Total Direct Charges | $350,000 |
| 10. Indirect Costs: 0.00 % Base | $0 |
| 11. Total (Share: Recipient ___0.00 % Federal _100.00 %) | $350,000 |
| 12. Total Approved Assistance Amount | $350,000 |
| 13. Program Income | $0 |
| 14. Total EPA Amount Awarded This Action | $0 |
| 15. Total EPA Amount Awarded To Date | $350,000 |

# *Administrative Conditions*

Administrative Terms and Conditions are reiterated and updated below.

**General Terms and Conditions**

The General Terms and Conditions of this agreement are updated in accordance with the link below. However, these updated conditions apply solely to the funds added with this amendment and any previously awarded funds not yet disbursed by the recipient as of the award date of this amendment. The General Terms and Conditions cited in the original award or prior funded amendments remain in effect for funds disbursed by the recipient prior to the award date of this amendment.

The recipient agrees to comply with the current EPA general terms and conditions available at: https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2022-or-later.

These terms and conditions are binding for disbursements and are in addition to or modify the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

**A.  Federal Financial Reporting (FFR)**

For awards with cumulative project and budget periods greater than 12 months, the recipient will submit an annual FFR (SF 425) covering the period from "project/budget period start date" to **September 30** of each calendar year to the EPA Finance Center in Research Triangle Park, NC.  The annual FFR will be submitted electronically to rtpfc-grants@epa.gov no later than **December 30** of the same calendar year. Find additional information at https://www.epa.gov/financial/grants. (NOTE: The grantee must submit the Final FFR to rtpfc-grants@epa.gov within 120 days after the end of the project period.)

**B.  Procurement**

The recipient will ensure all procurement transactions will be conducted in a manner providing full and open competition consistent with 2 CFR Part 200.319.  In accordance with 2 CFR Part 200.324, the grantee and subgrantee(s) must perform a cost or price analysis in connection with applicable procurement actions, including contract modifications.

*State recipients must follow procurement procedures as outlined in 2 CFR Part 200.317.*

**C.  MBE/WBE Reporting, 40 CFR, Part 33, Subpart E (EPA Form 5700-52A)**

The recipient agrees to submit a "MBE/WBE Utilization Under Federal Grants and Cooperative Agreements" report (EPA Form 5700-52A) annually for the duration of the project period. The current EPA Form 5700-52A with instructions is located at https://www.epa.gov/grants/epa-grantee-forms

This provision represents an approved exception from the MBE/WBE reporting requirements as described in 40 CFR Section 33.502.

Reporting is required for assistance agreements where funds are budgeted for procuring construction, equipment, services and supplies (including funds budgeted for direct procurement by the recipient or procurement under subawards or loans in the "Other" category) with a cumulative total that exceed the Simplified Acquisition Threshold (SAT) currently set at $250,000 (the dollar threshold will be automatically revised whenever the SAT is adjusted; See 2 CFR Section 200.1),

including amendments and/or modifications. All procurement actions are reportable when reporting is required, not just the portion which exceeds the SAT.

Recipients with expended and/or budgeted funds for procurement are required to report annually whether the planned procurements take place during the reporting period or not. If no budgeted procurements take place during the reporting period, the recipient should check the box in section 5B when completing the form.

When completing the annual report, recipients are instructed to check the box titled "annual" in section 1B of the form. For the final report, recipients are instructed to check the box indicated for the "last report" of the project in section 1B of the form.  For section 2B, the Region 9 EPA DBA Coordinator is Alexandrea Perez, email: GrantsRegion9@epa.gov, phone: 415-972-3826.

The annual reports are due by October 30th of each calendar year and the final report is due within 120 days after the end of the project period, whichever comes first.  The recipient will submit the MBE/WBE report(s) and/or questions to GrantsRegion9@epa.gov and the EPA Grants Specialist identified on page 1 of the award document.

**D. Indirect Costs**

The Cost Principles under 2 CFR Part 200, Subpart E apply to this award.  Since there are no indirect costs included in the assistance budget, they are not allowable under this Assistance Agreement.


## *Programmatic Conditions*

All Programmatic Terms and Conditions remain the same.


**\*\*\* END OF ASSISTANCE AGREEMENT \*\*\***

4U - 98T49101 - 2    Page 1

| | | | |
|---|---|---|---|
| **U.S. ENVIRONMENTAL PROTECTION AGENCY** Assistance Amendment | **GRANT NUMBER (FAIN):** 98T49101 **MODIFICATION NUMBER:** 2 **PROGRAM CODE:** 4U | | **DATE OF AWARD** 07/02/2024 |
| | **TYPE OF ACTION** No Cost Amendment | | **MAILING DATE** 07/02/2024 |
| | **PAYMENT METHOD:** ASAP | | **ACH#** 90008 |

| **RECIPIENT TYPE:** State | **Send Payment Request to:** Contact EPA RTPFC at: rtpfc-grants@epa.gov |
|---|---|
| **RECIPIENT:** | **PAYEE:** |
| STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES 1001 I Street SACRAMENTO, CA 95812-0806 EIN: 68-0281381 | STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES 1001 I Street SACRAMENTO, CA 95812-0806 |

| **PROJECT MANAGER** | **EPA PROJECT OFFICER** | **EPA GRANT SPECIALIST** |
|---|---|---|
| Xiaoying Zhou 1001 I St., P.O. Box 806 Sacramento, CA 95812-0806 **Email:** Xiaoying.Zhou@dtsc.ca.gov **Phone:** 916-323-3527 | Megan Luo 75 Hawthorne Street, LND-2-3 San Francisco, CA 94105 **Email:** Luo.Megan@epa.gov **Phone:** 415-972-3058 | Katya Obrez Grants Branch, MSD-6 75 Hawthorne Street San Francisco, CA 94105 **Email:** obrez.katya@epa.gov **Phone:** 415-972-3744 |

**PROJECT TITLE AND EXPLANATION OF CHANGES**

POLLUTION PREVENTION GRANTS PROGRAM - BIL - Environmental Justice Impacts

This Infrastructure Investment and Jobs Act (IIJA) project will provide technical assistance (e.g., information, training, tools) to businesses to help them develop and adopt source reduction practices (also known as pollution prevention (P2)). P2 means reducing or eliminating pollutants from entering any waste stream or otherwise being released into the environment prior to recycling, treatment, or disposal. P2 practices can help businesses save money by reducing their resource use, expenditures, waste and liability costs, while at the same time reducing their environmental footprint and helping to protect human health and the environment. Specifically, the project will reduce the amount of hazardous chemicals in the marketplace by providing product manufacturers and their formulators tools to assess safer chemicals, disseminating best practices, and creating and publicizing public reports and case studies to the wider sector through webinars, and industry and community roundtables.

This amendment reflects a budget revision shifting $199,848 to the 'Other' cost category for subaward(s) (refer to page 3). There is no change to the federal assistance amount. Refer to Terms and Conditions.

| **BUDGET PERIOD** 11/01/2022 - 10/31/2025 | **PROJECT PERIOD** 11/01/2022 - 10/31/2025 | **TOTAL BUDGET PERIOD COST** $ 350,000.00 | **TOTAL PROJECT PERIOD COST** $ 350,000.00 |
|---|---|---|---|

## NOTICE OF AWARD

Based on your Application dated 04/08/2022 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $ 0.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 350,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| **ISSUING OFFICE (GRANTS MANAGEMENT OFFICE)** | **AWARD APPROVAL OFFICE** |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| U.S. EPA, Region 9, U.S. EPA, Region 9 Grants Branch, MSD-6 75 Hawthorne Street San Francisco, CA 94105 | U.S. EPA, Region 9, Land, Chemicals and Redevelopment, LND-1 R9 - Region 9 75 Hawthorne Street San Francisco, CA 94105 |

**THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY**

| Digital signature applied by EPA Award Official Carolyn Truong - Grants Management Officer | **DATE** 07/02/2024 |
|---|---|

4U - 98T49101 - 2    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $ 350,000 | $ 0 | $ 350,000 |
| EPA In-Kind Amount | $ 0 | $ 0 | $ 0 |
| Unexpended Prior Year Balance | $ 0 | $ 0 | $ 0 |
| Other Federal Funds | $ 0 | $ 0 | $ 0 |
| Recipient Contribution | $ 0 | $ 0 | $ 0 |
| State Contribution | $ 0 | $ 0 | $ 0 |
| Local Contribution | $ 0 | $ 0 | $ 0 |
| Other Contribution | $ 0 | $ 0 | $ 0 |
| Allowable Project Cost | $ 350,000 | $ 0 | $ 350,000 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.708 - Pollution Prevention Grant Program | Pollution Prevention Act of 1990: Sec. 6605 & Infrastructure Investment and Jobs Act (IIJA) (PL 117-58) | 2 CFR 200, 2 CFR 1500, 40 CFR 33 and 40 CFR 35 Subpart A |

4U - 98T49101 - 2    Page 3

Budget Summary Page

| Table A - Object Class Category<br>(Non-Construction) | Total Approved Allowable<br>Budget Period Cost |
|---|---|
| 1. Personnel | $ 0 |
| 2. Fringe Benefits | $ 0 |
| 3. Travel | $ 0 |
| 4. Equipment | $ 0 |
| 5. Supplies | $ 0 |
| 6. Contractual | $ 150,152 |
| 7. Construction | $ 0 |
| 8. Other | $ 199,848 |
| 9. Total Direct Charges | $ 350,000 |
| 10. Indirect Costs: 0.00 % Base See General T/Cs | $ 0 |
| 11. Total (Share: Recipient ___0.00 % Federal __100.00 %) | $ 350,000 |
| 12. Total Approved Assistance Amount | $ 350,000 |
| 13. Program Income | $ 0 |
| 14. Total EPA Amount Awarded This Action | $ 0 |
| 15. Total EPA Amount Awarded To Date | $ 350,000 |

4U - 98T49101 - 2    Page 4

# Administrative Conditions

Administrative Terms and Conditions are reiterated and updated below (Condition E. has been added).

## General Terms and Conditions

The General Terms and Conditions of this agreement are updated in accordance with the link below. However, these updated conditions apply solely to the funds added with this amendment and any previously awarded funds not yet disbursed by the recipient as of the award date of this amendment. The General Terms and Conditions cited in the original award or prior funded amendments remain in effect for funds disbursed by the recipient prior to the award date of this amendment.

The recipient agrees to comply with the current EPA general terms and conditions available at: https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2023-or-later.

These terms and conditions are binding for disbursements and are in addition to or modify the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

## A.  Federal Financial Reporting (FFR)

For awards with cumulative project and budget periods greater than 12 months, the recipient will submit an annual FFR (SF 425) covering the period from "project/budget period start date" to **September 30** of each calendar year to the EPA Finance Center in Research Triangle Park, NC.  The annual FFR will be submitted electronically to rtpfc-grants@epa.gov no later than **December 30** of the same calendar year. Find additional information at https://www.epa.gov/financial/grants. (NOTE: The grantee must submit the Final FFR to rtpfc-grants@epa.gov within 120 days after the end of the project period.)

## B.  Procurement

The recipient will ensure all procurement transactions will be conducted in a manner providing full and open competition consistent with 2 CFR Part 200.319.  In accordance with 2 CFR Part 200.324, the grantee and subgrantee(s) must perform a cost or price analysis in connection with applicable procurement actions, including contract modifications.

*State recipients must follow procurement procedures as outlined in 2 CFR Part 200.317.*

## C.  MBE/WBE Reporting, 40 CFR, Part 33, Subpart E (EPA Form 5700-52A)

The recipient agrees to submit a "MBE/WBE Utilization Under Federal Grants and Cooperative Agreements" report (EPA Form 5700-52A) annually for the duration of the project period. The current EPA Form 5700-52A with instructions is located at https://www.epa.gov/grants/epa-grantee-forms

This provision represents an approved exception from the MBE/WBE reporting requirements as described in 40 CFR Section 33.502.

Reporting is required for assistance agreements where funds are budgeted for procuring construction, equipment, services and supplies (including funds budgeted for direct procurement by the recipient or procurement under subawards or loans in the "Other" category) with a cumulative total that exceed the **Simplified Acquisition Threshold (SAT) currently set at $250,000** (the dollar threshold will be automatically revised whenever the SAT is adjusted; See 2 CFR Section 200.1), including amendments and/or modifications. All procurement actions are reportable when reporting is required, not just the portion which exceeds the SAT.

Recipients with expended and/or budgeted funds for procurement are required to report annually whether the planned procurements take place during the reporting period or not. If no budgeted procurements take place during the reporting period, the recipient should check the box in section 4A when completing the form.

When completing the annual report, recipients are instructed to check the box titled "annual" in section 1B of the form. For the final report, recipients are instructed to check the box indicated for the "Final Report (project completed)" in section 1B of the form.

The annual reports are due by October 30th of each calendar year and the final report is due within 120 days after the end of the project period, whichever comes first.  The recipient will submit the MBE/WBE report(s) and/or questions to GrantsRegion9@epa.gov and the EPA Grants Specialist identified on page 1 of the award document.

## D.  Indirect Costs

The Cost Principles under 2 CFR Part 200, Subpart E apply to this award.  Since there are no indirect costs included in the assistance budget, they are not allowable under this Assistance Agreement.

## E.  Subaward(s)

The recipient's approved budget includes subaward(s). As applicable, the recipient will comply with the General Term and Condition on reporting of first tier subawards to www.fsrs.gov per "Reporting Subawards and Executive Compensation" requirement.

## Programmatic Conditions

Previous Programmatic Terms and Conditions remain the same; except Condition g]. is revised, h]. is deleted, and i]. applies.

**g].  Significant Changes - refer to General Terms and Conditions**

**h].  Conditional Award - DELETED**

**i].  Subaward Performance Reporting**

The recipient must report on its subaward monitoring activities under 2 CFR 200.332(d). Examples of items that must be reported if the pass-through entity has the information available are:

1. Summaries of results of reviews of financial and programmatic reports.

2. Summaries of findings from site visits and/or desk reviews to ensure effective subrecipient performance.

3. Environmental results the subrecipient achieved.

4. Summaries of audit findings and related pass-through entity management decisions.

5. Actions the pass-through entity has taken to correct deficiencies such as those specified at 2 CFR 200.332(e), 2 CFR 200.208 and the 2 CFR Part 200.339 Remedies for Noncompliance.

**\*\*\* END OF ASSISTANCE AGREEMENT \*\*\***

4W - 98T51201 - 0    Page 1

| U.S. ENVIRONMENTAL PROTECTION AGENCY<br>Cooperative Agreement | GRANT NUMBER (FAIN): 98T51201<br>MODIFICATION NUMBER: 0<br>PROGRAM CODE: 4W | | DATE OF AWARD<br>11/30/2022 |
|---|---|---|---|
| | TYPE OF ACTION<br>New | | MAILING DATE<br>12/05/2022 |
| | PAYMENT METHOD:<br>ASAP | | ACH#<br>90008 |

| RECIPIENT TYPE:<br>State | Send Payment Request to:<br>Contact EPA RTPFC at: rtpfc-grants@epa.gov |
|---|---|
| RECIPIENT: | PAYEE: |
| CA Dept of Toxic Subs Control<br>1001 I St., P.O. Box 806<br>Sacramento, CA 95812<br>EIN: 68-0281381 | CA Dept of Toxic Subs Control<br>1001 I St., P.O. Box 806<br>Sacramento, CA 95812 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Nicole Behler<br>8800 Cal Center Drive<br>Sacremento, CA 95826<br>**Email:** nicole.behler@dtsc.ca.gov<br>**Phone:** 916-659-1057 | Noemi Emeric-Ford<br>600 Wilshire Blvd, Suite 940, LND-2-1<br>Los Angeles, CA 90017<br>**Email:** Emeric-Ford.Noemi@epa.gov<br>**Phone:** 213-244-1821 | Katya Obrez<br>Grants Branch, MSD-6<br>75 Hawthorne Street<br>San Francisco, CA 94105<br>**Email:** obrez.katya@epa.gov<br>**Phone:** 415-972-3744 |

**PROJECT TITLE AND DESCRIPTION**

BIL - STATE RESPONSE PROGRAM

See Attachment 1 for project description.

| BUDGET PERIOD<br>10/01/2022 - 10/31/2023 | PROJECT PERIOD<br>10/01/2022 - 10/31/2023 | TOTAL BUDGET PERIOD COST<br>$1,000,000.00 | TOTAL PROJECT PERIOD COST<br>$1,000,000.00 |
|---|---|---|---|

## NOTICE OF AWARD

Based on your Application dated 09/15/2022 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $1,000,000.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $1,000,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| ORGANIZATION / ADDRESS | ORGANIZATION / ADDRESS |
| U.S. EPA, Region 9 , U.S. EPA, Region 9 Grants Branch, MSD-6<br>75 Hawthorne Street<br>San Francisco, CA 94105 | U.S. EPA, Region 9, Land, Chemicals and Redevelopment, LND-1<br>R9 - Region 9<br>75 Hawthorne Street<br>San Francisco, CA 94105 |

| THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY | |
|---|---|
| Digital signature applied by EPA Award Official Carolyn Truong - Grants Management Officer | DATE<br>11/30/2022 |

4W - 98T51201 - 0    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $0 | $1,000,000 | $1,000,000 |
| EPA In-Kind Amount | $0 | $0 | $0 |
| Unexpended Prior Year Balance | $0 | $0 | $0 |
| Other Federal Funds | $0 | $0 | $0 |
| Recipient Contribution | $0 | $0 | $0 |
| State Contribution | $0 | $0 | $0 |
| Local Contribution | $0 | $0 | $0 |
| Other Contribution | $0 | $0 | $0 |
| Allowable Project Cost | $0 | $1,000,000 | $1,000,000 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.817 - State and Tribal Response Program Grants | CERCLA: Sec. 128(a)  & Infrastructure Investment and Jobs Act (IIJA) (PL 117-58) | 2 CFR 200, 2 CFR 1500, 40 CFR 33 and 40 CFR 35 Subpart A |

| Fiscal | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Site Name | Req No | FY | Approp. Code | Budget Oganization | PRC | Object Class | Site/Project | Cost Organization | Obligation / Deobligation |
| - | 2309QE0006 | 22 | E1SD | 09Q2 | 000D24X90 | 4113 | - | - | $1,000,000 |
| | | | | | | | | | $1,000,000 |

4W - 98T51201 - 0    Page 3

Budget Summary Page

| Table A - Object Class Category (Non-Construction) | Total Approved Allowable Budget Period Cost |
|---|---|
| 1. Personnel | $177,210 |
| 2. Fringe Benefits | $95,654 |
| 3. Travel | $132,000 |
| 4. Equipment | $0 |
| 5. Supplies | $0 |
| 6. Contractual | $325,000 |
| 7. Construction | $0 |
| 8. Other | $0 |
| 9. Total Direct Charges | $729,864 |
| 10. Indirect Costs: 0.00 % Base : refer to General T/C | $270,136 |
| 11. Total (Share: Recipient ___0.00 % Federal _100.00 %) | $1,000,000 |
| 12. Total Approved Assistance Amount | $1,000,000 |
| 13. Program Income | $0 |
| 14. Total EPA Amount Awarded This Action | $1,000,000 |
| 15. Total EPA Amount Awarded To Date | $1,000,000 |

## *Attachment 1 - Project Description*

EPA's CERCLA Section 128(a) grant program funds activities that establish or enhance the capacity of state and tribal response programs. The goals of this funding are to provide financial support for the elements of an effective state or tribal response program, as specified in CERCLA Section 128, and to ensure that states and tribes maintain a public record of sites included in their programs. The Infrastructure Investment and Jobs Act ("IIJA") provided additional funding to carry out the Section 128(a) grant program. The purpose of this award is to enhance the capacity of CA Department of Toxic Substances Control (CADTSC) brownfields response program to meet the Section 128(a) elements. CADTSC will oversee and perform planning, assessment, and cleanup of brownfields sites throughout the state. Additionally, there are multiple levels of goals ranging from short-long, such as creating cross-program synergies such that the communities and organizations using these funding and resources are able to take advantage of a steppingstone approach and use multiple sources of funding to alleviate pollutions burdens and revitalize community spaces for maxim benefit of those who live, work, learn and play in the areas.

This assistance agreement provides full federal funding in the amount of $1,000,000. Pre-award costs are approved back to 10/01/2022. CADTSC will perform the following activities: timely survey and inventory of brownfield sites, which are properties whose expansion, redevelopment, or reuse may be complicated by the presence of hazardous substances. It also includes oversight and enforcement authorities to ensure that response actions protect human health and the environment; resources to provide meaningful public involvement; mechanisms for approval of cleanup plans, and verification of complete responses. The objective of this project is to assist in remediating and reusing brownfields sites throughout the state. Additionally, this funding will allow CADTSC to establish an inter-agency working with State Agencies and Environmental justice, social justice, and housing justice advocacy groups.

CADTSC's Site Mitigation and Restoration Program Office of Brownfields, to which these Section 128(a) funds are applied, focuses on the maintenance and enhancement of CADTSC's brownfield infrastructure such as the development of tools and implementation of activities to support and facilitate the safe use and reuse of underutilized properties throughout California. Although the Section 128(a) funds are focused on increasing productivity of the voluntary agreements (DTSC's primary tool to support parties voluntarily addressing contamination to address use or reuse) the tools and enhancements developed with Section 128(a) funds are be used to enhance other DTSC Site Mitigation and Restoration Program activities. Additionally, resources from various support programs such as the Geological Services Branch, the Human and Ecological Risk Office, Public Participation Program, the Office of Environmental Equity, and the Grants and Program Support Branch are used to enhance the core activities conducted by the DTSC Site Mitigation and Restoration Program. No subawards are included in this assistance agreement.

## *Administrative Conditions*

Administrative Terms and Conditions "A" through "C" and General Terms and Conditions below apply.

**General Terms and Conditions**

The recipient agrees to comply with the current EPA general terms and conditions available at:
https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2022-or-later.

These terms and conditions are in addition to the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

**A.  Federal Financial Reporting (FFR)**

For awards with cumulative project and budget periods greater than 12 months, the recipient will submit an annual FFR (SF 425) covering the period from "project/budget period start date" to **June 30** of each calendar year to the EPA Finance Center in Research Triangle Park, NC.  The annual FFR will be submitted electronically to rtpfc-grants@epa.gov no later than **September 30** of the same calendar year. Find additional information at https://www.epa.gov/financial/grants. (NOTE: The grantee must submit the Final FFR to rtpfc-grants@epa.gov within 120 days after the end of the project period.)

**B.  Procurement**

The recipient will ensure all procurement transactions will be conducted in a manner providing full and open competition consistent with 2 CFR Part 200.319.  In accordance with 2 CFR Part 200.324, the grantee and subgrantee(s) must perform a cost or price analysis in connection with applicable procurement actions, including contract modifications.

*State recipients must follow procurement procedures as outlined in 2 CFR Part 200.317.*

**C.  MBE/WBE Reporting, 40 CFR, Part 33, Subpart E (EPA Form 5700-52A)**

The recipient agrees to submit a "MBE/WBE Utilization Under Federal Grants and Cooperative Agreements" report (EPA Form 5700-52A) annually for the duration of the project period. The current EPA Form 5700-52A with instructions is located at https://www.epa.gov/grants/epa-grantee-forms

This provision represents an approved exception from the MBE/WBE reporting requirements as described in 40 CFR Section 33.502.

Reporting is required for assistance agreements where funds are budgeted for procuring construction, equipment, services and supplies (including funds budgeted for direct procurement by the recipient or procurement under subawards or loans in the "Other" category) with a cumulative total that exceed the Simplified Acquisition Threshold (SAT) currently set at $250,000 (the dollar threshold will be automatically revised whenever the SAT is adjusted; See 2 CFR Section 200.1), including amendments and/or modifications. All procurement actions are reportable when reporting is required, not just the portion which exceeds the SAT.

Recipients with expended and/or budgeted funds for procurement are required to report annually whether the planned procurements take place during the reporting period or not. If no budgeted procurements take place during the reporting period, the recipient should check the box in section 5B when completing the form.

When completing the annual report, recipients are instructed to check the box titled "annual" in section 1B of the form. For the final report, recipients are instructed to check the box indicated for the "last report" of the project in section 1B of the form.  For section 2B, the Region 9 EPA DBA Coordinator is Alexandrea Perez, email: GrantsRegion9@epa.gov, phone: 415-972-3826.

