# Thomas-Jensen Affirmation

# Exhibit # 66

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK; et al.,

    Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States; et al.,

    Defendants.

C.A. No. 1:25-cv-00039-JJM-PAS

## DECLARATION OF BRUCE W. GARTNER

I, Bruce W. Gartner, declare as follows:

1. I am a resident of the State of Maryland. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the Maryland Transportation Authority as Executive Director.

3. The Maryland Transportation Authority is responsible for operating and maintaining the toll facilities in Maryland.

4. As Executive Director, I am responsible for the day-to-day operations of the agency including its budget and finances.

5. The Maryland Transportation Authority received an allocation of $60 Million in Emergency Relief Quick Release Funds from the Federal Highway Administration to reimburse eligible costs for the removal and salvage of debris from the Patapsco River following the

1

allision of the M/V DALI with the Francis Scott Key Bridge resulting in its destruction on March 26, 2024.

6. The debris/salvage operations are complete, and the Patapsco River navigation channel reopened. The Maryland Transportation Authority in coordination with the Maryland State Highway Administration is now in the process of submitting eligible costs to the Federal Highway Administration for reimbursement. Specifically, the Maryland Transportation Authority will submit an invoice to the Maryland State Highway Administration, and the Maryland State Highway Administration will submit the request for reimbursement to the Federal Highway Administration. Once the Maryland State Highway Administration receives reimbursement from the Federal Highway Administration, the Maryland State Highway Administration will then provide the reimbursement funds to the Maryland Transportation Authority.

7. The Maryland Transportation Authority's financial forecast for this year has relied on the reimbursement of the Emergency Relief Quick Release Funds, and the Maryland Transportation Authority made plans and allocated funding for other projects based on receipt of the reimbursement of the funds.

8. Any pause in reimbursements would require the Maryland Transportation Authority to either shift funding from other capital projects resulting in critical infrastructure projects being delayed or float an additional $60 Million in bonds to cover the capital projects. Floating an additional $60 Million in bonds would result in the Maryland Transportation Authority paying an additional $3.5 Million in annual debt service. Having to float additional bonds also places pressure on the Maryland Transportation Authority's statutory bond cap potentially limiting the availability of bond proceeds for other projects. Finally, the increase in

annual debt service caused by floating additional bonds constrains the Maryland Transportation Authority's financial flexibility and threatens the agency's ability to meet its required debt service coverage obligations sooner than anticipated.

9. The Maryland Transportation Authority has submitted an initial request for reimbursement of $10 Million to the Maryland State Highway Administration. The Maryland State Highway Administration anticipates receiving reimbursement from the Federal Highway Administration within 30 days from submission of the reimbursement request.

10. The Maryland Transportation Authority anticipates submitting a second request for reimbursement to the Maryland State Highway Administration in the next 30 days.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February _5, 2025, at Baltimore, Maryland.

_____
Bruce W. Gartner

3