UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-39 (JJM) |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE TEMPORARY RESTRAINING ORDER

This Court entered a temporary restraining order on January 31, 2025.  *See* ECF No. 50.  Since that date, undersigned counsel and the Defendant agencies have worked diligently to assure compliance, including by conferring with Plaintiffs' counsel about specific compliance concerns they have raised.  *See* ECF Nos. 66-2, 66-3.  During the scheduling conference with the Court on Thursday, February 6, 2025, Plaintiffs' counsel identified one particular compliance issue they intended to raise—*i.e.*, whether the temporary restraining order also enjoined implementation of an earlier OMB Memorandum M-25-11 not directly challenged in this case.  Based on the parties' correspondence, however, Defendants were unaware of Plaintiffs' continuing compliance concerns beyond that issue, and thus Defendants were likewise unaware that Plaintiffs intended to file an emergency motion seeking to enforce the temporary restraining order.

Defendants respectfully submit that the actions described below do not run

afoul of the Court's injunction, or at least not a "clear and unambiguous command" in the Court's injunction. Rather, they represent good-faith, diligent efforts to comply with the injunction across the broad spectrum of Federal financial assistance implicated by the Court's Order. Thus, Defendants' actions are consistent with the Court's Order, and Plaintiffs' motion should be denied.

To the extent the Court concludes otherwise, Defendants have no objection to the Court clarifying the intended scope of its temporary restraining order. Indeed, Defendants previously requested such clarification to the extent they misunderstood the intended scope of the Court's Order. *See* ECF No. 51 at 2. Even if the Court clarifies its Order, however, the Court should not modify the Order itself to include the additional terms requested by Plaintiffs.

In particular, the Order should not affirmatively direct that Defendants "immediately restore funds," Mot. at 16, which is impermissibly vague and would interfere with lawful exercises of agency discretion that are not challenged in this case. Additionally, the Court should not direct Defendants to "clear[] any administrative, operational, or technical hurdles to implementation," *id.*, which is likewise vague and unnecessary. At most, then, the Court should clarify the intended scope of the temporary restraining order, but should refrain from modifying the Order with additional terms and directives.

## BACKGROUND

On January 31, 2025, this Court entered a temporary restraining order with the following substantive provisions:

1. Defendants shall not pause, freeze, impede, block, cancel, or terminate Defendants' compliance with awards and obligations to provide federal financial assistance to the States, and Defendants shall not impede the States' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms.

2. If Defendants engage in the "identif[ication] and review" of federal financial assistance programs, as identified in the OMB Directive, such exercise shall not affect a pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms.

3. Defendants shall also be restrained and prohibited from reissuing, adopting, implementing, or otherwise giving effect to the OMB Directive under any other name or title or through any other Defendants (or agency supervised, administered, or controlled by any Defendant), such as the continued implementation identified by the White House Press Secretary's statement of January 29, 2025. ECF No. 44.

4. Defendants' attorneys shall provide written notice of this Order to all Defendants and agencies and their employees, contractors, and grantees by Monday, February 3, 2025, at 9 a.m. Defendants shall file a copy of the notice on the docket at the same time.

5. Defendants shall comply with all notice and procedural requirements in the award, agreement, or other instrument relating to decisions to stop, delay, or otherwise withhold federal financial assistance programs.

ECF No. 50 at 11-12. To comply with the deadline of providing written notice "to all Defendants and agencies and their employees, contractors, and grantees by Monday, February 3, 2025, at 9 a.m.," *id.*, Defendants promptly drafted and distributed the written notice of the Court's Order, which they subsequently filed. *See* ECF No. 51-1.

In their accompanying Notice, Defendants described their understanding of the scope of the Court's Order. Defendants noted that "the Plaintiffs only challenged the OMB Memorandum," and therefore Defendants did not "construe the Order as enjoining the President's Executive Orders" themselves. ECF No. 50 at 2.

Defendants also stated that they "do not read the Order as imposing compliance obligations on federal agencies that are not Defendants in this case." *Id.* To the extent Defendants misunderstood the intended scope of the Court's Order, however, Defendants requested that the Court notify them of such misunderstanding. *Id.*

Two days later, on February 5 at 2:44 a.m., Defendants received an e-mail from counsel for the State of Oregon expressing concerns that certain grants from the Department of Labor (DOL), Environmental Protection Agency (EPA), and United States Geographical Survey (USGS), a component of the Department of Interior (DOI), remained paused in violation of the Court's Order. ECF No. 66-2 at 3. Defendants responded at 5:19 a.m. informing Oregon's counsel that they would investigate those issues. *Id.* Later that day, Defendants sent an e-mail explaining the status of each funding stream. *Id.* at 2. The DOL grants had been paid, save for one that remained pending as the payment system continued to process the unusually large volume of payment requests. *Id.* The EPA grants were in the process of being unsuspended, with one being unsuspended and Defendants inquiring with EPA about prioritizing the others. *Id.* As to the USGS/DOI funds, Defendants explained that neither USGS nor DOI was a defendant in the case, and further that three particular grants were paused pursuant to OMB Memo M-25-11, which preceded issuance of the OMB Memo at issue in this case. Counsel for Oregon responded on Friday, February 7, 2025, and did not express further compliance concerns.

