**OFFICE OF INSPECTOR GENERAL**

# FEMA Should Increase Oversight to Prevent Misuse of Humanitarian Relief Funds


Homeland Security

**March 28, 2023**

**OIG-23-20**



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

Washington, DC 20528 / www.oig.dhs.gov

March 28, 2023

MEMORANDUM FOR:    The Honorable Deanne Criswell
Administrator
Federal Emergency Management Agency

FROM:    Joseph V. Cuffari, Ph.D.
Inspector General

JOSEPH V CUFFARI  Digitally signed by JOSEPH V CUFFARI Date: 2023.03.24 15:43:40 -07'00'

SUBJECT:    *FEMA Should Increase Oversight to Prevent Misuse of Humanitarian Relief Funds*

For your action is our final report, *FEMA Should Increase Oversight to Prevent Misuse of Humanitarian Relief Funds*. We incorporated the formal comments provided by your office.

The report contains two recommendations aimed at improving FEMA's oversight of the humanitarian relief funds. Your office concurred with both recommendations. Based on information provided in your response to the draft report, we consider recommendation 1 open and unresolved. As prescribed by the Department of Homeland Security Directive 077-01, *Follow-Up and Resolutions for the Office of Inspector General Report Recommendations*, within 90 days of the date of this memorandum, please provide our office with a written response that includes your (1) agreement or disagreement, (2) corrective action plan, and (3) target completion date for the recommendation. Also, please include responsible parties and any other supporting documentation necessary to inform us about the current status of the recommendation. Until your response is received and evaluated, recommendation 1 will be considered open and unresolved.

Based on information provided in your response to the draft report, we consider recommendation 2 open and resolved. Once your office has fully implemented the recommendation, please submit a formal closeout letter to us within 30 days so that we may close the recommendation. The memorandum should be accompanied by evidence of completion of agreed-upon corrective actions and of the disposition of any monetary amounts.

Please send your response or closure request to OIGAuditsFollowup@oig.dhs.gov.



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

Consistent with our responsibility under the *Inspector General Act of 1978, as amended*, we will provide copies of our report to congressional committees with oversight and appropriation responsibility over the DHS. We will post the report on our website for public dissemination.

If you have any questions, please call me at (202) 981-6000, or your staff may call Bruce Miller, Deputy Inspector General for Audits, at the same number.

Attachment

# DHS OIG HIGHLIGHTS
## *FEMA Should Increase Oversight to Prevent Misuse of Humanitarian Relief Funds*

**March 28, 2023**

## Why We Did This Audit

Congress appropriated $110 million to the Federal Emergency Management Agency (FEMA) Emergency Food and Shelter Program (EFSP) to provide humanitarian relief to families and individuals encountered by the Department of Homeland Security. We conducted this audit to determine whether FEMA awarded funding provided in the *American Rescue Plan Act of 2021* (ARPA) in accordance with Federal law and regulations.

## What We Recommend

We made two recommendations to improve oversight and enforcement for similar future appropriations.

**For Further Information:**
Contact our Office of Public Affairs at (202) 981-6000, or email us at DHS-OIG.OfficePublicAffairs@oig.dhs.gov

## What We Found

FEMA awarded $110 million in humanitarian relief funds provided by ARPA to the EFSP National Board to provide services to families and individuals encountered by DHS in communities most impacted by the humanitarian crisis at the Southwest border. As of September 8, 2021, the National Board awarded $80.6 million of the funds to 25 local recipient organizations (LRO) in California, New Mexico, Arizona, and Texas. We reviewed $12.9 million from 18 LROs and found they did not always use the funds consistent with the *American Rescue Plan Act of 2021 Humanitarian Relief Funding and Application Guidance* (funding and application guidance). Specifically, the LROs did not always provide the required receipts or documentation for claimed reimbursements. In addition, some of the LROs were unable to provide supporting documentation for families and individuals to whom they provided services. Also, we determined some families and individuals did not have a DHS encounter record.

These issues occurred because FEMA did not provide sufficient oversight of the funds and instead relied on local boards and fiscal agents to enforce the funding and application guidance. As a result, FEMA, as the National Board Chair, cannot ensure the humanitarian relief funds were used as intended by the funding and application guidance. We questioned $7.4 million, or 58 percent, of the $12.9 million we reviewed because, after several attempts, we were unable to obtain the required supporting documentation. Without additional oversight and enforcement from FEMA and the National Board, LROs may continue to use the funds for services without providing the required supporting documentation for reimbursement, increasing the risk of misuse of funds and fraud.

## FEMA's Response

FEMA concurred with both recommendations. Appendix A contains FEMA's management response in its entirety.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

# Background

On March 11, 2021, the President signed the *American Rescue Plan Act of 2021* (ARPA). ARPA appropriated $110 million to the Federal Emergency Management Agency (FEMA) for the Emergency Food and Shelter Program (EFSP) to provide humanitarian relief to families and individuals encountered by the Department of Homeland Security. *The Consolidated Appropriations Act, 2022* (Pub. L. 117-103), provided an additional $150 million in humanitarian relief funding to the EFSP.[1]

The EFSP was established to supplement and expand the ongoing work of local service agencies (non-profit, faith-based, and governmental) providing shelter, food, and supportive services to individuals and families in economic crisis, and to prevent individuals from becoming homeless. The program's existing grant delivery structure and public-private partnership made it a viable means for providing funds quickly to organizations providing humanitarian relief to families and individuals encountered by DHS in southern border states with the greatest need. The EFSP involves multiple organizations with different roles:

- The National Board is the governing body that administers the program. The National Board establishes the program's policies, procedures, and guidelines, makes award decisions, and oversees the use of the funds. It is composed of six nongovernmental organizations and FEMA.

