UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK, et al.,

    Plaintiffs,

v.

DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, et al.,

    Defendants.

C.A. No. 1:25-cv-00039

**PLAINTIFF STATES' RESPONSE TO DEFENDANTS'
MOTION FOR STAY PENDING APPEAL**

    Defendants are not entitled to the "extraordinary remedy," *Nken v. Holder*, 556 U.S. 418, 428 (2009), of a stay pending appeal of the brief temporary restraining order ("TRO") entered by the Court on January 31, nor of any subsequent order entered by the Court. Defendants put in place blanket "freezes" on billions of dollars in federal funds that imposed severe and substantial costs on Plaintiff States. This Court balanced the equities and concluded that a TRO was warranted, and has granted one extension for good cause. Feb. 6, 2025 Minute Order. The Court has established an expeditious schedule that will permit it to resolve Plaintiff States' pending motion for a preliminary injunction, ECF No. 67, within less than two weeks. And the Court's orders do not block defendants from exercising their discretion to halt the disbursement of federal funds based on specific applicable statutes, regulations, and grant terms. *See* ECF 50 ("TRO") at 12. The Court should thus deny defendants' motion for a stay, both because the First Circuit lacks appellate jurisdiction over defendants' putative appeal and because defendants are not entitled to such a stay on the merits.

    1.    *First*, defendants' putative appeal from the Court's TRO is improper, and there is

1

thus no basis for a stay pending appeal. "[T]he grant of a TRO generally is not appealable." *Almeida-Leon v. WM Cap. Mgmt., Inc.*, No. 20-2089, 2024 WL 2904077, at *4 (1st Cir. June 10, 2024); *accord Calvary Chapel of Bangor v. Mills*, 984 F.3d 21, 27 (1st Cir. 2020). Although there is an exception to that rule where a TRO is "an injunction masquerading as a TRO," *Almeida-Leon*, 2024 WL 2904077, at *4, that is not the case here. Rather, this Court entered a TRO less than 14 days ago—on January 31—and promptly entered an expedited briefing schedule on Plaintiff States' motion for a preliminary injunction, under which that motion will be fully briefed by Friday, February 14, with a hearing scheduled for Friday, February 21. Feb. 3, 2025, Minute Order. Consistent with Rule 65(b)(2), this Court also expressly found that good cause warranted one short extension of the TRO while the parties briefed the preliminary-injunction motion, explaining that "the complexity of the issues involved, the number of parties, and the need to maintain the status quo" warranted such an extension "while this matter is being expeditiously litigated." Feb. 6, 2025, Minute Order.

The record thus establishes that the TRO is a "temporary and short" order imposed while a request for preliminary relief is briefed, and not in any way "an injunction masquerading as a TRO." *Almeida-Leon*, 2024 WL 2904077, at *4. And the TRO's express purpose is to "maintain the status quo while this matter is expeditiously litigated," Feb. 6, 2025, Minute Order, not to impose durable relief in the form of an injunction. As the First Circuit has explained, a TRO entered under such circumstances, in compliance with Rule 65(b)(2) and entered to permit the court to resolve a pending motion for a preliminary injunction, is not appealable. *See Almeida-Leon*, 2024 WL 2904077, at *5 (finding no appellate jurisdiction over such a TRO); *compare, e.g.*, *Societe Generale de Surveillance, S.A. v. Raytheon Eur. Mgmt. & Sys. Co.*, 643 F.2d 863, 865 n.2 (1st Cir. 1981) (finding appellate jurisdiction in appeal from TRO in place "for more than a year"). Because

2

the First Circuit lacks jurisdiction over defendants' putative appeal, there is no basis for a stay of this Court's orders pending appeal. *Cf., e.g., Office of Personnel Mgmt. v. Am. Fed'n of Gov't Employees, AFL-CIO*, 473 U.S. 1301, 1306 (1985) (Burger, C.J., in chambers) ("[S]ince the Court of Appeals was without jurisdiction over the appeal from the District Court's order denying the temporary restraining order, the motions panel was necessarily without authority to grant such a stay.").

