UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF RHODE ISLAND; STATE OF NEW JERSEY; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NORTH CAROLINA; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; and STATE OF WISCONSIN, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, *in his Official Capacity as President of the United States*; U.S. OFFICE OF MANAGEMENT AND BUDGET; Russell Vought, *in his Official Capacity as Director of the U.S. Office of Management and Budget*; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, *in his Official Capacity as Secretary of the Treasury*; PATRICIA COLLINS, *in her Official Capacity as Treasurer of the U.S.*; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY A. FINK, M.D.*, in her* | C.A. No. 25-cv-39-JJM-PAS |

| | |
|---|---|
| *Official Capacity As Acting Secretary Of Health And Human Services*; U.S. DEPARTMENT OF EDUCATION; DENISE CARTER, *in her Official Capacity as Acting Secretary of Education*; U.S. FEDERAL EMERGENCY MANAGEMENT AGENCY; CAMERON HAMILTON, *in his Official Capacity as Acting Administrator of the U.S. Federal Emergency Management Agency*; U.S. DEPARTMENT OF TRANSPORTATION; SEAN P. DUFFY, *in his Official Capacity as Secretary of Transportation*; U.S. DEPARTMENT OF LABOR; VINCE MICONE, *in his Official Capacity as Acting Secretary of Labor*; U.S. DEPARTMENT OF ENERGY; CHRISTOPHER ALLEN WRIGHT, *in his Official Capacity as Secretary of the U.S. Department of Energy*; U.S. ENVIRONMENTAL PROTECTION AGENCY; LEE MICHAEL ZELDIN, *in his Official Capacity as Administrator of the U.S. Environmental Protection Agency*; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her Capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF JUSTICE; JAMES R. McHENRY III, *in his Official Capacity as Acting Attorney General of the U.S. Department of Justice*; THE NATIONAL SCIENCE FOUNDATION; and DR. SETHURAMAN PANCHANATHAN, *in his Capacity as Director of the National Science Foundation*,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER

Three of the Court's Orders issued in this case—(1) the January 31, 2025 temporary restraining order (TRO) (ECF No. 50), (2) the order extending the TRO, and (3) the order granting the Plaintiffs' Motion to Enforce the TRO (ECF No. 96)—are the subjects of the Defendants' Motion to Stay in light of their appeal of these Orders to the First Circuit Court of Appeals. ECF No. 100.

When ruling on a motion for a stay pending appeal, the Court must consider "(1) [w]hether the stay applicant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether [the] issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." *Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 42 (1st Cir. 2021) (quoting *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020)).

*Likelihood of Success*

First, the Defendants have not made a strong showing that they are likely to succeed on the merits in challenging the Court's Orders. The Defendants argue the Court's Orders impugn an agency's discretion and statutory authority to delay or pause funding based on reasons "wholly apart from the OMB Memorandum challenged in this case." ECF No. 100 at 2. Moreover, the Defendants contend that the "broad relief" the Court provided to the Plaintiffs was based on a "single memorandum" that (1) has been withdrawn, (2) was limited to a "far narrower class

3

of funding," and (3) simply instructed agencies to pause certain funding to the extent consistent with their underlying statutory authorities. *Id.* Thus, the Defendants assert that they have made a strong showing that they are likely to succeed on appeal. *Id.* at 3.

As the Court has since reaffirmed, the TRO permits the Defendants to limit access to funds based on *actual authority* from applicable statutes, regulations, and terms. *See* ECF No. 50 at 12; *see also* ECF No. 107 at 3. Thus, the Court has not stripped agencies of any statutory authority to limit access to federal funds. Nor has the Court impugned the Defendants' ability to use discretion in limiting funding based on their actual authority from applicable statutes, regulations, and terms. Therefore, the Defendants' arguments to the contrary are unfounded.

Moreover, to the extent that the Defendants renew their arguments that this case is moot based on the rescission of the OMB Directive, the Court reaffirms its finding that this matter is not moot. As the Court stated in the TRO, the evidence shows that the OMB Directive rescission was "in name-only" and that the "substantive effect of the directive carries on." ECF No. 50 at 10. The Court reached this finding based on the statements from the President's Press Secretary and actions of Executive agencies that suggested the temporary, categorical funding freeze mandated in the OMB Directive was still in effect despite the Directive's rescission. *See id.* at 10-11. Further, since the TRO's issuance, the Court has found times that the Defendants failed to resume dispersing federal funds in noncompliance with the TRO, which led to this Court's Order enforcing the TRO. *See* ECF No. 96. Thus,

4

considering the Defendants' efforts to enforce a categorical federal funding freeze after the OMB Directive rescission and after the TRO was issued, the rescission of the OMB Directive does not render the Plaintiffs' challenges moot.

