UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, et al.,<br><br>Defendants. | C.A. No. 1:25-cv-00039 |

**SECOND MOTION TO ENFORCE THE COURT'S JANUARY 31, 2025, TEMPORARY RESTRAINING ORDER**

Plaintiff States, through this motion, respectfully request that the Court use its inherent authority to enforce the Temporary Restraining Order entered on January 31, 2025, ECF No. 50, subsequent orders regarding the TRO entered on February 10, 2025 (ECF No. 96) and February 12, 2025 (ECF No. 107), or any preliminary injunction entered by the Court. Plaintiff States specifically request that the Court order Defendant the Federal Emergency Management Agency ("FEMA") to provide information on its compliance with the Court's orders promptly showing either that access to the funds identified below has been restored or that FEMA is otherwise complying with the TRO.[1] If FEMA is unable to establish compliance, Plaintiff States respectfully request that the Court order FEMA to cease freezing obligated funds and that the Court direct that notice of such order, along with notice of the court's TRO, February 10 order, February 12 order (ECF No. 50, 96, and 107, respectively), or any other forthcoming Order the Court deems relevant, be provided to FEMA's leadership and staff, as described below, *see infra* p. 8.

---

[1] Plaintiff States are not moving for contempt at this time.

1

The Court's intervention is necessary because, following the Court's February 10 order, Plaintiff States have continued to experience significant obstacles to accessing federal funds. Although Plaintiff States have successfully worked with Defendants to fully or partially restore access to certain funds without the Court's involvement, the parties have reached an impasse as to millions of dollars in obligated FEMA awards, which are and have remained frozen dating to as early as February 7. The Court should enforce the TRO.

## FACTUAL BACKGROUND

### I.     The Court's Orders

The Court's January 31, 2025, TRO prohibited Defendants from "paus[ing], freez[ing], imped[ing], block[ing], cancel[ling], or terminat[ing] Defendants' compliance with awards and obligations to provide federal financial assistance to the States," and provided that "Defendants shall not impede the States' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms." ECF No. 50, at 11. That order expressly prohibited the Defendants from using "'identif[ication] and review' of federal financial assistance programs" to implement a "pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations and terms." *Id.* at 12. Included among the Defendants for purposes of the TRO was the Federal Emergency Management Agency, a defendant named in the original Complaint. ECF No. 01, ¶ 41.[2]

Following the entry of that order, Plaintiffs conferred with counsel for Defendants about ongoing freezes of numerous grants and awards but were unable to reach agreement. ECF No. 66,

---

[2] FEMA remains a defendant in the Amended Complaint because the Department of Homeland Security is a defendant.

2

at 7-8. Plaintiffs moved to enforce the TRO on February 7, 2025. ECF No. 66. On February 10, 2025, the Court granted that motion, ordering among other things that:

> 1.   The Defendants must immediately restore frozen funding during the pendency of the TRO until the Court hears and decides the Preliminary Injunction request.
>
> 2.   The Defendants must immediately end any federal funding pause during the pendency of the TRO.
>
> 3.   The Defendants must immediately take every step necessary to effectuate the TRO, including clearing any administrative, operational, or technical hurdles to implementation.

ECF No. 96, at 4.

The Court subsequently issued an order affirming that the TRO "permits the Defendants to limit access to federal funds 'on the basis of the applicable authorizing statutes, regulations, and terms'" and clarifying that neither the TRO nor the February 10 order instituted a "preclearance" or "prior approval" requirement. ECF No. 107 at 3.

## II.   Federal Grants and Awards Remain Frozen

Since the Court's February 10 order, Plaintiff States have worked diligently with counsel for Defendants to address compliance issues with the Court's orders, including providing counsel with lists of awards spanning multiple agencies that remained inaccessible even after the Court's orders.  *See* Correspondence between Kate Sabatini and Daniel Schwei, attached as Exhibit D to the Affirmation of Theodore McCombs ("McCombs Aff."). As a result of Plaintiff States' efforts, many funds frozen as of the Court's February 10 order have now been made available. *Id*.

