UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-cv-39 (JJM) |

## DECLARATION

I, Cameron Hamilton, hereby state as follows:

1. I am the Senior Official Performing the Duties of the Administrator, Department of Homeland Security (DHS or Department), Federal Emergency Management Agency (FEMA). The Senior Official Performing the Duties of the FEMA Administrator is the DHS official responsible for being the principal advisor to the President and the Secretary of Homeland Security for all matters relating to emergency management in the United States.

2. Since being sworn in on January 25, 2025, the Secretary of Homeland Security (Secretary) has issued several written and verbal directives regarding payments made by the Department, all of which were designed to ensure that any payments made by the Department are consistent with law and do not promote fraud, waste, or abuse. One such directive is a January 28, 2025, Direction on Grants to Non-governmental Organizations. (Memorandum). *See* Exhibit 1.

1

3. Pursuant to the Secretary's January 28, 2025, direction and for the reasons stated in my declaration filed with this Court on February 11, 2025, FEMA has paused funding to the Shelter and Services Program, Case Management Pilot Program, and Emergency Food and Shelter – Humanitarian program. *See* Exhibit 2.

4. On Monday, February 10, 2025 at 4:31 pm, the Director of FEMA's Office of Grants Administration, Stacey Street, issued an email directing "putting hold toggles on all programs listed in the Daily Dash" for Fiscal Year (FY) 2024 grants in FEMA's grant system, FEMA Grants Outcomes (FEMA GO). In the same email, Ms. Street also directed four team members to "put financial holds on all of your awards – all open awards, all years (2021, 2022, 2023, 2024)" and provided specific direction to each of the four. *See* Exhibit 3.

5. The regulations at 2 C.F.R. Part 200 establish the uniform administrative rules, cost principles, and audit requirements for Federal grants. Among other things, they establish requirements for a federal agency's management of grant programs before and throughout the lifecycle of the grant award. 2 C.F.R. §§ 200.100(a), (b). Pursuant to 2 C.F.R. § 200.300(a), FEMA has an affirmative duty to "manage and administer [its] Federal award[s] in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." To effectively accomplish this, FEMA has inherent authority to manually review source documentation from a grant recipient and other information provided the process is otherwise consistent with the regulations at 2 C.F.R. Part 200 and other applicable requirements. Moreover, FEMA's authority to conduct a manual review process is bolstered by its inherent authority to monitor awards, review its

grant records and expenditures, and ensure payments to recipients are used only for allowable, allocable, and reasonable costs under the terms and conditions of the grant award before making payment to the grant recipient.

6. It was not Ms. Street's intention to freeze grant payments. The intention of her direction was to facilitate FEMA staff conducting a manual review process on grant payments. Putting a "hold toggle" or individual hold on an award in FEMA's grant systems referenced in the email is part of the process required in those systems to allow recipient payment requests to be reviewed manually. The term "hold" used by the system is not synonymous with a pause or withholding of grant funds as that term is used in 2 C.F.R. Part 200 or the terms and conditions of the grant awards. It does not mean that the grant is being frozen, held, or not being distributed; in the parlance used by FEMA's grant systems, it means that the grant can be reviewed manually by staff.

7. Notwithstanding the meaning of "hold toggle" within FEMA, within an hour after Ms. Street sent this email, given the complexity of implementing this guidance, Ms. Street instructed her team to stand down and that additional information would be provided the following day.

8. In a follow up email on Tuesday, February 11 at 2:10 p.m., Ms. Street reaffirmed the verbal discussion from Monday and clarified that the intent of her previous guidance was not a direction to freeze grant payments. She acknowledged that her use of the word "hold" could be misconstrued as an action in violation of the temporary restraining order imposed by this Court and explained, "we will still be processing our awards but will be adding a level of internal controls to ensure that payment requests are reviewed prior to payments be [sic] released to recipients" and that payments "will be made within the allotted 30-day

3

maximum timeline noted by 2 CFR Part 200." *See* Exhibit 4. Her email also described that several FEMA programs have historically been subject to a manual review process, which is permitted under 2 C.F.R. Part 200. An example of such a program is Exhibit 5.

9. A manual review process is not a pause or withholding of grant funds as that term is used in C.F.R. Part 200 or the terms and conditions of the grant awards, nor does it mean that the grant is being frozen, held, or not being distributed. Instead, it is simply an internal control where FEMA staff manually review all grant payment requests before disbursing payments to recipients. This means FEMA reviews grant projects, activities, and source documentation before releasing funds for reimbursement paid to its grant recipients. The process is intended to ensure reimbursement payment requests are allowable, allocable, and reasonable per each award's terms and conditions, including the respective program Notices of Funding Opportunity and 2 C.F.R. Part 200, and are free from fraud, waste, or abuse.

