UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>        Plaintiffs,<br><br>     v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>        Defendants. | C.A. No. 1:25-cv-00039 |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATUS REPORT

1. Plaintiff States offer this response to Defendants' Status Report to provide further information regarding Defendants' compliance with the Court's Temporary Restraining Order (ECF No. 50) and Order of Preliminary Injunction (ECF No. 161).

2. On February 28, 2025, Plaintiff States filed a Second Motion to Enforce the Court's Temporary Restraining Order. ECF No. 160. In that motion, Plaintiff States reported 140 Federal Emergency Management Agency ("FEMA") grants from at least twenty different FEMA grant programs to have been frozen or otherwise rendered inaccessible in sixteen Plaintiff States. Plaintiff States further reported FEMA grants been to have been frozen in FEMA's Payment and Reporting System ("PARS"), with grants showing as subject to a "Hold" and/or "under review." Draw-downs submitted as early as February 7 remained unpaid, with the system generating an error message when state agencies attempted to submit a request for reimbursement. *E.g.*, ECF No. 160-1 (McCombs Aff.), ¶¶ 6, 17; *id.*, Ex. A, C (Arizona and Colorado screen captures).

1

3. On March 6, 2025, the Court granted Plaintiffs States' Motion for a Preliminary Injunction, denied Plaintiff States' Second Motion to Enforce the Court's Temporary Restraining Order as moot, and ordered Defendant FEMA to file a status report by March 14, 2025, informing the Court of the status of FEMA's compliance with the Court's March 6 Preliminary Injunction Order. ECF No. 161.

4. As of March 12, 2025, none of the grants reported in the February 28 Motion have opened in the intervening two weeks since the Second Motion to Enforce was filed. *See* ECF No. 160-1 (McCombs Aff.), ¶¶ 4–20. Indeed, the number of frozen FEMA grants has increased. As of March 12, 2025, at least 215 FEMA grants to at least nineteen plaintiff states remain frozen or otherwise rendered inaccessible. This includes grants to the following states: Arizona, California, Colorado, Connecticut, Hawaii, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New York, Oregon, Rhode Island, Vermont, Washington, and Wisconsin. In several cases, the freezes apply to multiple grants in the same grant programs spanning several fiscal years. This is a significant increase from the 140 grants reported on February 28, 2025.

5. The more than thirty FEMA grant programs subject to freezes include, but are not limited to, the following:

- Assistance to Firefighters Grant Program;
- Building Resilient Infrastructure and Communities (multiple fiscal years);
- Community Assistance Program – State Support Services Element;
- Cooperating Technical Partners;
- Dam Safety Grants;
- Disaster Case Management Program;
- Emergency Management Performance Grant (multiple fiscal years);
- Emergency Operations Center (multiple fiscal years);
- Emergency Management Preparedness Grant (multiple fiscal years);
- Fire Prevention & Safety Grant Program;
- Flood Mitigation Assistance;
- Floodplain Mapping Program – Cooperating Technical Partnership Award;

- Hazard Mitigation Grant Program;
- Hazard Mitigation Grant Program Post Fire;
- Hazardous Material Emergency Preparedness Grants;
- High Hazard Potential Dam Grants;
- Homeland Security Grant Program (multiple fiscal years);
- Map & Modernization & Risk Mapping;
- National Dam Safety Program State Assistance Grant-Infrastructure;
- National Earthquake Hazards Reduction Program;
- Nonprofit Security Grant Program (multiple fiscal years);
- Port Security Grant Program;
- Pre-Disaster Mitigation (multiple fiscal years);
- Public Assistance Grants (multiple fiscal years);
- Regional Catastrophic Preparedness Grant Program;
- Safeguarding Tomorrow Revolving Loan Fund Program;
- Shelter and Services Program Grant;
- Staffing for Adequate Fire and Emergency Response;
- State and Local Cybersecurity Grant Program (multiple fiscal years);
- Targeted Violence and Terrorism Prevention Grant Program; and
- Transit Security Grant Program.

