UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK, et al.,

    Plaintiffs,

v.

DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, et al.,

    Defendants.

C.A. No. 1:25-cv-00039

**RENEWED SECOND MOTION TO ENFORCE THE COURT'S ORDERS PERTAINING TO FREEZE OF FEMA FUNDS**

    Plaintiff States, through this motion, respectfully request that the Court use its inherent authority to enforce the Preliminary Injunction Order entered on March 6, 2025. Plaintiff States specifically request that the Court order Defendant the Federal Emergency Management Agency ("FEMA") to cease freezing obligated funds and that the Court direct that notice of such order, along with notice of the court's March 6, 2025 Order, be provided to FEMA's leadership and staff, as described below.

    The Court's intervention is necessary because, following the Court's March 6 order, Plaintiff States have continued to experience significant obstacles to accessing federal funds. This is so despite the Court's direction to Defendants to "file a status report on or before March 14, 2025, informing the Court of the status of their compliance with" the March 6 Order. ECF No. 161, at 45. The parties remain at an impasse as to millions of dollars in obligated FEMA awards, which are and have remained frozen dating to as early as February 7. Plaintiff States will need to wind down important programmatic emergency services, including disaster relief to people and communities affected by the Maui wildfires, in short order if funding is not immediately unfrozen.

Speer Decl. ¶ 18, attached as Exhibit 1. The Court should enforce its March 6 preliminary injunction with respect to FEMA.

## FACTUAL BACKGROUND

### I. The Court's Orders

The Court's January 31, 2025, TRO prohibited Defendants from "paus[ing], freez[ing], imped[ing], block[ing], cancel[ling], or terminat[ing] Defendants' compliance with awards and obligations to provide federal financial assistance to the States," and provided that "Defendants shall not impede the States' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms." ECF No. 50, at 11. That order expressly prohibited the Defendants from using "'identif[ication] and review' of federal financial assistance programs" to implement a "pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations and terms." *Id.* at 12. Included among the Defendants for purposes of the TRO was FEMA, a defendant named in the original Complaint. ECF No. 1, ¶ 41.[1]

Following the entry of that order, counsel for Plaintiff States conferred with counsel for Defendants about ongoing freezes of numerous grants and awards, but were unable to reach agreement. ECF No. 66, at 7–8. Plaintiff States moved to enforce the TRO on February 7, 2025. ECF No. 66. On February 10, 2025, the Court granted that motion, ordering among other things that:

> 1.   The Defendants must immediately restore frozen funding during the pendency of the TRO until the Court hears and decides the Preliminary Injunction request.

---

[1] FEMA remains a defendant in the First Amended Complaint because the Department of Homeland Security is a defendant, and FEMA is an agency within the Department of Homeland Security. ECF No. 114, ¶ 55.

    2.    The Defendants must immediately end any federal funding pause during the pendency of the TRO.

    3.    The Defendants must immediately take every step necessary to effectuate the TRO, including clearing any administrative, operational, or technical hurdles to implementation.

ECF No. 96, at 4.

The Court subsequently issued an order affirming that the TRO "permits the Defendants to limit access to federal funds 'on the basis of the applicable authorizing statutes, regulations, and terms'" and clarifying that neither the TRO nor the February 10 order instituted a "preclearance" or "prior approval" requirement. ECF No. 107, at 3.

Plaintiff States continued to experience disruptions in federal funding, one of which was particularly acute and widespread—the funding freeze implemented by FEMA, which has impacted many public safety programs. Therefore, on February 28, Plaintiff States filed a Second Motion to Enforce based on continued inability to access these important funds. ECF No. 160.

On March 6, the Court issued its preliminary injunction order. ECF No. 161. In relevant part, the Court enjoined Defendants, including FEMA, "from pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to the States under awarded grants, executed contracts, or other executed financial obligations based on the OMB Directive, . . . or any other materially similar order, memorandum, directive, policy, or practice under which the federal government imposes or applies a categorical pause or freeze of funding appropriated by Congress." ECF No. 161, at 44. At the same time, the Court recognized that the Second Motion to Enforce was mooted by the decision on the preliminary injunction, but nevertheless ordered FEMA to submit a status report by March 14. ECF No. 161, at 45.

