UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:25-cv-39 (JJM) |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*, | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED SECOND MOTION TO ENFORCE REGARDING FEMA FUNDING**

As explained in connection with Defendants' prior Status Report and accompanying declaration, *see* ECF No. 166, the Federal Emergency Management Agency ("FEMA") is currently complying with the Court's preliminary injunction. With the exception of a small number of programs not at issue here, FEMA has not implemented any "freezes" on funding awarded to the Plaintiff States.

Plaintiffs have nonetheless renewed their motion to enforce the preliminary injunction, claiming that FEMA has implemented a manual review process that is improperly delaying their payments. *See* ECF No. 168 ("Pls.' Mot."). The Court's preliminary injunction, however, does not regulate agencies' timing for reviewing and approving grant payments; it prohibits agencies from *freezing* grant payments. Specifically, the Court's Order prohibits implementation of "the OMB Directive" and other "categorical pause[s] or freeze[s] of funding[.]" PI Order (ECF No. 161) at 44. But FEMA's manual review process has nothing to do with the OMB Directive, and

-1-

is expressly *not* a pause or freeze on funding—it is instead a change to the manner in which FEMA processes and *approves* payment requests. FEMA intends to make appropriate payments under the relevant grants, which forecloses Plaintiffs' allegations of a continued "pause" or "freeze."

More generally, this Court should decline to entertain Plaintiffs' grant-specific compliance disputes. Allowing Plaintiffs to bring an enforcement motion each time they are unhappy with the pace of disbursement for grants administered by any of the twenty-three agencies regulated by the preliminary injunction would turn this Court into an overseer of countless federal funding streams, displacing the remedies available under each individual funding agreement. In a case that Plaintiffs have previously characterized as being about "categorical freezes," the Court should not entertain compliance disputes based on the timing of particular payment requests under individualized grant agreements.

In any event, even setting aside the above defects, FEMA continues to work to implement its manual review process and process payments as quickly as possible, as discussed further in the attached declaration. *See* 3d Hamilton Decl. (attached hereto). Thus, the Court should deny Plaintiffs' motion and decline to provide further relief. To the extent the Court disagrees, however, any relief should be substantially more limited and specific than what Plaintiffs request.

I.  **The Court Should Not Allow Plaintiffs to Convert Grant-Specific Disputes Into Matters of Compliance or Contempt**

At the outset, this Court should reject Plaintiffs' invitation to become an overseer of each and every grant-specific dispute involving any of the twenty-three

federal agencies subject to the Court's preliminary injunction. Doing so would displace the specific remedies available under those funding agreements, and would convert ordinary breach-of-contract or other funding agreement disputes into potential violations of a court order. Plaintiffs should instead be directed to pursue their disputes through existing mechanisms for addressing grant-related claims.

For example, depending on the specific terms and conditions of the relevant grant agreements at issue here, Plaintiffs may have remedies available through contract actions in the Court of Federal Claims—which would generally foreclose relying on the Administrative Procedure Act and its waiver of sovereign immunity to provide relief. *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 618–19 (D.C. Cir. 2017) ("We have interpreted the Tucker Act, 28 U.S.C. § 1491(a)(1), which waives sovereign immunity for some claims 'founded upon' a contract and brought in the U.S. Court of Federal Claims, to 'impliedly forbid' contract claims against the Government from being brought in district court under the waiver in the APA." (cleaned up)); *cf. Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) (holding that "grant agreements [are] contracts when the standard conditions for a contract are satisfied"); *Henke v. U.S. Dep't of Com.*, 83 F.3d 1445, 1450 (D.C. Cir. 1996) ("An NSF grant agreement includes the essential elements of a contract and establishes what would commonly be regarded as a contractual relationship between the government and the grantee."). And even if the relevant grant agreements here are not contracts, Plaintiffs still could seek to enforce whatever rights they have through an APA suit specific to the relevant grant agreements—*i.e.*, directly challenging the

manual review process as unlawful through an independent APA suit against FEMA.