The annual reports are due by October 30th of each calendar year and the final report is due within 120 days after the end of the project period, whichever comes first.  The recipient will submit the MBE/WBE report(s) and/or questions to GrantsRegion9@epa.gov and the EPA Grants Specialist identified on page 1 of the award document.

## *Programmatic Conditions*

Please refer to Attachment "A" for Programmatic Conditions.

**\*\*\* END OF ASSISTANCE AGREEMENT \*\*\***

4W - 98T51201 - 1    Page 1

| U.S. ENVIRONMENTAL PROTECTION AGENCY  Assistance Amendment | GRANT NUMBER (FAIN): 98T51201  MODIFICATION NUMBER: 1  PROGRAM CODE: 4W | DATE OF AWARD 07/21/2023 |
|---|---|---|
| | TYPE OF ACTION  Augmentation: Increase | MAILING DATE 07/26/2023 |
| | PAYMENT METHOD:  ASAP | ACH# 90008 |

| RECIPIENT TYPE:  State | Send Payment Request to:  Contact EPA RTPFC at: rtpfc-grants@epa.gov |
|---|---|

| RECIPIENT: | PAYEE: |
|---|---|
| CA Dept of Toxic Subs Control  1001 I St., P.O. Box 806  Sacramento, CA 95812-0806  EIN: 68-0281381 | CA Dept of Toxic Subs Control  1001 I St., P.O. Box 806  Sacramento, CA 95812 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Maryam Tasnif-abbasi  5796 Corporate Avenue  Cypress, CA 90630  **Email:** Maryam.Tasnif-abbasi@dtsc.ca.gov  **Phone:** 714-222-3485 | Noemi Emeric-Ford  600 Wilshire Blvd, Suite 940, LND-2-1  Los Angeles, CA 90017  **Email:** Emeric-Ford.Noemi@epa.gov  **Phone:** 213-244-1821 | Katya Obrez  Grants Branch, MSD-6  75 Hawthorne Street  San Francisco, CA 94105  **Email:** obrez.katya@epa.gov  **Phone:** 415-972-3744 |

**PROJECT TITLE AND EXPLANATION OF CHANGES**

BIL - STATE RESPONSE PROGRAM

EPA's CERCLA Section 128(a) grant program funds activities that establish or enhance the capacity of state and tribal response programs. The goals of this funding are to provide financial support for the elements of an effective state or tribal response program, as specified in CERCLA Section 128, and to ensure that states and tribes maintain a public record of sites included in their programs. The Infrastructure Investment and Jobs Act ("IIJA") provided additional funding to carry out the Section 128(a) grant program. The purpose of this award is to enhance the capacity of CADTSC brownfields response program to meet the Section 128(a) elements. CADTSC will oversee and perform planning, assessment, and cleanup of brownfields sites throughout the state, and conduct environmental outreach.

This amendment provides full federal funding in the amount of $1,300,000 and extends the budget and project period end dates from 10/31/2023 to 09/30/2024.

| BUDGET PERIOD  10/01/2022 - 09/30/2024 | PROJECT PERIOD  10/01/2022 - 09/30/2024 | TOTAL BUDGET PERIOD COST  $2,300,000.00 | TOTAL PROJECT PERIOD COST  $2,300,000.00 |
|---|---|---|---|

## NOTICE OF AWARD

Based on your Application dated 05/05/2023 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $1,300,000.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $2,300,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| U.S. EPA, Region 9 , U.S. EPA, Region 9 Grants Branch, MSD-6  75 Hawthorne Street  San Francisco, CA 94105 | U.S. EPA, Region 9, Land, Chemicals and Redevelopment, LND-1  R9 - Region 9  75 Hawthorne Street  San Francisco, CA 94105 |

| THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY | | |
|---|---|---|
| Digital signature applied by EPA Award Official for | Carolyn Truong - Grants Management Officer  Angela Mendiola - Award Official Delegate | DATE 07/21/2023 |

4W - 98T51201 - 1    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $1,000,000 | $1,300,000 | $2,300,000 |
| EPA In-Kind Amount | $0 | $0 | $0 |
| Unexpended Prior Year Balance | $0 | $0 | $0 |
| Other Federal Funds | $0 | $0 | $0 |
| Recipient Contribution | $0 | $0 | $0 |
| State Contribution | $0 | $0 | $0 |
| Local Contribution | $0 | $0 | $0 |
| Other Contribution | $0 | $0 | $0 |
| Allowable Project Cost | $1,000,000 | $1,300,000 | $2,300,000 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.817 - State and Tribal Response Program Grants | CERCLA: Sec. 128(a) & Infrastructure Investment and Jobs Act (IIJA) (PL 117-58) | 2 CFR 200, 2 CFR 1500, 40 CFR 33 and 40 CFR 35 Subpart A |

| Fiscal | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Site Name | Req No | FY | Approp. Code | Budget Oganization | PRC | Object Class | Site/Project | Cost Organization | Obligation / Deobligation |
| - | 2309QE0080 | 23 | E1SD | 09Q2 | 000D24X90 | 4113 | - | - | $1,300,000 |
| | | | | | | | | | $1,300,000 |

Budget Summary Page

| Table A - Object Class Category (Non-Construction) | Total Approved Allowable Budget Period Cost |
|---|---|
| 1. Personnel | $446,165 |
| 2. Fringe Benefits | $250,383 |
| 3. Travel | $302,000 |
| 4. Equipment | $0 |
| 5. Supplies | $0 |
| 6. Contractual | $650,000 |
| 7. Construction | $0 |
| 8. Other | $0 |
| 9. Total Direct Charges | $1,648,548 |
| 10. Indirect Costs: 0.00 % Base : refer to General T/C | $651,452 |
| 11. Total (Share: Recipient ___0.00 % Federal _100.00 %) | $2,300,000 |
| 12. Total Approved Assistance Amount | $2,300,000 |
| 13. Program Income | $0 |
| 14. Total EPA Amount Awarded This Action | $1,300,000 |
| 15. Total EPA Amount Awarded To Date | $2,300,000 |

## *Administrative Conditions*

Previous Administrative Terms and Conditions are reiterated and updated.

**General Terms and Conditions**

The General Terms and Conditions of this agreement are updated in accordance with the link below. However, these updated conditions apply solely to the funds added with this amendment and any previously awarded funds not yet disbursed by the recipient as of the award date of this amendment. The General Terms and Conditions cited in the original award or prior funded amendments remain in effect for funds disbursed by the recipient prior to the award date of this amendment.

The recipient agrees to comply with the current EPA general terms and conditions available at: https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2022-or-later.

These terms and conditions are binding for disbursements and are in addition to or modify the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

**A.  Federal Financial Reporting (FFR)**

For awards with cumulative project and budget periods greater than 12 months, the recipient will submit an annual FFR (SF 425) covering the period from "project/budget period start date" to **June 30** of each calendar year to the EPA Finance Center in Research Triangle Park, NC.  The annual FFR will be submitted electronically to rtpfc-grants@epa.gov no later than **September 30** of the same calendar year. Find additional information at https://www.epa.gov/financial/grants. (NOTE: The grantee must submit the Final FFR to rtpfc-grants@epa.gov within 120 days after the end of the project period.)

**B.  Procurement**

The recipient will ensure all procurement transactions will be conducted in a manner providing full and open competition consistent with 2 CFR Part 200.319.  In accordance with 2 CFR Part 200.324, the grantee and subgrantee(s) must perform a cost or price analysis in connection with applicable procurement actions, including contract modifications.

*State recipients must follow procurement procedures as outlined in 2 CFR Part 200.317.*

**C.  MBE/WBE Reporting, 40 CFR, Part 33, Subpart E (EPA Form 5700-52A)**

The recipient agrees to submit a "MBE/WBE Utilization Under Federal Grants and Cooperative Agreements" report (EPA Form 5700-52A) annually for the duration of the project period. The current EPA Form 5700-52A with instructions is located at https://www.epa.gov/grants/epa-grantee-forms

This provision represents an approved exception from the MBE/WBE reporting requirements as described in 40 CFR Section 33.502.

Reporting is required for assistance agreements where funds are budgeted for procuring construction, equipment, services and supplies (including funds budgeted for direct procurement by the recipient or procurement under subawards or loans in the "Other" category) with a cumulative total that exceed the **Simplified Acquisition Threshold (SAT) currently set at $250,000** (the dollar threshold will be automatically revised whenever the SAT is adjusted; See 2 CFR Section 200.1),

including amendments and/or modifications. All procurement actions are reportable when reporting is required, not just the portion which exceeds the SAT.

Recipients with expended and/or budgeted funds for procurement are required to report annually whether the planned procurements take place during the reporting period or not. If no budgeted procurements take place during the reporting period, the recipient should check the box in section 5B when completing the form.

When completing the annual report, recipients are instructed to check the box titled "annual" in section 1B of the form. For the final report, recipients are instructed to check the box indicated for the "last report" of the project in section 1B of the form.  For section 2B, the Region 9 EPA DBA Coordinator is Alexandrea Perez, email: GrantsRegion9@epa.gov, phone: 415-972-3826.

The annual reports are due by October 30th of each calendar year and the final report is due within 120 days after the end of the project period, whichever comes first.  The recipient will submit the MBE/WBE report(s) and/or questions to GrantsRegion9@epa.gov and the EPA Grants Specialist identified on page 1 of the award document.

## *Programmatic Conditions*

Previous Programmatic Terms and Conditions are superseded by the conditions in Attachment A. These conditions apply henceforth.

**\*\*\* END OF ASSISTANCE AGREEMENT \*\*\***

# ATTACHMENT A

## CERCLA SECTION 128(a) STATE AND TRIBAL RESPONSE PROGRAM
## FY22 INFRASTRUCTURE INVESTMENT AND JOBS ACT ("IIJA") FUNDING

## GRANT-SPECIFIC PROGRAMMATIC
## TERMS AND CONDITIONS
### For: California Department of Toxic Substances Control

### 4W-98T51201-1

Due to the budget accounting, tracking, and reporting requirements for the Infrastructure Investment and Jobs Act ("IIJA") funding, Section 128(a) cooperative agreements funded with IIJA money must be awarded separately from Section 128(a) cooperative agreements with annual appropriated funds. In the same vein, Section 128(a) IIJA funds are not eligible to be included in Performance Partnership Grants ("PPGs") under 40 CFR Part 35 Subparts A and B.  This restriction is intended to ensure that Section 128 Cooperative Agreement Recipients ("CARs") can effectively track, account for, and report on the use of IIJA funding.

If a CAR has two FY22 Section 128(a) Cooperative Agreements (one with annual appropriated funds and one with IIJA funds), the two awards must clearly delineate what activities will utilize annual appropriation funds versus IIJA funds.  CARs must work closely with EPA Project Officers to ensure that there is no duplication of work funded by the two sources of funding.

I.  **Response Program Elements**:  The CAR must demonstrate that it is taking reasonable steps to include, or has already included in its response program, the four elements identified in CERCLA Section 128(a)(2).

II.  **Substantial Involvement**:  This is a cooperative agreement that will entail substantial involvement by EPA to the extent Agency resources permit. Substantial EPA involvement includes:

A.  Consultation and collaboration on technical and policy matters at the CAR's request. EPA's Project Officer or designee may provide data, advice, and information that will help the CAR carry out the agreement effectively;

B.  EPA's Project Officer may review the substantive terms of professional services contracts or subawards the CAR enters into to carry out specific elements of the scope of work. Neither EPA's Project Officer nor any other EPA employee will direct, recommend, or suggest that the

CAR enter into a contract or subaward with a specific entity. EPA approval is not required for contracts for supplies, equipment, information technology and other administrative support services;

C.  EPA's Project Officer may review the qualifications of key staff hired by the CAR or consultants with whom the CAR contracts to carry out specific elements of the scope of work when those staff or contractors are paid by the grant funds. Neither EPA's Project Officer nor any other EPA employee will direct, recommend, or suggest that the CAR hire a particular individual or enter into a consulting contract with a specific entity;

D.  Monitoring by EPA of the CAR's performance under the agreement; and

III.  **Public Record System**:  The CAR must establish a public record system pursuant to CERCLA Section 128(b)(1)(C). The public record must be maintained and updated at least annually and include the requirements listed below.

A.  For sites where response actions were completed in the previous grant project year, include the following:

> 1.  Date the response action was completed;

> 2.  Site name, name of owner at time of cleanup, and type of site (e.g., petroleum, methamphetamine laboratory, mine scarred lands);

> 3.  Location of the site (street address, latitude and longitude);

> 4.  Explanation of whether or not the site will be suitable for unrestricted use upon completion of the response action.  If not, the public record must identify and describe the institutional control(s) in place or relied on for the remedy (e.g., deed restriction);

> 5.  Nature of the contamination at the site (e.g., hazardous substances, contaminants, pollutants, petroleum contamination, etc.); and

> 6.  Size of the site in acres.

B.  A list of sites planned to be addressed in the next year by the state or tribal response program including:

> 1.  Site name, name of owner at time of cleanup, and type of site (e.g., petroleum, methamphetamine laboratory, mine scarred lands);

> 2.  Location of the site (street address, latitude and longitude);

> 3.  To the extent known, whether an institutional control is in place. If so, describe the type of institutional control in place (e.g., deed restriction);

4.  To the extent known, the nature of the contamination at the site (e.g., hazardous substances, contaminants, pollutants, petroleum contamination, etc.); and

5.  Size of the site in acres.

C.  Once a public record is established in a manner consistent with CERCLA Section 128(b)(1)(C), CARs must maintain the public record throughout the duration of this agreement.

## IV. Site-Specific Assessment and Cleanup Activities:

A.  Consistent with CERCLA Section 128(a)(2)(C)(iii), EPA guidance, and to the extent authorized by the scope of work for this agreement, the CAR may conduct assessments or cleanups at sites that meet the definition of a brownfield site at CERCLA Section 101(39) in response to a request by a person who is or may be affected by a release or threatened release of a hazardous substance, pollutant, contaminant, or petroleum at a brownfield located in the community in which the person works or resides. Assessments and cleanups must comply with all applicable laws and are subject to the following restrictions:

1.  Absent approval by EPA's Project Officer, no more than $250,000 per site can be funded for assessments, and no more than $250,000 per brownfield site can be funded for cleanups. *This per-site cap includes the FY22 funding that a CAR has already been allocated from FY22 Section 128(a) Annual Appropriation funds; it does not add an additional $250,000 on top of the $200,000 cap from the previous award. If the CAR's FY22 workplan for a CERCLA 128 grant funded with annual appropriated funds addresses a site assessment or cleanup and has reached the previous cap of $200,000, the CAR may add $50,000.*

2.  Absent approval by EPA's Project Officer, the CAR may not use funds awarded under this agreement to assess and/or cleanup brownfields owned by the CAR or held in trust by the United States Government for the CAR.

4.  Assessments and cleanups may not be conducted at brownfields where the CAR is a potentially responsible party ("PRP") pursuant to CERCLA Section 107, except when the CAR acquired the property before January 11, 2002, and has not caused or contributed to a release or threatened release of a hazardous substance at the property.

B.  Consistent with CERCLA Section 128(a)(2)(B)(ii), and to the extent authorized by the scope of work for this agreement, the CAR may use funds awarded under this agreement to complete the necessary response activities, including assessments and cleanups, if the person conducting a response action overseen by the CAR fails to complete the necessary response activities, including operation and maintenance or long-term monitoring activities. Assessments and cleanups under this provision must comply with all applicable laws and are subject to the following restrictions:

1.  Absent approval by EPA's Project Officer, the CAR may not use funds awarded under this agreement to assess and cleanup sites owned by the CAR.

3

2.  The CAR may not use funds awarded under this agreement to assess or cleanup sites for which the CAR is a potentially responsible party (pursuant to CERCLA Section 107), with the exception of sites contaminated by a controlled substance as defined in CERCLA Section 101(39)(D)(ii)(I).

C.  For the site-specific activities under paragraphs III.A. and III.B., the CAR must maintain documentation supporting the CAR's conclusion that the site meets the brownfield definition in CERCLA Section 101(39). For those sites which are excluded from the brownfield definition, pursuant to CERCLA Section 101(39)(B), but are eligible for a property-specific funding determination pursuant to CERCLA Section 101(39)(C), the CAR must comply with paragraph IV below. NOTE: To the extent authorized in the scope of work for this agreement, the CAR may conduct oversight of cleanups at sites other than brownfields. Records must be maintained per 2 CFR 200.334.

D.  For site-specific activities at petroleum-only brownfields sites (CERCLA Section 101(39)(D)(ii)(II)), the requirements listed below apply.

    1.  The CAR must determine and maintain supporting documentation that:

        a)  There is no viable responsible party for the site;

        b)  The site will not be assessed, investigated, or cleaned up by a person that is potentially liable for cleaning up the site; and

        c)  The site is not subject to any order issued under Section 9003(h) of the Solid Waste Disposal Act.

    2. The supporting documentation must identify the state official who made the determinations identified in D.1., the date the CAR obtained the determinations, and a summary of each conclusion.

E.  **Site-specific Activity Funding Limit**:  The amount requested for site-specific assessments and cleanups **may not exceed 75%** of the total amount of Section 128(a) funding awarded to the CAR during FY 2022. This 75% cap includes the FY22 funding that the CAR received from the FY22 Section 128(a) Annual Appropriation funds plus the FY22 funding that the CAR is receiving in FY22 IIJA funds. *[Note: Oversight of assessment and cleanup activities performed by responsible parties (other than the state or tribe) does not count toward the 75% limit. The 75% cap also does not include personnel or supplies/equipment purchased in support of site-specific work.]*

A CAR may submit to the EPA Project Officer a written request for a waiver to exceed the 75% of annual funding for site-specific activities, as described under Section III A-D.  The EPA Project Officer will review the waiver request and make a recommendation to EPA's Office of Brownfields and Land Revitalization, who will determine if the requested waiver is approved. The EPA Project Officer will notify the CAR of EPA's determination.

The CAR's written waiver request submitted to the EPA Project Officer must include a brief justification describing the reason(s) for spending more than 75% of their FY22 total allocation [which includes the FY22 funding that the CAR received from the FY22 Section 128(a) Annual Appropriation funds plus the FY22 funding that the CAR is receiving in FY22 IIJA funds] on site-specific activities and must include the following information:

    1.  Provide the percentage of the eligible brownfield site-specific activities (assuming waiver is approved) in the CAR's total FY22 budget;

    2.  List all site-specific activities that will be covered by this funding.  If known, provide site-specific information and a description of how work on each site contributes to the establishment or enhancement of your state/tribal response program.  EPA encourages states and tribes to use site-specific funding to perform assessment and cleanup activities that will expedite the reuse and redevelopment of sites, and prioritize sites based on need. Further explain how the community will be (or has been) involved in prioritization of site work and especially those sites where there is a potential or known significant environmental impact to the community;

    3.  Explain how this shift in funding will not negatively impact the core programmatic capacity (i.e., the ability to establish/enhance four elements of a response program) and how it will be maintained in spite of an increase in site-specific work.  Grantees must demonstrate that they have adequate funding from other sources to effectively carry out work on the four elements for EPA to grant a waiver of the 75% limit on using 128(a) funds for site-specific activities;

    4.  Describe how this shift in funding towards site-specific work is appropriate for your response program; and

    5.  Explain whether the sites to be addressed are those for which the affected community/ies has/have requested work be conducted.

**V.  Property-Specific Funding Determinations:**

A.  If a CAR plans to use funds for site-specific activities at a site that is excluded from the definition of a brownfield in CERCLA Section 101(39)(A) and (B) but is eligible for a property-specific funding determination, then the CAR must provide information sufficient for EPA's Regional Approval Official, as delegated by Delegation 14-44 and 14-45, to make a property-specific funding determination. Sites eligible for property-specific funding are defined in CERCLA Section 101(39)(C). The CAR must comply with the following requirements:

    1.  The CAR must not incur any site-specific costs for those sites which require a property-specific funding determination under this agreement (other than those necessary to provide information to EPA) until EPA's Approval Official makes a property-specific funding determination.

2.  The CAR must submit to EPA's Project Officer a written request for a property-specific funding determination. The request must include information about the site (e.g., name, location, owners) and explain how the financial assistance will:

    a)  Protect human health and the environment, and

    b)  Either promote economic development or enable the creation of, preservation of, or addition to parks, greenways, undeveloped property, other recreational property or other property used for nonprofit purposes.

B.  Any property-specific funding determination granted by EPA does not obviate the CAR's responsibility to incur only costs that meet the terms and conditions of the agreement and are allowable under 2 CFR Parts 200 and 1500 for governmental entities.

**VI.  Institutional Controls**:  To the extent authorized by the scope of work for this agreement, the CAR may use funding under this agreement to maintain and monitor institutional controls.

**VII.  Grant Performance Reporting Requirements:**

A.  Performance Reporting Requirements for Program Activity Levels ("PALs")

CARs must report Program Activity Levels ("PALs") **once** annually when the Section 128(a) funding request is due to the appropriate EPA Regional Office in mid-December. CARS **are not** required to provide two separate PALs reports for FY22.  PALs summarize the work from the previous federal fiscal year, therefore, CAR's *responses to the PALs questions should reflect activities for the period covering the last federal fiscal year (October 1 – September 30)*, including:

1.  Environmental programs where CERCLA 128(a) funds are used to support capacity building [general program support, non-site-specific work]. Specify which programs were supported with 128(a) funds from the following: Brownfields, Underground Storage Tanks/Leaking Underground Storage Tanks, Federal Facilities, Solid Waste Superfund, Hazardous Waste Facilities, VCP (Voluntary Cleanup Program, Independent Cleanup Program, etc.), and Other;

2.  Number of properties (or sites) enrolled in a response program during previous federal fiscal year;

3.  Number of properties (or sites) where documentation indicates that cleanup work is complete AND either (a) all required institutional controls (IC's) are in place, or (b) the cleanup does not require ICs;

4.  Total number of acres associated with properties (or sites) in the previous question (Question #3);

5.  OPTIONAL: Number of properties (or sites) where assistance was provided, but the property was not enrolled in a response program;

6.  Date that the public record was last updated;

7.  Number of audits/inspections/reviews/other conducted to ensure engineering controls and institutional controls are still protective; and

8.  Did you develop or revise legislation, regulations, codes, guidance documents or policies related to establishing or enhancing your Voluntary Cleanup Program/Response Program during FY21? If yes, please indicate the type and whether it was new or revised.

**For FY22, CARs must report PALs information either directly in EPA's Assessment, Cleanup and Redevelopment Exchange System ("ACRES") database OR by filling out the form found at  https://www.epa.gov/brownfields/program-activity-levels-pals-reporting-form and providing it to the appropriate EPA Regional Office along with the CAR's FY23 funding request in mid-December.**

**Beginning in FY23, CARs will only be able to provide PALs information directly into ACRES.**

**For detailed instructions on how to report PALs in ACRES, please see the quick reference guide at https://www.epa.gov/brownfields/brownfields-grantee-reporting-using-assessment-cleanup-and-redevelopment-exchange.**

B.  Quarterly Performance Reporting Requirements:  CAR agrees to provide performance reports quarterly. The reports will be due no later than 30 calendar days after the reporting period.

1.  All interim and final progress reports must prominently display the following three relevant Essential Elements as reflected in the current EPA strategic plan:

a)  Strategic Plan Goal 6: Safeguard and Revitalize Communities

b)  Strategic Plan Objective 6.1: Clean Up and Restore Land for Productive Uses and Healthy Communities

c)  Work plan Commitments and Timeframes: See work plan for specifics.