Separately, Defendants received an e-mail from Plaintiffs' counsel on Wednesday, February 5, at 8:41 p.m., expressing broader compliance concerns as to

certain agencies and grant programs, and requesting a response prior to the scheduling conference with the Court the following morning.  *See* ECF No. 66-3. Defendants provided an initial response that same night at 9:42 p.m., noting the difficulties of providing a substantive response in the timeframe provided and based on the limited details in Plaintiffs' e-mail.  *Id.*  Nonetheless, Defendants explained that several agencies used the Payment Management System (PMS) operated by the Department of Health and Human Services (HHS), and PMS was continuing to work through a backlog of payment requests.  *Id.*  Defendants provided a further update at 9:15 a.m. the following morning, prior to the Court's scheduling conference.  *Id.*

During the scheduling conference, Plaintiffs raised concerns about continued funding pauses pursuant to OMB Memo M-25-11.  Aside from the correspondence with counsel for Oregon, *see* ECF No. 66-2, Plaintiffs did not respond to Defendants' other e-mails regarding compliance, *see* ECF No. 66-3.  Instead, Plaintiffs elected to file an emergency motion to enforce the temporary restraining order on the afternoon of Friday, February 7, 2025.  *See* ECF No. 66.  The Court then directed Defendants to file a response by Sunday, February 9, 2025.  *See* Text Order of Feb. 7, 2025.

## ARGUMENT

Defendants have worked in good faith to interpret the scope of the Court's TRO and expeditiously resume any funding that is subject to it.  Defendants respectfully submit that the actions described below are consistent with the Court's Order, or at least a reasonable construction of that Order.  To the extent the Court intended otherwise, Defendants have no objection to such clarification.  But there is no need or basis for modifying the temporary restraining order to include additional terms.  In

particular, Plaintiffs' requested modifications would create further ambiguities and threaten to interfere with lawful agency functions not at issue in this case.

## I.    DEFENDANTS' ACTIONS ARE CONSISTENT WITH THE COURT'S ORDER

Plaintiffs' emergency motion raises several different compliance issues: (A) whether the Order prohibits implementation of the earlier issued OMB Memorandum M-25-11; (B) whether any delays in payments stemming from administrative and operational reasons run afoul of the Court's Order; and (C) whether other specific grant programs are properly paused.  On each issue, Defendants have acted consistent with the Court's Order and there is no need for further relief.

### A.    The Order Does Not Unambiguously Extend to An Earlier OMB Memorandum Not Challenged in this Case

Plaintiffs' claims in this case focus exclusively on OMB Memorandum M-25-13, which was issued on January 27, 2025.  *See, e.g.*, Compl. ¶ 1 ("This action seeks declaratory and injunctive relief and vacatur under the Administrative Procedure Act ('APA') with respect to the Office of Management and Budget's January 27, 2025, Directive for Heads of Executive Departments and Agencies (M-25-13), with the subject, "*Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs*[.]'").  Six days prior to OMB's issuance of Memorandum M-25-13, OMB issued Memorandum M-25-11, which directs that agencies "immediately pause disbursement" of certain "funds appropriated under the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58)."  OMB Memorandum M-25-11, *Guidance Regarding Section 7 of the*

*Executive Order Unleashing American Energy* (Jan. 21, 2025), https://www.whitehouse.gov/briefings-statements/2025/01/omb-memo-m-25-11/. Plaintiffs' claims in this case do not challenge OMB Memorandum M-25-11.

Any injunction must be interpreted with respect to the underlying claims in a lawsuit. *Cf. Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established[.]"). And in general, courts cannot enjoin conduct that is not challenged in the complaint. *See, e.g., John Doe #1 v. Veneman*, 380 F.3d 807, 819 (5th Cir. 2004) ("Where a plaintiff seeks review pursuant to the APA, an injunction that enjoins an agency from disclosing more than has been requested or more than the agency has determined to release is overbroad because it exceeds the legal basis for the lawsuit."). Similarly, courts generally do not enter preliminary relief that seeks to "undo past actions which had already become final." *Akers v. Baldwin*, 785 F.2d 307 (6th Cir. 1986). In light of those principles, the Court's Order is properly read to prohibit only implementation of OMB Memo M-25-13, but not extending to implementation of OMB Memo M-25-11 which was issued six days earlier and is not challenged in this case.