- United Way Worldwide is the National Board's designated fiscal agent and Secretariat. In that role, United Way Worldwide performs the necessary daily administrative duties and functions of the National Board. It receives funds, disburses funds to vendors, documents funds received, and maintains documentation for subrecipient organizations, such as fiscal agents or local recipient organizations (LRO). Additionally, it is responsible for reconciling distributed funds, including collecting receipts and supporting documentation from LROs.

- FEMA is the National Board Chair. As the National Board Chair, FEMA is responsible for providing policy guidance, monitoring the overall administration and management of grant expenditures, Federal coordination, and staff assistance to the board. FEMA also obtains reports from the Secretariat and fiscal agent (United Way Worldwide) with a detailed accounting of all program funds.

---

[1] We did not review the additional funding or the associated guidance as part of this audit.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

- A local board is the governing body for the local EFSP in the county or city it serves. Local boards may review LRO applications for ESFP funds, determine eligibility, and submit the applications to the National Board.

- An LRO is any local non-profit, faith-based, or governmental entity that has been awarded EFSP funds. LROs are to expend funds on eligible costs and maintain supporting documentation.

The National Board, along with FEMA, developed the *American Rescue Plan Act of 2021 Humanitarian Relief Funding and Application Guidance* (funding and application guidance). This guidance covers award determination, eligible services, eligible recipients of the services, period to provide qualified services, and required documentation. The funding and application guidance groups eligible services into five broad categories: (1) primary services (food and shelter); (2) secondary services (clothing, health and medical services, legal aid, and translation expenses); (3) administrative services (staff salaries and supplies expenses); (4) equipment and asset services (purchases, leases, and necessary renovations to equipment and assets); and (5) transportation services (taxi, bus, airline, train, and associated parking expenses). The guidance prioritizes reimbursing LROs for primary services. Should funds remain, the National Board will consider non-primary services.

The funding and application guidance prioritizes awarding humanitarian relief funds to LROs in communities most impacted by the humanitarian crisis along the Southwest border in 2021. According to U.S. Customs and Border Protection (CBP) data, DHS made about 2 million encounters at the Southwest border in 2021. The National Board considered several factors when making award determinations:

- migrant release data from U.S. Immigration and Customs Enforcement and CBP;
- proximity to U.S. Immigration and Customs Enforcement and CBP facilities releasing migrants;
- number of migrants served;
- information organizations provided on the direct costs incurred in serving migrants;
- subject matter expertise and discretion of the National Board;
- any other information and guidance that might be applicable to determining awards; and
- sufficiency of available funding.

ARPA funding flows from the EFSP to the LROs. LROs can claim reimbursement for eligible humanitarian relief services they provided beginning on January 1, 2021. LROs receive funding by either direct reimbursement or advance funding. Expenditures already incurred by an LRO are directly



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

reimbursed.  LROs request special funding to receive advance funding before expending funds for services.  Figure 1 shows how ARPA funding in the EFSP flows.

**Figure 1. Flow of ARPA Humanitarian Relief Funding in the EFSP**



*Source:*  DHS Office of Inspector General analysis of FEMA's process

On March 18, 2021, FEMA awarded $110 million in humanitarian relief funding to the National Board.  According to the National Board, as of September 8, 2021, it had awarded $80.6 million of humanitarian relief funds to 25 LROs throughout California, New Mexico, Arizona, and Texas.  We judgmentally selected 18 LROs, which received awards totaling $66 million, to review how the funds were used.  The National Board continued to award and reimburse humanitarian relief funding to LROs throughout our audit.

As of September 2021, the 18 LROs reported they used $35.3 million of the $66 million in humanitarian relief funds they received to provide services to about 324,000 individuals.  As shown in Figure 2, the LROs used 30 percent of the $35.3 million in funds for primary services (food and shelter) and 70 percent for secondary, administrative, travel, and equipment services.  See Appendix B for the services provided by the 18 LROs and the reimbursed ARPA humanitarian relief funds.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

**Figure 2. Spending Reported by 18 LROs by Service Category as of September 2021**



*Source:* DHS OIG analysis of ARPA humanitarian relief funds approved and reimbursed as of September 2021

We conducted this audit to determine whether FEMA awarded funding provided in ARPA in accordance with Federal laws and regulations.

## Results of Audit

LROs did not always use the humanitarian relief funds consistent with ARPA and funding and application guidance. The National Board awarded $66 million in ARPA-appropriated humanitarian relief funds to 18 eligible LROs to provide services to families and individuals encountered by DHS. The 18 LROs reported using $35.3 million of those funds, of which we reviewed $12.9 million. We determined that these 18 LROs did not always comply with the funding and application guidance when using funds. Specifically, the LROs did not always provide or maintain the required receipts or documentation to support reimbursement for humanitarian relief fund services. In addition, some of the LROs were unable to provide supporting documentation for families and individuals to whom they provided services. From the information some LROs provided, we determined some families and individuals did not have a DHS encounter record.

These issues occurred because FEMA did not provide sufficient oversight and relied on local boards and fiscal agents to enforce the funding and application guidance. As a result, FEMA, as National Board Chair, cannot ensure the humanitarian relief funds were used as intended by the funding and application guidance. We questioned $7.4 million in humanitarian relief fund spending by LROs because, after several attempts, we were unable to obtain the required supporting documentation.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## LROs Did Not Always Provide Receipts and Supporting Documentation for Reimbursement

The funding and application guidance requires LROs to maintain and submit receipts for qualified expenses related to humanitarian relief funds. For secondary and other non-primary services, LROs are required to provide documentation based on actual costs, daily logs of migrants served, spreadsheet of expenses incurred, and itemized receipts for the purchases, along with proof of payment, to the EFSP local board and National Board.