2.   *Second*, defendants have not shown they are entitled to a stay pending appeal. A court considering a request for a stay pending appeal must consider "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021). Here, even setting aside appellate jurisdiction, defendants are not likely to succeed on the merits and will not be irreparably injured absent a stay. For those reasons, among others, the Court should deny the stay motion.

First, defendants are not likely to succeed on the merits. As the Court explained in entering the TRO, defendants "unilaterally suspend[ed] the payment of federal funds to the States and others" irrespective of "the authorizing or appropriating statute, the regulatory regime, or the terms of the grant itself," even in the face of federal statutes expressly directing defendants "to provide funding to States based on stated statutory facts." TRO at 5. No federal law authorized defendants to take that action. *See In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (federal agencies do not have "unilateral authority to refuse to spend [federal] funds"). Defendants renew their argument that the case is moot, ECF No. 100 ("Mot.") at 2, but the Court correctly rejected that

argument, TRO at 10-11, and defendants' subsequent conduct—including conduct postdating the entry of the TRO—further confirms that many defendants have continued to enforce categorical funding freezes even with the TRO in place, and thus are extremely likely to reimpose more categorical funding freezes if the TRO is stayed, ECF No. 67 at 38-39.

Defendants erroneously contend that the Court's orders—specifically, its February 10, 2025, order—"intrude on [their] lawful authorities" by prohibiting them from "implementing funding pauses 'on the basis of the[ir] applicable statutes, regulations, and terms.'" Mot. 2. That contention misreads this Court's orders. As defendants acknowledge, the TRO *expressly* permits them to limit access to federal funds "on the basis of the applicable authorizing statutes, regulations, and terms," TRO at 12. Defendants' view appears to be that the Court's February 10 order—specifically, its direction that defendants "immediately restore frozen funding" and "immediately end any federal funding pause," ECF No. 96 at 4—implicitly overrides that language. Defendants also appear to read this Court's reference to defendants "request[ing] targeted relief," *id.*, as a requirement that they request "preclearance" from this Court before limiting federal funds based on applicable law. *See New York v. Trump* (1st Cir. Case No. 25-1138), Docket No. 4 (Emergency Motion for Immediate Administrative Stay and Stay Pending Appeal), at 2. But the Court's February 10 order does not so require, nor do Plaintiff States read it that way. Rather, that order, read alongside the TRO, simply reaffirms the TRO's temporary prohibition on any *categorical* "freeze," without blocking defendants from exercising discretion to impose particularized limitations on funding based on actual authority in applicable statutory, regulatory, or grant terms to do so.

Given defendants' contrary reading of the Court's orders, however, as well as the First Circuit's reference to defendants' reading in its February 11 Order, Plaintiff States encourage this

4

Court to issue a further order emphasizing that its February 10 order does not preclude defendants from imposing limitations to federal funds "on the basis of the[ir] applicable authorizing statutes, regulations, and terms," as stated in the TRO. *See New York v. Trump* (1st Cir. Case No. 25-1138), Docket No. 5 (Order of First Circuit), at 2 ("We are confident the District Court will act with dispatch to provide any clarification needed with respect to, among other things, the defendants' contention that the February 10 Order 'bars both the President and much of the Federal Government from exercising their own lawful authorities to withhold funding without the prior approval of the district court.'").

Second, defendants will not be irreparably harmed absent a stay pending appeal; indeed, the equities tilt profoundly in the opposite direction. As the Court found, the categorical freeze caused "severe disruption[s]" in Plaintiff States' "ability to administer . . . vital services" ranging from "highway planning and construction, [to] childcare, veteran nursing care funding, special education grants, and state health departments." TRO at 7-8. Entering a stay would permit defendants to resume this sweeping and illegal policy, harming Plaintiff States and the many recipients of federal funding that reside within their jurisdictions. Indeed, defendants have never denied that they will reimpose across-the-board categorical funding freezes if the TRO is lifted. The Court should not stay its TRO to permit that result.