The Defendants also suggest that the OMB Directive applied to a much narrower class of funding and that agencies were directed to pause certain funding only to the extent permissible under their statutory authorities. As explained above, the TRO does not prevent the Defendants from limiting the disbursement of funds under their respective statutory authorities. *See* ECF No. 50 at 11, 12. Rather, the TRO was aimed at restraining any categorical federal funding pauses under the OMB Directive and the President's 2025 Executive Orders ("EO") until this Court can issue its order on the Plaintiffs' Motion for Preliminary Injunction. *See* ECF No. 50; *see also* Text Order extending the TRO (Feb. 6, 2025). The Court issued the TRO based on the Plaintiffs' evidence that substantiated a likelihood of success on the merits in establishing that the Defendants' pause of congressionally appropriated federal funding violated the Constitution and federal statutes such as the Administrative Procedure Act (5 U.S.C. § 551 *et seq*). *See* ECF No. 50 at 3-7. Thus, the TRO simply ordered the parties to maintain the status quo until this matter can be heard on the merits.[1]

---

[1] The agreed-to schedule for hearing the preliminary injunction is that the Plaintiffs' memorandum was due February 7, 2025 (ECF No. 67), the Defendants' objection is due February 12, 2025 (today) and the Plaintiffs' reply is due February 14, 2025. The Court has scheduled an in-person hearing on the preliminary injunction motion for February 21, 2025.

### *Irreparable Injury*

Turning next to the irreparable injury factor, the Defendants have not made an adequate showing that they will be irreparably injured absent a stay of the Court's Orders. Rather, the Defendants contend that the Plaintiffs have not established that they will suffer irreparable harm if the Court's Orders are stayed. ECF No. 100 at 3. While Plaintiffs' harm is relevant to consider on the third factor, the Defendants cannot flip their burden to prove irreparable injury onto the Plaintiffs as the movant for a stay. *See Nken v. Holder*, 556 U.S. 418, 433–34 (2009) ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."). Thus, the Defendants' failure to plead any irreparable injury absent a stay weighs against granting this Motion.

### *Balance of the Equities and Public Interest*

As to the final two factors, the balance of the equities and public interest do not weigh in favor of a stay of the Court's Orders pending appeal. The Defendants assert that the Court's Orders (1) prohibit the agencies' lawful exercise of their authorities to ensure proper and orderly expenditure of taxpayer funds, and (2) present separation of powers issues "by extending to the President and requiring agencies to ask the Court's permission before implementing pauses pursuant to their own authorities." ECF No. 100 at 3. Further, the Defendants contend that the Plaintiffs will not suffer irreparable harm if the Court's Orders are stayed pending appeal because (1) the OMB Directive that Plaintiffs challenge has been rescinded,

6

and (2) the Plaintiffs can proceed "through the ordinary course" to challenge any future deprivation of funds they believe is unlawful. *Id.*

The Court has clarified that its Orders neither prohibit agencies from exercising their lawful authority when imposing federal fund limitations nor require the Executive to ask the Court's permission before implementing pauses under their lawful authority. *See* ECF No. 107 at 3 ("Neither the TRO (ECF No. 50), nor the Court's subsequent Order (ECF No. 96) require the Defendants to seek "preclearance" from the Court before acting to terminate funding when that decision is based on *actual authority in the applicable statutory, regulatory, or grant terms.*"). Thus, the Court's Orders do not implicate the separation of powers issues that the Defendants contend.

Further, the Plaintiffs will be irreparably injured if the Court issues a stay on its Orders and the public interest does not lie with issuing such a stay. As the Court found, the evidence highlighted that an overarching pause on federal funding that Congress allocated to the Plaintiff States would cause "severe disruption in their ability to administer . . . vital services—even if it is for a brief time." ECF No. 50 at 7-8. The Court also determined the public interest favored the TRO because there was "a substantial risk that the States and its citizens will face a significant disruption in health, education, and other public services that are integral to their daily lives due to this pause in federal funding." *Id.* at 9-10. Issuing a stay on the TRO would allow the Defendants to engage in the very unconstitutional and illegal conduct that the TRO aimed to temporarily restrain to promote the interests of the public and avoid

any irreparable harm to the Plaintiffs. Nothing suggests that the Defendants will not resume operating under the OMB Directive and the incorporated EOs if the Court stays the TRO. Thus, the Court finds that the risk of irreparable harm to Plaintiffs if the blanket categorical and unauthorized impoundment of funds resumes, paired with the public's interest in maintaining the status quo pending a full hearing, weighs against issuing a stay on the Court's Orders pending appeal.

The Court issued a TRO to temporarily continue the status quo, by prohibiting the freezing of funds Congress appropriated and authorized. The TRO is intended to ensure that appropriated funds are paid in accordance with its respective Congressional authorizing statute—i.e., a stand-still order until the Court can quickly take evidence, hear argument, and rule on this critical issue. Therefore, the Court DENIES the Defendants' Motion to Stay the Court's Orders pending appeal. ECF No. 100.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Court for the District of Rhode Island

February 12, 2025