Nevertheless, the parties have reached an impasse as to millions of dollars of FEMA funds that have been awarded and obligated but have remained inaccessible to Plaintiff States—some for almost three weeks. As of February 28, 2025, at least 140 FEMA grants from at least twenty different FEMA grant programs have been frozen or otherwise rendered inaccessible in sixteen

3

Plaintiff States, including Arizona, California, Colorado, Connecticut, Hawaii, Illinois, Maryland, Maine, Michigan, North Carolina, New Jersey, New York, Rhode Island, Vermont, Washington, and Wisconsin. Funds have been reported frozen as early as February 7, with an increasing number of grants reported frozen during the weeks of February 17 and 24. In several cases, the freezes apply to multiple grants in the same grant programs spanning several fiscal years. The FEMA grant programs subject to freezes include, but are not limited to, the following:

- Assistance to Firefighters Grant Program
- Building Resilient Infrastructure and Communities (incl. FYs 2020-2023)
- Community Assistance Program – State Support Services Element
- Cooperating Technical Partners
- Emergency Management Performance Grant (incl. FYs 2022-2024)
- Emergency Operations Center (incl. FYs 2022-2024)
- Emergency Management Preparedness Grant
- Flood Mitigation Assistance
- Floodplain Mapping Program - Cooperating Technical Partnership Award
- Hazard Mitigation Grant Program
- Hazard Mitigation Grant Program Post Fire
- Homeland Security Grant Program (incl. FYs 2021-2024)
- Legislative Pre-Disaster Mitigation (incl. FYs 2022-2023)
- Nonprofit Security Grant Program (incl. FYs 2021-2024)
- Port Security Grant Program
- Pre-Disaster Mitigation (incl. FYs 2019-2024)
- Regional Catastrophic Preparedness Grant Program
- Safeguarding Tomorrow Revolving Loan Fund Program
- Shelter and Services Program Grant
- State and Local Cybersecurity Grant Program (incl. FYs 2022-2024)
- Targeted Violence and Terrorism Prevention Grant Program
- Cooperating Technical Partners (CTP)

These grants comprise millions of dollars in essential health, safety and welfare funds for wildfire prevention response, flood mitigation, and emergency management that are not timely flowing to the States. And some states cannot even submit a request for reimbursement, because the system blocks them from doing so.

Plaintiff States have worked diligently with Defendants' counsel to obtain clarity as to the status of these funds. Ex. D to McCombs Aff. On February 18, Counsel initially sent to Plaintiffs'

counsel redacted copies of emails dated February 10 and 11 from FEMA. *Id.* The February 10 email from the Director of FEMA's Office of Grants Administration, titled "URGENT: Holds on awards," instructs, "put financial holds on <u>all</u> your awards – all open awards, all years." Ex. D-1 to McCombs Aff. (emphasis in original). The February 11 email, from the same director, instructs FEMA staff to amend "existing awards" to institute a novel payment review process, taking up to 30 days, whereby "reimbursement requests will be manually reviewed and manually processed upon approval by program/financial staff." Ex. D-2 to McCombs Aff. This email states,

> **Note that these are not "holds."** We are modifying our programs so that payment requests are now reviewed manually and processed manually. "Holds" implies what we were directed to originally [do] with OMB M-25-13, which was rescinded and a TRO injunction placed. We are not holding on awards, we will still be processing our awards but will be adding a level of internal controls to ensure that payment requests are reviewed prior to payments be[ing] released to recipients.

*Id.* (emphasis in original). Notwithstanding this directive, FEMA grants in at least Arizona, California, Colorado, Hawaii, Illinois, Maryland, Maine, Michigan, New York, North Carolina, Rhode Island, Vermont, Washington, and Wisconsin were frozen, with FEMA's Payment and Reporting System ("PARS") listing *all* of these grants as subject to a "Hold" and/or "under review" as of February 27. Draw-downs submitted as early as February 7 are still unpaid, and the system it generates an error message for many if state agencies attempt to submit a request for reimbursement. *E.g.*, McCombs Aff. ¶¶ 6, 17; Ex. A, C to McCombs Aff. (Arizona, California, Colorado and New York screen captures).

Following Defendants' February 18 email, Plaintiffs tried to resolve the FEMA issues twice more, on February 21 and 25. Ex. E to McCombs Aff. While Defendants' Counsel responded with some additional information about the status of the FEMA disbursements, Defendants' Counsel maintained that the delays in these disbursements were not in violation of the TRO. *Id.*

5

**LEGAL STANDARD**

Courts may issue further orders to obtain "compliance with a court order." *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). In the First Circuit, a party seeking such an order must show: (1) notice of the court order; (2) clarity and lack of ambiguity of the order; (3) ability to comply; and (4) violation of the order. *Letourneau v. Aul*, No. CV 14-421JJM, 2024 WL 1364340, at *2 (D.R.I. Apr. 1, 2024) (citing *Hawkins v. Dep't of Health & Hum. Servs.*, 665 F.3d 25, 31 (1st Cir. 2012)).

**ARGUMENT**

Plaintiffs have satisfied the first two factors: FEMA had notice of the Court's order, and the Court has now twice made clear the extent and scope of the TRO. Similarly, the third factor is satisfied because FEMA is plainly able to comply with the TRO by releasing frozen funds in existing automated payment systems.