10. FEMA's authority to conduct a manual review process for grant payments equally applies to all recipients, including States. Six FEMA programs have historically been subject to a manual review process: the Assistance to Firefighters Grant Program (AFG); Fire Prevention & Safety Grant Program (FP&S), Staffing for Adequate Fire and Emergency Response (SAFER), Shelter and Services Program (SSP), Tribal Cybersecurity Grant Program (TCGP) and State and Local Cybersecurity Grant Program (SLCGP). AFG and FP&S have used manual review since they were established in Fiscal Year 2002 and Fiscal Year 2003, respectively. SAFER began in Fiscal Year 2005 and FEMA has utilized manual review since their inception. SLCGP and TCGP were first awarded in Fiscal Year 2022

and Fiscal Year 2023, respectively, and FEMA has utilized manual review since their inception.

11. To ensure Secretary Noem has an opportunity to review relevant obligations, disbursements, and payments consistent with the direction of her January 28, 2025, Memorandum, on February 14, 2025, I formalized the additional manual review process described in Paragraph 9 of this Declaration through the issuance of the Grant Processing Guidance (Grant Processing Guidance or Guidance). On that same day, I notified FEMA officials of the immediate implementation of the additional manual review. In this Guidance, I stated it "is necessary to ensure that funding is obligated, disbursed, and paid in line with Secretary Noem's direction, and that we can continue to support the communities and disaster survivors who rely on us for assistance." *See* Exhibit 6.

12. Implementing the Grant Processing Guidance is in furtherance of FEMA grant management obligations described in this Declaration.

13. Further, the issue of payments to recipients under this manual review process is permissible if it complies with the payment regulations governing Federal grant awards at 2 C.F.R. § 200.305. The Grant Processing Guidance specifies that the manual review process must meet regulatory timeframes for timely payments. *See* Exhibit 6.

14. FEMA must comply with regulations governing payments to grant recipients. See 2 C.F.R. §200.305. For grant recipients other than States, 2 C.F.R. §200.305(b)(3) stipulates that FEMA is to make payments on a reimbursement basis within 30 calendar days after receipt of the payment request, unless FEMA reasonably believes the request to be improper.

15. For State recipients, 2 C.F.R. § 200.305(a) instructs that Federal grant payments are governed by Treasury-State Cash Management Improvement Act (CMIA) agreements

5

("Treasury-State agreement") and default procedures codified at 31 C.F.R. part 205 and Treasury Financial Manual (TFM) 4A-2000, "Overall Disbursing Rules for All Federal Agencies." *See* 2 C.F.R. § 200.305(a).

16. Treasury-State agreements generally apply to "major Federal assistance programs" that are governed by 31 C.F.R. part 205, subpart A and are identified in the Treasury-State agreement. 31 C.F.R. §§ 205.2, 205.6. Where a Federal assistance (grant) program is not governed by subpart A, payment and funds transfers from FEMA to the State are subject to 31 C.F.R. part 205, subpart B. Subpart B requires FEMA to "limit a funds transfer to a State to the minimum amounts needed by the State and must time the disbursement to be in accord with the actual, immediate cash requirements of the State in carrying out a Federal assistance program or project. The timing and amount of funds transfers must be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs." 31 C.F.R. § 205.33(a). Nothing in 31 C.F.R. part 205, subpart B or the Treasury Financial Manual (TFM) 4A-2000 prohibits FEMA's manual review process. Nearly all FEMA grants recently identified by the plaintiffs are not "major Federal assistance programs. "As a result, payments to States for those grants are subject to the "default" rules of subpart B.

17. By implementing this Grant Processing Guidance, in some ways, FEMA is merely expanding how it pays States to additional grant programs. This will include the following programs which Plaintiffs recently inquired about: SLCGP, Homeland Security Grant Program (HSGP), Nonprofit Security Grant Program (NSGP), and the Emergency Management Performance Grant Program (EMPG). With respect to SLCGP, FEMA instituted a manual review process when the program was first authorized in the Fiscal

6

Year 2022. FEMA is now extending this practice to HSGP, NSGP, EMPG, and other programs subject to my direction in the Grant Processing Guidance.

18. The grant programs identified in Paragraph 17 are generally not considered "major Federal assistance programs" that are governed by 31 C.F.R. part 205, subpart A. For example, they are not identified in the State of New York's FY 2025 Treasury-State agreement. *See* Exhibit 7. As a result, those programs are subject to the "default" rules in 31 C.F.R. part 205, subpart B.