6. Consistent with information provided in Plaintiffs' Second Motion to Enforce the Court's Temporary Restraining Order, grants from the above-listed programs remain frozen in payment systems used by FEMA including the PARS portal, with holds dating back to February 7 and others newly reported as of March 12. In some instances, States cannot submit requests to drawdown reimbursement, because the entire grant has been frozen.

7. Counsel for the Plaintiff States have continued to work with counsel for the Defendants to provide information regarding these ongoing disruptions and to achieve compliance with the Preliminary Injunction, including through email communications on March 13 and 14, 2025.

8. In Defendants' Status Report filed March 14, 2025, Defendants state that the delays in FEMA funding reported by the Plaintiff States relate to a "manual review process that FEMA is utilizing" and that "FEMA reviews grant projects, activities, and source documentation before releasing funds for reimbursement paid to its grant recipients." ECF No. 166 at 1.

Defendants further state that this "manual review process" is authorized by FEMA's "inherent authority to manually review source documentation from a grant recipient and other information relevant to confirming the requested funding." *Id.* at 2.

9. As the basis for this "inherent authority," Defendants cite 2 C.F.R. § 200.300(a), which provides as follows:

> The Federal agency or pass-through entity must manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations—including provisions protecting free speech, religious liberty, public welfare, and the environment, and those prohibiting discrimination—and the requirements of this part. The Federal agency or pass-through entity must communicate to a recipient or subrecipient all relevant requirements, including those contained in general appropriations provisions, and incorporate them directly or by reference in the terms and conditions of the Federal award.

10. Defendants' Status Report attaches an undated declaration of Cameron Hamilton, FEMA's "Senior Official Performing the Duties of the Administrator." ECF No. 166-1 (Hamilton Decl.). In that declaration, Hamilton states that FEMA's funding pause was implemented on February 10, *id.*, ¶ 4, when Stacey Street, Director of FEMA's Office of Grant Administration, instructed staff to "put financial holds on all of your awards – all open awards, for all years (2021, 2022, 2023, and 2024)." ECF No. 166-4.

11. On February 14, Hamilton issued a more detailed "Grant Processing Guidance" on the FEMA hold process. ECF No. 166-7. That guidance, however, does not identify the discrete legal violations that FEMA is attempting to identify during this manual review. For some grant programs, the review is for whether the program may "indirectly or incidentally aid illegal aliens"; for others, it is a hold "pending a compliance review," without specifying to which obligation the compliance pertains; and for others, the review is simply a review "by Secretary Noem prior to issuance." *Id.* at 2.

12. Neither Hamilton's February 14 guidance document nor his undated declaration filed in this litigation have provided an end date for the review process or any specifics as to how long a funding disbursement will be "held" pending review.

13. Plaintiff States' experience directly contradicts the assertions made in FEMA's status report, in particular Hamilton's assertion that after March 14, 2025, "Arizona will be able to resubmit [its] requests for payments" previously identified in paragraph 5 of the McCombs Declaration. ECF No. 166-1, ¶ 27. As one example, PARS still shows that the entire remaining amount ($3,748,986.60) of Arizona's 2022 Homeland Security Grant Program grant (EMW-2022-SS-00010) is "on hold" and that there is $0 available to withdraw. On March 16, 2025, the Arizona Department of Homeland Security submitted a $1.00 draw request in the PARS account for the 2022 HSGP grant. That request triggered the following error message: "INVALID PAYMENT AMOUNT REQUESTED! This grant has $0.00 available. You may only request up to an amount of 0.00. Please enter a valid payment request amount and try again." Thus, Arizona cannot even submit a draw request to be reviewed under FEMA's new "manual review process," because the PARS system automatically rejects any draw requests for accounts with a $0 balance. The consequences for FEMA's continued non-compliance are significant and imminent. If PARS remains functionally inoperable, the Arizona Department of Homeland Security will be unable to draw down funds to meet its payroll obligations for the pay period that began on March 15, 2025.