## II. FEMA Grants and Awards Remain Frozen, Endangering Important State Disaster Relief Programs

The issues raised in Plaintiff States' Second Motion to Enforce continue largely unabated. As Plaintiff States reported on March 17, "[a]s of March 12, 2025, at least 215 FEMA grants to at least nineteen plaintiff states remain frozen or otherwise rendered inaccessible." ECF No. 167, at 2. Now, approaching the close of the quarter, lack of access to funding is poised to disrupt programs.

For Hawaiʻi, this means the imminent cessation of case management services for victims of the 2023 Maui wildfires, "including the wildfire-initiated urban conflagration that caused extreme damage to the historic town of Lahaina, killed over 100 people and displaced thousands of Hawaiʻi residents from their homes." Speer Decl. ¶ 3. Before FEMA initiated its categorical, indefinite pause of funding, Hawaiʻi usually received reimbursement within approximately one week of submitting a request, a time period that allowed for FEMA's review and the mechanics of the fund transfer. *Id.* ¶ 13. As of today, Hawaiʻi has waited nearly 30 days for reimbursement. *Id.* ¶ 12. This abrupt change in practice is near fatal because a key requirement of FEMA regarding these grant funds is that Hawaiʻi is precluded from maintaining more than three business days' worth of cash on hand. *Id.* ¶ 18. If Hawaiʻi does not receive reimbursement by March 31, it will be forced to discontinue its "work with survivors to create unique disaster recovery plans that are individualized to each household, and . . . help survivors navigate their recovery and work with the myriad of resources available to meet their needs." *Id.* ¶¶ 6, 18. Hawaiʻi currently provides these services to more than 4,000 individual wildfire survivors, but that work will cease as of April 4 if funds are not released. *Id.* ¶¶ 6, 8, 18. Hawaiʻi has raised these serious issues with its counterpart grant administrators at FEMA. *Id.* ¶¶ 16, 18. Despite seeking reassurance or guidance

from FEMA, "there is no known timeline for when FEMA or the federal Department of Homeland Security will determine if, or when, it will approve" Hawai'i's pending funding requests. *Id.* ¶ 16.

Oregon is waiting on $129.4 million in federal funds and has not received payment on any of its FEMA requests for more than 30 days. McMahon Decl. ¶ 20, attached as Exhibit 2. Most of Oregon's grants are granted on to subrecipients such as local and tribal governments, *id.*, which are facing issues with timely reimbursement, *id.* ¶ 21. Oregon's Emergency Management Performance Grant coordinates local, state, and interstate resources to address life-safety needs through funding projects like auxiliary communications systems and joint training exercises. *Id.* ¶ 23. After the close of the first quarter on March 31, Oregon's emergency management agency will not have the funds to continue supporting these activities, including staff salaries, without FEMA reimbursement. *Id.* ¶ 22.

Colorado has experienced very similar disruption. From February 18 to March 24 Colorado's emergency management agency has requested or attempted to request over $33 million in reimbursement costs from FEMA under 14 grant programs. Haney Decl. ¶ 6, attached as Exhibit 3. None of the requests have been approved. *Id.* Many of Colorado's requests for payment were made more than 30 days ago. *Id.* ¶¶ 7–20. Colorado's grants fund flood hazard mitigation and the development of local hazard mitigation plans, among other important emergency preparedness goals. *Id.*

In their status report filed on March 14, Defendants asserted that this indefinite pause on obligated federal grant monies is not in violation of this Court's orders, including the preliminary injunction. ECF No. 166. That is, instead of taking this Court's order to provide a status report as an opportunity to inform the States of when they might expect an end to this widespread inaccessibility of funding administered by FEMA, Defendants provided no definite date by which

5

such pause might cease. *Id*. As described in Plaintiff States' Response, ECF No. 167, at 6–8, and further below, Defendants are wrong in their contention that statute or regulation authorizes them to withhold funding for 30 days for any purported "manual review" process. But regardless of the legal merit of that contention (there is none), as a factual matter, multiple states have funding requests that have been pending for longer than 30 days. McMahon Decl. ¶ 20; Haney Decl. ¶¶ 7–20; Rice Decl. ¶¶ 5–7, attached as Exhibit 4.