Instead, Plaintiffs have sought to bring their disputes to this Court in a compliance posture—essentially taking the view that any agency action that delays their payments and that, in Plaintiffs' view, is unlawful is also a violation of the Court's preliminary injunction. *See* Pls.' Mot. at 7-9. But Defendants should not be forced to litigate individual contract or grant disputes in an enforcement (or contempt) posture. Doing so would supplant the existing remedies available to Plaintiffs for such claims, and would necessarily transform this Court into an overseer of all funding provided by the numerous Defendant agencies to the Plaintiff States. *Cf.* PI Hr'g Tr. at 55:1–7 (this Court stating that overseeing funding decisions to the Plaintiff States for two dozen agencies is "not anything I would ever do").

Plaintiffs themselves have characterized their claims as "only targeting the limited freezes that we talked about" and "not targeting the very well trodden scope of what agencies have always done, which is act pursuant to the statutes and regulations that govern their authority and exercise whatever discretion they have under the law." *Id.* at 26; *cf.* Am. Compl. ¶ 1 ("This action seeks declaratory and injunctive relief against the federal government's categorical, immediate, and indefinite freeze on trillions of dollars of Congressionally authorized and appropriated federal funding (Federal Funding Freeze)."). In a case that is purportedly about a "categorical, immediate, and indefinite freeze on trillions of dollars," *id.*, this Court should not allow its enforcement power to become a vehicle for Plaintiffs to complain about the pace of reimbursements on specific grants

involving a single agency. To the extent Plaintiffs believe that FEMA lacks statutory or regulatory authority to implement its manual review process, *see* Pls.' Mot. at 8-9, Plaintiffs can present such claims through existing mechanisms (including other APA litigation if necessary). But this Court should not allow Plaintiffs to transform such disputes into matters involving the Court's enforcement and potential contempt powers. *Cf. AIDS Vaccine Advoc. Coal. v. Dep't of State*, --- F. Supp. 3d ----, 2025 WL 577516, at *2 (D.D.C. Feb. 22, 2025) ("While agency determinations based on wholly independent legal authority and justification such as the terms of particular agreements or sets of agreements, rather than deriving from a general directive to suspend aid, may be subject to some other legal challenge, whether it be under the APA, separation of powers, individual breach of contract cases, or otherwise, such determinations do not violate the present TRO.").

## II. FEMA's Manual Review Process Complies with the Court's Preliminary Injunction as a Matter of Law

Regardless, this Court's preliminary injunction does not prohibit implementation of FEMA's manual review process for two independent reasons. First, the manual review process is not a "pause" or "freeze" of funding at all—it is instead a process for *reviewing and approving* payment requests, which is the very opposite of a categorical halt on disbursement. Second, the manual review process is implemented pursuant to FEMA's independent authorities, which are not circumscribed by the Court's injunction. Thus, Plaintiffs have failed to demonstrate any violation of the Court's injunction.

### A.     The Manual Review Process Is Not a "Freeze" on Funding

This Court's injunction prohibits agencies from implementing "a categorical pause of freeze of funding," ECF No. 161 at 44, but that is not what FEMA's manual review process does. Instead, it is a process for reviewing and approving payment requests. As a matter of law, then, Plaintiffs cannot demonstrate a violation of the Court's preliminary injunction.

In relevant part, this Court's injunction provides:

> The Agency Defendants are enjoined from pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to the States under awarded grants, executed contracts, or other executed financial obligations based on the OMB Directive, including funding freezes dictated, described, or implied by Executive Orders issued by the President before rescission of the OMB Directive or any other materially similar order, memorandum, directive, policy, or practice under which the federal government imposes or applies a categorical pause or freeze of funding appropriated by Congress. This includes, but is by no means not limited to, Section 7(a) of Executive Order 14154, Unleashing American Energy.

ECF No. 161 at 44, ¶ 2; *see* Pls.' Mot. at 7 (quoting this paragraph in arguing that "FEMA appears to be violating the preliminary injunction").