2.  The CAR will report on milestones, activities, and outputs achieved under this agreement. Examples of items to include:

a)  The completion of significant site planning, assessment, cleanup, or redevelopment activities, including any relevant information regarding whether such activities anticipated or otherwise considered the impacts of climate change and/or benefited a community with environmental justice concerns. [The EPA describes environmental justice ("EJ") as the fair treatment and meaningful

7

involvement of all people regardless of race, color, national origin, or income with respect to the development, implementation and enforcement of environmental laws, regulations, and policies.  For example, an "underserved community" refers to a community with environmental justice concerns and/or vulnerable populations, including low-income citizens, communities of color, and tribal and Indigenous peoples.];

b)  Information regarding significant outreach, meeting, or training events, including whether such outreach engaged communities with environmental justice concerns;

c)  Significant updates to a website or tracking system or improvements to the process;

d)  For site-specific work, details such as where and when the activity was conducted and why, who was involved or impacted, and what was accomplished, including whether site-specific work anticipated or otherwise considered the impacts of climate change and/or benefited a community with environmental justice concerns. The narrative may range in length between a paragraph and one page in length for a specific site.  Provide before and after photos of site work and photos of events, unless the site assessment report already has been provided to EPA as a deliverable.

e)  A budget summary table which may include the following information: current approved project budget; costs incurred during the reporting quarter; costs incurred to date (cumulative expenditures); and total remaining funds.

3.  All CARs must report information relating to establishing and maintaining the public record described in paragraph II above and provide the date of the last update. (NOTE: For this requirement, CARs can refer to their already existing public record, such as a website or other public database).

4.  CARs with work plans that include funding for other site-related activities must include a description of the activities and provide the number of sites at which the activities were conducted. For example:

a)  Number and frequency of oversight reviews (internal audits) of licensed site professional certified cleanups.

b)  Number and frequency of state/tribal oversight reviews (internal audits) conducted.

c)  Number of sites where staff conducted reviews (internal audits), provided technical assistance, or conducted other oversight activities.

d)  Number of staff conducting oversight reviews (internal audits), providing technical assistance, or conducting other oversight activities.

5.  CARs with work plans that include funding for environmental insurance must report:

a)  The number and description of insurance policies purchased (e.g., type of coverage provided, dollar limits of coverage, category and identity of insured persons, premium, first dollar or umbrella, site-specific or blanket, occurrence or claims made, etc.);

b)  The number of sites covered by the insurance; and

c)  The amount of funds spent on environmental insurance (e.g., amount dedicated to insurance program or to insurance premiums), and the number of claims paid by insurers to policyholders.

7.  CARs must report activities related to establishing or enhancing the four elements of the state or tribe's response program:

a)  For each element, CARs must report how they are maintaining the element or how they are taking reasonable steps to establish or enhance the element as negotiated in individual CAR work plans. For example, pursuant to CERCLA Section 128(a)(2)(B), reports on the oversight and enforcement authorities/mechanisms element may include:

(1)  A narrative description and copies of applicable documents developed or under development to enable the response program to conduct enforcement and oversight at sites. For example:

(a)  Legal authorities and mechanisms (e.g., statutes, regulations, orders, agreements);

(b)  Cleanup standards for soil and water; and

(c)  Policies and procedures to implement legal authorities; and

(d)  Other mechanisms;

(2)  A description of the resources and staff allocated/to be allocated to the response program to conduct oversight and enforcement at sites as a result of the grant;

(3)  A narrative description of how these authorities or other mechanisms and resources are adequate to ensure that:

9

(a)  A response action will protect human health and the environment and be conducted in accordance with applicable laws; and

(b)  A response action will be completed if the person conducting the response action fails to conduct the necessary response activities, including operation and maintenance or long-term monitoring activities;

(4)  A narrative description and copy of appropriate documents demonstrating the exercise of oversight and enforcement authorities by the response program at a site.

b)  EPA strongly encourages CARs to report specific performance measures related to the four elements in progress reports.  These data may be aggregated for national reporting to Congress, and include:

(1)  Timely Survey & Inventory - Estimated number of brownfield sites in the state or tribal response program.

(2)  Oversight & Enforcement Authorities/Mechanisms - Number of active cleanups and percentage that received oversight; percentage of active cleanups not in compliance with the cleanup work plan and that received communications from the CAR regarding non-compliance.

(3)  Public Participation - Percentage of sites in the state or tribal response program where public meetings/notices were conducted regarding the cleanup plan and/or other site activities; number of requests and responses to site assessment requests.

(4)  Cleanup Approval/Certification Mechanisms - Total number of "no further action" letters or total number of certificate of completions.

[NOTE: This reporting requirement includes activities not funded with CERCLA Section 128(a) funding, because this information may be used by EPA to evaluate whether CARs have met or are taking reasonable steps to meet the four elements of a response program pursuant to CERCLA Section 128(a)(2).]

C.  <u>Significant Developments</u>: As required by 2 CFR 200.329(e), the CAR must inform EPA and report on significant impacts to grant-supported activities when they occur between the scheduled reporting dates.  Significant developments to report may include problems or delays (such as staff vacancies or travel restrictions) as well as favorable developments or successes associated with milestones and activities as listed under section VII.B above.

D.  Reporting Requirements Related to Site Assessment and Cleanup Work:  The CARs must report on interim progress (e.g., assessment started) and any final accomplishments (e.g., assessment completed, cleanup required, contaminants, Institutional Controls, Engineering Controls) by submitting information into the Brownfields online reporting system, known as the Assessment, Cleanup and Redevelopment Exchange System ("ACRES"). The CAR must enter this data into ACRES within 30 days of the end of the next reporting period or sooner at EPA's request. EPA will provide the CARs with training, which is required to obtain access to ACRES.

E.  Final Report:  The CAR must submit a final performance report at the end of the period of performance in order to finalize the closeout of the grant. This final report must capture the work that was performed during the period of performance, explain how the funding was utilized, and may include a summary of activities as is listed under VI.B. above. The final report is due within 120 days of the end of the period of performance and, with approval from the EPA Project Officer, may be submitted in lieu of a final quarterly or semi-annual report.

F.  Updating the State Brownfields and Voluntary Response Programs Report in ACRES

State CARs must update their state response program information in ACRES at least once a year (and may update more frequently if changes in their response program warrant an additional update), so that EPA has accurate, up-to-date information to share with the public in the form of a State Brownfields and Voluntary Response Program Report. EPA expects that this annual update will occur when states are already in the ACRES database performing other required ACRES reporting, thereby reducing the administrative burden.

For detailed instructions on how to update your state brownfields information in ACRES, please see the quick reference guide at https://www.epa.gov/brownfields/brownfields-grantee-reporting-using-assessment-cleanup-and-redevelopment-exchange.

G.  This is an interim term and condition for management of funding provided under the IIJA. EPA's Award Official or Grants Management Officer may amend this agreement to specify additional requirements applicable to IIJA funding as information becomes available. In the interim, the recipient agrees to have financial management and programmatic management systems in place to:

a.  **Track and report on expenditures of IIJA funds.**

b.  **Track and report outputs and outcomes achieved with IIJA funds.**

**VIII.  General Federal Requirements**:  The CAR must comply with federal cross-cutting requirements. These requirements include, but are not limited to, minority business enterprise (MBE)/women's business enterprise (WBE) requirements found at 40 CFR Part 33; nondiscrimination statutes, including Title VI of the Civil Rights Act of 1964, and EPA's implementing regulations found at 40 C.F.R. Parts 5 and 7; OSHA Worker Health & Safety Standards in 29 CFR 1910.120; the Uniform Relocation Act; National Historic Preservation Act; Endangered Species Act; Permits required by Section 404 of the Clean Water Act; Executive Order 11246, Equal Employment Opportunity, and implementing regulations at 41 CFR 60-4;

Contract Work Hours and Safety Standards Act, as amended (40 USC 327-333); the Anti-Kickback Act (40 USC 276c); and Section 504 of the Rehabilitation Act of 1973, as implemented by Executive Orders 11914 and 11250.  EPA provides additional information on cross-cutting requirements in EPA Subaward Cross Cutter Requirements.

**IX.  Program Income**:  In accordance with 2 CFR 1500.8, the CAR is authorized to add program income generated under this agreement to the funds committed by EPA. The CAR can use this program income to carry out activities described in the scope of work for this agreement and under the same terms and conditions of the agreement.  *Program income* is defined generally at 2 CFR 200.1.  For the purposes of this agreement, program income includes fees charged participants in the CAR's voluntary cleanup program or other fees for services (only to the extent that these fees recover costs charged to this agreement). Costs the CAR recovers for cleanups and site assessments are program income to the same extent that the recovered costs represent costs charged to this agreement. The CAR must provide as part of its quarterly and final performance report, a description of how program income is being used. In addition, a report on the amount of program income earned during the award period must be submitted with the Quarterly and Final Federal Financial Report, Standard Form 425.

The CAR will maintain records adequate to document the extent to which transactions generate program income and the disposition of program income. As required by 2 CFR 200.305(b)(5), tribal CARs will disburse program income before requesting additional payments under this agreement.  State CARs are subject to 2 CFR 200.305(a).

**X.  Quality Assurance**

Authority: Quality Assurance applies to all assistance agreements involving environmental information (including environmental data collection, production, or use) as defined in 2 C.F.R. § 1500.12 Quality Assurance.

The CAR shall ensure that subawards involving environmental information issued under this agreement include appropriate quality requirements for the work. The CAR shall ensure sub-award recipients develop and implement the Quality Assurance ("QA") planning documents in accordance with this term and condition; and/or ensure sub-award recipients implement all applicable approved QA planning documents.

**1. Quality Management Plan (QMP)**

a. Prior to beginning environmental information operations, the recipient must:

i. Develop a QMP,

ii. Prepare the QMP in accordance with the current version of EPA's Quality Management Plan (QMP) Standard. Submit the document for EPA review, and

iv. Obtain EPA Quality Assurance Manager or designee (hereafter referred to as QAM) approval.

**OR**

b. The recipient must submit the QMP within 90 days after grant award, and/or no more than 90 days after grant award.

c. The recipient must review their approved QMP at least annually. These documented reviews shall be made available to the sponsoring EPA organization if requested. When necessary, the recipient shall revise its QMP to incorporate minor changes and notify the EPA PO and QAM of the changes. If significant changes have been made to the Quality Program that affect the performance of environmental information operations, it may be necessary to re-submit the entire QMP for re-approval. In general, a copy of any QMP revision(s) made during the year should be submitted to the EPA PO and QAM in writing when such changes occur. Conditions requiring the revision and resubmittal of an approved QMP can be found in section 6 of EPA's Quality Management Plan (QMP) Standard.

## 2. Quality Assurance Project Plan (QAPP)

a. Prior to beginning environmental information operations, the recipient must:

i. Develop a QAPP,

ii. Prepare QAPP in accordance with the current version of EPA QA/R-5: EPA Requirements for Quality Assurance Project Plans,

iii. Submit the document for EPA review, and

iv. Obtain EPA Quality Assurance Manager or designee (hereafter referred to as QAM) approval.

b. The recipient must submit the QAPP 90 days after grant award, and/or no more than 90 days after grant award.

c. The recipient shall notify the PO and QAM when substantive changes are needed to the QAPP. EPA may require the QAPP be updated and re-submitted for approval.

d. The recipient must review their approved QAPP at least annually. The results of the QAPP review and any revisions must be submitted to the PO and the QAM at least annually and may also be submitted when changes occur

**For Reference:**

• Quality Management Plan (QMP) Standard and EPA QA/R-5: *EPA Requirements for Quality Assurance Project Plans*; contain quality specifications for EPA and non-EPA organizations and definitions applicable to these terms and conditions.

• EPA QA/G-5: *Guidance for Quality Assurance Project Plans*, Appendix C provides a QAPP Checklist.

• (QAM and/or PO may insert QA references that inform or assist the recipient here).

• EPA's Quality Program website has a list of QA managers, and Non-EPA Organizations Quality Specifications.

• The Office of Grants and Debarment Implementation of Quality Assurance Requirements for Organizations Receiving EPA Financial Assistance.

XI. **Competency of Organizations Generating Environmental Measurement Data**: In accordance with Agency Policy Directive Number FEM-2012-02, Policy to Assure the Competency of Organizations Generating Environmental Measurement Data under Agency-Funded Assistance Agreements, CAR agrees, by entering into this agreement, that it has demonstrated competency prior to award, or alternatively, where a pre-award demonstration of competency is not practicable, the CAR agrees to demonstrate competency prior to carrying out any activities under the award involving the generation or use of environmental data. The CAR shall maintain competency for the duration of the agreement's period of performance, and this will be documented during the annual reporting process. A copy of the Policy is available online at http://www.epa.gov/fem/lab_comp.htm, or a copy may also be requested by contacting the EPA project officer for this award.

XII. **Geospatial Data Standards:** All geospatial data created must be consistent with Federal Geographic Data Committee ("FGDC") endorsed standards. Information on these standards may be found at https://www.fgdc.gov/.

XIII. **Cybersecurity Grant Condition**

A. The CAR agrees that when collecting and managing environmental data under this assistance agreement, it will protect the data by following all applicable State law cybersecurity requirements.

B. (1) EPA must ensure that any connections between the CAR's network or information system and EPA networks used by the CAR to transfer data under this agreement, are secure.

For purposes of this Section, a connection is defined as a dedicated persistent interface between an Agency IT system and an external IT system for the purpose of transferring information. Transitory, user-controlled connections such as website browsing are excluded from this definition.

If the CAR's connections, as defined above, do not go through the Environmental Information Exchange Network or EPA's Central Data Exchange, the CAR agrees to contact the EPA Project Officer (PO) and work with the designated Regional/Headquarters Information Security Officer to ensure that the connections meet EPA security requirements, including entering into Interconnection Service Agreements as appropriate. This condition does not apply to manual

14

entry of data by the CAR into systems operated and used by EPA's regulatory programs for the submission of reporting and/or compliance data.

(2) The CAR agrees that any subawards it makes under this agreement will require the subrecipient to comply with the requirements in (b)(1) if the subrecipient's network or information system is connected to EPA networks to transfer data to the Agency using systems other than the Environmental Information Exchange Network or EPA's Central Data Exchange. The CAR will be in compliance with this condition: by including this requirement in subaward agreements; and during subrecipient monitoring deemed necessary by the CAR under 2 CFR 200.332(d), by inquiring whether the subrecipient has contacted the EPA Project Officer. Nothing in this condition requires the CAR to contact the EPA Project Officer on behalf of a subrecipient or to be involved in the negotiation of an Interconnection Service Agreement between the subrecipient and EPA.

# Davis-Bacon Terms and Conditions For Cooperative Agreements to Governmental Entities

DAVIS-BACON PREVAILING WAGE TERM AND CONDITION

The following terms and conditions specify how Cooperative Agreement Recipients (CARs) will assist EPA in meeting its Davis-Bacon (DB) responsibilities when DB applies to EPA awards of financial assistance under CERCLA 104(g) and any other statute which makes DB applicable to EPA financial assistance. If a CAR has questions regarding when DB applies, obtaining the correct DB wage determinations, DB contract provisions, or DB compliance monitoring, they should contact the regional Brownfields Coordinator or Project Officer for guidance.

## 1. Applicability of the Davis-Bacon Prevailing Wage Requirements

After consultation with DOL, EPA has determined that for Brownfields Grants for remediation of sites contaminated with hazardous substances and petroleum, DB prevailing wage requirement apply when the project includes the following activities.

Hazardous substances contamination:

> (a) All construction, alteration and repair activity involving the remediation of hazardous substances, including excavation and removal of hazardous substances, construction of caps, barriers, structures which house treatment equipment, and abatement of contamination in buildings.

Petroleum contamination:

> (a) Installing piping to connect households or businesses to public water systems or replacing public water system supply well(s) and associated piping due to groundwater contamination,

> (b) Soil excavation/replacement when undertaken in conjunction with the installation of public water lines/wells described above, or

> (c) Soil excavation/replacement, tank removal, and restoring the area by paving or pouring concrete when the soil excavation/replacement occurs in conjunction with both tank removal and paving or concrete replacement.

> In the above circumstances, all the laborers and mechanics employed by contractors and subcontractors will be covered by the DB requirements for all construction work performed on the site. Other petroleum site cleanup activities such as in situ remediation, and soil excavation/replacement and tank removal when not in conjunction with paving or concrete replacement, will normally not trigger DB requirements.

If the CAR encounters a unique situation at a site (e.g., unusually extensive excavation, construction of permanent facilities to house in situ remediation systems, reconstruction of roadways) that presents uncertainties regarding DB applicability, the CAR must discuss the situation with EPA before authorizing work on that site.

16

2. Obtaining Wage Determinations

(a) Unless otherwise instructed by EPA on a project specific basis, the CAR shall use the following DOL General Wage Classifications for the locality in which the construction activity subject to DB will take place. CARs must obtain proposed wage determinations for specific localities at https://beta.sam.gov/.

(i) When soliciting competitive contracts, awarding new contracts or issuing task orders, work assignments or similar instruments to existing contractors (ordering instruments), the CAR shall use the "Heavy Construction" classification for the following activities:

Hazardous substances contamination: excavation and removal of hazardous substances, construction of caps, barriers, and similar activities that do not involve construction of buildings.

Petroleum contamination: installing piping to connect households or businesses to public water systems or replacing public water system supply well(s) and associated piping, including soil excavation/replacement.

(ii) When soliciting competitive contracts, awarding new contracts, or issuing ordering instruments, the CAR shall use the "Building Construction" classification for the following activities:

Hazardous substances contamination: construction of structures which house treatment equipment, and abatement of contamination in buildings (other than residential structures less than 4 stories in height).

Petroleum contamination: soil excavation/replacement, tank removal, and restoring the area by paving or pouring concrete when the soil excavation/replacement occurs in conjunction with both tank removal and paving or concrete replacement at current or former service station sites, hospitals, fire stations, industrial or freight terminal facilities, or other sites that are associated with a facility that is not used solely for the underground storage of fuel or other contaminant.

(iii) When soliciting competitive contracts, awarding new contracts or issuing ordering instruments for soil excavation/replacement, tank removal, and restoring the area by paving or pouring concrete when the soil excavation/replacement occurs in conjunction with both tank removal and paving or concrete replacement at a facility that is used solely for the underground storage of fuel or other contaminant the CAR shall use the "Heavy Construction" classification. (Only applies to petroleum contamination.)

(iv) When soliciting competitive contracts, awarding new contracts or issuing ordering instruments for the abatement of contamination in residential structures less than

17

4 stories in height the CAR shall use "Residential Construction" classification. (Only applies to hazardous substances contamination.)

Note: CARs must discuss unique situations that may not be covered by the General Wage Classifications described above with EPA. If, based on discussions with a CAR, EPA determines that DB applies to a unique situation (e.g., unusually extensive excavation) the Agency will advise the CAR which General Wage Classification to use based on the nature of the construction activity at the site.

(b)  CARs shall obtain the wage determination for the locality in which a Brownfields cleanup activity subject to DB will take place *prior* to issuing requests for bids, proposals, quotes or other methods for soliciting contracts (solicitation) for activities subject to DB. These wage determinations shall be incorporated into solicitations and any subsequent contracts. Prime contracts must contain a provision requiring that subcontractors follow the wage determination incorporated into the prime contract.

(i) While the solicitation remains open, the CAR shall monitor https://beta.sam.gov/ on a weekly basis to ensure that the wage determination contained in the solicitation remains current. The CAR shall amend the solicitation if DOL issues a modification more than 10 days prior to the closing date (i.e. bid opening) for the solicitation. If DOL modifies or supersedes the applicable wage determination less than 10 days prior to the closing date, the CAR may request a finding from EPA that there is not a reasonable time to notify interested contractors of the modification of the wage determination. EPA will provide a report of the Agency's finding to the CAR.

(ii) If the CAR does not award the contract within 90 days of the closure of the solicitation, any modifications or supersedes DOL makes to the wage determination contained in the solicitation shall be effective unless EPA, at the request of the CAR, obtains an extension of the 90-day period from DOL pursuant to 29 CFR 1.6(c)(3)(iv). The CAR shall monitor https://beta.sam.gov/ on a weekly basis if it does not award the contract within 90 days of closure of the solicitation to ensure that wage determinations contained in the solicitation remain current.

(iii) If the CAR carries out Brownfields cleanup activity subject to DB by issuing a task order, work assignment or similar instrument to an existing contractor (ordering instrument) rather than by publishing a solicitation, the CAR shall insert the appropriate DOL wage determination from https://beta.sam.gov/ into the ordering instrument.

(c) CARs shall review all subcontracts subject to DB entered into by prime contractors to verify that the prime contractor has required its subcontractors to include the applicable wage determinations.

(d) As provided in 29 CFR 1.6(f), DOL may issue a revised wage determination applicable to a CAR's contract after the award of a contract or the issuance of an ordering instrument if

18

DOL determines that the CAR has failed to incorporate a wage determination or has used a wage determination that clearly does not apply to the contract or ordering instrument.  If this occurs, the CAR shall either terminate the contract or ordering instrument and issue a revised solicitation or ordering instrument or incorporate DOL's wage determination retroactive to the beginning of the contract or ordering instrument by change order. The CAR's contractor must be compensated for any increases in wages resulting from the use of DOL's revised wage determination.

3. Contract and Subcontract Provisions

(a) The CAR shall insert in full in any contract in excess of $2,000 which is entered into for the actual construction, alteration and/or repair, including painting and decorating, of a public building or public work, or building or work financed in whole or in part from Federal funds or in accordance with guarantes of a Federal agency or financed from funds obtained by pledge of any contract of a Federal agency to make a loan, grant or annual contribution (except where a different meaning is expressly indicated), and which is subject to DB, the following labor standards provisions.

(1) Minimum wages.

(i) All laborers and mechanics employed or working upon the site of the work will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR Part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the applicable wage determination of the Secretary of Labor which the CAR obtained under the procedures specified in Item 2, above, and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the contractor and such laborers and mechanics.

Contributions made or costs reasonably anticipated for bona fide fringe benefits under section 1(b)(2) of the Davis-Bacon Act on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of paragraph (a)(1)(iv) of this section; also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs which cover the particular weekly period, are deemed to be constructively made or incurred during such weekly period. Such laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed, without regard to skill, except as provided in § 5.5(a)(4). Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein: Provided that the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classification and

wage rates conformed under paragraph (a)(1)(ii) of this section) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the contractor and its subcontracts at the site of the work in a prominent and accessible place where it can be easily seen by the workers. CARs shall require that the contractor and subcontractors include the name of the CAR employee or official responsible for monitoring compliance with DB on the poster.

(ii)(A) The CAR, on behalf of EPA, shall require that contracts and subcontracts entered into under this agreement provide that any class of laborers or mechanics, including helpers, which is not listed in the wage determination and which is to be employed under the contract shall be classified in conformance with the wage determination. The EPA Award Official shall approve an additional classification and wage rate and fringe benefits therefore only when the following criteria have been met:

(1) The work to be performed by the classification requested is not performed by a classification in the wage determination; and

(2) The classification is utilized in the area by the construction industry; and

(3) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(ii)(B) If the contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and the CAR agree on the classification and wage rate (including the amount designated for fringe benefits where appropriate), a report of the action taken shall be sent by the CAR to the EPA Award Official. The Award Official will transmit the report, to the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, Washington, DC 20210. The Administrator, or an authorized representative, will approve, modify, or disapprove every additional classification action within 30 days of receipt and so advise the award official or will notify the award official within the 30-day period that additional time is necessary.

(ii)(C) In the event the contractor, the laborers or mechanics to be employed in the classification or their representatives, and the CAR do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), the award official shall refer the questions, including the views of all interested parties and the recommendation of the award official, to the Administrator for determination. The Administrator, or an authorized representative, will issue a determination within 30 days of receipt and so advise the contracting officer or will notify the Award Official within the 30-day period that additional time is necessary.

(ii)(D) The wage rate (including fringe benefits where appropriate) determined pursuant to paragraphs (a)(1)(ii)(B) or (C) of this section, shall be paid to all workers

performing work in the classification under this contract from the first day on which work is performed in the classification.

(iii) Whenever the minimum wage rate prescribed in the contract for a class of laborers or mechanics includes a fringe benefit which is not expressed as an hourly rate, the contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(iv) If the contractor does not make payments to a trustee or other third person, the contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program, Provided, That the Secretary of Labor has found, upon the written request of the contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the contractor to set aside in a separate account assets for the meeting of obligations under the plan or program.

(1) Withholding. The CAR, upon written request of the Award Official or an authorized representative of the Department of Labor, shall withhold or cause to withhold from the contractor under this contract or any other Federal contract with the same prime contractor, or any other federally-assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same prime contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees, and helpers, employed by the contractor or any subcontractor the full amount of wages required by the contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee, or helper, employed or working on the site of the work, all or part of the wages required by the contract, EPA may, after written notice to the contractor, or CAR take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.