Plaintiffs resist this interpretation, pointing to language in the Court's Order directing that:

> Defendants shall also be restrained and prohibited from reissuing, adopting, implementing, or otherwise giving effect to the OMB Directive under any other name or title or through any other Defendants (or agency supervised, administered, or controlled by any Defendant), such as the continued implementation identified by the White House Press Secretary's statement of January 29, 2025.

ECF No. 50 at 12; *see* Mot. at 11-12. But that language still focuses on "giving effect

-7-

to *the OMB Directive* under any other name or title," *id.* (emphasis added)—and a separate action issued six days earlier cannot be described as "giving effect to" or constituting "continued implementation" of OMB Memo M-25-13 which did not yet exist. Plaintiffs also point to language in Defendants' written notice acknowledging that the Court intended to preclude agencies from implementing funding pauses directed by the President's Executive Orders, one of which OMB Memo M-25-11 likewise implements. *See* Mot. at 12-13. But again, that written notice was directed to agencies about what they may permissibly do going forward to avoid continued implementation of OMB Memo M-25-13; the written notice did not instruct agencies that they were foreclosed from implementing separate OMB directives that preceded OMB Memo M-25-13 and are not challenged in this case.

Given that Plaintiffs here do not challenge OMB Memo M-25-11, Defendants have reasonably interpreted the temporary restraining order not to extend to that Memorandum, and the Court should not enjoin something that is not properly challenged in the Complaint. Even if the Court disagrees, however, Defendants' interpretation certainly did not run afoul of a "clear and unambiguous command" in the Order. *Cf. Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002) ("The test is whether the [enjoined party] is 'able to ascertain from the four corners of the order precisely what acts are forbidden.'").

### B.    Defendant Agencies Have Acted Diligently to Comply

Plaintiffs' motion next argues that some payments still have not been disbursed, accusing Defendants of relying on vague "operational and administrative reasons." Mot. at 14-15. During the parties' correspondence, Plaintiffs never

requested additional details regarding these reasons, and Defendants were seeking to provide Plaintiffs with information as quickly as possible given the exceedingly short deadlines for responding.  *See* ECF No. 66-3.  In any event, Defendants' actions do not demonstrate noncompliance requiring further action from the Court.[1]

As an initial matter, any delays resulting from an agency's ongoing operation of a program—rather than continued implementation of OMB Memo M-25-13—would not violate the Court's Order.  The Order expressly acknowledges that agencies retain their authority to operate their programs according to "applicable authorizing statutes, regulations, and terms."  ECF No. 50 at 11-12.  Agencies' decisions to review payment requests to ensure they are appropriate and consistent with the underlying program does not constitute an impediment to funding in a way that would violate the Court's Order.

Although it is not possible to discuss every particular grant or funding stream, one salient example is the Payment Management System (PMS).  Although PMS is operated by HHS, it serves as the funding disbursement platform for numerous agencies' grants.  *See About Us*, Payment Management Services, https://pms.psc.gov/about-us.html.  After issuance of the OMB Memo, there was an unusually large number of entities that attempted to draw down funds in PMS, with many recipients requesting larger-than-normal amounts, sometimes up to their full

---

[1] Given the limited time afforded to Defendants to submit this filing, Defendants have not attached sworn declarations establishing the facts described in this filing as they normally would.  The facts set forth in this filing are accurate to the best of undersigned counsel's knowledge based on counsel's communications with client agencies.

grant balance.  *Cf.* Pls.' PI Mot. (ECF No. 67) at 34 (describing how "[s]ome state agencies submitted draw requests outside of their normal cycle").  PMS has a longstanding process (preceding this Administration and the OMB Memo) by which the system "flags" unusual payment requests for further review.  As of January 31, 2025, approximately 7000 payment requests were "flagged" for further review, which then required PMS to coordinate with the awarding agency for review and approval of each payment request.  Despite the significant burden on PMS program managers, PMS has been working expeditiously to resolve this backlog of payment requests; as of earlier today, there were less than 600 requests still affected by the issue, and PMS continues to work through them to disburse funds.  This type of operational delay—caused by processes related to the underlying operation of the program—does not constitute a "freeze" or "pause" of funding that would violate the Court's Order.  Rather, it is simply a feature of PMS working through an unusually large volume of payment requests.