However, LROs did not always provide adequate supporting documentation for reimbursement for humanitarian relief services. We tested a nonstatistical sample of 28 LRO Supplemental Funding Reimbursement Reports and five invoices LROs provided, in lieu of the reports, totaling $12.9 million (36 percent) of $35.3 million in claimed expenses. We found $7.4 million in claimed expenses, representing 58 percent of the amount reviewed, were missing required supporting documentation.

Specifically, one LRO, a local government entity, did not adequately support $7.3 million in labor charges paid to a contractor that provided COVID-19 testing, a secondary service, between May and September 2021. The National Board awarded a local government entity $30.6 million, or 28 percent of the $110 million humanitarian relief funds, to conduct COVID-19 testing at the Southwest border. The local government entity entered into a time and materials contract with a private company (contractor) to test migrants for COVID-19, which required the contractor to provide qualified staff to work two 8-hour shifts anytime within a 24-hour period.[2]

Between May and September 2021, the local government entity paid $11.7 million in contractor invoices, which included more than $8.9 million in labor expenses. Instead of providing supporting documentation for its labor charges, the contractor simply calculated the labor expenses on its invoices by multiplying 24 hours per day for every employee deployed to the testing site by each employee's labor rate. At our request, the government entity requested the supporting documentation for the reimbursed labor expenses, but the contractor could not provide documentation to prove it actually paid the employees the amount it was reimbursed. The contractor did provide records for some employees deployed to the testing site, which amounted to about $1.5 million.[3] However, we questioned the remaining $7.3 million in labor expenses because the contractor did not provide supporting documentation.

---

[2] DHS' Combating Weapons of Mass Destruction Office had a similar contract with the same private company to provide COVID-19 testing prior to the local government entity's contract.
[3] We requested payroll information in September 2022 and reviewed contractor records provided through October 2022.



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

Additionally, we found:

- One LRO received duplicate reimbursements for claimed expenses. The LRO submitted all required documentation but was reimbursed twice for the same request of about $40,000. When this issue was brought to the attention of the LRO, it confirmed the amount paid was a duplicate and resolved the overpayment by offsetting a future payment.

- Two LROs miscalculated or failed to support expenses totaling about $7,000 in humanitarian relief services. In these instances, the LROs did not include documentation for all claimed expenses, as required.

## LROs Did Not Always Provide Supporting Documentation for Families and Individuals They Assisted

ARPA requires humanitarian relief funds be used only for families and individuals encountered by DHS. Further, the funding and application guidance allows LROs to claim reimbursement for primary services (i.e., food and shelter) using per meal rates or per diem shelter rates, but they must submit a daily log of the number of meals served or shelter nights provided. Alternatively, LROs may claim actual expenses for these primary services. LROs that provide both primary and secondary services may claim reimbursement at per capita rates (i.e., per person rates),[4] but must provide a log of "unique migrants" (i.e., the number of migrants) who receive these services. However, the funding and application guidance does not require LROs to maintain logs that include the names of the families and individuals to whom they provided humanitarian relief services. Of the 15[5] LROs that provided food and shelter to families and individuals we found:

- One LRO did not respond to our requests for supporting documentation for the number of families and individuals served. Therefore, we could not confirm that those who received services amounting to about $15,000 in reimbursements met the ARPA eligibility requirement.

- Two LROs did not maintain supporting documentation for the number of families and individuals served. Therefore, we could not confirm that those who received services amounting to about $13,000 in reimbursements met the ARPA eligibility requirement.

- Two LROs maintained supporting documentation for the number but did not include the names of the families and individuals served. Therefore,

---

[4] Per the funding and application guidance, expenses for equipment and assets services are not included in the per capita rate.

[5] We did not review 3 of the 18 LROs in our sample because they did not provide primary services and were not required to submit a daily log for migrants served.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

we could not confirm that those who received services amounting to about $14,000 in reimbursements met the ARPA eligibility requirement.

- Ten LROs provided supporting documentation, that is, numbers and names or alien registration numbers (A-Number)[6] of families and individuals served.

In some cases, we determined LROs had provided services to individuals not encountered by DHS. We obtained names or A-Numbers from logs provided by the 10 LROs, which we tested in DHS' Enforcement Integrated Database[7] (EID) to determine whether the individuals met the ARPA eligibility requirement. Of the 824 names or A-Numbers we tested, 197 (24 percent) were ineligible to receive humanitarian relief services.[8] Specifically, 154 did not have an encounter recorded in EID, and 43 were encountered before the funding availability or they received services before DHS encountered them. For example, one of the 43 individuals whom DHS encountered in October 2017 obtained humanitarian relief services 1,235 days later, in March 2021. Another individual received humanitarian relief services 296 days before being encountered by DHS.

These issues occurred because, although FEMA and the National Board developed the detailed funding and application guidance for the humanitarian relief funds, they did not provide sufficient oversight to enforce the guidance to ensure funds were used as intended. Specifically, FEMA and the National Board relied on local boards and fiscal agents to review ongoing expenditures to ensure the LROs adequately supported claimed services. In addition, FEMA and the National Board cannot ensure LROs provide humanitarian relief services only to individuals DHS has encountered.

As a result, FEMA, as the National Board Chair, cannot ensure humanitarian relief funds were used as the guidance intended. If FEMA and the National Board continue awarding humanitarian relief funds without ensuring LROs are fully adhering to the requirements, LROs could continue to use the funding for unsupported expenditures. FEMA and the National Board should also

---

[6] An A-Number is a unique number DHS assigns to a noncitizen.