Defendants' equitable arguments, Mot. 3-4, lack merit. Defendants contend that the Court's orders bar defendants from "ensuring that, where legally permitted, agency funding decisions are consistent with" the President's policies. Mot. 3. But, as discussed above, that follows only from a misreading of the TRO and the February 10 order, which *permit* defendants to do just what they assert is *prohibited*, namely, impose limitations to federal funds "on the basis of the[ir] applicable authorizing statutes, regulations, and terms," TRO at 12. The Court's orders do not turn the Court

"into a referee over every single funding decision made by" defendant agencies, Mot. 3-4; to the contrary, they expressly permit defendant agencies to do exactly what they did for decades before the funding freeze: abide by federal statutes and regulations governing the disbursement of federal funds.

## CONCLUSION

The Court should deny the motion to stay, but should emphasize that its February 10 order does not preclude defendants from limiting access to federal funds "on the basis of the[ir] applicable authorizing statutes, regulations, and terms," as stated in the TRO, without preclearance from this Court.

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Kathryn M. Sabatini*
Kathryn M. Sabatini (RI Bar No. 8486)
Civil Division Chief
Special Assistant Attorney General
Sarah W. Rice (RI Bar No. 10465)
Deputy Chief, Public Protection Bureau
Assistant Attorney General
Leonard Giarrano IV (RI Bar No. 10731)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
ksabatini@riag.ri.gov
srice@riag.ri.gov
lgiarrano@riag.ri.gov

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Michael J. Myers*
Senior Counsel
Molly Thomas-Jensen*
Special Counsel
Colleen Faherty*
Special Trial Counsel
Zoe Levine*
Special Counsel for Immigrant Justice
28 Liberty St.
New York, NY 10005
(929) 638-0447
Rabia.Muqaddam@ag.ny.gov
Michael.Myers@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
Colleen.Faherty@ag.ny.gov
Zoe.Levine@ag.ny.gov

6

**ROB BONTA**
Attorney General for the State of California

By: */s/ Laura L. Faer*
Laura L. Faer*
Supervising Deputy Attorney General
Christine Chuang*
Supervising Deputy Attorney General
Nicholas Green*
Carly Munson*
Kenneth Sugarman*
Christopher J. Kissel*
Lara Haddad*
Theodore McCombs*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
Laura.Faer@doj.ca.gov
Christine.Chuang@doj.ca.gov
Nicholas.Green@doj.ca.gov
Carly.Munson@doj.ca.gov
Christopher.Kissel@doj.ca.gov
Lara.Haddad@doj.ca.gov
Theodore.McCombs@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Alex Hemmer*
Alex Hemmer*
Deputy Solicitor General
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
Alex.Hemmer@ilag.gov

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of Massachusetts

By: */s/ Katherine B. Dirks*
Katherine B. Dirks*
Deputy Chief, Government Bureau
Turner Smith*
Deputy Chief, Energy and Environment Bureau
Anna Lumelsky*
Deputy State Solicitor
1 Ashburton Pl.
Boston, MA  02108
(617.963.2277)
katherine.dirks@mass.gov
turner.smith@mass.gov
anna.lumelsky@mass.gov

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Angela Cai*
Angela Cai*
Executive Assistant Attorney General
Jeremy M. Feigenbaum*
Solicitor General
Shankar Duraiswamy*
Deputy Solicitor General
25 Market St.
Trenton, NJ 08625
(609) 376-3377
Angela.Cai@njoag.gov
Jeremy.Feigenbaum@njoag.gov
Shankar.Duraiswamy@njoag.gov

**KRISTEN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General
Nathan Arrowsmith*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Nathan.Arroswmith@azag.gov

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: */s/ Michael K. Skold*
Michael K. Skold*
Solicitor General
Jill Lacedonia
165 Capitol Ave
Hartford, CT 06106
(860) 808 5020
Michael.skold@ct.gov
Jill.Lacedonia@ct.gov