As to the fourth factor, FEMA appears to have violated the TRO. To reiterate, the TRO prohibits FEMA from "paus[ing], freez[ing], imped[ing], block[ing], cancel[ling], or terminat[ing] [its] compliance with awards and obligations to provide federal financial assistance to the States," except on the basis of the applicable statutes, regulations, and terms. ECF No. 50, at 11. The TRO further states that, if an agency "engage[s] in the 'identif[ication] and review' of federal financial assistance programs, as identified in the OMB Directive, such exercise shall not [e]ffect a pause, freeze, impediment, block, cancellation, or termination of [its] compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms." ECF No. 50, at 12.

FEMA appears to be violating the TRO. FEMA has admitted that it is "engag[ing]" in a "review" of federal financial assistance, which is why critical funds are inaccessible to Plaintiff

States. The institution of this review coupled with its practical outcome—a categorical and indefinite freeze of many FEMA grants—reflects a TRO violation. Moreover, the delays prompted by FEMA's manual review process are significant and indefinite. Some States have requested disbursements of funds as long ago as February 7—three *weeks* ago. Most affected States have been unable to access funds for multiple weeks running. And the PARS system that governs access to these funds does not even allow Plaintiff States to submit disbursement requests at all. FEMA's insistence that "these are not 'holds,'" Ex. D-2 to McCombs Aff., is belied by its own disbursement system, which informs Plaintiff States attempting to submit requests that there is a "hold" on their funds. McCombs Aff. ¶¶ 6, 17; Exs. A, C to McCombs Aff. On these facts, FEMA's manual review process is simply a freeze by another name, and it violates the TRO.

FEMA has identified no "basis [in] applicable authorizing statutes, regulations, and terms," ECF No. 50, at 11, that could justify its decision to freeze access to these funds. Although the February 11 email refers generally to "2 CFR Part 200 principles"—an apparent reference to the regulations generally governing federal financial assistance—that passing reference identifies no authority that could justify a weeks-long funding freeze of this sort. Ex. D-2 to McCombs Aff. To the extent FEMA's view is that the freeze is authorized by 2 C.F.R. § 200.305(b), that section at most applies to non-State recipients, and does not authorize the indefinite suspension of payments to States. *Cf.* Ex. F to McCombs Aff. And neither FEMA nor its counsel has identified any other legal authority that might justify freezing Plaintiff States' access to these funds for fire prevention, emergency management, and flood mitigation. The Court should issue an order enforcing its TRO.

## RELIEF SOUGHT

Plaintiff States move the Court, under its inherent powers, to require FEMA, by a date certain, to provide to the Court evidence of their compliance with this Court's January 31, 2025,

7

Temporary Restraining Order and February 10, 2025, Order, or any subsequent orders the Court deems relevant, promptly showing either that access to the funds identified herein has been restored or that FEMA is otherwise complying with the TRO. If FEMA is unable to establish compliance, Plaintiff States respectfully request that the Court order FEMA to immediately halt the challenged practice and that the Court direct that notice of such order, along with notice of the court's TRO, February 10 order, February 12 order (ECF No. 50, 96, and 107, respectively), or any forthcoming orders the Court deems relevant, be provided to FEMA's leadership, as well as all FEMA staff who administer these grants and other federal financial assistance, with confirmation of such notice, including the names of recipients of the notice, no later than 48 hours after such order.

Dated: February 28, 2025

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Kathryn M. Sabatini*
Kathryn M. Sabatini (RI Bar No. 8486)
Civil Division Chief
Special Assistant Attorney General
Sarah W. Rice (RI Bar No. 10465)
Deputy Chief, Public Protection Bureau
Assistant Attorney General
Leonard Giarrano IV (RI Bar No. 10731)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
ksabatini@riag.ri.gov
srice@riag.ri.gov
lgiarrano@riag.ri.gov

Respectfully Submitted,

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Michael J. Myers*
Senior Counsel
Molly Thomas-Jensen*
Special Counsel
Colleen Faherty*
Special Trial Counsel
Zoe Levine*
Special Counsel for Immigrant Justice
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
michael.myers@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
colleen.Faherty@ag.ny.gov
zoe.Levine@ag.ny.gov

**ROB BONTA**
Attorney General for the State of California

By: */s/ Laura L. Faer*
Laura L. Faer*
Supervising Deputy Attorney General
Christine Chuang*
Supervising Deputy Attorney General
Nicholas Green*
Carly Munson*
Kenneth Sugarman*
Theodore McCombs*
Marie Logan*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
Laura.Faer@doj.ca.gov
Christine.Chuang@doj.ca.gov
Nicholas.Green@doj.ca.gov
Carly.Munson@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Theodore.McCombs@doj.ca.gov
marie.logan@doj.ca.gov

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Alex Hemmer*
Alex Hemmer*
Deputy Solicitor General
R. Henry Weaver*
Assistant Attorney General
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
Robert.Weaver@ilag.gov