19. There is at least one exception. The District of Columbia's (DC) FY 2025 Treasury-State agreement lists HSGP as a "major federal assistance program." Like the "default rules" at Subpart B, nothing in DC's Treasury-State agreement prohibits FEMA's manual review process. For example, nothing in the agreement stipulates the amount of time for which FEMA must review the State's source documentation to ensure all costs are allowable, allocable, and reasonable, before approving and processing a manual payment.

20. On February 28, 2025, FEMA provided written notice to its grant recipients that it has instituted an additional manual review process for its grant programs (February 28, 2025, Manual Review Notice). *See* Exhibit 8. Specifically, FEMA notified grant recipients:

> Effective immediately, FEMA and DHS are conducting additional reviews of allocations before releasing funds for all grants. These actions will ensure that funding is obligated and disbursed in line with the Secretary's direction so that we can continue to support and prioritize communities and disaster survivors who rely on FEMA for assistance. Upon completion of reviews, approved funding will be processed through the respective grant systems. Per 2 C.F.R. Part 200, payment requests may take up to 30 days to process depending on the size and scope of the submission. If additional information is needed, a request for information will be issued, and the timeline may be extended.

7

As part of the manual review of your payment request, FEMA strongly encourages recipients to include the following information when submitting new payment requests:
- Will this disbursement go to any subrecipients, and if so, which ones?
- What is the total amount of funds going to each subrecipient?
- What activities will be funded by this disbursement?
- What is the time period covered by this payment request?

For existing payment requests currently in the system, FEMA will reach out if additional information is needed. Please note that if FEMA does not receive this information, payment requests will not be processed.

21. The "hold" from the Payment and Reporting System (PARS), appearing on the screenshots submitted by Plaintiff States, is not a pause or freeze of a grant but is instead a mechanism to assist FEMA with conducting the additional manual review described in Exhibit 8. It gives FEMA the ability to limit the drawdown of funds by a grantee. In PARS, the grantee can see the reason why a certain amount is not available for immediate drawdown by running the Payment Hold Report in Detail Mode. PARS will state "hold", but it is a system term, and, in the description, it clearly states for "additional manual review." FEMA created the new "hold" reason code in PARS on February 18, 2025, and PARS provides a short description that states: "Additional Manual Review." Once the grants team completes the manual reviews the grants will be made available for drawn down post review. This "hold" does not appear for reimbursement requests submitted in the FEMA GO Payment system.

22. In 2018, FEMA began to open new funding opportunities to select grant programs in the FEMA GO grants management system. Because FEMA GO also manages payment requests, recipients were no longer required to use the PARS system for payment requests. For example, FEMA has used FEMA GO to open funding opportunities for the following

8

grants from 2018 to present: AFG, SAFER and FP&S. In 2022, FEMA began using FEMA GO to support funding opportunities for Building Resilient Infrastructure and Communities (BRIC) Grant Program and Flood Mitigation Assistance (FMA).

23. In 2023, an additional 14 non-disaster grant programs began using FEMA GO including:

- Cooperating Technical Partners (CTP)
- Community Assistance Program - State Support Services Element (CAP-SSSE)
- Earthquake Consortium and State Support, National Earthquake Hazard Reduction Program (NEHRP)
- Homeland Security National Training Program/National Domestic Preparedness Consortium (HSNTP-NDPC)
- Homeland Security National Training Program/Continuing Training Grant (HSNTP-CTG)
- National Dam Safety Program (NDSP)
- National Incident Management System (NIMS)
- Shelter and Services Program (SSP)
- State Fire Training System Grant (SFTS)
- Emergency Management Baseline Assessments Grant (EMBAG)
- High Hazard Potential Dams Rehabilitation Grant (HHPD)
- Urban Search and Rescue Readiness Cooperative Agreements (US&R)
- Homeland Security Preparedness Technical Assistance Program (HSPTAP)
- Presidential Residence Protection Assistance Grant (PRPA).