14. Contrary to Defendants' assertions that a "financial hold" to permit a manual review process, for unspecified issues, "is not a 'pause' or 'freeze' on funding," ECF No. 166 at 3, the financial holds and pauses implemented by FEMA—as described by Defendants

themselves in their Status Report—were in violation of the Temporary Restraining Order, and are in violation of the Preliminary-Injunction Order, for several reasons.

15.   **First**, the actions of FEMA are indisputably a pause on federal funding disbursements. Defendants' own Status Report makes this clear. Hamilton states that FEMA "has paused" funding to entire programs, ECF No. 166-1 (Hamilton Decl.), ¶ 3, has put "hold toggles" on these programs in FEMA's payment system, *id.*, ¶ 4, and has put "financial holds" on these awards, *id.*, ¶ 4. And while Hamilton has said that the use of the term "hold" in the PARS system "does not mean that the grant is being frozen, held, or not being distributed," *id.*, ¶ 6, a memorandum that he issued February 14, 2025 quite plainly calls for a "Hold of Funds" under some FEMA grants, ECF No. 166-7 at 2. The assertion that a "pause[]" is not a "pause" and that a "hold" is not a "hold" deserves no further discussion.

16.   **Second**, the invocation of FEMA's purported need for a "manual review" process does not turn this sweeping and indiscriminate pause of FEMA funding into a normal grant administration exercise. In its comprehensive scope and immediate effect, the "manual review" that FEMA describes has no meaningful difference from the review that OMB directed in connection with the January 27, 2025 OMB Directive (M-25-13) that gave rise to this action. After OMB called for agencies to freeze funding disbursements, it provided a spreadsheet of funding streams to facilitate an ostensibly individualized review of those funding streams for compliance with various policy objectives before payments could be authorized. *See* ECF No. 1 (Compl.), Ex. B. Here, similarly, FEMA has frozen federal funding disbursements en masse in order to find irregularities it has not identified and has called for an individualized review of funding streams for grant recipients' compliance with obligations it has not specified, while

providing no instructions to States on how to navigate the "manual review" process or when they might expect the process to be resolved.

17.     **Third**, the Hamilton Declaration and documents attached to it mistakenly suggest at times that FEMA need only make payments to the States within thirty days. *See, e.g.*, ECF No. 166-1 (Hamilton Decl.), ¶ 20; ECF No. 166-5 (Email from Stacey Street, Feb. 11, 2025) (stating that FEMA "will have 30 days to process payment"). This is incorrect. The 30-day deadline applies to disbursements to non-states. 2 C.F.R. § 200.305(b)(3). The payments here are being held, for several weeks in some cases, without statutory authorization or clear justification. Even assuming that 31 C.F.R. Part 205 Subpart B controls here, FEMA's indefinite pause exceeds the timeframe contemplated by those regulations as well. *See* 31 C.F.R. § 205.33(a) (requiring fund transfers to be "as close as is administratively feasible to a State's actual cash outlay"). The indefinite pause also departs from past practice, in which payments were typically made within 24 hours of the request.

18.     **Fourth**, FEMA's pause has no other legal basis, nor do Defendants cite to such a basis. Instead, Defendants refer to an "inherent authority" to impose these pauses, citing 2 C.F.R. § 200.300(a). *See* ECF No. 166 at 2; ECF No. 166-1 (Hamilton Decl.), ¶ 5. That regulation provides no basis for the funding pause that FEMA has placed in effect. Rather, 2 C.F.R. § 200.300(a) is a regulation promulgated by the Office of Management and Budget for federal grants generally, and it simply provides that federal agencies must administer federal awards to ensure that programs are implemented "in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. Part 200 specifies the mechanisms that federal agencies may use to manage performance and ensure appropriate controls, including Subpart D (Post Federal Award Requirements) and Subpart F (Audit Requirements). *See especially* 2

C.F.R. §§ 200.339(a) (specifying the circumstances when grantor agencies may temporarily withhold payments for noncompliance), 200.501 (grantee audit requirements). The general duties of § 200.300(a) do not add to these mechanisms and provide no authority to implement a freeze with no set end date.