In addition, among Defendants' other arguments, they have asserted that the FEMA manual review process is "not new," implying some history of or relation to past manual review processes. ECF No. 166, at 3. But their own statements belie that claim: on March 18, FEMA asserted to Colorado that it would, "effective immediately" institute "an additional review process of allocations before releasing funds for all grants." Rice Decl. Ex. A. This was followed on March 19 with an announcement by FEMA of "additional reviews on all grant payments and obligations to ensure allowability in accordance with 2 C.F.R. § 200.305." Rice Decl. Ex. B. None of this correspondence to recipients referenced any prior manual review or linked the newly applicable procedures to any past procedure. Rice Decl. Exs. A–B.

**LEGAL STANDARD**

Courts may issue further orders to obtain "compliance with a court order." *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). In the First Circuit, a party seeking such an order must show: (1) notice of the court order; (2) clarity and lack of ambiguity of the order; (3) ability to comply; and (4) violation of the order. *Letourneau v. Aul*, No. CV 14-421JJM, 2024 WL 1364340, at *2 (D.R.I. Apr. 1, 2024) (citing *Hawkins v. Dep't of Health & Hum. Servs.*, 665 F.3d 25, 31 (1st Cir. 2012)).

## ARGUMENT

Plaintiffs have satisfied the first two factors: FEMA had notice of the Court's order, and the Court has made numerous pronouncements about the scope and effect of its Orders. Similarly, the third factor is satisfied because FEMA is plainly able to comply with the preliminary injunction by lifting its pause on funding to Plaintiff States.

As to the fourth factor, FEMA appears to be violating the preliminary injunction. To reiterate, the preliminary injunction prohibits FEMA "from pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to the States under awarded grants" if that action is "based on the OMB Directive, . . . or any other materially similar order, memorandum, directive, policy, or practice under which the federal government imposes or applies a categorical pause or freeze of funding appropriated by Congress." ECF No. 161, at 44.

As explained in Plaintiff States' March 17, 2025 Response to Defendants' Status Report, FEMA's categorical and indefinite freeze of funding appears to be violating the preliminary injunction for at least four reasons. *See* ECF No. 167, at 6–8.

*First*, FEMA's own statements to this Court have characterized Plaintiff States' inability to access funds as a "hold" or a "pause." Specifically, defendants' submissions state that FEMA "has paused" funding to entire programs, ECF No. 166-1 (Hamilton Decl.), ¶ 3, has put "hold toggles" on these programs in FEMA's payment system, *id.* ¶ 4, and has put "financial holds" on these awards, *id.* ¶ 4. Moreover, a memorandum issued on February 14, 2025 quite plainly calls for a "Hold of Funds" under some FEMA grants, ECF No. 166-7, at 2.

*Second*, regardless of whether a delay of limited duration would violate the Court's orders, the sweeping, indiscriminate, and indefinite pause implemented by FEMA under the guise of a

purported "manual review" process is essentially the same funding pause pending purported review of grant programs that OMB directed each agency to carry out, and which this court enjoined. *See* ECF No. 1 (Compl.), Ex. B. After OMB called for agencies to freeze funding disbursements, it provided a spreadsheet of funding streams to review before payments could be authorized. *Id.* Here, similarly, FEMA has frozen federal funding disbursements en masse while it purports to review funding streams to find irregularities it has not identified or review grant recipients' compliance with obligations it has not specified.