Plaintiffs never specifically identify the language in the injunction that they contend FEMA is violating. Plaintiffs do not argue, for example, that FEMA has improperly frozen funds to the Plaintiff states "based on the OMB Directive." ECF No. 161 at 44, ¶ 2. Nor do they contend that FEMA has implemented a "funding freeze[] dictated, described, or implied by [an] Executive Order[] issued by the President before rescission of the OMB Directive[.]" *Id.* That leaves only the question whether FEMA is implementing a "materially similar order, memorandum, directive, policy, or practice under which the federal government imposes or applies a

categorical pause or freeze of funding appropriated by Congress." *Id.* Plaintiffs' motion does not even attempt to connect their assertions of noncompliance with the actual text of the Court's injunction, *see* Pls.' Mot. at 7-9, which is reason enough to deny them relief.

In any event, as discussed previously, FEMA's "manual review process is not a pause or withholding of grant funds . . . nor does it mean that the grant is being frozen, held, or not being distributed." 2d Hamilton Decl. (ECF No. 166-1) ¶ 9. "Instead, it is simply an internal control where FEMA staff manually review all grant payment requests before disbursing payments to recipients." *Id.* Plaintiffs do not explain how a review process, specifically for the purpose of approving payments, equates to a "categorical pause or freeze of funding" for the grant itself. *See* 3d Hamilton Decl. ¶ 8 ("confirm[ing] that FEMA has already made payments since instituting the manual review process").

Instead, Plaintiffs seize on isolated words in various documents to portray Defendants as having acknowledged that a "hold" or "pause" is in effect. *See* Pls.' Mot. at 7. Plaintiffs continue to focus on a February 10 e-mail, but Mr. Hamilton has already explained that, despite some imprecise language in the e-mail, the e-mail's directive was not "inten[ded] to freeze grant payments," 2d Hamilton Decl. ¶ 6, and FEMA officials promptly clarified the matter within days, *id.* ¶¶ 6-8.[1]

---

[1] Plaintiffs also contend that FEMA has, in fact, "paused funding to entire programs." Pls.' Mot. at 7. But those pauses have nothing to do with the manual review process that is the subject of their enforcement motion. Defendants have already explained that those three specific programs were paused in a permissible

Plaintiffs also assert that the manual review process "is essentially the same funding pause pending purported review of grant programs that OMB directed each agency to carry out, and which this court enjoined." Pls.' Mot. at 8. But that argument mischaracterizes the two fundamentally different "reviews." The review contemplated by OMB Memo M-25-13 was for agencies to "review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities." OMB Memo M-25-13, at 2. The manual review process, in contrast, is "intended to ensure reimbursement payment requests are allowable, allocable, and reasonable per each award's terms and conditions . . . and are free from fraud, waste, or abuse." 2d Hamilton Decl. ¶ 9. The latter cannot possibly be equated to the "review" contemplated by OMB Memo M-25-13, and in any event the Court's injunction does not prohibit agencies from engaging in "reviews"—only freezes on payments, which the manual review process is not.

In an attempt to further support their assertion that the "manual review process" is just a freeze by another name, yesterday Plaintiffs filed a supplemental declaration attaching an e-mail from a FEMA employee who stated that "[c]urrently, all grants are still pending review for compliance with Executive Orders." ECF

---

exercise of agency discretion, based on concerns about funding illegal activities. *See* 2d Hamilton Decl. (ECF No. 166-1) ¶ 3; 1st Hamilton Decl. (ECF No. 102-1) ¶¶ 4-6; DHS Memorandum, *Direction on Grants to Non-governmental Organizations* (Jan. 28, 2025) (ECF No. 102-2). Indeed, one of those paused grant programs—the Shelter and Services Program—was the subject of Defendants' earlier pre-clearance motion, *see* ECF No. 102, which Plaintiffs did not oppose, *see* ECF No. 104, and which this Court denied as moot, *see* ECF No. 107. That particular pause, therefore, cannot possibly form the basis for Plaintiffs' allegations of noncompliance.