(2) Payrolls and basic records.

(i) Payrolls and basic records relating thereto shall be maintained by the contractor during the course of the work and preserved for a period of three years thereafter for all laborers and mechanics working at the site of the work. Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in section 1(b)(2)(B) of the Davis-Bacon Act), daily and weekly number of hours worked, deductions made and actual wages paid. Whenever the Secretary of Labor has found under 29 CFR 5.5(a)(1)(iv) that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in section 1(b)(2)(B) of the Davis-Bacon

21

Act, the contractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs.

(ii)(A) The contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to the CAR who will maintain the records on behalf of EPA. The payrolls submitted shall set out accurately and completely all of the information required to be maintained under 29 CFR 5.5(a)(3)(i), except that full social security numbers and home addresses shall not be included on weekly transmittals. Instead the payrolls shall only need to include an individually identifying number for each employee (e.g., the last four digits of the employee's social security number). The required weekly payroll information may be submitted in any form desired. Optional Form WH-347 is available for this purpose from the Wage and Hour Division website at https://www.dol.gov/whd/forms/wh347.pdf or its successor site. The prime contractor is responsible for the submission of copies of payrolls by all subcontractors. Contractors and subcontractors shall maintain the full social security number and current address of each covered worker, and shall provide them upon request to the CAR for transmission to the EPA, if requested by EPA, the contractor, or the Wage and Hour Division of the Department of Labor for purposes of an investigation or audit of compliance with prevailing wage requirements. It is not a violation of this section for a prime contractor to require a subcontractor to provide addresses and social security numbers to the prime contractor for its own records, without weekly submission to the CAR.

(ii)(B) Each payroll submitted to the CAR shall be accompanied by a "Statement of Compliance," signed by the contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract and shall certify the following:

(1) That the payroll for the payroll period contains the information required to be provided under § 5.5 (a)(3)(ii) of Regulations, 29 CFR Part 5, the appropriate information is being maintained under § 5.5 (a)(3)(i) of Regulations, 29 CFR Part 5, and that such information is correct and complete;

(2) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in Regulations, 29 CFR Part 3;

22

(3) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract.

(ii)(C) The weekly submission of a properly executed certification set forth on the reverse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by paragraph (a)(3)(ii)(B) of this section.

(ii)(D) The falsification of any of the above certifications may subject the contractor or subcontractor to civil or criminal prosecution under section 1001 of title 18 and section 231 of title 31 of the United States Code.

(iii) The contractor or subcontractor shall make the records required under paragraph (a)(3)(i) of this section available for inspection, copying, or transcription by authorized representatives of the EPA or the Department of Labor, and shall permit such representatives to interview employees during working hours on the job. If the contractor or subcontractor fails to submit the required records or to make them available, EPA may, after written notice to the contractor, CAR, sponsor, applicant, or owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

(3) Apprentices and Trainees.

(i) Apprentices. Apprentices will be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Office of Apprenticeship Training, Employer and Labor Services, or with a State Apprenticeship Agency recognized by the Office, or if a person is employed in his or her first 90 days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Office of Apprenticeship Training, Employer and Labor Services or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the contractor as to the entire work force under the registered program. Any worker listed on a payroll at an apprentice wage rate, who is not registered or otherwise employed as stated above, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where a contractor is

performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the contractor's or subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeymen hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. In the event the Office of Apprenticeship Training, Employer and Labor Services, or a State Apprenticeship Agency recognized by the Office, withdraws approval of an apprenticeship program, the contractor will no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(ii) Trainees. Except as provided in 29 CFR 5.16, trainees will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed on the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate on the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the contractor will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(iii) Equal employment opportunity. The utilization of apprentices, trainees and journeymen under this part shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30.

(4) Compliance with Copeland Act requirements. The contractor shall comply with the requirements of 29 CFR Part 3, which are incorporated by reference in this contract.

(5) Subcontracts. The contractor or subcontractor shall insert in any subcontracts the clauses contained in 29 CFR 5.5(a)(1) through (10) and such other clauses as the EPA may by appropriate instructions require, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all the contract clauses in this term and condition.

(6) Contract termination: debarment. A breach of the contract clauses in 29 CFR 5.5 may be grounds for termination of the contract, and for debarment as a contractor and a subcontractor as provided in 29 CFR 5.12.

(7) Compliance with Davis-Bacon and Related Act requirements. All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5 are herein incorporated by reference in this contract.

(8) Disputes concerning labor standards. Disputes arising out of the labor standards provisions of this contract shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the contractor (or any of its subcontractors), the CAR, borrower or subrecipient and EPA, the U.S. Department of Labor, or the employees or their representatives.

(9) Certification of eligibility.

(i) By entering into this contract, the contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

(ii) No part of this contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

(iii) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

4. Contract Provisions for Contracts in Excess of $100,000

(a) Contract Work Hours and Safety Standards Act. The *CAR* shall insert the following clauses set forth in paragraphs (a)(1), (2), (3), and (4) of this section in full in any contract in an amount in excess of $100,000 and subject to the overtime provisions of the Contract Work Hours and Safety Standards Act. These clauses shall be inserted in addition to the clauses required by Item 3, above or 29 CFR 4.6. As used in this paragraph, the terms laborers and mechanics include watchmen and guards.

(1) Overtime requirements. No contractor or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of forty hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of forty hours in such workweek.

(2) Violation; liability for unpaid wages; liquidated damages. In the event of any violation of the clause set forth in paragraph (a)(1) of this section the contractor and any subcontractor responsible therefore shall be liable for the unpaid wages. In addition, such contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory), for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of the clause set forth in paragraph (a)(1) of this section, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of forty hours without payment of the overtime wages required by the clause set forth in paragraph (a)(1) of this section.

(3) Withholding for unpaid wages and liquidated damages. The *CAR,* upon written request of the Award Official or an authorized representative of the Department of Labor, shall withhold or cause to withhold from any moneys payable on account of work performed by the contractor or subcontractor under any such contract or any other Federal contract with the same prime contractor, or any other federally-assisted contract subject to the Contract Work Hours and Safety Standards Act, which is held by the same prime contractor, such sums as may be determined to be necessary to satisfy any liabilities of such contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in paragraph (a)(2) of this section.

(4) Subcontracts. The contractor or subcontractor shall insert in any subcontracts the clauses set forth in paragraph (a)(1) through (4) of this section and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the clauses set forth in paragraphs (a)(1) through (4) of this section.

(b) In addition to the clauses contained in Item 3, above, in any contract subject only to the

26

Contract Work Hours and Safety Standards Act and not to any of the other statutes cited in 29 CFR 5.1, the CAR shall insert a clause requiring that the contractor or subcontractor shall maintain payrolls and basic payroll records during the course of the work and shall preserve them for a period of three years from the completion of the contract for all laborers and mechanics, including guards and watchmen, working on the contract. Such records shall contain the name and address of each such employee, social security number, correct classifications, hourly rates of wages paid, daily and weekly number of hours worked, deductions made, and actual wages paid. Further, the CAR shall insert in any such contract a clause providing that the records to be maintained under this paragraph shall be made available by the contractor or subcontractor for inspection, copying, or transcription by authorized representatives of the (write the name of agency) and the Department of Labor, and the contractor or subcontractor will permit such representatives to interview employees during working hours on the job.

5. Compliance Verification

(a) The CAR shall periodically interview a sufficient number of employees entitled to DB prevailing wages (covered employees) to verify that contractors or subcontractors are paying the appropriate wage rates. As provided in 29 CFR 5.6(a)(6), all interviews must be conducted in confidence. The CAR must use Standard Form 1445 or equivalent documentation to memorialize the interviews. Copies of the SF 1445 are available from EPA on request.

(b) The CAR shall establish and follow an interview schedule based on its assessment of the risks of noncompliance with DB posed by contractors or subcontractors and the duration of the contract or subcontract. At a minimum, the CAR must conduct interviews with a representative group of covered employees within two weeks of each contractor or subcontractor's submission of its initial weekly payroll data and two weeks prior to the estimated completion date for the contract or subcontract. CARs must conduct more frequent interviews if the initial interviews or other information indicates that there is a risk that the contractor or subcontractor is not complying with DB. CARs shall immediately conduct necessary interviews in response to an alleged violation of the prevailing wage requirements. All interviews shall be conducted in confidence.

(c) The CAR shall periodically conduct spot checks of a representative sample of weekly payroll data to verify that contractors or subcontractors are paying the appropriate wage rates. The CAR shall establish and follow a spot check schedule based on its assessment of the risks of noncompliance with DB posed by contractors or subcontractors and the duration of the contract or subcontract. At a minimum, the CAR must spot check payroll data within two weeks of each contractor or subcontractor's submission of its initial payroll data and two weeks prior to the completion date the contract or subcontract. CARs must conduct more frequent spot checks if the initial spot check or other information indicates that there is a risk that the contractor or subcontractor is not complying with DB. In addition, during the examinations the CAR shall verify evidence of fringe benefit plans and payments thereunder by contractors and subcontractors who claim credit for fringe benefit contributions.

(d)  The CAR shall periodically review contractors and subcontractors use of apprentices and trainees to verify registration and certification with respect to apprenticeship and training programs approved by either the U.S Department of Labor or a state, as appropriate, and that contractors and subcontractors are not using disproportionate numbers of, laborers, trainees and apprentices. These reviews shall be conducted in accordance with the schedules for spot checks and interviews described in Item 5(b) and (c) above.

(e)  CARs must immediately report potential violations of the DB prevailing wage requirements to the EPA DB contact listed above and to the appropriate DOL Wage and Hour District Office listed at https://www.dol.gov/whd/america2.htm.

4W - 98T51201 - 2    Page 1

| | | | |
|---|---|---|---|
| **U.S. ENVIRONMENTAL PROTECTION AGENCY** Assistance Amendment | **GRANT NUMBER (FAIN):** 98T51201 **MODIFICATION NUMBER:** 2 **PROGRAM CODE:** 4W | | **DATE OF AWARD** 09/27/2023 |
| | **TYPE OF ACTION** No Cost Amendment | | **MAILING DATE** 09/27/2023 |
| | **PAYMENT METHOD:** ASAP | | **ACH#** 90008 |

| RECIPIENT TYPE: State | Send Payment Request to: Contact EPA RTPFC at: rtpfc-grants@epa.gov |
|---|---|
| **RECIPIENT:** | **PAYEE:** |
| CA Dept of Toxic Subs Control 1001 I St., P.O. Box 806 Sacramento, CA 95812-0806 EIN: 68-0281381 | CA Dept of Toxic Subs Control 1001 I St., P.O. Box 806 Sacramento, CA 95812 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Maryam Tasnif-abbasi 5796 Corporate Avenue Cypress, CA 90630 **Email:** Maryam.Tasnif-abbasi@dtsc.ca.gov **Phone:** 714-222-3485 | Lisa Hanusiak 75 Hawthorne Street, LND-2-1 San Francisco, CA 94105 **Email:** hanusiak.lisa@epa.gov **Phone:** 415-972-3152 | Katya Obrez Grants Branch, MSD-6 75 Hawthorne Street San Francisco, CA 94105 **Email:** obrez.katya@epa.gov **Phone:** 415-972-3744 |

**PROJECT TITLE AND EXPLANATION OF CHANGES**

BIL - STATE RESPONSE PROGRAM

EPA's CERCLA Section 128(a) grant program funds activities that establish or enhance the capacity of state and tribal response programs. The goals of this funding are to provide financial support for the elements of an effective state or tribal response program, as specified in CERCLA Section 128, and to ensure that states and tribes maintain a public record of sites included in their programs. The Infrastructure Investment and Jobs Act ("IIJA") provided additional funding to carry out the Section 128(a) grant program. The purpose of this award is to enhance the capacity of CA DTSC brownfields response program to meet the Section 128(a) elements. CA DTSC will oversee and perform planning, assessment, and cleanup of brownfields sites throughout the state, and conduct environmental outreach.

This amendment provides the correct copy of the Programmatic Terms and Conditions for FY2024. The FY2024 Programmatic Terms and Conditions are attached to this award document. There is no change to the federal amount.

| BUDGET PERIOD 10/01/2022 - 09/30/2024 | PROJECT PERIOD 10/01/2022 - 09/30/2024 | TOTAL BUDGET PERIOD COST $2,300,000.00 | TOTAL PROJECT PERIOD COST $2,300,000.00 |
|---|---|---|---|

## NOTICE OF AWARD

Based on your Application dated 05/05/2023 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $0.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $2,300,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| U.S. EPA, Region 9, U.S. EPA, Region 9 Grants Branch, MSD-6 75 Hawthorne Street San Francisco, CA 94105 | U.S. EPA, Region 9, Land, Chemicals and Redevelopment, LND-1 R9 - Region 9 75 Hawthorne Street San Francisco, CA 94105 |

| THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY | |
|---|---|
| Digital signature applied by EPA Award Official for  Carolyn Truong - Grants Management Officer Nelly Sun - Award Official Delegate | **DATE** 09/27/2023 |

4W - 98T51201 - 2    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $2,300,000 | $0 | $2,300,000 |
| EPA In-Kind Amount | $0 | $0 | $0 |
| Unexpended Prior Year Balance | $0 | $0 | $0 |
| Other Federal Funds | $0 | $0 | $0 |
| Recipient Contribution | $0 | $0 | $0 |
| State Contribution | $0 | $0 | $0 |
| Local Contribution | $0 | $0 | $0 |
| Other Contribution | $0 | $0 | $0 |
| Allowable Project Cost | $2,300,000 | $0 | $2,300,000 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.817 - State and Tribal Response Program Grants | CERCLA: Sec. 128(a) & Infrastructure Investment and Jobs Act (IIJA) (PL 117-58) | 2 CFR 200, 2 CFR 1500, 40 CFR 33 and 40 CFR 35 Subpart A |

4W - 98T51201 - 2    Page 3

Budget Summary Page

| Table A - Object Class Category<br>(Non-Construction) | Total Approved Allowable<br>Budget Period Cost |
|---|---|
| 1. Personnel | $446,165 |
| 2. Fringe Benefits | $250,383 |
| 3. Travel | $302,000 |
| 4. Equipment | $0 |
| 5. Supplies | $0 |
| 6. Contractual | $650,000 |
| 7. Construction | $0 |
| 8. Other | $0 |
| 9. Total Direct Charges | $1,648,548 |
| 10. Indirect Costs: 0.00 % Base : refer to General T/C | $651,452 |
| 11. Total (Share: Recipient ___0.00 % Federal _100.00 %) | $2,300,000 |
| 12. Total Approved Assistance Amount | $2,300,000 |
| 13. Program Income | $0 |
| 14. Total EPA Amount Awarded This Action | $0 |
| 15. Total EPA Amount Awarded To Date | $2,300,000 |

4W - 98T51201 - 2    Page 4

## *Administrative Conditions*

Previous Administrative Terms and Conditions are reiterated and updated.

**General Terms and Conditions**

The General Terms and Conditions of this agreement are updated in accordance with the link below. However, these updated conditions apply solely to the funds added with this amendment and any previously awarded funds not yet disbursed by the recipient as of the award date of this amendment. The General Terms and Conditions cited in the original award or prior funded amendments remain in effect for funds disbursed by the recipient prior to the award date of this amendment.

The recipient agrees to comply with the current EPA general terms and conditions available at: https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2022-or-later.

These terms and conditions are binding for disbursements and are in addition to or modify the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

**A. Federal Financial Reporting (FFR)**

For awards with cumulative project and budget periods greater than 12 months, the recipient will submit an annual FFR (SF 425) covering the period from "project/budget period start date" to **June 30** of each calendar year to the EPA Finance Center in Research Triangle Park, NC.  The annual FFR will be submitted electronically to rtpfc-grants@epa.gov no later than **September 30** of the same calendar year. Find additional information at https://www.epa.gov/financial/grants. (NOTE: The grantee must submit the Final FFR to rtpfc-grants@epa.gov within 120 days after the end of the project period.)

**B. Procurement**

The recipient will ensure all procurement transactions will be conducted in a manner providing full and open competition consistent with 2 CFR Part 200.319.  In accordance with 2 CFR Part 200.324, the grantee and subgrantee(s) must perform a cost or price analysis in connection with applicable procurement actions, including contract modifications.

*State recipients must follow procurement procedures as outlined in 2 CFR Part 200.317.*

**C. MBE/WBE Reporting, 40 CFR, Part 33, Subpart E (EPA Form 5700-52A)**

The recipient agrees to submit a "MBE/WBE Utilization Under Federal Grants and Cooperative Agreements" report (EPA Form 5700-52A) annually for the duration of the project period. The current EPA Form 5700-52A with instructions is located at https://www.epa.gov/grants/epa-grantee-forms

This provision represents an approved exception from the MBE/WBE reporting requirements as described in 40 CFR Section 33.502.

Reporting is required for assistance agreements where funds are budgeted for procuring construction, equipment, services and supplies (including funds budgeted for direct procurement by the recipient or procurement under subawards or loans in the "Other" category) with a cumulative total that exceed the **Simplified Acquisition Threshold (SAT) currently set at $250,000** (the dollar threshold will be automatically revised whenever the SAT is adjusted; See 2 CFR Section 200.1),

including amendments and/or modifications. All procurement actions are reportable when reporting is required, not just the portion which exceeds the SAT.

Recipients with expended and/or budgeted funds for procurement are required to report annually whether the planned procurements take place during the reporting period or not. If no budgeted procurements take place during the reporting period, the recipient should check the box in section 5B when completing the form.

When completing the annual report, recipients are instructed to check the box titled "annual" in section 1B of the form. For the final report, recipients are instructed to check the box indicated for the "last report" of the project in section 1B of the form.  For section 2B, the Region 9 EPA DBA Coordinator is Alexandrea Perez, email: GrantsRegion9@epa.gov, phone: 415-972-3826.

The annual reports are due by October 30th of each calendar year and the final report is due within 120 days after the end of the project period, whichever comes first.  The recipient will submit the MBE/WBE report(s) and/or questions to GrantsRegion9@epa.gov and the EPA Grants Specialist identified on page 1 of the award document.

## *Programmatic Conditions*

Previous Programmatic Terms and Conditions are superseded by the conditions in **Attachment A**.  These conditions apply henceforth.

### *** END OF ASSISTANCE AGREEMENT ***

# CERCLA SECTION 128(a) STATE AND TRIBAL RESPONSE PROGRAM FY22 INFRASTRUCTURE INVESTMENT AND JOBS ACT ("IIJA") FUNDING

## GRANT-SPECIFIC PROGRAMMATIC
## TERMS AND CONDITIONS

### For: California Department of Toxic Substances Control

███████████████

**Due to the budget accounting, tracking, and reporting requirements for the Infrastructure Investment and Jobs Act ("IIJA") funding, Section 128(a) cooperative agreements funded with IIJA money must be awarded separately from Section 128(a) cooperative agreements with annual appropriated funds. In the same vein, Section 128(a) IIJA funds are not eligible to be included in Performance Partnership Grants ("PPGs") under 40 CFR Part 35 Subparts A and B.  This restriction is intended to ensure that Section 128 Cooperative Agreement Recipients ("CARs") can effectively track, account for, and report on the use of IIJA funding.**

**If a CAR has two FY23 Section 128(a) Cooperative Agreements (one with annual appropriated funds and one with IIJA funds), the two awards must clearly delineate what activities will utilize annual appropriation funds versus IIJA funds.  CARs must work closely with EPA Project Officers to ensure that there is no duplication of work funded by the two sources of funding.**

I.  **Response Program Elements**:  The CAR must demonstrate that it is taking reasonable steps to include, or has already included in its response program, the four elements identified in CERCLA Section 128(a)(2).


II.  **Substantial Involvement**:  This is a cooperative agreement that will entail substantial involvement by EPA to the extent Agency resources permit. Substantial EPA involvement includes:

    A.  Consultation and collaboration on technical and policy matters at the CAR's request. EPA's Project Officer or designee may provide data, advice, and information that will help the CAR carry out the agreement effectively;

    B.  EPA's Project Officer may review the substantive terms of professional services contracts or subawards the CAR enters into to carry out specific elements of the scope of work. Neither EPA's Project Officer nor any other EPA employee will direct, recommend, or suggest that the CAR enter into a contract or subaward with a specific entity. EPA approval is not required for contracts for supplies, equipment, information technology and other administrative support services;

C.  EPA's Project Officer may review the qualifications of key staff hired by the CAR or consultants with whom the CAR contracts to carry out specific elements of the scope of work when those staff or contractors are paid by the grant funds. Neither EPA's Project Officer nor any other EPA employee will direct, recommend, or suggest that the CAR hire a particular individual or enter into a consulting contract with a specific entity;

D.  Monitoring by EPA of the CAR's performance under the agreement; and

(NOTE:  EPA's Project Officer may waive or modify its substantial involvement on any particular matter or classes of matters through written advice to the CAR.)

III.  **Public Record System**:  The CAR must establish a public record system pursuant to CERCLA Section 128(b)(1)(C). The public record must be maintained and updated at least annually and include the requirements listed below.

A.  For sites where response actions were completed in the previous grant project year, include the following:

1.  Date the response action was completed;

2.  Site name, name of owner at time of cleanup, and type of site (e.g., petroleum, methamphetamine laboratory, mine scarred lands);

3.  Location of the site (street address, latitude and longitude);

4.  Explanation of whether or not the site will be suitable for unrestricted use upon completion of the response action.  If not, the public record must identify and describe the institutional control(s) in place or relied on for the remedy (e.g., deed restriction);

5.  Nature of the contamination at the site (e.g., hazardous substances, contaminants, pollutants, petroleum contamination, etc.); and

6.  Size of the site in acres.

B.  A list of sites planned to be addressed in the next year by the state or tribal response program including:

1.  Site name, name of owner at time of cleanup, and type of site (e.g., petroleum, methamphetamine laboratory, mine scarred lands);

2.  Location of the site (street address, latitude and longitude);

3.  To the extent known, whether an institutional control is in place. If so, describe the type of institutional control in place (e.g., deed restriction);

4.  To the extent known, the nature of the contamination at the site (e.g.,

hazardous substances, contaminants, pollutants, petroleum contamination, etc.); and

    5.  Size of the site in acres.

C.  Once a public record is established in a manner consistent with CERCLA Section 128(b)(1)(C), CARs must maintain the public record throughout the duration of this agreement.


## IV.  Site-Specific Assessment and Cleanup Activities:

A.  Consistent with CERCLA Section 128(a)(2)(C)(iii), EPA guidance, and to the extent authorized by the scope of work for this agreement, the CAR may conduct assessments or cleanups at <u>sites that meet the definition of a "brownfield" site as defined at CERCLA Section 101(39)</u> in response to a request by a person who is or may be affected by a release or threatened release of a hazardous substance, pollutant, contaminant, or petroleum at a brownfield located in the community in which the person works or resides. Assessments and cleanups must comply with all applicable laws and are subject to the following restrictions:

    1.  Absent approval by EPA's Project Officer, no more than $250,000 per site can be funded for assessments, and no more than $250,000 per brownfield site can be funded for cleanups.

    2.  Absent approval by EPA's Project Officer, the CAR may not use funds awarded under this agreement to assess and/or cleanup brownfields owned by the CAR or held in trust by the United States Government for the CAR.

    4.  Assessments and cleanups may not be conducted at brownfields where the CAR is a potentially responsible party ("PRP") pursuant to CERCLA Section 107, except when the CAR acquired the property before January 11, 2002, and has not caused or contributed to a release or threatened release of a hazardous substance at the property.

    5. The CAR must produce and maintain in their records a site-specific community involvement plan and site-specific cleanup plan, which includes an abbreviated analysis of cleanup alternatives.

        a)  The documents' detail and length should be commensurate with the complexity of the proposed cleanup action (i.e., the larger and more complex the cleanup, the more detailed the community involvement plan and cleanup plan, while small cleanups may have a shorter, simpler set of documents).

        b)  If the CAR's environmental response program produces equivalent documentation in its regular course of business that satisfy this requirement, duplicative documentation is not required.

        c)  These documents do not require EPA approval but must be made available if the EPA Project Officer, or members of the community, requests them.

d) CARS can ask their EPA Project Officers for examples of a site-specific community involvement plan or site-specific cleanup plan. For more information, CARs can also review the Brownfields Roadmap and Cleaning Up Brownfield Sites factsheet.