Similarly, other agencies have implemented reviews to ensure that funding is being distributed appropriately.  At the Department of Energy (DOE), for example, since the January 20th transition date, in anticipation of a Senate-confirmed Secretary of Energy, DOE has followed a process of reviewing and approving all payment requests.  As Plaintiffs acknowledge, that review began even before issuance of the challenged OMB Memo in this case.  *Cf.* ECF No. 68-123 ¶ 36 (citing a January 23 e-mail from DOE project officer).  And that approval process has

allowed payments to proceed in an orderly fashion.[2]    Review processes like the one at DOE, implemented based on DOE's own "authorizing statutes, regulations, and terms," likewise do not violate the Court's Order.

Finally, other agencies have exercised their own discretion and statutory authorities to take action regarding certain types of funding, in "compl[iance] with all notice and procedural requirements in the award, agreement, or other instrument," ECF No. 50 at 12, as consistent with Defendants' written notice. *See* ECF No. 51-1, ¶ 3.  Plaintiffs do not contend that Defendants' written notice is an improper reading of the Order, and they agree that agencies retain their own authorities outside of the OMB Memo. *Cf.* Mot. at 15-16.

Plaintiffs suggest that noncompliance must be occurring because if "Defendants were able to cut off funding streams, they are equally able to turn those streams back on." Mot. at 10.  But it is not surprising that *not* distributing funding is easier than going through the process of reviewing payment requests to ensure that they are lawful and appropriate.  Nor would it be surprising that unsuspending grants may take longer than suspending them, given the need to ensure that properly

---

[2] With respect to the High-Efficiency Electric Home Rebate Act program that Plaintiffs mention, *see* Mot. at 6, that program was established in section 50122 of the IRA and therefore any payments under that program would fall within the scope of OMB Memo M-25-11.  Nonetheless, following receipt of the Court's Order, DOE decided to continue payments under that program out of an abundance of caution.  In the course of investigating Plaintiffs' compliance concerns, DOE discovered that, contrary to its intent, payments for that program had previously not been moving forward toward review and approval.  DOE promptly addressed the situation and has not paused funding for the program; DOE currently expects to issue appropriate payments under the program later this week.

suspended grants (*e.g.*, for compliance reasons or because the budget period ended) remain suspended. Thus, the mere fact that some payments may have taken longer than normal, or some grants were not immediately unsuspended, does not itself suggest that agencies have subverted the Court's Order.

To the contrary, agencies' processes of reviewing and disbursing payments are not connected to OMB Memo M-25-13, nor are they the subject of this Court's injunction. Accordingly, those agency activities do not run afoul of the Court's Order or warrant modification of that Order. And even if such agency activities were encompassed within the Court's Order, no modification is warranted given Defendants' "diligent efforts" to comply. *AccuSoft Corp. v. Palo*, 237 F.3d 31, 47 (1st Cir. 2001).

## C. Specific Program Decisions Do Not Violate the Order

Finally, Plaintiffs' motion mentions several specific grant programs and actions that they contend violate the Court's Order. But each of those actions was likewise lawful.

First, Plaintiffs attach a declaration regarding stop-work orders on six particular grants. *See* ECF No. 66-1 ¶¶ 10-11. Although the grants are awarded by subcomponents of HHS, those six grants are funded by the Department of State through the U.S. President's Emergency Plan for AIDS Relief (PEPFAR). *See id.* ¶¶ 6, 9-11; *see generally* https://www.state.gov/pepfar/. Because those grants are funded by the Department of State, they are subject to the pause of foreign assistance by or through the Department of State or USAID directed by Secretary Rubio, which Defendants do not understand to be subject to the Court's Order. For one thing, the

Department of State is not a defendant in this case, and Plaintiffs do not appear to dispute that non-defendant agencies are not subject to the Court's Order. More substantively, Secretary Rubio's pause was issued on January 24, 2025—prior to issuance of the challenged OMB Memo—and was an exercise of his own statutory authorities over foreign assistance. Thus, even if these particular funds were subject to the Court's Order, the stop-work orders would still be permissible as being based on the agency's "applicable authorizing statutes, regulations, and terms," and cannot be viewed as implementation of the challenged OMB Memo which had not yet been issued.

Second, Plaintiffs contend that the National Institutes of Health (NIH) "abruptly cancelled an advisory committee review meeting" in connection with a particular grant for Brown University's School of Public Health. Mot. at 6. Per Plaintiffs' own declaration, however, funding for the current grant remains available. *See* ECF No. 68-107 ¶ 12. The Court's Order governs continued funding for grants, not the scheduling of meetings that, at present, do not affect the availability of continued funding.