[7] EID is a "DHS shared common database repository used by several DHS law enforcement and homeland security applications. EID stores and maintains information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations conducted by U.S. Immigration and Customs Enforcement (ICE), U.S. Citizenship and Immigration Services (USCIS), and U.S. Customs and Border Protection (USCBP)." *See*, https://www.dhs.gov/publication/dhsicepia-015h-enforcement-integrated-database-eid-criminal-history-information-sharing.

[8] Because we tested individual names or A-Numbers from a single day and the individuals may have received services on multiple days, we could not calculate the total humanitarian relief funds attributed to the 197 exceptions.





**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

determine how to prevent LROs from receiving reimbursements for expenditures used to assist ineligible individuals. FEMA's insufficient oversight opens humanitarian relief funds and future supplemental funding, including the $150 million humanitarian relief appropriated in 2022, to misuse or fraud.

# Recommendations

**Recommendation 1:** We recommend the FEMA Administrator ensure that the EFSP National Board resolve the $7.4 million in questioned costs and incorporate controls in the *American Rescue Plan Act of 2021 Humanitarian Relief Funding and Application Guidance* to minimize future reimbursements of unsupported costs. Additionally, the FEMA Administrator should ensure the labor hour reimbursements made to the COVID-19 testing contractor are appropriately supported.

**Recommendation 2:** We recommend the FEMA Administrator ensure the EFSP National Board implements oversight measures to enforce the *American Rescue Plan Act of 2021 Humanitarian Relief Funding and Application Guidance* for future supplemental appropriations. Specifically, develop a risk-based methodology to review a sample of ongoing funding execution for future supplemental appropriations to ensure funds approved are:

- reviewed and reconciled for completeness and accuracy; and
- supported with appropriate documentation, including rosters or other documentation for the number of people served.

# Management Comments and OIG Analysis

The Associate Administrator Office of Policy and Program Analysis provided written comments on a draft of this report, which are included in their entirety in Appendix A. FEMA concurred with the two recommendations in this report. FEMA submitted technical comments separately, which we addressed as appropriate. We consider recommendation 1 open and unresolved and recommendation 2 open and resolved. A summary of FEMA's management responses and our analysis follow.

**FEMA Response to Recommendation 1:** Concur. FEMA coordinated with the EFSP National Board to develop guidance to minimize future reimbursements of unsupported costs. Specifically, the EFSP in coordination with FEMA proactively issued guidance to disallow "on-call" labor hour terms in contracts using humanitarian relief funds and to require fiscal agents to report reimbursements quarterly. FEMA proposed additional fiscal guidance to require the EFSP National Board to report quarterly how funds are used and require LROs to provide additional information regarding migrants encountered



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

by DHS.  FEMA's estimated completion date for planned actions is June 30, 2023.

According to FEMA, the EFSP Board determined that the approximately $7.3 million in labor costs we questioned as unsupported was expended in accordance with the terms of the contract.  Additionally, FEMA indicated that the remaining questioned costs of approximately $100,000 had also been resolved.

**OIG Analysis:**  FEMA's response was partially responsive to our recommendation.  The actions planned and implemented by FEMA and the EFSP to update the application and funding guidance should improve compliance for future humanitarian relief funds.

However, FEMA's corrective actions do not address how FEMA intends to ensure the $7.4 million reimbursements we questioned are appropriately supported.  Specifically, the COVID-19 testing contract was a time and material or reimbursement-type contract, so the contractor should be able to promptly support labor hours claimed with evidence the respective employees were also paid for those hours.  As noted in our report, after several attempts, the contractor was unable to provide evidence that the contractor employees were paid for all the labor hours it was reimbursed.

Additionally, FEMA officials did not provide a response to our recommendation to address the missing receipts or unsupported migrant logs.  We consider this recommendation open and unresolved until FEMA provides evidence the planned corrective actions are implemented and provides supporting documentation or a plan to resolve the $7.4 million in questioned costs, including an estimated completion date and official(s) responsible for implementing the recommendation.

**FEMA Response to Recommendation 2:**  Concur.  FEMA coordinated with the EFSP National Board to develop guidance to enhance the oversight of humanitarian relief funds by requiring the EFSP and LROs to report expenditures quarterly.  In addition, FEMA plans to issue guidance and policy to verify humanitarian relief funds are used as intended.  FEMA's estimated completion date to implement all the corrective actions is June 30, 2023.

**OIG Analysis:** FEMA's corrective actions are responsive to the recommendation.  We consider this recommendation resolved and open until FEMA provides documentation to support the corrective actions have been completed and until FEMA identifies the official(s) responsible for implementing the recommendation.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Objective, Scope, and Methodology

The Department of Homeland Security Office of Inspector General was established by the *Homeland Security Act of 2002* (Public Law 107−296) by amendment to the *Inspector General Act of 1978*.

Through ARPA, Congress appropriated $110 million to FEMA for the EFSP to provide humanitarian relief to families and individuals encountered by DHS. The EFSP awarded the humanitarian relief funds to LROs in communities most impacted by the humanitarian crisis along the Southwest border in 2021. The objective of this audit was to determine whether FEMA awarded funding provided in ARPA in accordance with Federal law and regulations. To answer our objective, we:

- interviewed the National Board to gain an understanding of its roles and responsibilities in distributing ARPA funding;
- interviewed United Way Worldwide officials to understand how they accounted for and reported on ARPA funding;
- interviewed LRO officials to determine how they accounted for ARPA funding; and
- reviewed the *American Rescue Plan Act of 2021 Humanitarian Relief Funding and Application Guidance.*

We analyzed the universe of humanitarian relief funds awarded to LROs as of September 8, 2021. According to the universe the EFSP National Board provided, it awarded funding to 25 LROs totaling $80.6 million, 73 percent of the $110 million humanitarian relief fund appropriation. From that universe, we judgmentally selected a sample of 18 LROs based on reimbursement status and largest funding award amounts, with award amounts just over $66 million. We requested and obtained Supplemental Funding Reimbursement Reports for the 18 LROs, which totaled $35.3 million in humanitarian relief funding received by the LROs.