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
Solicitor General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
shannon.stevenson@coag.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Vanessa L. Kassab*
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8413
vanessa.kassab@delaware.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, DC 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

| | |
|---|---|
| **AARON M. FREY**<br>Attorney General for the State of Maine<br><br>By: */s/ Jason Anton*<br>Jason Anton*<br>Assistant Attorney General<br>Maine Office of the Attorney General<br>6 State House Station<br>Augusta, ME 04333<br>207-626-8800<br>jason.anton@maine.gov | **ANTHONY G. BROWN**<br>Attorney General for the State of Maryland<br><br>By: */s/ Adam D. Kirschner*<br>Adam D. Kirschner*<br>Senior Assistant Attorney General<br>Office of the Attorney General<br>200 Saint Paul Place, 20th Floor<br>Baltimore, Maryland 21202<br>410-576-6424<br>AKirschner@oag.state.md.us |
| **DANA NESSEL**<br>Attorney General of Michigan<br><br>By: */s/ Linus Banghart-Linn*<br>Linus Banghart-Linn*<br>Chief Legal Counsel<br>Neil Giovanatti*<br>Assistant Attorney General<br>Michigan Department of Attorney General<br>525 W. Ottawa St.<br>Lansing, MI 48933<br>(517) 281-6677<br>Banghart-LinnL@michigan.gov<br>GiovanattiN@michigan.gov | **KEITH ELLISON**<br>Attorney General for the State of Minnesota<br><br>By: */s/ Liz Kramer*<br>Liz Kramer*<br>Solicitor General<br>445 Minnesota Street, Suite 1400<br>St. Paul, Minnesota, 55101<br>(651) 757-1010<br>Liz.Kramer@ag.state.mn.us |
| **AARON D. FORD**<br>Attorney General of Nevada<br><br>*/s/ Heidi Parry Stern*<br>Heidi Parry Stern*<br>Solicitor General<br>Office of the Nevada Attorney General<br>1 State of Nevada Way, Ste. 100<br>Las Vegas, NV 89119<br>(702) 486-5708<br>HStern@ag.nv.gov | **RAÚL TORREZ**<br>Attorney General for the State of New Mexico<br><br>By: */s/ Anjana Samant*<br>Anjana Samant*<br>Deputy Counsel<br>NM Department of Justice<br>408 Galisteo Street<br>Santa Fe, New Mexico 87501<br>505-270-4332<br>asamant@nmdoj.gov |

| | |
|---|---|
| **JEFF JACKSON**<br>Attorney General for the State of North Carolina<br><br>By: */s/ Daniel P. Mosteller*<br>Daniel P. Mosteller\*<br>Associate Deputy Attorney General<br>PO Box 629<br>Raleigh, NC 27602<br>919-716-6026<br>Dmosteller@ncdoj.gov | **DAN RAYFIELD**<br>Attorney General for the State of Oregon<br><br>By: */s/ Christina Beatty-Walters*<br>Christina Beatty-Walters\*<br>Senior Assistant Attorney General<br>100 SW Market Street<br>Portland, OR 97201<br>(971) 673-1880<br>Tina.BeattyWalters@doj.oregon.gov |
| **CHARITY R. CLARK**<br>Attorney General for the State of Vermont<br><br>By: */s/ Jonathan T. Rose*<br>Jonathan T. Rose\*<br>Solicitor General<br>109 State Street<br>Montpelier, VT 05609<br>(802) 793-1646<br>Jonathan.rose@vermont.gov | **NICHOLAS W. BROWN**<br>Attorney General for the State of Washington<br><br>By: */s Andrew Hughes*<br>Andrew Hughes\*<br>Assistant Attorney General<br>Leah Brown\*<br>Assistant Attorney General<br>Office of the Washington State Attorney General<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104<br>(206) 464-7744<br>andrew.hughes@atg.wa.gov<br>leah.brown@atg.wa.gov |

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s Aaron J. Bibb*
Aaron J. Bibb*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
BibbAJ@doj.state.wi.us

*Admitted *Pro Hac Vice*

11