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of Massachusetts

By: */s/ Katherine B. Dirks*
Katherine B. Dirks*
Deputy Chief, Government Bureau
Turner Smith*
Deputy Chief, Energy and Environment Bureau
Anna Lumelsky*
Deputy State Solicitor
1 Ashburton Pl.
Boston, MA  02108
(617.963.2277)
katherine.dirks@mass.gov
turner.smith@mass.gov
anna.lumelsky@mass.gov

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Angela Cai*
Angela Cai*
Executive Assistant Attorney General
Jeremy M. Feigenbaum*
Solicitor General
Shankar Duraiswamy*
Deputy Solicitor General
25 Market St.
Trenton, NJ 08625
(609) 376-3377
Angela.Cai@njoag.gov
Jeremy.Feigenbaum@njoag.gov
Shankar.Duraiswamy@njoag.gov

| | |
|---|---|
| **KRISTIN K. MAYES**<br>Attorney General for the State of Arizona<br><br>By: */s/ Joshua D. Bendor*<br>Joshua D. Bendor*<br>Solicitor General<br>Nathan Arrowsmith*<br>2005 North Central Avenue<br>Phoenix, Arizona 85004<br>(602) 542-3333<br>Joshua.Bendor@azag.gov<br>Nathan.Arroswmith@azag.gov | **WILLIAM TONG**<br>Attorney General for the State of Connecticut<br><br>By: */s/ Michael K. Skold*<br>Michael K. Skold*<br>Solicitor General<br>Jill Lacedonia*<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808 5020<br>Michael.skold@ct.gov<br>Jill.Lacedonia@ct.gov |
| **PHILIP J. WEISER**<br>Attorney General for the State of Colorado<br><br>By: */s/ Shannon Stevenson*<br>Shannon Stevenson*<br>Solicitor General<br>Ralph L. Carr Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, Colorado 80203<br>(720) 508-6000<br>shannon.stevenson@coag.gov | **KATHLEEN JENNINGS**<br>Attorney General of Delaware<br><br>By: */s/ Vanessa L. Kassab*<br>Vanessa L. Kassab*<br>Deputy Attorney General<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 577-8413<br>vanessa.kassab@delaware.gov |
| **BRIAN L. SCHWALB**<br>Attorney General for the District of Columbia<br><br>By: */s/ Andrew Mendrala*<br>Andrew Mendrala*<br>Assistant Attorney General<br>Public Advocacy Division<br>Office of the Attorney General for the District of Columbia<br>400 Sixth Street, NW<br>Washington, DC 20001<br>(202) 724-9726<br>Andrew.Mendrala@dc.gov | **ANNE E. LOPEZ**<br>Attorney General for the State of Hawaiʻi<br><br>By: */s/ Kalikoʻonālani D. Fernandes*<br>David D. Day*<br>Special Assistant to the Attorney General<br>Kalikoʻonālani D. Fernandes*<br>Solicitor General<br>425 Queen Street<br>Honolulu, HI 96813<br>(808) 586-1360<br>david.d.day@hawaii.gov<br>kaliko.d.fernandes@hawaii.gov |

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Jason Anton*
Jason Anton*
Assistant Attorney General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333
207-626-8800
jason.anton@maine.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6424
AKirschner@oag.state.md.us

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Linus Banghart-Linn*
Linus Banghart-Linn*
Chief Legal Counsel
Neil Giovanatti*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov
GiovanattiN@michigan.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
Deputy Counsel
NM Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
asamant@nmdoj.gov

**JEFF JACKSON**
Attorney General for the State of North Carolina

By: /s/ *Daniel P. Mosteller*
Daniel P. Mosteller*
Associate Deputy Attorney General
PO Box 629
Raleigh, NC 27602
919-716-6026
Dmosteller@ncdoj.gov

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: /s/ *Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

**OFFICE OF THE GOVERNOR** *ex rel.* **ANDY BESHEAR**
in his official capacity as Governor of the Commonwealth of Kentucky

By: /s/ S. Travis Mayo
S. Travis Mayo**
General Counsel
Taylor Payne**
Chief Deputy General Counsel
Laura C. Tipton**
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: /s/ *Christina Beatty-Walters*
Christina Beatty-Walters*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Tina.BeattyWalters@doj.oregon.gov

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: /s *Andrew Hughes*
Andrew Hughes*
Assistant Attorney General
Leah Brown*
Assistant Attorney General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
leah.brown@atg.wa.gov

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: /s *Aaron J. Bibb*
Aaron J. Bibb*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
BibbAJ@doj.state.wi.us

laurac.tipton@ky.gov

*Admitted *Pro Hac Vice*

***Pro Hac Vice* Motion forthcoming

13