24. In 2024, 18 additional non-disaster grant programs opened funding opportunities in FEMA GO, including:

- Emergency Food and Shelter Program (EFSP)
- Emergency Management Performance Grants (EMPG)
- Intercity Bus Security Grant Program (IBSGP)
- Intercity Passenger Rail Program (IPR)
- Port Security Grant Program (PSGP)

9

- Targeted Violence and Terrorism Prevention (TVTP) Grant Program
- Transit Security Grant Program (TSGP)
- Tribal Homeland Security Grant Program (THSGP)
- Emergency Operations Center (EOC)
- Regional Catastrophic Preparedness Grant Program (RCPGP)
- Nonprofit Security Grant Program (NSGP-UA)
- Homeland Security Grant Program (HSGP)
- Case Management Pilot Program (CMPP)
- Next Generation Warning System (NGWS)
- Flood Mitigation Assistance SWIFT Current (SWIFT)
- Hazard Mitigation Grant Program (HMGP)
- Hazard Mitigation Grant Program (HMGP) - Post Fire
- Management Assistance Grant Program (FMAG)

25. In 2025, FEMA will begin using FEMA GO for the following grant funding opportunities:

- Disaster Case Management (DCM)
- Safeguarding Tomorrow RLD (STORM)
- Pre-Disaster Mitigation (PDM)

26. Funding opportunities for the years prior to the years in which FEMA GO began supporting the non-disaster grant programs are still managed in the legacy grant systems that use PARS for payment processing. These non- disaster grants will be migrated to FEMA GO beginning in late 2025. Following completion of the data migration, payment of older grants will be processed in FEMA GO. For example, in Paragraph 5 of Mr. McComb's Declaration, he asserts that Arizona's Nonprofit Security Grants for Fiscal Years 2022 and 2023 are subject to a hold or freeze. This is not a hold or a freeze of the grant. Rather, this is language from PARS which reflects the use of the additional manual review process for those grants.

27. Plaintiffs contend that they receive an error message when they attempt to submit a request for payment and that the system generates an error message when an attempt is made. This only occurs in PARS and as explained above only some of the grants identified by Plaintiffs are still subject to payment through PARS. As part of FEMA's initiation of the additional manual review and given the technical limitations of the PARS system, to facilitate FEMA's ability to conduct the additional manual review, FEMA's Office of the Chief Financial Officer (OFCO) was required to reduce each grant award in PARS to a zero balance. When the OCFO made this change, it temporarily precluded those with grants still subject to PARS from submitting a request for payment. The Grants Programs Directorate (GPD), however, was not aware of this change until on March 3, 2025, and is currently taking steps to rectify the issue. To correct this issue, FEMA must reconfigure its PARS system and which is the reason why the recipients could not submit requests for payment through PARS. FEMA is updating the process by which recipients will be able to submit payments for manual review, through the Non-Disaster Grants System (ND Grants), the grants system where awards in PARS will be functional, by on or around March 14, 2025. FEMA will provide instructions to grant recipients through FEMA's ND Grant System explaining how to submit requests for the manual review process. For example, for the grants identified in Paragraph 5 of the McCombs Declaration. Arizona will be able to resubmit the request for payment following the instructions provided along with the additional information required set forth in the February 28, 2025, Manual Review Notice, (Exhibit 8) and FEMA then will determine the amount eligible for payment, if any. This will apply to the additional grants identified in the McCombs Affidavit other than the grant identified in Paragraph 3 of this Declaration.

28.. On January 31, 2025, it is my understanding that the Court issued a Temporary Restraining Order and pursuant to the Court's direction that TRO was distributed to FEMA's leadership and staff who administer grants and other financial assistance. *See* Exhibit 9.

29. On March 6, 2025, it is my understanding that the Court issued a Preliminary Injunction and ordered FEMA to file a status report informing it of the status of FEMA's compliance with the Preliminary Injunction. To the best of my knowledge, FEMA is complying with the Preliminary Injunction. FEMA's additional manual review is based upon the Secretary's authority and FEMA's inherent duty to ensure that grants are administered in a manner that is consistent with the US Constitution, applicable Federal statutes and regulations and with the terms and conditions of the grants.

29. On March 9, 2025, Plaintiff, through the Department of Justice, provided FEMA with a list of grants that they contend are "experiencing disruption." Exhibit 10. FEMA has reviewed this list and has determined that, of the 146 grants included:

- 114 are currently undergoing the manual review only as described in this Declaration (including the Colorado SSP award described below in Paragraph 30 and the Wisconsin SSP award described in Paragraph 31 below);
- 15, in addition to the manual review, also have a legacy hold[1] (defined below) on a portion of the grant for reasons described in the table below;
- 13 do not provide sufficient information to make a determination (no grant award number or incomplete grant number provided);
- three were duplicate grant award numbers, and

---

[1] A Legacy Hold means a hold that was previously in place on all or a portion of a grant award while FEMA was awaiting additional information from a grant recipient. These holds can be in place for several reasons including programmatic reviews, budget reviews, Environmental and Historic Preservation reviews and approvals and other circumstances where the grant recipient is required to provide information to FEMA to ensure allowability, applicability, and eligibility of obligated grant funds.