19.   For these reasons, FEMA's ongoing pause failed to comply with the TRO and is now failing to comply with the Preliminary-Injunction Order. Plaintiff States again request that all holds on FEMA grant funds be lifted and that payments be processed without delay.

Respectfully submitted,

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: */s/ Kathryn M. Sabatini*
Kathryn M. Sabatini (RI Bar No. 8486)
Civil Division Chief
Special Assistant Attorney General
Sarah W. Rice (RI Bar No. 10465)
Deputy Chief, Public Protection Bureau
Assistant Attorney General
Leonard Giarrano IV (RI Bar No. 10731)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
ksabatini@riag.ri.gov
srice@riag.ri.gov
lgiarrano@riag.ri.gov

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Michael J. Myers*
Senior Counsel
Molly Thomas-Jensen*
Special Counsel
Colleen Faherty*
Special Trial Counsel
Zoe Levine*
Special Counsel for Immigrant Justice
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
michael.myers@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
colleen.Faherty@ag.ny.gov
zoe.Levine@ag.ny.gov

**ROB BONTA**
Attorney General for the State of California

By: /s/ Laura L. Faer
Laura L. Faer*
Supervising Deputy Attorney General
Christine Chuang*
Supervising Deputy Attorney General
Nicholas Green*
Carly Munson*
Kenneth Sugarman*
Theodore McCombs*
Marie Logan*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
Laura.Faer@doj.ca.gov
Christine.Chuang@doj.ca.gov
Nicholas.Green@doj.ca.gov
Carly.Munson@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Theodore.McCombs@doj.ca.gov
Marie.Logan@doj.ca.gov

**KWAME RAOUL**
Attorney General for the State of Illinois

By: /s/ Alex Hemmer
Alex Hemmer*
Deputy Solicitor General
R. Henry Weaver*
Assistant Attorney General
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
Robert.Weaver@ilag.gov

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: /s/ Katherine B. Dirks
Katherine B. Dirks*
Deputy Chief, Government Bureau
Turner H. Smith*
Deputy Chief, Energy and Environment Bureau
Anna Lumelsky*
Deputy State Solicitor
Vanessa Arslanian**
Julia Jones-Day**
Nathaniel Hyman**
Chris Pappavaselio**
Assistant Attorneys General
1 Ashburton Pl.
Boston, MA  02108
(617) 963-2277
katherine.dirks@mass.gov
turner.smith@mass.gov

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: /s/ Angela Cai
Angela Cai*
Executive Assistant Attorney General
Jeremy M. Feigenbaum*
Solicitor General
Shankar Duraiswamy*
Deputy Solicitor General
25 Market St.
Trenton, NJ 08625
(609) 376-3377
Angela.Cai@njoag.gov
Jeremy.Feigenbaum@njoag.gov
Shankar.Duraiswamy@njoag.gov