*Third*, FEMA errs in arguing that a 30-day payment window that appears in 2 C.F.R. § 200.305(b)(3) demonstrates that payments are not paused. *See, e.g.*, Hamilton Decl. ¶ 20; ECF No. 166-5 (Email from Stacey Street, Feb. 11, 2025) (stating that FEMA "will have 30 days to process payment"). As an initial matter, that deadline is plainly inapplicable to disbursements to States. 2 C.F.R. § 200.305(b)(3); *see* 31 C.F.R. § 205.33(a) (requiring fund transfers to States to be "as close as is administratively feasible to a State's actual cash outlay"). In any event, for many States, FEMA has been continuing to refuse to release requested funds for more than thirty days. Thus, even if 31 C.F.R. Part 205 Subpart B controlled here—which it does not—FEMA has exceeded the timeframe contemplated by those regulations. FEMA's failure to abide by the (inapplicable) 30-day window that it invoked further demonstrates that its actions are an indefinite pause of funding in violation of the Court's preliminary injunction.

Indeed, after FEMA filed its status report, the agency has started claiming that it is entitled to *multiple* 30-day review periods that have no set end, all while obligated funding remains paused. In particular, on March 19, 2025, FEMA wrote to Plaintiff States that it is entitled to a *series* of 30-day reviews, relying on the same authorities discussed above. Rice Decl. Ex. B. FEMA has now asserted that it may deny a request for reimbursement "[i]f an adequate response is not

8

received" to its informational demands, in which case Plaintiff States "may need to submit a new reimbursement request; this will re-start the 30-day timeline." *Id.* There is no basis, even in the inapplicable 2 C.F.R. § 200.305(b)(3) regulation, for a series of rolling 30-day windows for approval of reimbursement requests. FEMA's actions essentially extend indefinitely a categorical pause on all grant funding it administers based on unarticulated criteria that are not based in any statute or regulation.

*Fourth*, FEMA identified no other legal basis in its status report for its withholding of funds with no end date, invoking only "inherent authority" that it is not granted under statute, citing 2 C.F.R. § 200.300(a). *See* ECF No. 166, at 2; Hamilton Decl. ¶ 5. That regulation provides no basis for the funding pause that FEMA has placed in effect. Rather, 2 C.F.R. § 200.300(a) is a regulation promulgated by the Office of Management and Budget for federal grants generally, and it simply provides that federal agencies must administer federal awards to ensure that programs are implemented "in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. Part 200 specifies the mechanisms that federal agencies may use to manage performance and ensure appropriate controls, including Subpart D (Post Federal Award Requirements) and Subpart F (Audit Requirements). *See especially* 2 C.F.R. §§ 200.339(a) (specifying the circumstances when grantor agencies may temporarily withhold payments for noncompliance), 200.501 (grantee audit requirements). The general duties of § 200.300(a) do not add to these mechanisms and provide no authority to implement a freeze with no set end date.

FEMA may not, consistent with the preliminary injunction, subject Plaintiff States to a pause without end to conduct a new process that is not authorized by law or regulation. FEMA's current actions mean that at minimum five States have now been unable to access funds for more than 30 days, with states such as Hawaiʻi now poised to discontinue critical programming.

9

## RELIEF SOUGHT

Plaintiff States move the Court, under its inherent powers, to order FEMA to immediately halt the challenged practice and to direct that notice of such order, along with notice of the court's preliminary injunction, or any forthcoming orders the Court deems relevant, be provided to FEMA's leadership, as well as all FEMA staff who administer these grants and other federal financial assistance, with confirmation of such notice, including the names of recipients of the notice, no later than 48 hours after such order.

Dated: March 24, 2025                                              Respectfully Submitted,

**PETER F. NERONHA**
Attorney General for the State of Rhode Island

By: /s/ Kathryn M. Sabatini
Kathryn M. Sabatini (RI Bar No. 8486)
Civil Division Chief
Special Assistant Attorney General
Sarah W. Rice (RI Bar No. 10465)
Deputy Chief, Public Protection Bureau
Assistant Attorney General
Leonard Giarrano IV (RI Bar No. 10731)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
ksabatini@riag.ri.gov
srice@riag.ri.gov
lgiarrano@riag.ri.gov

**LETITIA JAMES**
Attorney General for the State of New York

By: /s/ Rabia Muqaddam
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Michael J. Myers*
Senior Counsel
Molly Thomas-Jensen*
Special Counsel
Colleen Faherty*
Special Trial Counsel
Zoe Levine*
Special Counsel for Immigrant Justice
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
michael.myers@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
colleen.Faherty@ag.ny.gov
zoe.Levine@ag.ny.gov