No. 169-1, Ex. C. As the attached declaration confirms, however, that individual employee is mistaken, FEMA has taken steps to correct that employee's understanding, and that employee's statement does not accurately reflect the current status of that particular payment request. *See* 3d Hamilton Decl. ¶ 27. A single employee's mistaken understanding is not a valid basis for concluding that the agency as a whole is violating the Court's injunction, particularly in the face of the attached declaration (and prior ones) from the current head of FEMA.

At bottom, FEMA's manual review process cannot be described as a "pause" or "freeze" of funding that would be subject to the Court's injunction. And to the extent there were any doubt, the First Circuit's decision yesterday on Defendants' stay motion confirms that this Court's injunction is limited to funding freezes, not ancillary practices like agency review and processing of payment requests:

> [W]e understand the scope of the District Court's preliminary injunction to operate on freezes that were implemented: (1) pursuant to the Unleashing EO and Guidance, the OMB Directive itself, or the other EOs referenced in the OMB Directive; and (2) regardless of whether the freezes began before the OMB Directive's issuance on January 27, 2025.

*New York v. Trump*, No. 25-1236 (1st Cir. Mar. 26, 2025), slip op. at 30; *see also id.* at 45 ("The order granting the preliminary injunction plainly enjoins the Agency Defendants from maintaining categorical 'funding freezes' based on the identified Executive Orders. And, as we have explained, 'funding freezes' are 'categorical' freezes on obligated funds."). Plaintiffs' enforcement motion—essentially arguing that FEMA's process for reviewing payment requests is too slow—has nothing to do with a categorical freeze on funding, let alone one undertaken pursuant to OMB Memo M-25-13 or any of the Executive Orders. Plaintiffs may think that FEMA's

review process is unlawful or inappropriate, but that is a dispute for a separate case—not a matter of compliance with this Court's injunction.

### B. The Manual Review Process Is Also Justified by FEMA's Independent Authorities

Even if this Court concluded that FEMA's manual review process operated as a categorical freeze on funding, that still would not establish a violation of the injunction. The Court's order also allows agencies to implement freezes as long as they do so on the basis of the agency's own authorities. *See* ECF No. 161 at 42-43 ("The Court's order does not prevent the Defendants from making funding decisions in situations under the Executive's actual authority in the applicable statutory, regulatory, or grant terms; rather it enjoins agency action that violates statutory appropriations and obligations." (citation omitted)); *New York v. Trump*, No. 25-1236 (1st Cir. Mar. 26, 2025), slip op. at 40 n.16 (explaining that the court's preliminary injunction "could not apply to a pause or freeze based on an individualized determination under an agency's actual authority to pause such funds."); *see also id.* at 43 ("The District Court's order granting the preliminary injunction does not bar all freezes in funding, however. It instead enjoins the discrete final agency actions to adopt the broad, categorical freezes challenged here.").

As relevant here, FEMA plainly has authority to review payment requests "to ensure reimbursement payment requests are allowable, allocable, and reasonable per each award's terms and conditions . . . and are free from fraud, waste, or abuse." 2d Hamilton Decl. ¶ 9. Under the applicable grant regulations, in order for costs to be allowable under an award, those costs must (among other things) "[b]e necessary and

-10-

reasonable for the performance of the Federal award and be allocable thereto," and "[b]e adequately documented." 2 C.F.R. § 200.403(a), (g); *see also id.* §§ 200.404-405. And FEMA has an obligation to "manage and administer [each] Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations . . . and the requirements of this part." *Id.* § 200.300(a); *see also* 2 C.F.R. § 3002.10 (DHS regulation adopting the general OMB regulations in 2 C.F.R. part 200). Thus, FEMA has independent regulatory authority to review payment requests to ensure they are appropriate and lawful before approving funds for disbursement.