6. The CAR agrees to clearly reference EPA investments in site-specific activities outlined in the CAR's EPA-approved workplan during all phases of community outreach.

a) If any documents, fact sheets, and/or web materials are developed as part of this cooperative agreement, then they shall comply with the *Acknowledgement Requirements for Non-ORD Assistance Agreements* in the General Terms and Conditions of this agreement.

b) If a sign is developed as part of a project funded by this cooperative agreement, then the sign shall include either a statement (e.g., this project has been funded, wholly or in part, by EPA) and/or EPA's logo acknowledging that EPA is a source of funding for the project. The EPA logo may be used on project signage when the sign can be placed in a visible location with a direct linkage to site activities. Use of the EPA logo must follow the sign specifications available at https://www.epa.gov/grants/epa-logo-seal-specifications-signage-produced-epa-assistance-agreement-recipients.

B. Consistent with CERCLA Section 128(a)(2)(B)(ii), and to the extent authorized by the scope of work for this agreement, the CAR may use funds awarded under this agreement to complete the necessary response activities, including assessments and cleanups, if the person conducting a response action overseen by the CAR fails to complete the necessary response activities, including operation and maintenance or long-term monitoring activities. Assessments and cleanups under this provision must comply with all applicable laws and are subject to the following restrictions:

1. Absent approval by EPA's Project Officer, the CAR may not use funds awarded under this agreement to assess and cleanup sites owned by the CAR.

2. The CAR may not use funds awarded under this agreement to assess or cleanup sites for which the CAR is a potentially responsible party (pursuant to CERCLA Section 107), with the exception of sites contaminated by a controlled substance as defined in CERCLA Section 101(39)(D)(ii)(I).

C. For the site-specific activities under paragraphs III.A. and III.B., the CAR must maintain documentation supporting the CAR's conclusion that the site meets the brownfield definition in CERCLA Section 101(39). For those sites which are excluded from the brownfield definition, pursuant to CERCLA Section 101(39)(B), but are eligible for a property-specific funding determination pursuant to CERCLA Section 101(39)(C), the CAR must comply with paragraph V below. NOTE: To the extent authorized in the scope of work for this agreement, the CAR may conduct oversight of cleanups at sites other than brownfields. Records must be

maintained per 2 CFR 200.334.

D.  For site-specific activities at petroleum-only brownfields sites (CERCLA Section 101(39)(D)(ii)(II)), the requirements listed below apply.

    1.  The CAR must determine and maintain supporting documentation that:

        a)  There is no viable responsible party for the site;

        b)  The site will not be assessed, investigated, or cleaned up by a person that is potentially liable for cleaning up the site; and

        c)  The site is not subject to any order issued under Section 9003(h) of the Solid Waste Disposal Act.

    2. The supporting documentation must identify the state official who made the determinations identified in D.1., the date the CAR obtained the determinations, and a summary of each conclusion.

CARs are encouraged to reach out to their EPA regional brownfields contacts with questions on petroleum brownfield site eligibility and where to get additional information.  Also check out resources on EPA's Brownfields website, such as Community Visions for Abandoned Gas Stations and EPA's Petroleum Contact List for Tribes and EPA's Office of Underground Storage Tank's ("OUST's") Petroleum Brownfields webpage.

E.  **Site-specific Activity Funding Limit**:  The amount requested for site-specific assessments and cleanups **may not exceed 75%** of the total amount of Section 128(a) funding awarded to the CAR during FY 2023. This 75% cap includes the total funding that the CAR received from both the FY23 Section 128(a) Annual Appropriation funds and FY23 Section 128(a) IIJA funds. *[Note: Oversight of assessment and cleanup activities performed by responsible parties (other than the state or tribe) does not count toward the 75% limit. The 75% cap also does not include personnel or supplies/equipment purchased in support of site-specific work.]*

    A CAR may submit to the EPA Project Officer a written request for a waiver to exceed the 75% of annual funding for site-specific activities, as described under Section III A-D.  The EPA Project Officer will review the waiver request and make a recommendation to EPA's Office of Brownfields and Land Revitalization, who will determine if the requested waiver is approved. The EPA Project Officer will notify the CAR of EPA's determination.

The CAR's written waiver request submitted to the EPA Project Officer must include a brief justification describing the reason(s) for spending more than 75% of their FY23 total annual appropriation and IIJA allocation on site-specific activities and must include the following information:

    1.  Provide the percentage of the eligible brownfield site-specific activities

(assuming waiver is approved) in the CAR's total FY23 budget;

2. List all site-specific activities that will be covered by this funding. If known, provide site-specific information and a description of how work on each site contributes to the establishment or enhancement of your state/tribal response program. EPA encourages states and tribes to use site-specific funding to perform assessment and cleanup activities that will expedite the reuse and redevelopment of sites, and prioritize sites based on need. Further explain how the community will be (or has been) involved in prioritization of site work and especially those sites where there is a potential or known significant environmental impact to the community;

3. Explain how this shift in funding will not negatively impact the core programmatic capacity (i.e., the ability to establish/enhance the four elements of a response program) and how it will be maintained in spite of an increase in site-specific work. Grantees must demonstrate that they have adequate funding from other sources to effectively carry out work on the four elements for EPA to grant a waiver of the 75% limit on using 128(a) funds for site-specific activities;

4. Describe how this shift in funding towards site-specific work is appropriate for your response program; and

5. Explain whether the sites to be addressed are those for which the affected community/ies has/have requested work be conducted.


## V. Property-Specific Funding Determinations:

A. If a CAR plans to use funds for site-specific activities at a site that is excluded from the definition of a brownfield in CERCLA Section 101(39)(A) and (B) but is eligible for a property-specific funding determination, then the CAR must provide information sufficient for EPA's Regional Approval Official, as delegated by Delegation 14-44 and 14-45, to make a property-specific funding determination. Sites eligible for property-specific funding are defined in CERCLA Section 101(39)(C). The CAR must comply with the following requirements:

1. The CAR must not incur any site-specific costs for those sites which require a property-specific funding determination under this agreement (other than those necessary to provide information to EPA) until EPA's Approval Official makes a property-specific funding determination.

2. The CAR must submit to EPA's Project Officer a written request for a property-specific funding determination. The request must include information about the site (e.g., name, location, owners) and explain how the financial assistance will:

a) Protect human health and the environment, and

b) Either promote economic development or enable the creation of, preservation of, or addition to parks, greenways, undeveloped property, other

recreational property or other property used for nonprofit purposes.

B.  Any property-specific funding determination granted by EPA does not obviate the CAR's responsibility to incur only costs that meet the terms and conditions of the agreement and are allowable under 2 CFR Parts 200 and 1500 for governmental entities.

**VI.  Institutional Controls**:  To the extent authorized by the scope of work for this agreement, the CAR may use funding under this agreement to maintain and monitor institutional controls.

**VII.  Infrastructure Investment and Jobs Act (IIJA) Signage Required**

A. **Signage Requirements**
   1. Investing in America Emblem: The recipient will ensure that a sign is placed at construction sites supported under this award displaying the official Investing in America emblem and must identify the project as a "project funded by President Biden's Bipartisan Infrastructure Law."
   Construction is defined at 40 CFR 33.103 as "erection, alteration, or repair (including dredging, excavating, and painting) of buildings, structures, or other improvements to real property, and activities in response to a release or a threat of a release of a hazardous substance into the environment, or activities to prevent the introduction of a hazardous substance into a water supply."
   The sign must be placed at construction sites in an easily visible location that can be directly linked to the work taking place and must be maintained in good condition throughout the construction period. The recipient will ensure compliance with the guidelines and design specifications for using the official Investing in America emblem and corresponding logomark available at: https://www.whitehouse.gov/wp-content/uploads/2023/02/Investing-in-America-Brand-Guide

   2. EPA Logo: The recipient will ensure that signage displays the EPA logo along with the official Building A Better America emblem. The EPA logo must not be displayed in a manner that implies that EPA itself is conducting the project. Instead, the EPA logo must be accompanied with a statement indicating that the recipient received financial assistance from EPA for the project. The recipient will ensure compliance with the sign specifications provided by the EPA Office of Public Affairs (OPA) available at: https://www.epa.gov/grants/epa-logo-seal-specifications-signage-producedepa-assistance-agreement-recipients.  As provided in the sign specifications from OPA, the EPA logo is the preferred identifier for assistance agreement projects and use of the EPA seal requires prior approval from the EPA.
   To obtain the appropriate EPA logo or seal graphic file, the recipient should send a request directly to OPA and include the EPA Project Officer in the communication. Instructions for contacting OPA is available on the Using the EPA Seal and Logo page.

   3. Procuring Signs: Consistent with section 6002 of RCRA, 42 U.S.C. 6962, and 2 CFR 200.323, recipients are encouraged to use recycled or recovered materials when procuring signs. Signage costs are considered an allowable cost under this assistance agreement provided that the costs associated with signage are reasonable. Additionally, to

increase public awareness of projects serving communities where English is not the
predominant language, recipients are encouraged to translate the language on signs
(excluding the official Investing in America emblem or EPA logo or seal) into the
appropriate non-English language(s). The costs of such translation are allowable,
provided the costs are reasonable.

B. **Public or Media Events**

EPA encourages the recipient to notify the EPA Project Officer listed in this award
document of public or media events publicizing the accomplishment of significant events
related to construction projects as a result of this agreement and provide the opportunity
for attendance and participation by federal representatives with at least ten (10) working
days' notice.

## VIII.  Grant Performance Reporting Requirements:

### A.  <u>Performance Reporting Requirements for Program Activity Levels ("PALs")</u>

<u>CARs must report Program Activity Levels ("PALs") **once** annually when the Section
128(a) funding request is due to the appropriate EPA Regional Office in mid-December.</u> PALs
summarize the work from the previous federal fiscal year, therefore, CAR's *responses to the
PALs questions should reflect activities for the period covering the last federal fiscal year
(October 1 – September 30)*, including:

1.  Environmental programs where CERCLA 128(a) funds are used to support
capacity building [general program support, non-site-specific work]. Specify which
programs were supported with 128(a) funds from the following: Brownfields,
Underground Storage Tanks/Leaking Underground Storage Tanks, Federal Facilities,
Solid Waste Superfund, Hazardous Waste Facilities, VCP (Voluntary Cleanup Program,
Independent Cleanup Program, etc.), and Other;

2.  Number of properties (or sites) enrolled in a response program during previous
federal fiscal year;

3.  Number of properties (or sites) where documentation indicates that cleanup
work is complete AND either (a) all required institutional controls (IC's) are in place, or
(b) the cleanup does not require ICs;

4.  Total number of acres associated with properties (or sites) in the previous
question (Question #3);

5.  OPTIONAL: Number of properties (or sites) where assistance was provided,
but the property was not enrolled in a response program;

6.  Date that the public record was last updated;

     7.  Number of audits/inspections/reviews/other conducted to ensure engineering controls and institutional controls are still protective; and

     8.  Did you develop or revise legislation, regulations, codes, guidance documents or policies related to establishing or enhancing your Voluntary Cleanup Program/Response Program during FY22? If yes, please indicate the type and whether it was new or revised.

**Beginning in FY23, CARs will only be able to provide PALs information directly into EPA's Assessment, Cleanup and Redevelopment Exchange System ("ACRES") database.**

**For detailed instructions on how to report PALs in ACRES, please see the quick reference guide at https://www.epa.gov/brownfields/brownfields-grantee-reporting-using-assessment-cleanup-and-redevelopment-exchange.** For technical support, contact 703-284-8212 or email acres_help@epa.gov.  For questions specific to your grant data, contact your EPA Regional Representative.

     B.  Quarterly Performance Reporting Requirements:  CAR agrees to provide performance reports quarterly. The reports will be due no later than 30 calendar days after the reporting period.

     1.  All interim and final progress reports must prominently display the following three relevant Essential Elements as reflected in the current EPA strategic plan:
     a)  Strategic Plan Goal 6: Safeguard and Revitalize Communities

     b)  Strategic Plan Objective 6.1: Clean Up and Restore Land for Productive Uses and Healthy Communities

     c)  Work plan Commitments and Timeframes: See work plan for specifics.

     2.  The CAR will report on milestones, activities, and outputs achieved under this agreement. Examples of items to include:

     a)  The completion of significant site planning, assessment, cleanup, or redevelopment activities, including any relevant information regarding whether such activities anticipated or otherwise considered the impacts of climate change and/or benefited a community with environmental justice concerns. [The EPA describes environmental justice ("EJ") as the fair treatment and meaningful involvement of all people regardless of race, color, national origin, or income with respect to the development, implementation and enforcement of environmental laws, regulations, and policies.  For example, an "underserved community" refers to a community with environmental justice concerns and/or vulnerable populations, including low-income citizens, communities of color, and tribal and Indigenous peoples.];

     b)  Information regarding significant outreach, meeting, or training events,

including whether such outreach engaged communities with environmental justice concerns;

c) Significant updates to a website or tracking system or improvements to the process;

d) For site-specific work, details such as where and when the activity was conducted and why, who was involved or impacted, and what was accomplished, including whether site-specific work anticipated or otherwise considered the impacts of climate change and/or benefited a community with environmental justice concerns. The narrative may range in length between a paragraph and one page in length for a specific site. Provide before and after photos of site work and photos of events, unless the site assessment report already has been provided to EPA as a deliverable.

e) A budget summary table which may include the following information: current approved project budget; costs incurred during the reporting quarter; costs incurred to date (cumulative expenditures); and total remaining funds.

3. All CARs must report information relating to establishing and maintaining the public record described in paragraph II above and provide the date of the last update. (NOTE: For this requirement, CARs can refer to their already existing public record, such as a website or other public database).

4. CARs with work plans that include funding for other site-related activities must include a description of the activities and provide the number of sites at which the activities were conducted. For example:

a) Number and frequency of oversight reviews (internal audits) of licensed site professional certified cleanups.

b) Number and frequency of state/tribal oversight reviews (internal audits) conducted.

c) Number of sites where staff conducted reviews (internal audits), provided technical assistance, or conducted other oversight activities.

d) Number of staff conducting oversight reviews (internal audits), providing technical assistance, or conducting other oversight activities.

5. CARs with work plans that include funding for environmental insurance must report:

a) The number and description of insurance policies purchased (e.g., type of coverage provided, dollar limits of coverage, category and identity of insured persons, premium, first dollar or umbrella, site-specific or blanket, occurrence or claims made, etc.);

b)  The number of sites covered by the insurance; and

c)  The amount of funds spent on environmental insurance (e.g., amount dedicated to insurance program or to insurance premiums), and the number of claims paid by insurers to policyholders.

7.  CARs must report activities related to establishing or enhancing the four elements of the state or tribe's response program:

a)  For each element, CARs must report how they are maintaining the element or how they are taking reasonable steps to establish or enhance the element as negotiated in individual CAR work plans. For example, pursuant to CERCLA Section 128(a)(2)(B), reports on the oversight and enforcement authorities/mechanisms element may include:

(1)  A narrative description and copies of applicable documents developed or under development to enable the response program to conduct enforcement and oversight at sites. For example:

(a)  Legal authorities and mechanisms (e.g., statutes, regulations, orders, agreements);

(b)  Cleanup standards for soil and water; and

(c)  Policies and procedures to implement legal authorities; and

(d)  Other mechanisms;

(2)  A description of the resources and staff allocated/to be allocated to the response program to conduct oversight and enforcement at sites as a result of the grant;

(3)  A narrative description of how these authorities or other mechanisms and resources are adequate to ensure that:

(a)  A response action will protect human health and the environment and be conducted in accordance with applicable laws; and

(b)  A response action will be completed if the person conducting the response action fails to conduct the necessary response activities, including operation and maintenance or long-term monitoring activities;

(4)  A narrative description and copy of appropriate documents demonstrating the exercise of oversight and enforcement authorities by the

response program at a site.

b)  EPA strongly encourages CARs to report specific performance measures related to the four elements in progress reports.  These data may be aggregated for national reporting to Congress, and include:

(1)  Timely Survey & Inventory - Estimated number of brownfield sites in the state or tribal response program.

(2)  Oversight & Enforcement Authorities/Mechanisms - Number of active cleanups and percentage that received oversight; percentage of active cleanups not in compliance with the cleanup work plan and that received communications from the CAR regarding non-compliance.

(3)  Public Participation - Percentage of sites in the state or tribal response program where public meetings/notices were conducted regarding the cleanup plan and/or other site activities; number of requests and responses to site assessment requests.

(4)  Cleanup Approval/Certification Mechanisms - Total number of "no further action" letters or total number of certificate of completions.

[NOTE: This reporting requirement includes activities not funded with CERCLA Section 128(a) funding, because this information may be used by EPA to evaluate whether CARs have met or are taking reasonable steps to meet the four elements of a response program pursuant to CERCLA Section 128(a)(2).]

C.  **Significant Developments**: As required by 2 CFR 200.329(e), the CAR must inform EPA and report on significant impacts to grant-supported activities when they occur between the scheduled reporting dates.  Significant developments to report may include problems or delays (such as staff vacancies or travel restrictions) as well as favorable developments or successes associated with milestones and activities as listed under section VII.B above.

D.  **Reporting Requirements Related to Site Assessment and Cleanup Work**:  The CARs must report on interim progress (e.g., assessment started) and any final accomplishments (e.g., assessment completed, cleanup required, contaminants, Institutional Controls, Engineering Controls) by submitting information into the Brownfields online reporting system, known as the Assessment, Cleanup and Redevelopment Exchange System ("ACRES"). The CAR must enter this data into ACRES within 30 days of the end of the next reporting period or sooner at EPA's request. EPA will provide the CARs with training, which is required to obtain access to ACRES.

E.  **Final Report**:  The CAR must submit a final performance report at the end of the period of performance in order to finalize the closeout of the grant. This final report must capture the work that was performed during the period of performance, explain how the funding was utilized, and may include a summary of activities as is listed under VI.B. above. The final report is due within 120 days of the end of the period of performance and, with approval from the EPA

Project Officer, may be submitted in lieu of a final quarterly or semi-annual report.

### G. Updating the State Brownfields and Voluntary Response Programs Report in ACRES

State CARs must update their state response program information in ACRES at least once a year (and may update more frequently if changes in their response program warrant an additional update), so that EPA has accurate, up-to-date information to share with the public in the form of a State Brownfields and Voluntary Response Program Report. EPA expects that this annual update will occur when states are already in the ACRES database performing other required ACRES reporting, thereby reducing the administrative burden.

For detailed instructions on how to update your state brownfields information in ACRES, please see the quick reference guide at https://www.epa.gov/brownfields/brownfields-grantee-reporting-using-assessment-cleanup-and-redevelopment-exchange.

**IX.  General Federal Requirements**:  The CAR must comply with federal cross-cutting requirements. These requirements include, but are not limited to, EPA's disadvantaged business enterprise requirements found at 40 CFR Part 33; nondiscrimination statutes, including Title VI of the Civil Rights Act of 1964, and EPA's implementing regulations found at 40 C.F.R. Parts 5 and 7; OSHA Worker Health & Safety Standards in 29 CFR 1910.120; the Uniform Relocation Act; National Historic Preservation Act; Endangered Species Act; Permits required by Section 404 of the Clean Water Act; Executive Order 11246, Equal Employment Opportunity, and implementing regulations at 41 CFR 60-4; Contract Work Hours and Safety Standards Act, as amended (40 USC 327-333); the Anti-Kickback Act (40 USC 276c); and Section 504 of the Rehabilitation Act of 1973, as implemented by Executive Orders 11914 and 11250.  **EPA provides additional information on cross-cutting requirements in EPA Subaward Cross Cutter Requirements.**

**X.  Program Income**:  In accordance with 2 CFR 1500.8, the CAR is authorized to add program income generated under this agreement to the funds committed by EPA. The CAR can use this program income to carry out activities described in the scope of work for this agreement and under the same terms and conditions of the agreement.  *Program income* is defined generally at 2 CFR 200.1.  For the purposes of this agreement, program income includes fees paid by participants in the CAR's voluntary cleanup program or other fees for services (only to the extent that these fees recover costs charged to this agreement). Costs the CAR recovers for cleanups and site assessments are program income to the same extent that the recovered costs represent costs charged to this agreement. The CAR must provide as part of its quarterly and final performance report, a description of how program income is being used. In addition, a report on the amount of program income earned during the award period must be submitted with the quarterly and final Federal Financial Report, Standard Form 425.

The CAR will maintain records adequate to document the extent to which transactions generate program income and the disposition of program income. As required by 2 CFR 200.305(b)(5), tribal CARs will disburse program income before requesting additional payments under this

agreement.  State CARs are subject to 2 CFR 200.305(a).

## XI.  Quality Assurance

Authority: Quality Assurance applies to all assistance agreements involving environmental information (including environmental data collection, production, or use) as defined in 2 CFR § 1500.12, Quality Assurance.

The CAR shall ensure that subawards involving environmental information issued under this agreement include appropriate quality requirements for the work. The CAR shall ensure sub-award recipients develop and implement a Quality Assurance ("QA") planning document in accordance with this term and condition; and/or ensure sub-award recipients implement all applicable approved QA planning documents.

### A.  QUALITY MANAGEMENT PLAN ("QMP")

1. Prior to beginning environmental information operations, the CAR must:

a.  Develop a QMP,

b.  Prepare the QMP in accordance with the current version of EPA's Quality Management Plan (QMP) Standard.

c.  Submit the document for EPA review, and

d.  Obtain EPA Quality Assurance Manager or designee (*hereafter referred to as "QAM"*) approval.

2.  The QMP must be submitted to the EPA PO within 60 days after grant award, and/or no more than 90 days after grant award.

3. The CAR must review their approved QMP at least annually. These documented reviews shall be made available to the sponsoring EPA organization if requested. When necessary, the recipient shall revise its QMP to incorporate minor changes and notify the EPA PO and QAM of the changes. If significant changes have been made to the Quality Program that affect the performance of environmental information operations, it may be necessary to re-submit the entire QMP for re-approval. In general, a copy of any QMP revision(s) made during the year should be submitted to the EPA PO and QAM in writing when such changes occur. Conditions requiring the revision and resubmittal of an approved QMP can be found in section 6 of EPA's Quality Management Plan (QMP) Standard.

### B.  QUALITY ASSURANCE PROJECT PLAN ("QAPP")

1.  Prior to beginning environmental information operations, the CAR must:
a.  Develop a QAPP,

b.  Prepare QAPP in accordance with the most current version of EPA QA/R-5: EPA Requirements for Quality Assurance Project Plans,

    c.  Submit the document for EPA review, and

    d.  Obtain QAM approval.

**For Reference:**

**\*  Quality Management Plan (QMP) Standard (Directive No: CIO 2105-S-01.0) and EPA QA/R-5: *EPA Requirements for Quality Assurance Project Plans*; contain quality specifications for EPA and non-EPA organizations and definitions applicable to these terms and conditions.**

**\*  EPA QA/G-5: *Guidance for Quality Assurance Project Plans*, Appendix C provides a QAPP Checklist.**

**\*  EPA's Quality Program website has a list of QA managers, and Quality Specifications for non-EPA Organizations to do business with EPA.**

**\*  The Office of Grants and Debarment Quality Assurance Requirements.**

XII.  **Competency of Organizations Generating Environmental Measurement Data**: In accordance with Agency Policy Directive Number FEM-2012-02, Policy to Assure the Competency of Organizations Generating Environmental Measurement Data under Agency-Funded Assistance Agreements, CAR agrees, by entering into this agreement, that it has demonstrated competency prior to award, or alternatively, where a pre-award demonstration of competency is not practicable, the CAR agrees to demonstrate competency prior to carrying out any activities under the award involving the generation or use of environmental data. The CAR shall maintain competency for the duration of the agreement's period of performance, and this will be documented during the annual reporting process.  A copy of the Policy is available online at http://www.epa.gov/fem/lab_comp.htm, or a copy may also be requested by contacting the EPA project officer for this award.

XIII.  **Geospatial Data Standards:**  All geospatial data created must be consistent with Federal Geographic Data Committee ("FGDC") endorsed standards.  Information on these standards may be found at https://www.fgdc.gov/.

XIV.  **Cybersecurity Grant Condition**

    A.  The CAR agrees that when collecting and managing environmental data under this assistance agreement, it will protect the data by following all applicable State law cybersecurity requirements.