Third, Plaintiffs invoke Head Start programs. *See* Mot. at 7. Those programs are funded by HHS and thus are subject to the Payment Management System issues discussed above. Counsel for HHS has confirmed that there is no pause on HHS funding for Head Start based on the OMB Memo.

Finally, Plaintiffs point to an Executive Order issued on January 28 in which the President directed that agencies shall "consistent with applicable law . . .

-13-

immediately take appropriate steps to ensure that institutions receiving Federal research or education grants end the chemical and surgical mutilation of children." *Protecting Children from Chemical and Surgical Mutilation*, § 4 (Jan. 28, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/protecting-children-from-chemical-and-surgical-mutilation/; *see* Mot. at 14.  By its own terms, however, that Executive Order directs agencies to impose a new *condition* on grant funding—not immediately pause existing grant funding.  Thus, that Executive Order is fundamentally different from the type of funding pause at issue in this case.  And to the extent Plaintiffs contend that the President's issuance of that Executive Order is "conduct prohibited by the [Court's] Order," Mot. at 14, that just further highlights the need to construe the Order narrowly to avoid such a significant intrusion on the separation of powers.

In sum, each of the actions described in Plaintiffs' motion is consistent with the Court's Order, or at least a reasonable construction of that Order.  Defendants therefore have not violated the Order and Plaintiffs' motion should be denied.

## II.    THE COURT SHOULD AT MOST CLARIFY THE ORDER, NOT IMPOSE PLAINTIFFS' ADDITIONAL TERMS

To the extent the Court disagrees with the above and concludes that any of Defendants' actions are contrary to the intended scope of the Court's Order, the Court should simply clarify the Order's intended scope and allow Defendants to comply with that clarified understanding.  There is no need or basis for modifying the Order to include Plaintiffs' requested additional terms.

In particular, Plaintiffs request that the Court "order Defendants to

immediately restore funds until the preliminary injunction motion can be heard and decided." Mot. at 16. But that language fails to define the relevant universe of "funds" that would have to be restored and thus would not provide sufficient guidance to Defendants on implementation. *Cf.* Fed. R. Civ. P. 65(d)(1)(B)-(C). Moreover, that affirmative directive that funds *must* be restored is contrary to the existing Order's acknowledgment that agencies can still pause funds as long as they do so "on the basis of the applicable authorizing statutes, regulations, and terms" and in compliance "with all notice and procedural requirements in the award, agreement, or other instrument." ECF No. 50 at 12. Plaintiffs' own motion recognizes that such pauses are lawful. *See* Mot. at 16 ("Of course, as set forth in the Order, there could be an instance where a specific applicable statute, regulation or term of the grant allowed a pause[.]"). The Court should not modify the Order in a way that would upset this understanding and intrude on agencies' lawful discretion over their funds.

Second, Plaintiffs also request that the Court order that "Defendants immediately take every step necessary to effectuate the Order, including clearing any administrative, operational, or technical hurdles to implementation." Mot. at 16. That language is likewise vague as to what exactly it requires, and would threaten to interfere with agencies' abilities to ensure that all disbursements of government funds are valid and appropriate. Given that Defendants have acted expeditiously to implement the Court's Order, there is no need to impose a more specific timeline or vague requirement on Defendants' compliance.

Accordingly, to the extent the Court believes that Defendants should take

further steps to comply with the Court's intended scope of its Order, the Court should

simply issue a decision clarifying the scope of its Order. But Defendants respectfully

submit that there is no need to impose additional terms in the Order itself.

## CONCLUSION

Plaintiffs' motion to enforce the temporary restraining order should be denied.

Dated: February 9, 2025            Respectfully submitted,

                                   BRETT A. SHUMATE
                                   Acting Assistant Attorney General

                                   ALEXANDER K. HAAS
                                   Director

                                   */s/    Daniel Schwei*
                                   DANIEL SCHWEI
                                   Special Counsel (N.Y. Bar)
                                   ANDREW F. FREIDAH
                                   EITAN R. SIRKOVICH
                                   Trial Attorneys
                                   United States Department of Justice
                                   Civil Division, Federal Programs Branch
                                   1100 L Street NW
                                   Washington, DC 20530
                                   Tel.:   (202) 305-8693
                                   Fax:   (202) 616-8460
                                   Email:    daniel.s.schwei@usdoj.gov

                                   *Counsel for Defendants*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on February 9, 2025, I electronically filed the within Certification with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System, thereby serving it on all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 305.


<u>/s/ *Daniel Schwei*</u>
Daniel Schwei