To test whether LROs used the humanitarian relief funds in accordance with the funding and application guidance, we judgmentally selected a nonstatistical sample of 28 Supplemental Funding Reimbursement Reports and 5 invoices from the 18 LROs totaling $12.9 million. Additionally, we randomly selected daily logs from the 15 LROs that provided primary services, which totaled 9,719 migrants served. Of the 9,719 migrants' names requested, we received 9,310 names or A-Numbers and randomly selected 824 to test in EID.

To assess the validity and accuracy of this data, we reviewed the Supplemental Funding Reimbursement Reports, daily logs, and documentation for the 18 LROs in our sample. We performed detailed testing on the expenses



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

claimed to determine compliance with the funding and application guidance. Except for the deficiencies noted in our report, we verified that claimed reimbursements tested were supported by source documents. We used EID to test/determine whether the individuals and families claimed from the counts in the daily logs were encountered by DHS. As a result of our testing, we deemed the information sufficient and reliable to answer our audit objective.

We assessed EFSP's internal control structure, policies, procedures, and practices applicable to ARPA funding. We identified deficiencies in the communication and information, control activities, and monitoring internal control components. Our assessment would not necessarily disclose all significant deficiencies in this control structure. However, it disclosed deficiencies in FEMA's and the National Board's design and implementation of controls to ensure the humanitarian relief funds were used as intended. We discuss these deficiencies in the body of this report.

We conducted this performance audit between August 2021 and November 2022 pursuant to the *Inspector General Act of 1978, as amended,* and according to generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based upon our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based upon our audit objectives.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Appendix A
## FEMA Comments to the Draft Report

U.S. Department of Homeland Security
Washington, DC 20472



February 24, 2023

MEMORANDUM FOR:    Joseph V. Cuffari, Ph.D.
                          Inspector General

FROM:                Cynthia Spishak     CYNTHIA    Digitally signed by
                           Associate Administrator   SPISHAK    CYNTHIA SPISHAK
                                                           Date: 2023.02.24 16:21:29
              Office of Policy and Program Analysis                     -05'00'

SUBJECT:         Management Response to Draft Report: "FEMA Should
                           Increase Oversight to Prevent Misuse of Humanitarian Relief
                           Funds"
                           (Project No. 21-043(a)-AUD-FEMA)

Thank you for the opportunity to comment on this draft report. The Federal Emergency
Management Agency (FEMA) appreciates the work of the Office of Inspector General
(OIG) in planning and conducting its review and issuing this report.

FEMA remains committed to our mission of helping people before, during and after
disasters. The Emergency Food and Shelter Program (EFSP) is a FEMA-funded program
that is administered by the EFSP National Board and that was authorized by the
McKinney-Vento Homeless Assistance Act of 1987.[1] For the past 40 years, the EFSP
has been providing funding for emergency and supplemental needs for those that are
experiencing, or at risk of experiencing, hunger and homelessness across the nation. The
thousands of local recipient organizations that received EFSP funding, and the thousands
of clients who benefit, typically represent those who are most affected by local, regional,
or national events of significance (including disasters).

The EFSP National Board is composed of representatives of the American Red Cross;
Catholic Charities, USA; The Jewish Federations of North America; National Council of
the Churches of Christ in the USA; The Salvation Army; and United Way Worldwide. A
representative of FEMA serves as the chair of the EFSP National Board. FEMA's
primary responsibilities pertaining to the EFSP are to constitute and chair the EFSP
National Board, to provide grant oversight, and to serve as the Federal liaison to the
EFSP National Board. The EFSP National Board is an excellent example of how public-

---

[1] The McKinney-Vento Homeless Assistance Act of 1987, the authorizing statute that lays out the
structure for EFSP. See 42 U.S.C. §§ 11331 - 11352.



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

private partnerships can succeed by capitalizing on the strengths of both the government and the nonprofit and faith-based community to recognize need within a community and to deliver funds efficiently.

On March 11, 2021, President Biden signed into law the American Rescue Plan Act of 2021 (ARPA). ARPA provided $400 million in appropriated EFSP funding for local social service organizations aiding our nation's hungry and homeless communities. ARPA also provided $110 million in appropriated EFSP funding for local recipient organizations providing critical humanitarian assistance to individuals and families encountered by the Department of Homeland Security at the southern border.

On March 17, 2021, FEMA awarded the entirety of this $110 million in ARPA humanitarian funding to the EFSP National Board to subsequently provide funding to local social service organizations. As of January 4, 2023, the EFSP National Board had awarded $98,700,684 (94.5% of the available $104,500,000)[2] in ARPA humanitarian funding to provide services to individuals and families encountered by DHS at the southern border. As of February 13, 2023, the remaining balance of available ARPA humanitarian funding is reserved to award applications currently in process.

Since FY2019, FEMA has awarded $290 million to the EFSP National Board to provide funding to local recipient organizations assisting individuals and families encountered by the Department of Homeland Security at the southern border. This financial assistance has been instrumental in providing shelter, food, and a number of other resources critical to this vulnerable community.

The EFSP National Board that governs the EFSP embraces its mission in providing life-sustaining resources to those in need, including communities experiencing hunger and homelessness and individuals and families encountered by DHS at the southern border. FEMA also recognizes the importance of ensuring funds – including the humanitarian funding provided within ARPA – are used properly and as appropriated. In April 2021, the EFSP National Board developed the *American Rescue Plan Act of 2021 Humanitarian Relief: Funding and Application Guidance* (referred to as *ARPA Humanitarian Funding and Application Guidance*).[3] The *ARPA Humanitarian Funding and Application Guidance* describes allowable costs, the eligible populations, and how to access funds. The *ARPA Humanitarian Funding and Application Guidance* also prioritizes awarding humanitarian relief funds to local recipient organizations (LROs) in communities most impacted by the humanitarian crisis along the southern border in 2021.