12

- 1 (FY 2022 Cooperating Technical Partners grant for the state of Colorado) had drawn down all funds from the grant award.

The table below notes the fiscal year, grant program, award number, recipient, and the rationale for the legacy hold on the award in question.

| Fiscal Year | Grant Program | Award Number | Recipient | Reason for Legacy Hold |
|---|---|---|---|---|
| 2022 | SLCGP | EMW-2022-CY-00024 | Hawaii Department of Law Enforcement | Legacy hold in the amount of $2,136,499: additional project details required |
| 2023 | SLCGP | EMW-2023-CY-00021 | Hawaii Department of Law Enforcement | Legacy hold in the amount of $4,338,969: additional project details required |
| 2024 | SLCGP | EMW-2024-CY-05274 | Hawaii Department of Law Enforcement | Legacy hold in the amount of $3,307,731.85: additional project details required |
| 2023 | SLCGP | EMW-2023-CY-00006 | Maryland Department of Emergency Management | Legacy hold in the amount of $6,172,838: additional project details required |
| 2023 | SLCGP | EMW-2023-CY-00010 | Michigan State Police | Legacy hold in the amount of $9,129,053: additional project details required |
| 2022 | SLCGP | EMW-2022-CY-00053 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $257,513: additional project details and indirect costs (IDC) rate information required |
| 2023 | SLCGP | EMW-2023-CY-00052 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $7,283,592: additional project details required |
| 2023 | SLCGP | EMW-2024-CY-05240 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $5,596,110.85: additional project details required and IDC |
| 2021 | NSGP | EMW-2021-UA-00057 | Maine Emergency Management Agency | Legacy hold in the amount of $150,000: additional project details required |
| 2022 | NSGP | EMW-2022-UA-00031 | Michigan State Police | Legacy hold in the amount of $150,000: additional project details required |
| 2024 | NSGP | EMW-2024-UA-05052 | Michigan State Police | Legacy hold in the amount of $2,240,403: additional project details required |

| | | | | |
|---|---|---|---|---|
| 2024 | NSGP | EMW-2024-UA-05153 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $169,200: IDC rate information required |
| 2024 | HSGP | EMW-2024-SS-05237 | Wisconsin Department of Military Affairs | Legacy hold in the amount of $113,717.48: IDC rate information required |
| 2023 | EMPG | EMB-2023-EP-00004 | Maine Emergency Management Agency | Legacy hold in the amount of $48,000: IDC rate information required |
| 2023 | EOC | EMP-2023-EO-00001 | Maryland Department of Emergency Management | Legacy hold in the amount of $5,736,108: Environmental and Historic Preservation review |

30. As to the Colorado SSP Grant on February 18, 2025, I sent Colorado's Director of the Office of Grants Management a non-compliance letter notifying it that DHS/FEMA was temporarily withholding payment to Colorado of SSP Grants, pursuant to 2 C.F.R. § 200.339(a), and was instituting specific restrictions on Colorado's SSP grant awards, pursuant to 2 CFR § 200.208 because DHS has significant concerns that the SSP funding is going to entities engaged in or facilitating illegal activities. FEMA gave Colorado 30 days to provide additional information described in the letter and 60 days to appeal. To my knowledge, Colorado has neither provided the additional information nor appealed. Exhibit 11.

31. As to the Wisconsin SSP Grant listed in Exhibit 12, I sent a non-compliance letter on March 11, 2025 to the Wisconsin Department of Military of Affairs explaining that DHS/FEMA is temporarily withholding payments to Wisconsin for SSP Grant pursuant to 2 C.F.R. §200.339(a) and is instituting specific conditions on these awards pursuant to 2 C.F.R. § 200.208 because DHS has significant concerns that the SSP funding is going to entities engaged in or facilitating illegal activities. Exhibit 12. FEMA gave Wisconsin 30

days to provide additional information described in the letter and 60 days to appeal. *Id.* Specifically, DHS is concerned that entities receiving SSP payments may be guilty of encouraging or inducing an alien to come to, or enter, or reside in the United States in violation of law. *See* Exhibit 12.

I declare, under penalty of perjury, that the foregoing is true and correct based upon my personal knowledge, based upon the collective information known within the Agency and provided by pertinent individuals within the Agency with direct knowledge of that information, and based upon a review of records and information kept in the ordinary course of business pursuant to 28 U.S.C § 1746.

Executed on this ___ day of March 2025.

_____

Cameron Hamilton
Senior Official Performing the Duties of Administrator
Federal Emergency Management Agency