| | |
|---|---|
| **KRISTIN K. MAYES**<br>Attorney General for the State of Arizona<br><br>By: /s/ Joshua D. Bendor<br>Joshua D. Bendor*<br>Solicitor General<br>Nathan Arrowsmith*<br>2005 North Central Avenue<br>Phoenix, Arizona 85004<br>(602) 542-3333<br>Joshua.Bendor@azag.gov<br>Nathan.Arroswmith@azag.gov | **WILLIAM TONG**<br>Attorney General for the State of Connecticut<br><br>By: /s/ Michael K. Skold<br>Michael K. Skold*<br>Solicitor General<br>Jill Lacedonia*<br>165 Capitol Ave<br>Hartford, CT 06106<br>(860) 808 5020<br>Michael.Skold@ct.gov<br>Jill.Lacedonia@ct.gov |
| **PHILIP J. WEISER**<br>Attorney General for the State of Colorado<br><br>By: /s/ Shannon Stevenson<br>Shannon Stevenson*<br>Solicitor General<br>Ralph L. Carr Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, Colorado 80203<br>(720) 508-6000<br>shannon.stevenson@coag.gov | **KATHLEEN JENNINGS**<br>Attorney General of Delaware<br><br>By: /s/ Vanessa L. Kassab<br>Vanessa L. Kassab*<br>Deputy Attorney General<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 577-8413<br>vanessa.kassab@delaware.gov |
| **BRIAN L. SCHWALB**<br>Attorney General for the District of Columbia<br><br>By: /s/ Andrew Mendrala<br>Andrew Mendrala*<br>Assistant Attorney General<br>Public Advocacy Division<br>Office of the Attorney General for the District of Columbia<br>400 Sixth Street, NW<br>Washington, DC 20001<br>(202) 724-9726<br>Andrew.Mendrala@dc.gov | **ANNE E. LOPEZ**<br>Attorney General for the State of Hawaiʻi<br><br>By: /s/ Kalikoʻonālani D. Fernandes<br>David D. Day*<br>Special Assistant to the Attorney General<br>Kalikoʻonālani D. Fernandes*<br>Solicitor General<br>425 Queen Street<br>Honolulu, HI 96813<br>(808) 586-1360<br>david.d.day@hawaii.gov<br>kaliko.d.fernandes@hawaii.gov |

**OFFICE OF THE GOVERNOR** *ex rel.* **ANDY BESHEAR**
in his official capacity as Governor of the Commonwealth of Kentucky

By: /s/ S. Travis Mayo
S. Travis Mayo**
General Counsel
Taylor Payne**
Chief Deputy General Counsel
Laura C. Tipton**
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: /s/ Adam D. Kirschner
Adam D. Kirschner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6424
AKirschner@oag.state.md.us

**AARON M. FREY**
Attorney General for the State of Maine

By: /s/ Jason Anton
Jason Anton*
Assistant Attorney General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333
207-626-8800
jason.anton@maine.gov

**DANA NESSEL**
Attorney General of Michigan

By: /s/ Linus Banghart-Linn
Linus Banghart-Linn*
Chief Legal Counsel
Neil Giovanatti*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov
GiovanattiN@michigan.gov

11

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
Deputy Counsel
NM Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 270-4332
asamant@nmdoj.gov

**JEFF JACKSON**
Attorney General for the State of North Carolina

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
Associate Deputy Attorney General
PO Box 629
Raleigh, NC 27602
(919) 716-6026
Dmosteller@ncdoj.gov

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Christina Beatty-Walters*
Christina Beatty-Walters*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Tina.BeattyWalters@doj.oregon.gov

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

| | |
|---|---|
| **NICHOLAS W. BROWN** <br> Attorney General for the State of Washington <br><br> By: /s *Andrew Hughes* <br> Andrew Hughes* <br> Assistant Attorney General <br> Leah Brown* <br> Assistant Attorney General <br> Office of the Washington State Attorney General <br> 800 Fifth Avenue, Suite 2000 <br> Seattle, WA 98104 <br> (206) 464-7744 <br> Andrew.Hughes@atg.wa.gov <br> Leah.Brown@atg.wa.gov | **JOSHUA L. KAUL** <br> Attorney General for the State of Wisconsin <br><br> By: /s *Aaron J. Bibb* <br> Aaron J. Bibb* <br> Assistant Attorney General <br> Wisconsin Department of Justice <br> 17 West Main Street <br> Post Office Box 7857 <br> Madison, Wisconsin 53707-7857 <br> (608) 266-0810 <br> BibbAJ@doj.state.wi.us |

*Admitted *Pro Hac Vice*

**Pro Hac Vice* Motion forthcoming