**ROB BONTA**
Attorney General for the State of California

By: /s/ Laura L. Faer
Laura L. Faer*

**KWAME RAOUL**
Attorney General for the State of Illinois

Supervising Deputy Attorney General
Christine Chuang*
Supervising Deputy Attorney General
Nicholas Green*
Carly Munson*
Kenneth Sugarman*
Theodore McCombs*
Marie Logan*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
Laura.Faer@doj.ca.gov
Christine.Chuang@doj.ca.gov
Nicholas.Green@doj.ca.gov
Carly.Munson@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Theodore.McCombs@doj.ca.gov
marie.logan@doj.ca.gov

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of Massachusetts

By: /s/ *Katherine B. Dirks*
Katherine B. Dirks*
Deputy Chief, Government Bureau
Turner Smith*
Deputy Chief, Energy and Environment Bureau
Anna Lumelsky*
Deputy State Solicitor
1 Ashburton Pl.
Boston, MA  02108
(617.963.2277)
katherine.dirks@mass.gov
turner.smith@mass.gov
anna.lumelsky@mass.gov

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: /s/ *Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General

By: /s/ *Alex Hemmer*
Alex Hemmer*
Deputy Solicitor General
R. Henry Weaver*
Assistant Attorney General
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
Robert.Weaver@ilag.gov

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: /s/ *Angela Cai*
Angela Cai*
Executive Assistant Attorney General
Jeremy M. Feigenbaum*
Solicitor General
Shankar Duraiswamy*
Deputy Solicitor General
25 Market St.
Trenton, NJ 08625
(609) 376-3377
Angela.Cai@njoag.gov
Jeremy.Feigenbaum@njoag.gov
Shankar.Duraiswamy@njoag.gov

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: /s/ *Michael K. Skold*
Michael K. Skold*
Solicitor General

11

Nathan Arrowsmith*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Nathan.Arroswmith@azag.gov

Jill Lacedonia*
165 Capitol Ave
Hartford, CT 06106
(860) 808 5020
Michael.skold@ct.gov
Jill.Lacedonia@ct.gov

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
Solicitor General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
shannon.stevenson@coag.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Vanessa L. Kassab*
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8413
vanessa.kassab@delaware.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, NW
Washington, DC 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Jason Anton*
Jason Anton*
Assistant Attorney General

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner*
Senior Assistant Attorney General

12

| | |
|---|---|
| Maine Office of the Attorney General<br>6 State House Station<br>Augusta, ME 04333<br>207-626-8800<br>jason.anton@maine.gov | Office of the Attorney General<br>200 Saint Paul Place, 20th Floor<br>Baltimore, Maryland 21202<br>410-576-6424<br>AKirschner@oag.state.md.us |

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Linus Banghart-Linn*
Linus Banghart-Linn*
Chief Legal Counsel
Neil Giovanatti*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov
GiovanattiN@michigan.gov

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
Deputy Counsel
NM Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
asamant@nmdoj.gov

**JEFF JACKSON**
Attorney General for the State of North Carolina

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
Associate Deputy Attorney General
PO Box 629

**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Christina Beatty-Walters*
Christina Beatty-Walters*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201

13

| | |
|---|---|
| Raleigh, NC 27602<br>919-716-6026<br>Dmosteller@ncdoj.gov | (971) 673-1880<br>Tina.BeattyWalters@doj.oregon.gov |

**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: /s/ *Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: /s *Andrew Hughes*
Andrew Hughes*
Assistant Attorney General
Leah Brown*
Assistant Attorney General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
leah.brown@atg.wa.gov

**OFFICE OF THE GOVERNOR *ex rel.* ANDY BESHEAR**
in his official capacity as Governor of the Commonwealth of Kentucky

By: /s/ S. Travis Mayo
S. Travis Mayo*
General Counsel
Taylor Payne*
Chief Deputy General Counsel
Laura C. Tipton*
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: /s *Aaron J. Bibb*
Aaron J. Bibb*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
BibbAJ@doj.state.wi.us

*Admitted *Pro Hac Vice*