Contrary to Plaintiffs' assertions, *see* Pls.' Mot. at 9, FEMA's manual review process implements and is justified by these regulatory authorities. *See* 2d Hamilton Decl. ¶¶ 5, 9-10. Plaintiffs cannot seriously dispute that agencies are entitled to ensure that payment requests are proper; indeed, Plaintiffs previously conceded that point in connection with one of Defendants' prior preclearance motions. *See* ECF No. 103 (Defendants seeking permission to continue implementing an agency process for ensuring that payments are lawful and appropriate); ECF No. 104 at 2 (Plaintiffs' non-opposition asserting that Defendants' motion was "unnecessary"); ECF No. 107 (Order denying Defendants' motion as moot). And as discussed previously, FEMA's manual review process is likewise longstanding in nature, as "[s]ix FEMA programs have historically been subject to a manual review process." 2d Hamilton Decl. ¶ 10. FEMA's decision to extend the manual review process to additional grant programs

is a lawful exercise of FEMA's own discretion and authorities under the regulations, which forecloses any assertion of injunction noncompliance.

Finally, Plaintiffs assert that FEMA's review process runs afoul of the regulations governing timing of payments, including the 30-day payment window set forth in 2 C.F.R. § 200.305(b)(3). *See* Pls.' Mot. at 8-9. As Plaintiffs note, however, that 30-day window does not apply to payments to States, *id.* at 8, and the regulation applicable to payments to States does not require payment on any specific timeline, only that "[t]he timing and amount of funds transfers must be as close as is administratively feasible to a State's actual cash outlay[.]" 31 C.F.R. § 205.33(a). Regardless, that timing regulation does not supersede FEMA's antecedent obligation to ensure that all payment requests are lawful and appropriate, and here FEMA has determined to use a manual review process in connection with such payment requests. Nothing in the regulations prohibits or limits FEMA's discretion to structure its review process in such a manner.

Again, Plaintiffs may disagree with FEMA's manual review process, and perhaps believe it is unlawful. But because FEMA has implemented that manual review process on the basis of its own authorities—not any of the enjoined authorities such as OMB Memo M-25-13 or any of the Executive Orders listed in that OMB Memo—FEMA has not violated the Court's preliminary injunction.

### III. The Attached Declaration Explains FEMA's Ongoing Manual Review, Highlighting that No Relief is Necessary

The above discussion demonstrates that, as a matter of law, FEMA's manual review process does not violate the Court's preliminary injunction. The Court should

thus deny Plaintiffs' motion without any further consideration of the facts. To the extent the Court believes further factual information regarding FEMA's manual review process is necessary, however, Defendants submit the attached declaration apprising the Court of the current status of FEMA's manual review process, which further highlights that injunctive relief invalidating FEMA's ongoing review processes would be inappropriate. *See* 3d Hamilton Decl. (attached hereto).

In particular, FEMA acknowledges that its manual review process may result in grantees waiting a longer time to receive payments on their grants compared to the prior system, but FEMA believes that the manual review is warranted to ensure all payments are lawful and appropriate, and FEMA is continuing to work to improve and expedite its manual review process. *See* 3d Hamilton Decl. ¶¶ 6-10. Given the many different grant programs and systems that FEMA administers, "the development and implementation of the manual review process has taken time" but "[t]he process continues to be refined and improved every day." *Id.* ¶ 9. FEMA currently expects that "it will be able to fully clear the backlog of grant payment requests within 90 days of the writing of this Declaration." *Id.* ¶ 10.

As to the specific payment requests identified in Plaintiffs' motion and accompanying declarations, FEMA is continuing to process and review them. *See id.* ¶¶ 22-26. For Hawai'i in particular, review is ongoing based in part on the concerns expressed in the Secretary's January 28, 2025 memorandum regarding funds provided to non-governmental organizations being used to promote illegal activities. *See id.* ¶ 22; ECF No. 102-2. Given the seriousness of those concerns and extent of

review required, FEMA cannot commit to a particular timeframe for acting on the pending payment requests from Hawai'i. *See id.* ¶ 22.