    B. (1) EPA must ensure that any connections between the CAR's network or information system and EPA networks used by the CAR to transfer data under this agreement, are secure. For purposes of this Section, a connection is defined as a dedicated persistent interface between an Agency IT system and an external IT system for the purpose of transferring information.

Transitory, user-controlled connections such as website browsing are excluded from this definition.

       If the CAR's connections, as defined above, do not go through the Environmental Information Exchange Network or EPA's Central Data Exchange, the CAR agrees to contact the EPA Project Officer (PO) and work with the designated Regional/Headquarters Information Security Officer to ensure that the connections meet EPA security requirements, including entering into Interconnection Service Agreements as appropriate. This condition does not apply to manual entry of data by the CAR into systems operated and used by EPA's regulatory programs for the submission of reporting and/or compliance data.

       (2) The CAR agrees that any subawards it makes under this agreement will require the subrecipient to comply with the requirements in (b)(1) if the subrecipient's network or information system is connected to EPA networks to transfer data to the Agency using systems other than the Environmental Information Exchange Network or EPA's Central Data Exchange. The CAR will be in compliance with this condition: by including this requirement in subaward agreements; and during subrecipient monitoring deemed necessary by the CAR under 2 CFR 200.332(d), by inquiring whether the subrecipient has contacted the EPA Project Officer. Nothing in this condition requires the CAR to contact the EPA Project Officer on behalf of a subrecipient or to be involved in the negotiation of an Interconnection Service Agreement between the subrecipient and EPA.

4W - 98T51201 - 3    Page 1

| | GRANT NUMBER (FAIN): 98T51201 | |
|---|---|---|
| **U.S. ENVIRONMENTAL PROTECTION AGENCY** Assistance Amendment | MODIFICATION NUMBER: 3 | **DATE OF AWARD** 08/27/2024 |
| | PROGRAM CODE: 4W | |
| | **TYPE OF ACTION** Augmentation: Increase | **MAILING DATE** 08/30/2024 |
| | **PAYMENT METHOD:** ASAP | **ACH#** 90008 |

| RECIPIENT TYPE: | Send Payment Request to: |
|---|---|
| State | Contact EPA RTPFC at: rtpfc-grants@epa.gov |

| RECIPIENT: | PAYEE: |
|---|---|
| STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES 1001 I Street SACRAMENTO, CA 95812-0806 EIN: 68-0281381 | STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES 1001 I Street SACRAMENTO, CA 95812-0806 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Maryam Tasnif-abbasi 5796 Corporate Avenue Cypress, CA 90630 **Email:** Maryam.Tasnif-abbasi@dtsc.ca.gov **Phone:** 714-222-3485 | Lisa Hanusiak 75 Hawthorne Street, LND-2-1 San Francisco, CA 94105 **Email:** hanusiak.lisa@epa.gov **Phone:** 415-972-3152 | Katya Obrez Grants Branch, MSD-6 75 Hawthorne Street San Francisco, CA 94105 **Email:** obrez.katya@epa.gov **Phone:** 415-972-3744 |

**PROJECT TITLE AND EXPLANATION OF CHANGES**

BIL - STATE RESPONSE PROGRAM

EPA's CERCLA Section 128(a) grant program funds activities that establish or enhance the capacity of state and tribal response programs. The goals of this funding are to provide financial support for the elements of an effective state or tribal response program, as specified in CERCLA Section 128, and to ensure that states and tribes maintain a public record of sites included in their programs. The Infrastructure Investment and Jobs Act ("IIJA") provided additional funding to carry out the Section 128(a) grant program. The purpose of this award is to enhance the capacity of CA DTSC brownfields response program to meet the Section 128(a) elements. CA DTSC will oversee and perform planning, assessment, and cleanup of brownfields sites throughout the state, and conduct environmental outreach.

This amendment provides full federal funding in the amount of $1,300,000 and extends the budget and project period end dates from 09/30/2024 to 09/30/2025.  See terms and conditions.

| BUDGET PERIOD 10/01/2022 - 09/30/2025 | PROJECT PERIOD 10/01/2022 - 09/30/2025 | TOTAL BUDGET PERIOD COST $ 3,600,000.00 | TOTAL PROJECT PERIOD COST $ 3,600,000.00 |
|---|---|---|---|

## NOTICE OF AWARD

Based on your Application dated 04/30/2024 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $ 1,300,000.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 3,600,000.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| U.S. EPA, Region 9, U.S. EPA, Region 9 Grants Branch, MSD-6 75 Hawthorne Street San Francisco, CA 94105 | U.S. EPA, Region 9, Land, Chemicals and Redevelopment, LND-1 R9 - Region 9 75 Hawthorne Street San Francisco, CA 94105 |

| THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY | |
|---|---|
| Digital signature applied by EPA Award Official Carolyn Truong - Grants Management Officer | **DATE** 08/27/2024 |

4W - 98T51201 - 3    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $ 2,300,000 | $ 1,300,000 | $ 3,600,000 |
| EPA In-Kind Amount | $ 0 | $ 0 | $ 0 |
| Unexpended Prior Year Balance | $ 0 | $ 0 | $ 0 |
| Other Federal Funds | $ 0 | $ 0 | $ 0 |
| Recipient Contribution | $ 0 | $ 0 | $ 0 |
| State Contribution | $ 0 | $ 0 | $ 0 |
| Local Contribution | $ 0 | $ 0 | $ 0 |
| Other Contribution | $ 0 | $ 0 | $ 0 |
| Allowable Project Cost | $ 2,300,000 | $ 1,300,000 | $ 3,600,000 |

| Assistance Program (CFDA) | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.817 - State and Tribal Response Program Grants | CERCLA: Sec. 128(a)  & Infrastructure Investment and Jobs Act (IIJA) (PL 117-58) | 2 CFR 200, 2 CFR 1500, 40 CFR 33 and 40 CFR 35 Subpart A |

| Fiscal | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Site Name | Req No | FY | Approp. Code | Budget Organization | PRC | Object Class | Site/Project | Cost Organization | Obligation / Deobligation |
| - | 2409QE0062 | 24 | E1SD | 09 | 000D24X90 | 4113 | - | - | $ 1,300,000 |
| | | | | | | | | | $ 1,300,000 |

4W - 98T51201 - 3     Page 3

Budget Summary Page

| Table A - Object Class Category<br>(Non-Construction) | Total Approved Allowable<br>Budget Period Cost |
|---|---|
| 1. Personnel | $ 763,564 |
| 2. Fringe Benefits | $ 432,984 |
| 3. Travel | $ 452,000 |
| 4. Equipment | $ 0 |
| 5. Supplies | $ 0 |
| 6. Contractual | $ 850,000 |
| 7. Construction | $ 0 |
| 8. Other | $ 0 |
| 9. Total Direct Charges | $ 2,498,548 |
| 10. Indirect Costs: 0.00 % Base : refer to General T/C | $ 1,101,452 |
| 11. Total (Share: Recipient ___0.00 % Federal __100.00 %) | $ 3,600,000 |
| 12. Total Approved Assistance Amount | $ 3,600,000 |
| 13. Program Income | $ 0 |
| 14. Total EPA Amount Awarded This Action | $ 1,300,000 |
| 15. Total EPA Amount Awarded To Date | $ 3,600,000 |

# Administrative Conditions

Previous Administrative Terms and Conditions are reiterated and updated.

## General Terms and Conditions

The General Terms and Conditions of this agreement are updated in accordance with the link below. However, these updated conditions apply solely to the funds added with this amendment and any previously awarded funds not yet disbursed by the recipient as of the award date of this amendment. The General Terms and Conditions cited in the original award or prior funded amendments remain in effect for funds disbursed by the recipient prior to the award date of this amendment.

The recipient agrees to comply with the current EPA general terms and conditions available at: https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2023-or-later.

These terms and conditions are binding for disbursements and are in addition to or modify the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

## A.  Federal Financial Reporting (FFR)

For awards with cumulative project and budget periods greater than 12 months, the recipient will submit an annual FFR (SF 425) covering the period from "project/budget period start date" to **June 30** of each calendar year to the EPA Finance Center in Research Triangle Park, NC.  The annual FFR will be submitted electronically to rtpfc-grants@epa.gov no later than **September 30** of the same calendar year. Find additional information at https://www.epa.gov/financial/grants. (NOTE: The grantee must submit the Final FFR to rtpfc-grants@epa.gov within 120 days after the end of the project period.)

## B.  Procurement

The recipient will ensure all procurement transactions will be conducted in a manner providing full and open competition consistent with 2 CFR Part 200.319.  In accordance with 2 CFR Part 200.324, the grantee and subgrantee(s) must perform a cost or price analysis in connection with applicable procurement actions, including contract modifications.

*State recipients must follow procurement procedures as outlined in 2 CFR Part 200.317.*

## C.  MBE/WBE Reporting, 40 CFR, Part 33, Subpart E (EPA Form 5700-52A)

The recipient agrees to submit a "MBE/WBE Utilization Under Federal Grants and Cooperative Agreements" report (EPA Form 5700-52A) annually for the duration of the project period. The current EPA Form 5700-52A with instructions is located at https://www.epa.gov/grants/epa-grantee-forms

This provision represents an approved exception from the MBE/WBE reporting requirements as described in 40 CFR Section 33.502.

Reporting is required for assistance agreements where funds are budgeted for procuring construction, equipment, services and supplies (including funds budgeted for direct procurement by the recipient or procurement under subawards or loans in the "Other" category) with a cumulative total that exceed the **Simplified Acquisition Threshold (SAT) currently set at $250,000** (the dollar threshold will be automatically revised whenever the SAT is adjusted; See 2 CFR Section 200.1), including amendments and/or modifications. All procurement actions are reportable when reporting is required, not just the portion which exceeds the SAT.

Recipients with expended and/or budgeted funds for procurement are required to report annually whether the planned procurements take place during the reporting period or not. If no budgeted procurements take place during the reporting period, the recipient should check the box in section 4A when completing the form.

When completing the annual report, recipients are instructed to check the box titled "annual" in section 1B of the form. For the final report, recipients are instructed to check the box indicated for the "Final Report (project completed)" in section 1B of the form.

The annual reports are due by October 30th of each calendar year and the final report is due within 120 days after the end of the project period, whichever comes first.  The recipient will submit the MBE/WBE report(s) and/or questions to GrantsRegion9@epa.gov and the EPA Grants Specialist identified on page 1 of the award document.

4W - 98T51201 - 3    Page 6

## Programmatic Conditions

Previous Programmatic Terms and Conditions are superseded by those in **Attachment A**.  These conditions apply henceforth.


**\*\*\* END OF ASSISTANCE AGREEMENT \*\*\***

# ATTACHMENT A

# CERCLA SECTION 128(a) STATE AND TRIBAL RESPONSE PROGRAM FY24 INFRASTRUCTURE INVESTMENT AND JOBS ACT ("IIJA") FUNDING

## GRANT-SPECIFIC PROGRAMMATIC TERMS AND CONDITIONS

### For: California Department of Toxic Substances Control Cooperative Agreement #4W-98T51201-3

Due to the budget accounting, tracking, and reporting requirements for the Infrastructure Investment and Jobs Act ("IIJA") funding, Section 128(a) cooperative agreements funded with IIJA money must be awarded separately from Section 128(a) cooperative agreements with annual appropriated funds. In the same vein, Section 128(a) IIJA funds are not eligible to be included in Performance Partnership Grants ("PPGs") under 40 CFR Part 35 Subparts A and B. This restriction is intended to ensure that Section 128 Cooperative Agreement Recipients ("CARs") can effectively track, account for, and report on the use of IIJA funding.

If a CAR has two FY24 Section 128(a) Cooperative Agreements (one with annual appropriated funds and one with IIJA funds), the two awards must clearly delineate what activities will utilize annual appropriation funds versus IIJA funds. CARs must work closely with EPA Project Officers to ensure that there is no duplication of work funded by the two sources of funding.

I. **Response Program Elements**: The CAR must demonstrate that it is taking reasonable steps to include, or has already included in its response program, the four elements identified in CERCLA Section 128(a)(2).

II. **Substantial Involvement**: This is a cooperative agreement that will entail substantial involvement by EPA to the extent Agency resources permit. Substantial EPA involvement includes:

 A. Consultation and collaboration on technical and policy matters at the CAR's request. EPA's Project Officer or designee may provide data, advice, and information that will help the CAR carry out the agreement effectively;

 B. EPA's Project Officer may review the substantive terms of professional services contracts or subawards the CAR enters into to carry out specific elements of the scope of work. Neither EPA's Project Officer nor any other EPA employee will direct, recommend, or suggest that the CAR enter into a contract or subaward with a specific entity. EPA approval is not required for contracts for supplies, equipment, information technology and other administrative

1

support services;

    C.  EPA's Project Officer may review the qualifications of key staff hired by the CAR or consultants with whom the CAR contracts to carry out specific elements of the scope of work when those staff or contractors are paid by the grant funds. Neither EPA's Project Officer nor any other EPA employee will direct, recommend, or suggest that the CAR hire a particular individual or enter into a consulting contract with a specific entity;

    D.  Monitoring by EPA of the CAR's performance under the agreement; and

(NOTE: EPA's Project Officer may waive or modify its substantial involvement on any particular matter or classes of matters through written advice to the CAR.)


III.  **Public Record System**: The CAR must establish a public record system pursuant to CERCLA Section 128(b)(1)(C). The public record must be maintained and updated at least annually and include the requirements listed below.

    A.  For sites where response actions were completed in the previous grant project year, include the following:

        1.  Date the response action was completed;

        2.  Site name, name of owner at time of cleanup, and type of site (e.g., petroleum, methamphetamine laboratory, mine scarred lands);

        3.  Location of the site (street address, latitude and longitude);

        4.  Explanation of whether or not the site will be suitable for unrestricted use upon completion of the response action. If not, the public record must identify and describe the institutional control(s) in place or relied on for the remedy (e.g., deed restriction);

        5.  Nature of the contamination at the site (e.g., hazardous substances, contaminants, pollutants, petroleum contamination, etc.); and

        6.  Size of the site in acres.

    B.  A list of sites planned to be addressed in the next year by the state or tribal response program including:

        1.  Site name, name of owner at time of cleanup, and type of site (e.g., petroleum, methamphetamine laboratory, mine scarred lands);

        2.  Location of the site (street address, latitude and longitude);

        3.  To the extent known, whether an institutional control is in place. If so, describe the type of institutional control in place (e.g., deed restriction);

4.  To the extent known, the nature of the contamination at the site (e.g., hazardous substances, contaminants, pollutants, petroleum contamination, etc.); and

5.  Size of the site in acres.

C.  Once a public record is established in a manner consistent with CERCLA Section 128(b)(1)(C), CARs must maintain the public record throughout the duration of this agreement.

## IV.  Site-Specific Assessment and Cleanup Activities:

A.  Consistent with CERCLA Section 128(a)(2)(C)(iii), EPA guidance, and to the extent authorized by the scope of work for this agreement, the CAR may conduct assessments or cleanups at sites that meet the definition of a "brownfield" site as defined at CERCLA Section 101(39) in response to a request by a person who is or may be affected by a release or threatened release of a hazardous substance, pollutant, contaminant, or petroleum at a brownfield located in the community in which the person works or resides. Assessments and cleanups must comply with all applicable laws and are subject to the following restrictions:

1.  Absent approval by EPA's Project Officer, no more than $250,000 per site can be funded for assessments, and no more than $250,000 per brownfield site can be funded for cleanups.

2.  Absent approval by EPA's Project Officer, the CAR may not use funds awarded under this agreement to assess and/or cleanup brownfields owned by the CAR or held in trust by the United States Government for the CAR.

3.  Assessments and cleanups may not be conducted at brownfields where the CAR is a potentially responsible party ("PRP") pursuant to CERCLA Section 107, except when the CAR acquired the property before January 11, 2002, and has not caused or contributed to a release or threatened release of a hazardous substance at the property.

B.  Consistent with CERCLA Section 128(a)(2)(B)(ii), and to the extent authorized by the scope of work for this agreement, the CAR may use funds awarded under this agreement to complete the necessary response activities, including assessments and cleanups, if the person conducting a response action overseen by the CAR fails to complete the necessary response activities, including operation and maintenance or long-term monitoring activities. Assessments and cleanups under this provision must comply with all applicable laws and are subject to the following restrictions:

1.  Absent approval by EPA's Project Officer, the CAR may not use funds awarded under this agreement to assess and cleanup sites owned by the CAR.

2.  The CAR may not use funds awarded under this agreement to assess or cleanup sites for which the CAR is a potentially responsible party (pursuant to CERCLA Section 107), with the exception of sites contaminated by a controlled substance as

defined in CERCLA Section 101(39)(D)(ii)(I).

C.  For the site-specific activities under paragraphs III.A. and III.B., the CAR must maintain documentation supporting the CAR's conclusion that the site meets the brownfield definition in CERCLA Section 101(39). For those sites which are excluded from the brownfield definition, pursuant to CERCLA Section 101(39)(B), but are eligible for a property-specific funding determination pursuant to CERCLA Section 101(39)(C), the CAR must comply with paragraph V below. NOTE: To the extent authorized in the scope of work for this agreement, the CAR may conduct oversight of cleanups at sites other than brownfields. Records must be maintained per 2 CFR 200.334.

D.  For site-specific activities at petroleum-only brownfields sites (CERCLA Section 101(39)(D)(ii)(II)), the requirements listed below apply.

    1.  The CAR must determine and maintain supporting documentation that:

        a)  There is no viable responsible party for the site;

        b)  The site will not be assessed, investigated, or cleaned up by a person that is potentially liable for cleaning up the site; and

        c)  The site is not subject to any order issued under Section 9003(h) of the Solid Waste Disposal Act.

    2. The supporting documentation must identify the state official who made the determinations identified in D.1., the date the CAR obtained the determinations, and a summary of each conclusion.

CARs are encouraged to reach out to their EPA regional brownfields contacts with questions on petroleum brownfield site eligibility and where to get additional information. Additional resources can be found on EPA's Brownfields website, such as Community Visions for Abandoned Gas Stations and EPA's Petroleum Contact List for Tribes and EPA's Office of Underground Storage Tank's ("OUST's") Petroleum Brownfields webpage.

E.  **Site-specific Activity Funding Limit**:  The amount requested for site-specific assessments and cleanups **may not exceed 75%** of the total amount of Section 128(a) funding awarded to the CAR during FY 2024. This 75% cap includes the total funding that the CAR received from both the FY24 Section 128(a) Annual Appropriation funds and FY24 Section 128(a) IIJA funds. *[Note: Oversight of assessment and cleanup activities performed by responsible parties (other than the state or tribe) does not count toward the 75% limit. The 75% cap also does not include personnel or supplies/equipment purchased in support of site-specific work.]*

A CAR may submit to the EPA Project Officer a written request for a waiver to exceed the 75% of annual funding for site-specific activities, as described under Section III A-D. The EPA Project Officer will review the waiver request and make a recommendation to EPA's Office

of Brownfields and Land Revitalization, who will determine if the requested waiver is approved. The EPA Project Officer will notify the CAR of EPA's determination.

The CAR's written waiver request submitted to the EPA Project Officer must include a brief justification describing the reason(s) for spending more than 75% of their FY24 total annual appropriation and IIJA allocation on site-specific activities and must include the following information:

      1.  Provide the percentage of the eligible brownfield site-specific activities (assuming waiver is approved) in the CAR's total FY24 budget;

      2.  List all site-specific activities that will be covered by this funding. If known, provide site-specific information and a description of how work on each site contributes to the establishment or enhancement of your state/tribal response program. EPA encourages states and tribes to use site-specific funding to perform assessment and cleanup activities that will expedite the reuse and redevelopment of sites, and prioritize sites based on need. Further explain how the community will be (or has been) involved in prioritization of site work and especially those sites where there is a potential or known significant environmental impact to the community;

      3.  Explain how this shift in funding will not negatively impact the core programmatic capacity (i.e., the ability to establish/enhance the four elements of a response program) and how it will be maintained in spite of an increase in site-specific work. Grantees must demonstrate that they have adequate funding from other sources to effectively carry out work on the four elements for EPA to grant a waiver of the 75% limit on using 128(a) funds for site-specific activities;

      4.  Describe how this shift in funding towards site-specific work is appropriate for your response program; and

      5.  Explain whether the sites to be addressed are those for which the affected community/ies has/have requested work be conducted.


**V.  Property-Specific Funding Determinations:**

    A.  If a CAR plans to use funds for site-specific activities at a site that is excluded from the definition of a brownfield in CERCLA Section 101(39)(A) and (B) but is eligible for a property-specific funding determination, then the CAR must provide information sufficient for EPA's Regional Approval Official, as delegated by Delegation 14-44 and 14-45, to make a property-specific funding determination. Sites eligible for property-specific funding are defined in CERCLA Section 101(39)(C). The CAR must comply with the following requirements:

      1.  The CAR must not incur any site-specific costs for those sites which require a property-specific funding determination under this agreement (other than those necessary to provide information to EPA) until EPA's Approval Official makes a property-specific funding determination.

2.  The CAR must submit to EPA's Project Officer a written request for a property-specific funding determination. The request must include information about the site (e.g., name, location, owners) and explain how the financial assistance will:

a)  Protect human health and the environment, and

b)  Either promote economic development or enable the creation of, preservation of, or addition to parks, greenways, undeveloped property, other recreational property or other property used for nonprofit purposes.

B.  Any property-specific funding determination granted by EPA does not obviate the CAR's responsibility to incur only costs that meet the terms and conditions of the agreement and are allowable under 2 CFR Parts 200 and 1500 for governmental entities.

**VI.  Institutional Controls**: To the extent authorized by the scope of work for this agreement, the CAR may use funding under this agreement to maintain and monitor institutional controls.

**VII.  Infrastructure Investment and Jobs Act (IIJA) Signage Required**

A. **Signage Requirements**

1. Investing in America Emblem: The recipient will ensure that a sign is placed at construction sites supported under this award displaying the official Investing in America emblem and must identify the project as a "project funded by President Biden's Bipartisan Infrastructure Law."

Construction is defined at 40 CFR 33.103 as "erection, alteration, or repair (including dredging, excavating, and painting) of buildings, structures, or other improvements to real property, and activities in response to a release or a threat of a release of a hazardous substance into the environment, or activities to prevent the introduction of a hazardous substance into a water supply."

The sign must be placed at construction sites in an easily visible location that can be directly linked to the work taking place and must be maintained in good condition throughout the construction period. The recipient will ensure compliance with the guidelines and design specifications provided by EPA for using the official Investing in America emblem available at https://www.epa.gov/invest/investing-america-signage.

2. EPA Logo: The recipient will ensure that signage displays the EPA logo along with the official Building A Better America emblem. The EPA logo must not be displayed in a manner that implies that EPA itself is conducting the project. Instead, the EPA logo must be accompanied with a statement indicating that the recipient received financial assistance from EPA for the project. The recipient will ensure compliance with the sign specifications provided by the EPA Office of Public Affairs (OPA) available at: https://www.epa.gov/grants/epa-logo-seal-specifications-signage-producedepa-assistance-agreement-recipients.  As provided in the sign specifications from OPA, the

6

EPA logo is the preferred identifier for assistance agreement projects and use of the EPA seal requires prior approval from the EPA.

To obtain the appropriate EPA logo or seal graphic file, the recipient should send a request directly to OPA and include the EPA Project Officer in the communication. Instructions for contacting OPA is available on the Using the EPA Seal and Logo page.

3. Procuring Signs: Consistent with section 6002 of RCRA, 42 U.S.C. 6962, and 2 CFR 200.323, recipients are encouraged to use recycled or recovered materials when procuring signs. Signage costs are considered an allowable cost under this assistance agreement provided that the costs associated with signage are reasonable. Additionally, to increase public awareness of projects serving communities where English is not the predominant language, recipients are encouraged to translate the language on signs (excluding the official Investing in America emblem or EPA logo or seal) into the appropriate non-English language(s). The costs of such translation are allowable, provided the costs are reasonable.

B. **Public or Media Events**

The CAR agrees to notify the EPA Project Officer listed in this award document of public or media events publicizing the accomplishment of significant events related to construction and/or site reuse projects as a result of this agreement, and provide the opportunity for attendance and participation by federal representatives with at least ten (10) working days' notice.