---

[2] The available ARPA humanitarian funding figure of $104,500,000 represents the $110,000,000 in appropriated ARPA humanitarian funding reduced by a 5% administrative allowance.
[3] EFSP National Board, *American Rescue Plan Act of 2021 Humanitarian Relief: Funding and Application Guidance* (April 2021).
https://www.efsp.unitedway.org/efsp/website/websiteContents/PDFs/American%20Rescue%20Plan%20Act%20Guidance.pdf.

2



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

To ensure better controls pertaining to the types of contracts used by LROs and to prevent issues to claimed labor expenses, the EFSP National Board proactively issued *Humanitarian Relief Funding Guidance Addendum Fiscal Year 2022* (dated September 2022) that allowed only for the use of time-worked contracts (as opposed to contract conditions that provide for the payment of "on-call" or "standby" hours).[4]

In December 2022, the EFSP National Board issued *Humanitarian Relief Funding Guidance Fiscal Year 2023 (Continuing Resolution $75 Million): Application and Funding Guidance* which instituted quarterly reporting to provide more oversight and updates on how funds were spent, thus reducing risk and increasing transparency.[5]

The draft report contained two recommendations with which FEMA concurs. Attached find our detailed response to each recommendation. FEMA previously submitted technical comments addressing several accuracy, contextual, and other issues under a separate cover for OIG's consideration.

Again, thank you for the opportunity to review and comment on this draft report. Please feel free to contact me if you have any questions. We look forward to working with you again in the future.

Attachment

---

[4] EFSP National Board, *Humanitarian Relief Funding Guidance Addendum Fiscal Year 2022*, at p. 1 (September 2022). https://www.efsp.unitedway.org/efsp/website/websiteContents/PDFs/AddendumtotheHumanitarianGuidance.pdf.
[5] EFSP National Board, *Humanitarian Relief Funding Guidance Fiscal Year 2023 (Continuing Resolution $75 Million): Application and Funding Guidance* (December 2022). https://www.efsp.unitedway.org/efsp/website/websiteContents/PDFs/Fiscal%20Year%202023%20Humanitarian%20Relief%20Funding%20Guidance.pdf.

3



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

**Attachment:  Management Response to Recommendations
Contained in 21-043(a)-AUD-FEMA**

OIG recommended that:

**Recommendation 1:** The FEMA Administrator ensure that the Emergency Food and Shelter Program National Board resolve the $7.4 million in questioned costs and incorporate controls in the *American Rescue Plan Act of 2021 Humanitarian Relief Funding and Application Guidance* to minimize future reimbursements of unsupported costs. Additionally, the FEMA Administrator should ensure the labor hour reimbursements made to the COVID-19 testing contractor are appropriately supported.

**Response:** Concur.  The OIG's Notice of Findings and Recommendations (NFR) (dated June 2022) referenced $3.1 million in questioned costs for claimed labor expenses. Accordingly, FEMA coordinated with the EFSP National Board to look into this matter. In January 2023, the EFSP National Board determined that the LRO paid the vendor consistent with the terms of the contract and that there was no indication of misuse of funds or fraud.

To ensure better controls on the permissibility of different types of contracts and to prevent future issues, the EFSP National Board proactively issued *Humanitarian Relief Funding Guidance Addendum Fiscal Year 2022* (dated September 2022) that allowed only for the use of time-worked contracts (as opposed to contract conditions that provide for the payment of "on-call" or "standby" hours):

> "FOR ALL CONTRACTS AND PROCUREMENT Effective immediately, all contracts that include compensation for paid staff will be restricted to "hours worked" only. Any contract conditions that include the payment of "on call" or "standby" hours will no longer be eligible. Agencies that currently use contracts with "on call" compensation for staff, should notify the EFSP National Board immediately to indicate when the contracts can be modified or the EFSP grant recipient will be responsible for a portion of these associated costs."
>
> *See* EFSP National Board, *Humanitarian Relief Funding Guidance Addendum Fiscal Year 2022*, at p. 1 (September 2022).
> https://www.efsp.unitedway.org/efsp/website/websiteContents/PDFs/Addendumto theHumanitarianGuidance.pdf.

Previously, in 2022 and again on February 7, 2023, FEMA Recovery Directorate confirmed with the EFSP National Board that the applicant in question regarding the COVID-19 testing contract terminated its previous agreement and is only using a time-

4



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

worked contract in compliance with the *Humanitarian Relief Funding Guidance Addendum Fiscal Year 2022* (September 2022).

Furthermore, in December 2022 the EFSP National Board issued *Humanitarian Relief Funding Guidance Fiscal Year 2023 (Continuing Resolution $75 Million): Application and Funding Guidance*[6] which instituted quarterly reporting to provide more oversight and updates on how funds were spent, thus reducing risk and increasing transparency.

By an estimated completion date of February 28, 2023, FEMA will publish the *Notice of Funding Opportunity for FY 2023 Humanitarian Relief Funding* which will require the EFSP National Board to report quarterly the estimated number of services provided by LROs, thus allowing greater transparency and reducing risk.