As for the other States that have submitted declarations, Colorado does not indicate that it has attempted to submit any payment requests since March 19, 2025, which is when FEMA distributed instructions to grantees about how to submit payment requests through the ND Grants system in light of the recently discovered issue with PARS that FEMA was working to correct. *See* 3d Hamilton Decl. ¶ 11 (discussing the new instructions distributed to grantees); 2d Hamilton Decl. ¶ 27 (discussing this previously unknown issue); *see also* Colorado Decl. (ECF No. 168-3) ¶¶ 7-20 (discussing various payment requests, or attempts to submit payment requests, none of which appears to be after March 17, 2025). As for Oregon's declaration, it is similarly not specific as to when the State attempted to submit payment requests, and at least some of their issues may likewise have been attributable to the now-corrected PARS issue. *See* Oregon Decl. (ECF No. 168-2) ¶ 18 ("Many of OEM's FEMA grants are hosted on the PARS platform."). In any event, FEMA's declaration confirms that FEMA is working to process the payment requests it has received from those States. *See* 3d Hamilton Decl. ¶¶ 22-26.

In sum, the attached declaration confirms that FEMA is working to process the Plaintiff States' payment requests, while also seeking to implement its manual review process across the wide number of grants and systems that FEMA administers. That implementation process has taken some time, but FEMA continues to work to improve the process, which underscores that injunctive relief

from this Court—invalidating or otherwise overseeing FEMA's ongoing efforts to improve grant processing—would be inappropriate.

## IV.  Any Relief Should Be Limited

For the foregoing reasons, the proper course is to deny Plaintiffs' motion. Out of an abundance of caution, however, Defendants also emphasize that the relief requested by Plaintiffs is both vague and intrusive. *See* Pls.' Mot. at 10 (requesting that the Court "order FEMA to immediately halt the challenged practice," without ever defining what Plaintiffs understand the challenged practice to encompass). Accordingly, any relief that the Court orders should be substantially more limited.

Specifically, to the extent the Court does enter relief, such relief should—at most—direct FEMA to act on the Plaintiff States' payment requests within seven days of any such request. That would approximately accord with Plaintiffs' own asserted timeframe for prior receipt of funds from FEMA. *See* ECF No. 168-1 ¶ 13 ("In the past, it typically took approximately 1 week for the state to receive federal funds from a PMS drawdown request."). Such an order, although intrusive and unwarranted, would fully resolve Plaintiffs' concerns about delays in the processing of their payment requests. For that reason, there is certainly no need or basis for the Court to issue a broader order, such as invaliding FEMA's manual review process as a whole—a process which FEMA currently applies (and has historically applied) to numerous grant programs and entities not at issue in this case.

Additionally, to the extent the Court deems it necessary to order dissemination of its prior or subsequent orders to employees within FEMA, the Court should not require Defendants to provide "the names of recipients of the notice." Pls.' Mot. at 10.

That would be highly burdensome to compile, especially on Plaintiffs' requested 48-hour timeline (which is itself arbitrary and unnecessary). Moreover, Plaintiffs have not demonstrated any plausible need for knowing the names of all FEMA employees who are considered "leadership" or "who administer . . . grants and other federal financial assistance." Pls.' Mot. at 10. Creating (let alone filing) such a list would threaten the personal privacy interests of numerous individuals not directly involved in this lawsuit. There is plainly no basis for such a list of names, and this Court should not order Defendants to prepare or submit such a list, even if it otherwise grants Plaintiffs' motion.

## Conclusion

Plaintiffs' renewed second motion to enforce the preliminary injunction with respect to FEMA funding, ECF No. 168, should be denied.

Dated: March 27, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director

DANIEL SCHWEI
Special Counsel

*/s/   Andrew F. Freidah*
ANDREW F. FREIDAH
EITAN R. SIRKOVICH
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530

          Tel.:  (202) 305-0879
          Fax:  (202) 616-8470
          Email:  andrew.f.freidah@usdoj.gov

*Counsel for Defendants*

## CERTIFICATION OF SERVICE

      I hereby certify that on March 27, 2025, I electronically filed the within Certification with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System, thereby serving it on all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 305.


                                                  /s/ *Andrew F. Freidah*
                                                  Andrew F. Freidah