To increase public awareness of projects serving communities where English is not the predominant language, CARs are encouraged to include in their outreach strategies communication in non-English languages. Translation costs for this purpose are allowable, provided the costs are reasonable.

All public awareness activities conducted with EPA funding are subject to the provisions in the General Terms and Conditions on compliance with section 504 of the Americans with Disabilities Act.

**VIII.  Grant Performance Reporting Requirements:**

A. <u>**Performance Reporting Requirements for Program Activity Levels ("PALs")**</u>

<u>CARs must report Program Activity Levels ("PALs") **once** annually when the Section 128(a) funding request is due to the appropriate EPA Regional Office in mid-December</u>. PALs summarize the work from the previous federal fiscal year, therefore, a CAR's *responses to the PALs questions should reflect activities for the period covering the last federal fiscal year (October 1 – September 30)*, including:

1.  Environmental programs where CERCLA 128(a) funds are used to support capacity building [general program support, non-site-specific work]. Specify which programs were supported with 128(a) from the following: Brownfields,

7

Underground Storage Tanks/Leaking Underground Storage Tanks, Federal Facilities, Solid Waste Superfund, Hazardous Waste Facilities, VCP (Voluntary Cleanup Program, Independent Cleanup Program, etc.), and Other;

2.  Number of properties (or sites) enrolled in a response program during previous federal fiscal year;

3.  Number of properties (or sites) where documentation indicates that cleanup work is complete AND either (a) all required institutional controls (IC's) are in place, or (b) the cleanup does not require ICs;

4.  Total number of acres associated with properties (or sites) in the previous question (Question #3);

5.  OPTIONAL: Number of properties (or sites) where assistance was provided, but the property was not enrolled in a response program;

6.  Date that the public record was last updated;

7.  Number of audits/inspections/reviews/other conducted to ensure engineering controls and institutional controls are still protective; and

8.  Did you develop or revise legislation, regulations, codes, guidance documents or policies related to establishing or enhancing your Voluntary Cleanup Program/Response Program during FY23? If yes, please indicate the type and whether it was new or revised.

**CARs are required to provide PALs information directly into EPA's Assessment, Cleanup and Redevelopment Exchange System ("ACRES") database.**

**For detailed instructions on how to report PALs in ACRES, please see the quick reference guide at https://www.epa.gov/brownfields/brownfields-grantee-reporting-using-assessment-cleanup-and-redevelopment-exchange.** For technical support, contact 703-284-8212 or email acres_help@epa.gov.  For questions specific to your grant data, contact your EPA Regional Representative.

B.  Quarterly Performance Reporting Requirements:  CAR agrees to provide performance reports quarterly. The reports will be due no later than 30 calendar days after the reporting period.

1.  All interim and final progress reports must prominently display the following three relevant Essential Elements as reflected in the current EPA strategic plan:
    a)  Strategic Plan Goal 6: Safeguard and Revitalize Communities

    b)  Strategic Plan Objective 6.1: Clean Up and Restore Land for Productive Uses and Healthy Communities

c) <u>Work plan Commitments and Timeframes</u>: See work plan for specifics.

2. The CAR will report on milestones, activities, and outputs achieved under this agreement. Examples of items to include:

a) The completion of significant site planning, assessment, cleanup, or redevelopment activities, including any relevant information regarding whether such activities anticipated or otherwise considered the impacts of climate change and/or benefited a community with environmental justice concerns. [*The EPA describes environmental justice ("EJ") as the fair treatment and meaningful involvement of all people regardless of race, color, national origin, or income with respect to the development, implementation and enforcement of environmental laws, regulations, and policies. For example, an "underserved community" refers to a community with environmental justice concerns and/or vulnerable populations, including low-income citizens, communities of color, and tribal and Indigenous peoples.*];

b) Information regarding significant outreach, meeting, or training events, including whether such outreach engaged communities with environmental justice concerns;

c) Significant updates to a website or tracking system or improvements to the process;

d) For site-specific work, details such as where and when the activity was conducted and why, who was involved or impacted, and what was accomplished, including whether site-specific work anticipated or otherwise considered the impacts of climate change and/or benefited a community with environmental justice concerns. The narrative may range in length between a paragraph and one page in length for a specific site. Provide before and after photos of site work and photos of events, unless the site assessment report already has been provided to EPA as a deliverable.

e) A budget summary table which may include the following information: current approved project budget; costs incurred during the reporting quarter; costs incurred to date (cumulative expenditures); and total remaining funds.

3. All CARs must report information relating to establishing and maintaining the public record described in paragraph II above and provide the date of the last update. (<u>NOTE</u>: For this requirement, CARs can refer to their already existing public record, such as a website or other public database).

4. CARs with work plans that include funding for other site-related activities must include a description of the activities and provide the number of sites at which the activities were conducted. For example:

9

a) Number and frequency of oversight reviews (internal audits) of licensed site professional certified cleanups.

b) Number and frequency of state/tribal oversight reviews (internal audits) conducted.

c) Number of sites where staff conducted reviews (internal audits), provided technical assistance, or conducted other oversight activities.

d) Number of staff conducting oversight reviews (internal audits), providing technical assistance, or conducting other oversight activities.

5. CARs must report activities related to establishing or enhancing the four elements of the state or tribe's response program:

a) For each element, CARs must report how they are maintaining the element or how they are taking reasonable steps to establish or enhance the element as negotiated in individual CAR work plans. For example, pursuant to CERCLA Section 128(a)(2)(B), reports on the oversight and enforcement authorities/mechanisms element may include:

(1) A narrative description and copies of applicable documents developed or under development to enable the response program to conduct enforcement and oversight at sites. For example:
(a) Legal authorities and mechanisms (e.g., statutes, regulations, orders, agreements);

(b) Cleanup standards for soil and water; and

(c) Policies and procedures to implement legal authorities; and

(d) Other mechanisms;

(2) A description of the resources and staff allocated/to be allocated to the response program to conduct oversight and enforcement at sites as a result of the grant;

(3) A narrative description of how these authorities or other mechanisms and resources are adequate to ensure that:

(a) A response action will protect human health and the environment and be conducted in accordance with applicable laws; and

(b) A response action will be completed if the person conducting the response action fails to conduct the necessary

10

response activities, including operation and maintenance or long-term monitoring activities;

(4)  A narrative description and copy of appropriate documents demonstrating the exercise of oversight and enforcement authorities by the response program at a site.

b)  EPA strongly encourages CARs to report specific performance measures related to the four elements in progress reports. These data may be aggregated for national reporting to Congress, and include:

(1)  Timely Survey & Inventory - Estimated number of brownfield sites in the state or tribal response program.

(2)  Oversight & Enforcement Authorities/Mechanisms - Number of active cleanups and percentage that received oversight; percentage of active cleanups not in compliance with the cleanup work plan and that received communications from the CAR regarding non-compliance.

(3)  Public Participation - Percentage of sites in the state or tribal response program where public meetings/notices were conducted regarding the cleanup plan and/or other site activities; number of requests and responses to site assessment requests.

(4)  Cleanup Approval/Certification Mechanisms - Total number of "no further action" letters or total number of certificate of completions.

[NOTE: This reporting requirement includes activities not funded with CERCLA Section 128(a) funding, because this information may be used by EPA to evaluate whether CARs have met or are taking reasonable steps to meet the four elements of a response program pursuant to CERCLA Section 128(a)(2).]

C.  **Significant Developments**: As required by 2 CFR 200.329(e), the CAR must inform EPA and report on significant impacts to grant-supported activities when they occur between the scheduled reporting dates. Significant developments to report may include problems or delays (such as staff vacancies or travel restrictions) as well as favorable developments or successes associated with milestones and activities as listed under section VII.B above.

D.  **Reporting Requirements Related to Site Assessment and Cleanup Work**: The CARs must report on interim progress (e.g., assessment started) and any final accomplishments (e.g., assessment completed, cleanup required, contaminants, Institutional Controls, Engineering Controls) by submitting information into the Brownfields online reporting system, known as the Assessment, Cleanup and Redevelopment Exchange System ("ACRES"). The CAR must enter this data into ACRES within 30 days of the end of the next reporting period or sooner at EPA's request. EPA will provide the CARs with training, which is required to obtain access to ACRES.

E. **Final Report**: The CAR must submit a final performance report at the end of the period of performance in order to finalize the closeout of the grant. This final report must capture the work that was performed during the period of performance, explain how the funding was utilized, and may include a summary of activities as is listed under VI.B. above. The final report is due within 120 days of the end of the period of performance and, with approval from the EPA Project Officer, may be submitted in lieu of a final quarterly or semi-annual report.

F. **Updating the State Brownfields and Voluntary Response Programs Report in ACRES**

State CARs must update their state response program information in ACRES at least once a year (and may update more frequently if changes in their response program warrant an additional update), so that EPA has accurate, up-to-date information to share with the public in the form of a State Brownfields and Voluntary Response Program Report. EPA expects that this annual update will occur when states are already in the ACRES database performing other required ACRES reporting, thereby reducing the administrative burden.

For detailed instructions on how to update your state brownfields information in ACRES, please see the quick reference guide at https://www.epa.gov/brownfields/brownfields-grantee-reporting-using-assessment-cleanup-and-redevelopment-exchange.

**IX. General Federal Requirements**: The CAR must comply with federal cross-cutting requirements. These requirements include, but are not limited to, EPA's disadvantaged business enterprise requirements found at 40 CFR Part 33; nondiscrimination statutes, including Title VI of the Civil Rights Act of 1964, and EPA's implementing regulations found at 40 C.F.R. Parts 5 and 7; OSHA Worker Health & Safety Standards in 29 CFR 1910.120; the Uniform Relocation Act; National Historic Preservation Act; Endangered Species Act; Permits required by Section 404 of the Clean Water Act; Executive Order 11246, Equal Employment Opportunity, and implementing regulations at 41 CFR 60-4; Contract Work Hours and Safety Standards Act, as amended (40 USC 327-333); the Anti-Kickback Act (40 USC 3145); and Section 504 of the Rehabilitation Act of 1973, as implemented by Executive Orders 11914 and 11250. **EPA provides additional information on cross-cutting requirements in EPA Subaward Cross Cutter Requirements.**

**X. Program Income**: In accordance with 2 CFR 1500.8, the CAR is authorized to add program income generated under this agreement to the funds committed by EPA. The CAR can use this program income to carry out activities described in the scope of work for this agreement and under the same terms and conditions of the agreement. *Program income* is defined generally at 2 CFR 200.1. For the purposes of this agreement, program income includes fees paid by participants in the CAR's voluntary cleanup program or other fees for services (only to the extent that these fees recover costs charged to this agreement). Costs the CAR recovers for cleanups and site assessments are program income to the same extent that the recovered costs represent costs charged to this agreement. The CAR must provide as part of its Quarterly and Final performance report, a description of how program income is being used. In addition, a report on

the amount of program income earned during the award period must be submitted with the Annual and Final Federal Financial Report, Standard Form 425.

The CAR will maintain records adequate to document the extent to which transactions generate program income and the disposition of program income. As required by 2 CFR 200.305(b)(5), tribal CARs will disburse program income before requesting additional payments under this agreement. State CARs are subject to 2 CFR 200.305(a).

## XI.  Quality Assurance

Authority: Quality Assurance applies to all assistance agreements involving environmental information (including environmental data collection, production, or use) as defined in 2 CFR § 1500.12, Quality Assurance.

The CAR shall ensure that subawards involving environmental information issued under this agreement include appropriate quality requirements for the work. The CAR shall ensure sub-award recipients develop and implement the Quality Assurance ("QA") planning document(s) in accordance with this term and condition; and/or ensure sub-award recipients implement all applicable approved QA planning documents.

### A.  QUALITY ASSURANCE PROJECT PLAN ("QAPP")

1. Prior to beginning environmental information operations, the recipient must:

   a. Submit a previously EPA-approved QAPP proposed to ensure the collected, produced, evaluated, or used environmental information is of known and documented quality for the intended use(s).

   b. ii. The EPA Quality Assurance Manager or designee (hereafter referred to as QAM) will notify the recipient and EPA Project Officer (PO) in writing if the previously EPA-approved QAPP is acceptable for this agreement.

**For Reference:**

\*  **Quality Management Plan (QMP) Standard (Directive No: CIO 2105-S-01.0) and EPA QA/R-5: *EPA Requirements for Quality Assurance Project Plans*; contain quality specifications for EPA and non-EPA organizations and definitions applicable to these terms and conditions.**

\*  **EPA QA/G-5: *Guidance for Quality Assurance Project Plans*, Appendix C provides a QAPP Checklist.**

\*  **EPA's Quality Program website has a list of QA managers, Quality Specifications for non-EPA Organizations to do business with EPA, and a Quality Assurance Project Plan Development Tool.**

\*  **The Office of Grants and Debarment Quality Assurance Requirements.**

13

XII. **Competency of Organizations Generating Environmental Measurement Data**: In accordance with Agency Policy Directive Number FEM-2012-02, Policy to Assure the Competency of Organizations Generating Environmental Measurement Data under Agency-Funded Assistance Agreements, CAR agrees, by entering into this agreement, that it has demonstrated competency prior to award, or alternatively, where a pre-award demonstration of competency is not practicable, the CAR agrees to demonstrate competency prior to carrying out any activities under the award involving the generation or use of environmental data. The CAR shall maintain competency for the duration of the agreement's period of performance, and this will be documented during the annual reporting process. A copy of the Policy is available online at http://www.epa.gov/fem/lab_comp.htm, or a copy may also be requested by contacting the EPA project officer for this award.

XIII. **Geospatial Data Standards:** All geospatial data created must be consistent with Federal Geographic Data Committee ("FGDC") endorsed standards.  Information on these standards may be found at https://www.fgdc.gov/.

XIV. **Cybersecurity Grant Condition**

A.  The CAR agrees that when collecting and managing environmental data under this assistance agreement, it will protect the data by following all applicable State law cybersecurity requirements.

B. (1) EPA must ensure that any connections between the CAR's network or information system and EPA networks used by the CAR to transfer data under this agreement, are secure. For purposes of this Section, a connection is defined as a dedicated persistent interface between an Agency IT system and an external IT system for the purpose of transferring information. Transitory, user-controlled connections such as website browsing are excluded from this definition.

If the CAR's connections, as defined above, do not go through the Environmental Information Exchange Network or EPA's Central Data Exchange, the CAR agrees to contact the EPA Project Officer (PO) and work with the designated Regional/Headquarters Information Security Officer to ensure that the connections meet EPA security requirements, including entering into Interconnection Service Agreements as appropriate. This condition does not apply to manual entry of data by the CAR into systems operated and used by EPA's regulatory programs for the submission of reporting and/or compliance data.

(2) The CAR agrees that any subawards it makes under this agreement will require the subrecipient to comply with the requirements in (b)(1) if the subrecipient's network or information system is connected to EPA networks to transfer data to the Agency using systems other than the Environmental Information Exchange Network or EPA's Central Data Exchange. The CAR will be in compliance with this condition: by including this requirement in subaward agreements; and during subrecipient monitoring deemed necessary by the CAR under 2 CFR 200.332(d), by inquiring whether the subrecipient has contacted the EPA Project Officer.

14

Nothing in this condition requires the CAR to contact the EPA Project Officer on behalf of a subrecipient or to be involved in the negotiation of an Interconnection Service Agreement between the subrecipient and EPA.

### Davis-Bacon Term and Condition for Brownfields

1. **Program Applicability**
   a. **Program Name:** Brownfields Program
   b. **Statute:** Brownfields Direct Cleanup and Revolving Loan Fund Grants authorized by 42 U.S.C. 9604(k) are subject to Davis-Bacon and Related Acts (DBRA) as provided in 42 U.S.C. 9604(g)
   c. **Activities subject to Davis-Bacon:**
      i. **Brownfield Sites Contaminated with Hazardous Substances:** All construction, alteration, and repair activity involving the remediation of hazardous substances is subject to DBRA. This includes:
         o Excavation of contaminated soil;
         o Construction of caps, barriers, and structures which permanently house treatment equipment;
         o Installation of water supply wells/piping/connections;
         o Abatement of contamination in buildings; and
         o Demolition (if followed by new construction).
      ii. **Brownfield Sites Contaminated with Petroleum:** DBRA prevailing wage requirements apply when the project includes:
         o Excavation of contaminated soil and/or tank removal if followed by paving and concrete replacement, or if it is an extensive soil excavation project;
         o Construction of caps, barriers, and structures which permanently house treatment equipment; and
         o Installation of water supply wells/piping/connections and related excavation and replacement of contaminated soil.
   d. **Prevailing Wage Classification (e.g., Heavy Construction, Residential, Commercial) (optional):**
      • **Heavy Construction:** EPA has determined the "Heavy Construction" classification should be used when soliciting competitive contracts or issuing ordering instruments to existing contractors for:
         o Excavation and removal of contaminated soil;
         o Construction of caps or barriers;
         o Replacement of paving and concrete; and
         o Installation of water supply wells/piping/connections.
      • **Building Construction:** EPA has determined the "Building Construction" classification should be used when soliciting competitive contracts or issuing ordering instruments for the construction of:
         o Demolition (if followed by new construction);

15

- o Construction of structures which permanently house treatment equipment; and
- o Abatement of contamination in buildings (other than residential structures less than 4 stories in height).
- **Residential Construction:** EPA has determined the "Residential Construction" classification should be used when soliciting competitive contracts or issuing ordering instruments for the abatement of contamination in residential structures less than 4 stories in height.

2. **Davis-Bacon and Related Acts**
   DBRA is a collection of labor standards provisions administered by the Department of Labor, that are applicable to grants involving construction. These labor standards include the:
   - Davis-Bacon Act, which requires payment of prevailing wage rates for laborers and mechanics on construction contracts of $2,000 or more
   - Copeland "Anti-Kickback" Act, which prohibits a contractor or subcontractor from inducing an employee into giving up any part of the compensation to which he or she is entitled; and
   - Contract Work Hours and Safety Standards Act, which requires overtime wages to be paid for over 40 hours of work per week, under contracts in excess of $100,000.

3. **Recipient Responsibilities When Entering Into and Managing Contracts:**
   a. **Solicitation and Contract Requirements:**
      i. **Include the Correct Wage Determinations in Bid Solicitations and Contracts:** Recipients are responsible for complying with the procedures provided in 29 CFR 1.6 when soliciting bids and awarding contracts.
      ii. **Include DBRA Requirements in All Contracts:** Include the following text on all contracts under this grant:
         **"By accepting this contract, the contractor acknowledges and agrees to the terms provided in the DBRA Requirements for Contractors and Subcontractors Under EPA Grants."**
   b. **After Award of Contract:**
      i. **Approve and Submit Requests for Additional Wages Rates:** Work with contractors to request additional wage rates if required for contracts under this grant, as provided in 29 CFR 5.5(a)(1)(iii).
      ii. **Provide Oversight of Contractors to Ensure Compliance with DBRA Provisions:** Ensure contractor compliance with the terms of the contract, as required by 29 CFR 5.6.

4. **Recipient Responsibilities When Establishing and Managing Additional Subawards:**
   a. **Include DBRA Requirements in All Subawards (including Loans):**
      Include the following text on all subawards under this grant:
      **"By accepting this award, the EPA subrecipient acknowledges and agrees to**

16

the terms and conditions provided in the **DBRA Requirements for EPA Subrecipients**."

    **b. Provide Oversight to Ensure Compliance with DBRA Provisions:** Recipients are responsible for oversight of subrecipients, and must ensure subrecipients comply with the requirements in **29 CFR 5.6**.

**5.** The contract clauses set forth in this Term & Condition, along with the correct wage determinations, will be considered to be a part of every prime contract covered by Davis-Bacon and Related Acts (see **29 CFR 5.1**), and will be effective by operation of law, whether or not they are included or incorporated by reference into such contract, unless the Department of Labor grants a variance, tolerance, or exemption. Where the clauses and applicable wage determinations are effective by operation of law under this paragraph, the prime contractor must be compensated for any resulting increase in wages in accordance with applicable law.

17

# EXHIBIT B

| | |
|---|---|
| **From:** | Black Glennon, Jennifer@DTSC |
| **To:** | Hanusiak, Lisa (she/her); Obrez, Katya; luo.megan@epa.gov |
| **Cc:** | EPAGrants@DTSC; "GrantsRegion9@epa.gov"; Lee, Leslie@DTSC |
| **Subject:** | 4W - 98T51201 State and Tribal Response Program and 4U -98T49101 Pollution Prevention Grants |
| **Date:** | Monday, February 3, 2025 5:24:00 PM |

Good evening,

Please note that two federal courts have issued temporary restraining orders prohibiting federal agencies from implementing recent direction to pause, freeze, impede, block, cancel, or terminate disbursement of federal financial assistance or otherwise impede the States' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms. And the U.S. Department of Justice has provided your agency with the attached "Notice of Court Order," which directs, among other things, that "Federal agencies cannot pause, freeze, impede, block, cancel, or terminate any awards or obligations on the basis of the OMB Memo [M-25-13, dated Jan. 27, 2025], or on the basis of the President's recently issued Executive Orders."

As of the afternoon of February 3, 2025, Pacific Time, however, the subject line BIL (IIJA) grants do not appear in DTSC's ASAP system. We request that those funds immediately be unfrozen, consistent with the federal court orders and U.S. DOJ's direction.

**Please advise by 12 p.m. Eastern Time (9 a.m. Pacific Time) tomorrow, February 4,** as to whether you have complied with the court's orders, or any reason why you have not unfrozen these funds.

Thank you!

Jennifer Black Glennon, JD *(she/her/hers)*
**Chief,** Grants and Program Support Branch
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
(916) 869-5356
Jennifer.Black-Glennon@dtsc.ca.gov

| From: | Hanusiak, Lisa |
|---|---|
| To: | Black Glennon, Jennifer@DTSC; Obrez, Katya; Luo, Megan |
| Cc: | EPAGrants@DTSC; grantsregion9; Lee, Leslie@DTSC |
| Subject: | RE: 4W - 98T51201 State and Tribal Response Program and 4U -98T49101 Pollution Prevention Grants |
| Date: | Wednesday, February 5, 2025 11:20:24 AM |
| Attachments: | image002.png |

**This Message Is From an External Sender**
This message came from outside your organization.

Report Suspicious

Hello, Jennifer:

Thank you for reaching out. I apologize for the confusion regarding work under federal assistance agreements and I thank you for your patience. DTSC should proceed with all work under CA 4W-98T51201; and you should be able to make financial drawdowns in ASAP.

With kindest best regards,
Lisa

**Lisa Hanusiak**
**Regional Brownfields Coordinator**
**U.S. Environmental Protection Agency, Region 9**



**From:** Black Glennon, Jennifer@DTSC <Jennifer.Black-Glennon@dtsc.ca.gov>
**Sent:** Monday, February 3, 2025 5:24 PM
**To:** Hanusiak, Lisa <hanusiak.lisa@epa.gov>; Obrez, Katya <Obrez.Katya@epa.gov>; Luo, Megan <Luo.Megan@epa.gov>
**Cc:** EPAGrants@DTSC <EPAGrants@dtsc.ca.gov>; grantsregion9 <grantsregion9@epa.gov>; Lee, Leslie@DTSC <Leslie.Lee@dtsc.ca.gov>
**Subject:** 4W - 98T51201 State and Tribal Response Program and 4U -98T49101 Pollution Prevention Grants

> **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Good evening,

Please note that two federal courts have issued temporary restraining orders prohibiting federal agencies from implementing recent direction to pause, freeze, impede, block, cancel, or terminate disbursement of federal financial assistance or otherwise impede the States' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms. And the U.S. Department of Justice has provided your agency with the attached "Notice of Court Order," which directs, among other things, that "Federal agencies cannot pause, freeze, impede, block, cancel, or terminate any awards or obligations on the basis of the OMB Memo [M-25-13, dated Jan. 27, 2025], or on the basis of the President's recently issued Executive Orders."

As of the afternoon of February 3, 2025, Pacific Time, however, the subject line BIL (IIJA) grants do not appear in DTSC's ASAP system.  We request that those funds immediately be unfrozen, consistent with the federal court orders and U.S. DOJ's direction.

**Please advise by 12 p.m. Eastern Time (9 a.m. Pacific Time) tomorrow, February 4**, as to whether you have complied with the court's orders, or any reason why you have not unfrozen these funds.