Whereas the OIG initially identified $3.1 million in questioned costs within the OIG's *Notice of Findings and Recommendations* (date June 2022), within the OIG's *Draft Report* (dated January 2023) the OIG identified $7.4 million in questioned costs. Specifically, in February 2023, the OIG provided the following itemization of its $7.4 million questioned costs figure:

- $7,339,106.89 questioned as unsupported because the contractor did not provide timely documentation supporting the labor charges in the "time and material" contract for COVID-19 testing;
- $40,106.16 questioned as unsupported because of duplicate payment;
- $7,205.41 questioned as unsupported because of miscalculated expenses or missing receipts; and
- $42,156.02 questioned as unsupported because LROs did not provide supporting documentation for migrants served.

The OIG's $7.339 million in questioned costs includes the previously addressed $3.1 million in questioned costs that OIG initially identified within its June 2022 NFR and an additional $4.239 million in questioned costs (pertaining to the same issue that the EFSP National Board addressed in 01/2023 by determining that the funds were expended in accordance with the terms described within the contract and that the EFSP National Board addressed in September 2022 by issuing *Humanitarian Relief Funding Guidance Addendum Fiscal Year 2022* that prohibited the use of contract conditions that provide for the payment of "on-call" or "standby" hours).

---

[6] EFSP National Board, *Humanitarian Relief Funding Guidance Fiscal Year 2023 (Continuing Resolution $75 Million): Application and Funding Guidance* (December 2022).
https://www.efsp.unitedway.org/efsp/website/websiteContents/PDFs/Fiscal%20Year%202023%20Humanitarian%20Relief%20Funding%20Guidance.pdf.

5



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

Regarding the $40,106.16 in questioned costs related to duplication of payments, the OIG noted that the LRO associated with this questioned cost "resolved the overpayment by offsetting a future payment" (*Draft Report*, p. 6).

Regarding the $7,205.41 in questioned costs pertaining to the missing receipts or miscalculated expenses, the EFSP National Board has a process in place to reconcile any compliance issues in accordance with its guidance (e.g. *ARPA of 2021 Humanitarian Relief: Funding and Application Guidance* section entitled "Closeout" at page 53) and 2 CFR 200.344.[7] The EFSP National Board extended the spending period for LROs to fully spend ARPA funds until March 31, 2023. As such, the final reports are not yet due according to the EFSP National Board's procedures. Since the EFSP National Board already has appropriate procedure in place, FEMA considers the subject matter of these questioned costs to be resolved.

Regarding the $42,156.02 in questioned costs related to LROs not providing the supporting documentation for the number of migrants served, the EFSP National Board's *American Rescue Plan Act of 2021 Humanitarian Relief: Funding and Application Guidance* (April 2021)[8] and application sample logs required the count of the number of unique migrants served and did not require LROs to provide the underlying Personally Identifiable Information such as name and Alien number.

To ensure LROs have a process for verifying that they are serving the eligible population and to inform the numbers added to the daily logs, by an estimated completion date of June 30, 2023, the EFSP National Board, with technical assistance from FEMA, will complete a funding request template that will include questions surrounding how the recipient organization will ensure services are being provided to individuals and families encountered by DHS, as designated within the appropriations, by outlining their process to identify those individuals and families who require assistance.

We request this recommendation be considered implemented and closed.

---

[7] "§ 200.344 Closeout." Code of Federal Regulations. https://www.ecfr.gov/current/title-2/subtitle-A/chapter-II/part-200/subpart-D/subject-group-ECFR682eb6fbfabcde2/section-200.344.
[8] EFSP National Board, *American Rescue Plan Act of 2021 Humanitarian Relief: Funding and Application Guidance* (April 2021). https://www.efsp.unitedway.org/efsp/website/websiteContents/PDFs/American%20Rescue%20Plan%20Act%20Guidance.pdf.

6



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

**Recommendation 2:** We recommend the FEMA Administrator ensure the Emergency Food and Shelter Program National Board implements oversight measures to enforce the American Rescue Plan Act of 2021 Humanitarian Relief Funding and Application Guidance for future supplemental appropriations. Specifically, develop a risk-based methodology to review a sample of ongoing funding execution for future supplemental appropriations to ensure funds approved are:
- reviewed and reconciled for completeness and accuracy; and
- supported with appropriate documentation, including rosters or other documentation for the number of people served.

**Response:** Concur. In December 2022 the EFSP National Board issued *Humanitarian Relief Funding Guidance Fiscal Year 2023 (Continuing Resolution $75 Million): Application and Funding Guidance*[9] which included a quarterly reporting requirement for local recipient organizations receiving EFSP humanitarian relief funding. This new requirement assists in providing more oversight and more current updates on how funds are being spent, thus reducing risk and increasing transparency. These reports allow the EFSP National Board to perform additional sampling of documentation for humanitarian funding.

By an estimated completion date of March 31, 2023, FEMA will also include in the forthcoming *Notice of Award for the FY2023 Humanitarian Relief Funding* to the EFSP National Board a requirement for the EFSP National Board to further define or clarify what is considered a recent encounter within EFSP National Board's forthcoming guidance pertaining to funding appropriated by Congress under the Consolidated Appropriations Act of 2023 (signed into law by President Biden on December 29, 2022).

Also, by an estimated completion date of April 30, 2023, FEMA will propose to the EFSP National Board a method for FEMA, the National Board, or their delegate, to perform random site visits to confirm that organizations are providing services to individuals and families encountered by DHS in accordance with their submitted and approved applications for funding from the EFSP National Board. (FEMA is one of seven votes on the EFSP National Board and FEMA cannot unilaterally guarantee changes to the EFSP National Board's guidance or procedures.)

Additionally, by an estimated completion date of June 30, 2023 the EFSP National Board, with technical assistance from FEMA, will complete a funding request template that will include questions surrounding how the recipient organization will ensure

---

[9] EFSP National Board, *Humanitarian Relief Funding Guidance Fiscal Year 2023 (Continuing Resolution $75 Million): Application and Funding Guidance* (December 2022). https://www.efsp.unitedway.org/efsp/website/websiteContents/PDFs/Fiscal%20Year%202023%20Humanitarian%20Relief%20Funding%20Guidance.pdf.