Thank you!

Jennifer Black Glennon, JD *(she/her/hers)*
**Chief,** Grants and Program Support Branch
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
(916) 869-5356
Jennifer.Black-Glennon@dtsc.ca.gov

# EXHIBIT C



CLONE: (ASAPGov_Cluster_Clone3) | Current Cycle Date: 01/31/2025

**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ████████ |
| **Requested Settlement Date :** | 02/03/2025 |
| **Requestor Reference Number :** | test |

| | |
|---|---|
| **Total Amount Requested :** $ | |
| **Total Amount Entered :** $ | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**

**Federal Agency : DEPARTMENT OF ENERGY (89000001)**

| Cash on Hand : $ | | Subtotal : $ | | |
|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| ████ | Open | $358,819.36 | $ | ➕ |
| ████ | Open | $83,900.92 | $ | ➕ |
| ██ | Open | $0.00 | $ | ➕ |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**

**Federal Agency : DEPARTMENT OF ENERGY (89000001/02)**

| Cash on Hand : $ | | Subtotal : $ | | |
|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| ████ | Open | $0.00 | $ | ➕ |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**

**Federal Agency : DEPARTMENT OF ENERGY (89000001/24)**

| Cash on Hand : $ | | Subtotal : $ | | |
|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| ████ | Liquidated | $0.00 | $ | ➕ |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**

**Federal Agency : RTPFC-Grants (68128933)**

| Cash on Hand : $ | | Subtotal : $ | | |
|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| ████ | Liquidated | $102,343.16 | $ | ➕ |



| | Open | $121,352.51 | $ | |
| | Open | $2,898,878.04 | $ | |
| | Open | $683,667.64 | $ | |
| | Open | $246,781.45 | | |
| | Open | | $ | |
| | Open | $948,048.32 | | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |

Pages: **1** 2 3



Initiate Payment Requests (PR) | CLONE: (ASAPGov_Cluster_Clone3) | Current Cycle Date: 01/31/2025



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

**Step 2 of 4**
**Enter Payment Transactions**
**Display Selection Criteria**

| | |
|---|---|
| Payment Request Type : | Summary |
| Payment Method : | ACH |
| Bank Relationship : | ▮▮▮▮▮ |
| Requested Settlement Date : | 02/03/2025 |
| Requestor Reference Number : | test |

| | |
|---|---|
| Total Amount Requested : | $ |
| Total Amount Entered : | $ |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|
| Federal Agency : **RTPFC-Grants (68128933)** |

| Cash on Hand : $ | Subtotal : $ |
|---|---|

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |
| ▮▮▮▮ | Open | | $ | ➕ |



Pages: 1 **2** 3

Continue    Sort    Cancel    Help for this Step



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

**Step 2 of 4**
**Enter Payment Transactions**
**Display Selection Criteria**

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ▉▉▉▉▉ |
| **Requested Settlement Date :** | 02/03/2025 |
| **Requestor Reference Number :** | test |

| | |
|---|---|
| **Total Amount Requested : $** | |
| **Total Amount Entered : $** | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|
| Federal Agency : **RTPFC-Grants (68128933)** |

| Cash on Hand : $ | | Subtotal : $ | |
|---|---|---|---|

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ▉▉▉▉ | Open | | $ | ➕ |
| ▉▉▉▉ | Open | | $ | ➕ |
| ▉▉▉▉ | Open | | $ | ➕ |
| ▉▉▉▉ | Open | | $ | ➕ |
| ▉▉▉▉ | Open | | $ | ➕ |
| ▉▉▉▉ | Open | | $ | ➕ |
| ▉▉▉▉ | Open | | $ | ➕ |
| ▉▉▉▉ | Open | | $ | ➕ |
| ▉▉▉▉ | Open | $6,000,000.00 | | |
| ▉▉▉▉ | Open | | $ | ➕ |

Pages: 1 2 **3**

| Continue | Sort | Cancel | Help for this Step |

# EXHIBIT D



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

## Step 2 of 4
## Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ▮▮▮▮▮▮▮ |
| **Requested Settlement Date :** | 02/04/2025 |
| **Requestor Reference Number :** | test 2-3-25 |

| | |
|---|---|
| **Total Amount Requested :** $ | |
| **Total Amount Entered :** $ | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected



| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
|---|---|---|---|---|
| Federal Agency : **DEPARTMENT OF ENERGY (89000001)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| ▮▮▮▮▮ | Open | $358,819.36 | $ | + |
| ▮▮▮▮▮ | Open | $83,900.92 | $ | + |
| ▮▮▮ | Open | $0.00 | $ | + |

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
| --- | --- | --- | --- | --- |
| Federal Agency : **DEPARTMENT OF ENERGY (89000001/02)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
| ██████████ | Open | $0.00 | $ | + |

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
| --- | --- | --- | --- | --- |
| Federal Agency : **DEPARTMENT OF ENERGY (89000001/24)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
| ██████████ | Liquidated | $0.00 | $ | + |

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
| --- | --- | --- | --- | --- |
| Federal Agency : **RTPFC-Grants (68128933)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
| ██████████ | Liquidated | $102,343.16 | $ | + |
| ██████████ | Open | $121,352.51 | $ | + |
| ██████████ | Open | $2,898,878.04 | $ | + |
| ██████████ | Open | $683,667.64 | $ | + |
| ██████████ | Open | $246,781.45 | | |
| ██████████ | Open | | $ | + |
| ██████████ | Open | $948,048.32 | | |
| ██████████ | Open | | $ | + |
| ██████████ | Open | | $ | + |
| ██████████ | Open | | $ | + |
| ██████████ | Open | | $ | + |
| ██████████ | Open | | $ | + |



| | | | |
|---|---|---|---|
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |

Pages: **1** 2 3





**10.01(39.0.5) | CLONE: (ASAPGov_Cluster_Clone1) | Current Cycle Date: 02/03/2025**

**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ███████████ |
| **Requested Settlement Date :** | 02/04/2025 |
| **Requestor Reference Number :** | test 2-3-25 |

| | |
|---|---|
| **Total Amount Requested :** $ | |
| **Total Amount Entered :** $ | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

| | |
|---|---|
| **Recipient :** | **CA DEPT OF TOXIC SUB CTRL (0606428)** |
| **Federal Agency :** | **RTPFC-Grants (68128933)** |
| **Cash on Hand :** $ | **Subtotal :** $ |

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████████ | Open | | $ | ➕ |
| ████████ | Open | | $ | ➕ |



Pages: 1 **2** 3





SERVER: sol.web01(39.0.5) | CLONE: (ASAPGov_Cluster_Clone1) | Current Cycle Date: 02/03/2025

**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

**Step 2 of 4**
**Enter Payment Transactions**
**Display Selection Criteria**

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ██████████ |
| **Requested Settlement Date :** | 02/04/2025 |
| **Requestor Reference Number :** | test 2-3-25 |

| | |
|---|---|
| **Total Amount Requested :** $ | |
| **Total Amount Entered :** $ | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|

| Federal Agency : **RTPFC-Grants (68128933)** |
|---|

| Cash on Hand : $ | | Subtotal : $ | |
|---|---|---|---|

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████████ | Open | | $ | + |
| | Open | | $ | + |



Pages: 1 2 **3**



# EXHIBIT E



Anna Tam
**Working For 0606428**

... | CLONE: (ASAPGov_Cluster_Clone1) | Current Cycle Date: 02/03/2025

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

**Step 2 of 4**
**Enter Payment Transactions**
**Display Selection Criteria**

| | |
|---|---|
| **Payment Request Type :** Summary | |
| **Payment Method :** ACH | |
| **Bank Relationship :** ▉▉▉▉▉ | |
| **Requested Settlement Date :** 02/04/2025 | |
| **Requestor Reference Number :** test 2-3-2025 | |

| | |
|---|---|
| **Total Amount Requested :** $ | |
| **Total Amount Entered :** $ | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|

| Federal Agency : **DEPARTMENT OF ENERGY (89000001)** |
|---|

| Cash on Hand : $ | | | Subtotal : $ | | |
|---|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | | **Remittance Data** |
| ▉▉▉▉ | Open | $358,819.36 | $ | | ➕ |
| | Open | $83,900.92 | $ | | ➕ |
| | Open | $0.00 | $ | | ➕ |

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|

| Federal Agency : **DEPARTMENT OF ENERGY (89000001/02)** |
|---|

| Cash on Hand : $ | | | Subtotal : $ | | |
|---|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | | **Remittance Data** |
| ▉▉▉▉ | Open | $0.00 | $ | | ➕ |

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|

| Federal Agency : **DEPARTMENT OF ENERGY (89000001/24)** |
|---|

| Cash on Hand : $ | | | Subtotal : $ | | |
|---|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | | **Remittance Data** |
| ▉▉▉▉ | Liquidated | $0.00 | $ | | ➕ |

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|

| Federal Agency : **RTPFC-Grants (68128933)** |
|---|

| Cash on Hand : $ | | | Subtotal : $ | | |
|---|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | | **Remittance Data** |
| ▉▉▉▉ | Liquidated | $102,343.16 | $ | | ➕ |



| | | | |
|---|---|---|---|
| Open | $121,352.51 | $ | + |
| Open | $2,898,878.04 | $ | + |
| Open | $683,667.64 | $ | + |
| Open | $246,781.45 | | |
| Open | | $ | + |
| Open | $948,048.32 | | |
| Open | | $ | + |
| Open | | $ | + |
| Open | | $ | + |
| Open | | $ | + |
| Open | | $ | + |
| Open | | $ | + |
| Open | | $ | + |
| Open | | $ | + |

Pages: **1** 2 3





Anna Tam
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

**Step 2 of 4**
**Enter Payment Transactions**
**Display Selection Criteria**

| | |
|---|---|
| Payment Request Type : | Summary |
| Payment Method : | ACH |
| Bank Relationship : | █████████ |
| Requested Settlement Date : | 02/04/2025 |
| Requestor Reference Number : | test 2-3-2025 |

| | |
|---|---|
| Total Amount Requested : $ | |
| Total Amount Entered : $ | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|

| Federal Agency : **RTPFC-Grants (68128933)** |
|---|

| Cash on Hand : $ | | Subtotal : $ | |
|---|---|---|---|

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| █████ | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |
| | Open | | $ | ➕ |

| Open | $ | + |
| Open | $ | + |
| Open | $ | + |

Pages: 1 **2** 3

[Continue] [Sort] [Cancel] [Help for this Step]



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
#### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ▉▉▉▉▉ |
| **Requested Settlement Date :** | 02/04/2025 |
| **Requestor Reference Number :** | test 2-3-2025 |

| | |
|---|---|
| **Total Amount Requested : $** | |
| **Total Amount Entered : $** | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
|---|---|---|---|---|
| Federal Agency : **RTPFC-Grants (68128933)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| ▉ | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | $6,000,000.00 | | |
| | Open | | $ | + |

Pages: 1 2 **3**

| Continue | Sort | Cancel | Help for this Step |

# EXHIBIT F



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

**Step 2 of 4**
**Enter Payment Transactions**
**Display Selection Criteria**

| | |
|---|---|
| Payment Request Type : | Summary |
| Payment Method : | ACH |
| Bank Relationship : | ███████ |
| Requested Settlement Date : | 02/04/2025 |
| Requestor Reference Number : | DOE EPA |

| | |
|---|---|
| Total Amount Requested : $ | |
| Total Amount Entered : $ | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**
**Federal Agency : DEPARTMENT OF ENERGY (89000001)**
Cash on Hand : $ | | Subtotal : $ | |

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████ | Open | $358,819.36 | $ | + |
| | Open | $83,900.92 | $ | + |
| | Open | $0.00 | $ | + |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**
**Federal Agency : DEPARTMENT OF ENERGY (89000001/02)**
Cash on Hand : $ | | Subtotal : $ | |

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████ | Open | $0.00 | $ | + |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**
**Federal Agency : DEPARTMENT OF ENERGY (89000001/24)**
Cash on Hand : $ | | Subtotal : $ | |

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████ | Liquidated | $0.00 | $ | + |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**
**Federal Agency : RTPFC-Grants (68128933)**
Cash on Hand : $ | | Subtotal : $ | |

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████ | Liquidated | $102,343.16 | $ | + |



| | | | |
|---|---|---|---|
| Open | $121,352.51 | $ | |
| Open | $2,898,878.04 | $ | |
| Open | $683,667.64 | $ | |
| Open | $246,781.45 | | |
| Open | | $ | |
| Open | $948,048.32 | | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |

Pages: **1** 2 3





Initiate Payment Requests | CLONE: (ASAPGov_Cluster_Clone2) | Current Cycle Date: 02/04/2025

**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ███████ |
| **Requested Settlement Date :** | 02/04/2025 |
| **Requestor Reference Number :** | DOE EPA |

| | |
|---|---|
| **Total Amount Requested :** $ | |
| **Total Amount Entered :** $ | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|
| Federal Agency : **RTPFC-Grants (68128933)** |

| Cash on Hand : $ | | Subtotal : $ | |
|---|---|---|---|

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████ | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |

| | | |
|---|---|---|
| Open | $ | + |
| Open | $ | + |
| Open | $ | + |

Pages: 1 **2** 3

[Continue] [Sort] [Cancel] [Help for this Step]



**Anna Tam**
**Working For 0606428**



| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

**Step 2 of 4**
**Enter Payment Transactions**
**Display Selection Criteria**

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ████████ |
| **Requested Settlement Date :** | 02/04/2025 |
| **Requestor Reference Number :** | DOE EPA |

| | |
|---|---|
| **Total Amount Requested : $** | |
| **Total Amount Entered : $** | |

Your criteria matched 99 account(s)
87 accounts not shown because they are unavailable for payment or already selected

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**

**Federal Agency : RTPFC-Grants (68128933)**

| Cash on Hand : $ | | Subtotal : $ | |
|---|---|---|---|

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████ | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | $6,000,000.00 | | + |
| | Open | | $ | + |

Pages: 1 2 **3**

| Continue | Sort | Cancel | Help for this Step |

# EXHIBIT G



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ███████ |
| **Requested Settlement Date :** | 02/05/2025 |
| **Requestor Reference Number :** | DOE EPA |

| | |
|---|---|
| **Total Amount Requested : $** | |
| **Total Amount Entered : $** | |

Your criteria matched 99 account(s)
86 accounts not shown because they are unavailable for payment or already selected

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**
**Federal Agency : DEPARTMENT OF ENERGY (89000001)**
Cash on Hand : $                                                          Subtotal : $

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ██████ | Open | $358,819.36 | $ | + |
| | Open | $83,900.92 | $ | + |
| | Open | $0.00 | $ | + |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**
**Federal Agency : DEPARTMENT OF ENERGY (89000001/02)**
Cash on Hand : $                                                          Subtotal : $

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ██████ | Open | $0.00 | $ | + |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**
**Federal Agency : DEPARTMENT OF ENERGY (89000001/24)**
Cash on Hand : $                                                          Subtotal : $

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ██████ | Liquidated | $0.00 | $ | + |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**
**Federal Agency : RTPFC-Grants (68128933)**
Cash on Hand : $                                                          Subtotal : $

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ██████ | Open | $305,430.02 | $ | + |

| | Liquidated | $102,343.16 | $ |  |
| | Open | $121,352.51 | $ | |
| | Open | $2,898,878.04 | $ | |
| | Open | $683,667.64 | $ | |
| | Open | $246,781.45 | | |
| | Open | | $ | |
| | Open | $948,048.32 | | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |
| | Open | | $ | |

Pages: 1 2 3

[Continue]  [Sort]  [Cancel]  [Help for this Step]



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | █████████ |
| **Requested Settlement Date :** | 02/05/2025 |
| **Requestor Reference Number :** | DOE EPA |

| | |
|---|---|
| **Total Amount Requested : $** | |
| **Total Amount Entered : $** | |

Your criteria matched 99 account(s)
86 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|
| Federal Agency : **RTPFC-Grants (68128933)** |

| Cash on Hand : $ | | Subtotal : $ | |
|---|---|---|---|

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████ | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |

PageID #: 2367



| | | | |
|---|---|---|---|
| V97T03801 -<br>09JWMA03-C003 | Open | $ | + |
| V97T03801 -<br>09K2MA01-C001 | Open | $ | + |
| V97T03801 -<br>09K2MA02-C002 | Open | $ | + |

Pages: 1 **2** 3

Continue   Sort   Cancel   Help for this Step



Initiate Payment Requests (PR)

## Step 2 of 4
## Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| Payment Request Type : | Summary |
| Payment Method : | ACH |
| Bank Relationship : | |
| Requested Settlement Date : | 02/05/2025 |
| Requestor Reference Number : | DOE EPA |

| | |
|---|---|
| Total Amount Requested : $ | |
| Total Amount Entered : $ | |

Your criteria matched 99 account(s)
86 accounts not shown because they are unavailable for payment or already selected



| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
|---|---|---|---|---|
| Federal Agency : **RTPFC-Grants (68128933)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | $6,000,000.00 | | |
| | Open | | $ | + |

Pages: 1 2 **3**

Continue    Sort    Cancel    Help for this Step

# EXHIBIT H



... | CLONE: (ASAPGov_Cluster_Clone2) | Current Cycle Date: 02/04/2025

**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship** | ████████ |
| **Requested Settlement Date :** | 02/05/2025 |
| **Requestor Reference Number :** | DOE EPA |

| | |
|---|---|
| **Total Amount Requested :** $ | |
| **Total Amount Entered :** $ | |

Your criteria matched 99 account(s)
86 accounts not shown because they are unavailable for payment or already selected

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**

**Federal Agency : DEPARTMENT OF ENERGY (89000001)**

| Cash on Hand : $ | | | Subtotal : $ | |
|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| | Open | $358,819.36 | $ | ➕ |
| | Open | $83,900.92 | $ | ➕ |
| | Open | $0.00 | $ | ➕ |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**

**Federal Agency : DEPARTMENT OF ENERGY (89000001/02)**

| Cash on Hand : $ | | | Subtotal : $ | |
|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| | Open | $0.00 | $ | ➕ |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**

**Federal Agency : DEPARTMENT OF ENERGY (89000001/24)**

| Cash on Hand : $ | | | Subtotal : $ | |
|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| | Liquidated | $0.00 | $ | ➕ |

**Recipient : CA DEPT OF TOXIC SUB CTRL (0606428)**

**Federal Agency : RTPFC-Grants (68128933)**

| Cash on Hand : $ | | | Subtotal : $ | |
|---|---|---|---|---|
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| | Open | $305,430.02 | $ | ➕ |



| | | | |
|---|---|---|---|
| Liquidated | $102,343.16 | $ | |
| Open | $121,352.51 | $ | |
| Open | $2,898,878.04 | $ | |
| Open | $683,667.64 | $ | |
| Open | $246,781.45 | | |
| Open | | $ | |
| Open | $948,048.32 | | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |
| Open | | $ | |

Pages: **1** 2 3



Initiate Payment Requests | CLONE: (ASAPGov_Cluster_Clone2) | Current Cycle Date: 02/04/2025



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| Payment Request Type : | Summary |
| Payment Method : | ACH |
| Bank Relationship : | ███████ |
| Requested Settlement Date : | 02/05/2025 |
| Requestor Reference Number : | DOE EPA |

| | |
|---|---|
| Total Amount Requested : $ | |
| Total Amount Entered : $ | |

Your criteria matched 99 account(s)
86 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|
| Federal Agency : **RTPFC-Grants (68128933)** |

| Cash on Hand : $ | | Subtotal : $ | |
|---|---|---|---|

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ███████ | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |

| | Open | $ | | + |
| | Open | $ | | + |
| | Open | $ | | + |

Pages: 1 **2** 3

[Continue]  [Sort]  [Cancel]  [Help for this Step]



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ▇ |
| **Requested Settlement Date :** | 02/05/2025 |
| **Requestor Reference Number :** | DOE EPA |

| | |
|---|---|
| **Total Amount Requested : $** | |
| **Total Amount Entered : $** | |

Your criteria matched 99 account(s)
86 accounts not shown because they are unavailable for payment or already selected



| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
|---|---|---|---|---|
| Federal Agency : **RTPFC-Grants (68128933)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| **Account ID** | **Account Status** | **Available Balance** | **Amount Requested** | **Remittance Data** |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | $6,000,000.00 | | |
| | Open | | $ | + |

Pages: 1 2 **3**

| Continue | Sort | Cancel | Help for this Step |

# EXHIBIT I



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| Payment Request Type : | Summary |
| Payment Method : | ACH |
| Bank Relationship : | ████████ |
| Requested Settlement Date : | 02/05/2025 |
| Requestor Reference Number : | DOE EPA |

| | |
|---|---|
| Total Amount Requested : $ | |
| Total Amount Entered : $ | |

Your criteria matched 99 account(s)
85 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
|---|---|---|---|---|
| Federal Agency : **DEPARTMENT OF ENERGY (89000001)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
| ████████ | Open | $358,819.36 | $ | ➕ |
| | Open | $83,900.92 | $ | ➕ |
| | Open | $0.00 | $ | ➕ |

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
|---|---|---|---|---|
| Federal Agency : **DEPARTMENT OF ENERGY (89000001/02)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
| ████████ | Open | $0.00 | $ | ➕ |

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
|---|---|---|---|---|
| Federal Agency : **DEPARTMENT OF ENERGY (89000001/24)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
| ████████ | Liquidated | $0.00 | $ | ➕ |

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** | | | | |
|---|---|---|---|---|
| Federal Agency : **RTPFC-Grants (68128933)** | | | | |
| Cash on Hand : $ | | Subtotal : $ | | |
| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
| ████████ | Open | $305,430.02 | $ | ➕ |



| | | |
|---|---|---|
| Open | $3,283,409.34 | $ |
| Liquidated | $102,343.16 | $ |
| Open | $121,352.51 | $ |
| Open | $2,898,878.04 | $ |
| Open | $683,667.64 | $ |
| Open | $246,781.45 | |
| Open | | $ |
| Open | $948,048.32 | |
| Open | | $ |
| Open | | $ |
| Open | | $ |
| Open | | $ |
| Open | | $ |
| Open | | $ |

Pages: **1** 2 3



**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

### Step 2 of 4
### Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ███████ |
| **Requested Settlement Date :** | 02/05/2025 |
| **Requestor Reference Number :** | DOE EPA |

| | |
|---|---|
| **Total Amount Requested : $** | |
| **Total Amount Entered : $** | |

Your criteria matched 99 account(s)
85 accounts not shown because they are unavailable for payment or already selected

| Recipient : **CA DEPT OF TOXIC SUB CTRL (0606428)** |
|---|

| Federal Agency : **RTPFC-Grants (68128933)** |
|---|

| Cash on Hand : $ | | Subtotal : $ | |
|---|---|---|---|

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████ | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |

| Open | $ | + |
| Open | $ | + |
| Open | $ | + |

Pages: 1 **2** 3

[Continue] [Sort] [Cancel] [Help for this Step]



**ASAP** .gov | CLONE: (ASAPGov_Cluster_Clone2) | Current Cycle Date: 02/05/2025

**Anna Tam**
**Working For 0606428**

| Home | Enrollments | Payment Requests | Agency Functions | Reports | Inquiries | Help | Log Off |

Initiate Payment Requests (PR)

## Step 2 of 4
## Enter Payment Transactions
### Display Selection Criteria

| | |
|---|---|
| **Payment Request Type :** | Summary |
| **Payment Method :** | ACH |
| **Bank Relationship :** | ██████ |
| **Requested Settlement Date :** | 02/05/2025 |
| **Requestor Reference Number :** | DOE EPA |

| | |
|---|---|
| **Total Amount Requested :** $ | |
| **Total Amount Entered :** $ | |

Your criteria matched 99 account(s)
85 accounts not shown because they are unavailable for payment or already selected

| **Recipient :** CA DEPT OF TOXIC SUB CTRL (0606428) |
|---|
| **Federal Agency :** RTPFC-Grants (68128933) |

| Cash on Hand : $ | | Subtotal : $ | |
|---|---|---|---|

| Account ID | Account Status | Available Balance | Amount Requested | Remittance Data |
|---|---|---|---|---|
| ████ | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | | $ | + |
| | Open | $6,000,000.00 | | |
| | Open | | $ | + |

Pages: 1 2 **3**

| Continue | Sort | Cancel | Help for this Step |