7



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

services are being provided to individuals and families encountered by DHS, as designated within the appropriations, by outlining their process to identify those individuals and families who require assistance.

In the Consolidated Appropriations Act of 2023 (signed into law by President Biden on December 29, 2022) for FY2023, Congress appropriated funds to the U.S. Customs and Border Protection (CBP) to transfer to FEMA to establish on CBP's behalf a new Shelter and Services Program (SSP) for the purpose of supporting migrant sheltering and related activities and to support CBP in effectively managing migrant processing and preventing the overcrowding of short-term CBP holding facilities. Because Congress recognized that FEMA and CBP will require adequate time to launch SSP, the FY2023 appropriation also authorizes DHS to use a portion of the FY2023 funding for EFSP humanitarian relief (as a bridge prior to the launch of SSP). Per Congress's Joint Explanatory Statement associated with Consolidated Appropriations Act of 2023, Congress' intent is for SSP to replace the need for supplemental EFSP humanitarian relief funding directed to individuals and families encountered by DHS.

We request this recommendation be considered implemented and closed.

8



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Appendix B
## Humanitarian Relief Services Provided and Funds Reimbursed to 18 LROs, by Service Category, as of September 30, 2021

| Service Category | Total for All Charities Reviewed |
|---|---|
| A.   Primary Services, Per Capita Rate | $4,175,392.50 |
| B.   Primary Services, Per Meal Rate | $44,424.00 |
| C.   Primary Services, Per Diem Shelter Rate | $330,425.00 |
| D.   Primary Services, Congregate Meals | $2,088,125.83 |
| E.   Primary Services, Bags/Boxes of Food | $0- |
| F.   Primary Services, Food Bank - Cost of Food Purchased | $1,065.87 |
| G.   Primary Services, Food Bank - Indirect Provider (food by poundage) | $0- |
| H.   Primary Services, Basic First Aid/Over the Counter | $9,871.32 |
| I.   Primary Services, Food Storage Containers/Cookware/Utensils/T-Shirt bags | $14,660.17 |
| J.   Primary Services, Hygiene Items | $41,545.69 |
| K.   Primary Services, Cots and Beds | $24,177.00 |
| L.   Primary Services, Linen | $788.01 |
| M.   Primary Services, Agency/Facility Utilities | $0- |
| N.   Transportation Services, Local Transportation | $206,222.94 |
| O.   Transportation Services, Local Transportation Contracts (e.g., charter bus) | $113,010.00 |
| P.   Transportation Services, Mileage at Federal rate of 56 cents per mile | $14,224.13 |
| Q.   Transportation Services, Parking (local street, airport) | $9,457.24 |
| R.   Primary Services, Maintenance/Housekeeping | $5,701.36 |
| S.   Primary Services, Personal Protective Equipment (PPE) | $2,681.80 |
| T.   Secondary Services, Clothing, Shoes/Shoelaces/Belts | $106,710.52 |
| U.   Primary Services, Contracted Services | $959,817.52 |
| V.   Equipment and Assets Services | $780,998.86 |
| W.   Primary Services, Hotel/Motel Stay | $2,841,492.15 |
| X.   Transportation Services, Long Distance Transportation | $2,742,270.07 |
| Y.   Secondary Services, Health/Medical, including Health Screenings | $4,692,645.00 |
| Z.   Secondary Services, COVID-19 Testing | $11,662,203.28 |
| AA.  Secondary Services, COVID-19 Associated Medical Care During Quarantine | $0- |
| AB.  Secondary Services, Mental Health | $0- |
| AC.  Secondary Services, Legal Aid | $0- |
| AD.  Secondary Services, Translation Services | $145,245.88 |
| AE.  Administrative Services | $4,335,481.80 |
| Total: | **$35,348,637.94** |

*Source:* DHS OIG analysis of 18 LRO Supplemental Funding Reimbursement Reports



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

**Appendix C**
**Potential Monetary Benefits**

| Type of Potential Monetary Benefit | Rec. No. | Amounts (Millions) |
|---|---|---|
| **Questioned Costs –Unsupported** | 1 | **$7.4** |
| **Funds Put to Better Use** | | 0 |
| **Totals** | | **$7.4** |

*Source*: DHS OIG analysis of findings in this report



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Appendix D
## Report Distribution

### Department of Homeland Security

Secretary
Deputy Secretary
Chief of Staff
Deputy Chiefs of Staff
General Counsel
Executive Secretary
Director, GAO/OIG Liaison Office
Under Secretary, Office of Strategy, Policy, and Plans
Assistant Secretary for Office of Public Affairs
Assistant Secretary for Office of Legislative Affairs

### Office of Management and Budget

Chief, Homeland Security Branch
DHS OIG Budget Examiner

### Congress

Congressional Oversight and Appropriations Committees

## Additional Information and Copies

To view this and any of our other reports, please visit our website at: www.oig.dhs.gov.

For further information or questions, please contact Office of Inspector General Public Affairs at: DHS-OIG.OfficePublicAffairs@oig.dhs.gov.
Follow us on Twitter at: @dhsoig.



## OIG Hotline

To report fraud, waste, or abuse, visit our website at www.oig.dhs.gov and click on the red "Hotline" tab. If you cannot access our website, call our hotline at (800) 323-8603, fax our hotline at (202) 254-4297, or write to us at:

Department of Homeland Security
Office of Inspector General, Mail Stop 0305
Attention: Hotline
245 Murray Drive, SW
Washington, DC 20528-0305