UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,<br><br>    Defendants. | Civil Action No. 1:25-cv-39 (JJM) |

## **THIRD HAMILTON DECLARATION**

I, Cameron Hamilton, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am the Senior Official Performing the Duties of the Administrator, Department of Homeland Security (DHS or Department), Federal Emergency Management Agency (FEMA). The Senior Official Performing the Duties of the FEMA Administrator is the DHS official responsible for being the principal advisor to the President and Secretary of Homeland Security (Secretary) for all matters related to emergency management in the United States.

2. The statements made in this Declaration are based on my personal knowledge, on information provided to me in my official capacity, reasonable inquiry, and information obtained from various records, systems, databases, Department of Homeland Security employees, and information portals maintained and relied upon by the Department of Homeland Security in the regular course of business, and on my evaluation of that information.

3. In this Declaration, I incorporate by reference all the information in my earlier declaration filed with the Court on March 14, 2025. (March 14 Declaration) ECF No. 166-1. I also previously submitted a declaration dated February 11, 2025. ECF No. 102-1.

4. It is my understanding that on March 24, 2025, Plaintiffs filed a motion seeking to enforce the Court's Preliminary Injunction, claiming that FEMA is not in compliance with the Court's previously issued Preliminary Injunction. To the best of my knowledge FEMA continues to comply with the Preliminary Injunction.

5. This Declaration provides an update of the status of FEMA's implementation of the manual review process as described in my March 14 Declaration.

6. As stated in the March 14 Declaration, all requests for reimbursement related to FEMA grants are currently required to go through a manual review process prior to funds being disbursed. This process was started in response to the Secretary's January 28, 2025, memorandum and was formalized by me through the issuance of Grant Processing Guidance on February 14, 2025 (ECF No. 166-7). For the reasons stated in the March 14 Declaration, the manual review process is justified by and permissible under FEMA's independent regulatory authorities, including because it complies with the payment regulations governing Federal grant awards at 2 C.F.R. § 200.305 as well as Treasury-State Cash Management Improvement Act (CMIA) agreements.

7. The Department and FEMA believes that there are good reasons for instituting the manual review process for all grant reimbursement requests, the most important of which is to ensure consistency with the law and prevent fraud, waste, and abuse. The increased manual review process provides FEMA with increased internal controls which allows FEMA to confirm that each payment disbursed under a grant is supported by proper programmatic

and financial documentation, the conditions for the award are met, that high-risk transactions are flagged for further review, that the request is eligible under program regulations and/or guidance, that the request aligns with the program's Notice of Funding Opportunity (NOFO), and complies with federal financial regulations, including 2 C.F.R. Part 200. Further, the manual review process gives FEMA the ability to verify that each individual cost is eligible, allowable, allocable, reasonable, necessary, and aligns with the program award's terms and conditions. The manual review process is not intended to stymie preparedness, mitigation, and disaster recovery activities carried out by the States with FEMA grant funding. It simply gives FEMA a greater ability to monitor grant payments for compliance with all legal, financial, and programmatic requirements, including the grant's NOFO and grant conditions.

8. For most FEMA grants, the manual review process constituted a significant change in the way payments for grants were issued. Under the previous process, grant recipients were able to drawdown grant money without FEMA approving the individual payment. FEMA did not directly review documentation on the reason for the drawdown or the costs associated with it after the money was already withdrawn. FEMA's manual review process will likely result in some grant payments taking longer to process and approve, particularly as FEMA works to develop and implement its review process across multiple different grant programs, especially compared to timeframes under the prior system. But FEMA's manual review process is not a pause, freeze, or withholding of grant funds, as discussed in my March 14 Declaration. FEMA continues to work to improve and expedite its manual review process going forward. In fact, I can confirm that FEMA has already made payments since instituting the manual review process. On March 19, 2025, FEMA released funds to the State of Missouri for the Emergency Management Performance Grant Program (EMPG) and

Cooperative Technical Partners (CTP) program. On the same day, payments were issued under the Urban Search & Rescue (US&R) program for local Task Forces located in the following states: Massachusetts, Missouri, Ohio, Maryland, Colorado, Utah, Nevada, Washington, California, Florida, New Jersey, Pennsylvania, Nebraska, Indiana, and Texas.

9. Given that FEMA's grant awards have different terms and conditions, statutory, and regulatory requirements, as well as different payment systems, there is no "one size fits all" process by which FEMA can effectively review grant payments. It has taken time for FEMA to develop the manual review process. In part because doing so has involved engagement with multiple FEMA program, financial, and regional offices. Different processes had to be developed for FEMA's disaster, non-disaster, and mitigation grants. For that reason, the development and implementation of the manual review process has taken time. The process continues to be refined and improved every day.

10. I can confirm that FEMA has begun applying the manual review process to process grant payments and will continue to do so as quickly as permissible. FEMA staff have already begun to extract drawdown amendment requests from ND Grants and FEMA GO and begun a programmatic and financial review of the requests. FEMA believes it will be able to fully clear the backlog of grant payment requests within 90 days of the writing of this Declaration.

11. On March 19, 2025, FEMA distributed information and detailed instructions to all its grant recipients regarding the manual review process for non-disaster grants. Exhibit 1. These are the instructions that I discussed in paragraph 27 of my March 14 Declaration. At the time I expected the new process for submitting payment requests through ND Grants to be functional on or around March 14, 2025 with instructions to be distributed to grant recipients shortly thereafter. However, further coordination resulted in the new process

becoming functional and instructions being distributed on March 19, 2025. Since being provided these instructions, FEMA grant recipients have submitted 271 requests for payment or amended their earlier payment requests for 27 of the GPD grant programs. FEMA continues to work closely with our grant recipients to assist them with the manual review process. If additional information is needed from the grant recipient, a request for information will be submitted and recipients are strongly encouraged to respond within three business days.

12. On March 25, 2025, FEMA began training hundreds of employees daily on the manual review process. The training focuses on reviewing grant payment requests for completeness, accuracy, and compliance with all applicable laws, regulations, and grant terms and conditions. Once payment requests are received by FEMA, employees are being trained to immediately begin the manual review process to ensure that payments, once approved, are quickly distributed to our grant recipients. We are moving as fast as we can so that approved payments can begin as soon as feasible.

13. The manual review process involves several steps, each designed to ensure that payments made to grant recipients are consistent with the terms and conditions of the grant, all applicable laws and regulations, as well as FEMA and the Department's priorities. These steps are necessary to ensure that the funds are used for the statutory purpose of the grant and to safeguard taxpayer funds. The process is complicated by the fact that FEMA uses multiple grant and payment systems for the programs it administers.

14. Individual Assistance (IA) is conducting a manual review of payments on its community services grants: Disaster Case Management (DCM), Crisis Counseling Program (CCP), and Disaster Legal Services (DLS). As part of this review, FEMA staff will compile details on the

recipients to seek clearance to release payments, while also pursuing adjustments that will further reduce risk on these programs so FEMA can return to a more routine grant review and approval process. For some programs such as Disaster Unemployment Assistance (DUA), FEMA has successfully moved through a review process and are able to resume approvals and movement of those programs. For some programs, the manual review may also require Department approval for payments, based on the Secretary's January 28, 2025, Memorandum.

15. FEMA's manual review process for the Public Assistance (PA) grant payment requests is designed to ensure that federal disaster funds are appropriately allocated and that projects comply with existing laws and policies. The process requires both a programmatic and financial review of reimbursement requests and ensures that all payments expenses are reasonable, necessary, and allowable under the terms and conditions of the PA program, including compliance with existing laws and policies. Once reimbursement requests are approved, they are routed to FEMA and Department leadership for final approval before being released to PA recipients.

16. FEMA's manual review of non-disaster grant payment requests is a three-step process. Once a payment request has been received, the first step of the process is a programmatic review of the reimbursement request and supporting documentation by the FEMA program officers. If additional program information needs to be submitted by the recipient, a request for information will be submitted with a requested response within 3 business days. As part of this review and verification, grant program offices will confirm that all the conditions for the award are met, that high-risk transactions are flagged for further review, that the request is eligible under program regulations and/or guidance, and that the request aligns with the program's NOFO. This includes verifying that the individual requests are eligible, allowable,

allocable, reasonable, necessary, and align with the program's terms and conditions. FEMA grant program staff will then recommend approval or disapproval of the grantee's reimbursement request to FEMA leadership, the Department, and/or the Secretary, depending on the grant program, for final approval.

17. The second step of the non-disaster grant manual review process described above is a review by FEMA financial grant management specialists (GMS). GMS will ensure that all the financial documentation supporting the drawdown of grant funds is submitted into the system. The type of supporting documentation needed is dependent on the grant program and could include budget tracking documents showing the approved budget and actual expenditures of the grant project, cost summary sheets detailing the costs covered by the drawdown request, and other documentation supporting the costs claimed (e.g., invoices, cost breakdowns, and cost justifications). If additional financial information needs to be submitted by the recipient, a request for information will be submitted with a requested response within 3 business days. This financial review will verify that the reimbursement requests comply with federal financial regulations, including 2 C.F.R. Part 200. In addition, FEMA GMS will confirm that the relevant expenses are reasonable, necessary, and allowable per the grant's NOFO and award conditions. This will include verifying that the costs were incurred within the grant's period of performance and that the expenditures align with the project's budgeted costs. FEMA GMS will then recommend approval or disapproval of the grantee's reimbursement request to FEMA leadership, the Department, and/or the Secretary, depending on the grant program, for their final approval.

18. The third and final step of the manual review process, following final approval by FEMA leadership, the Department, and/or the Secretary, program, financial, and regional offices, is that FEMA will process the payment request through the relevant grant system. This

requires FEMA staff to upload the final determination into the grant file. As stated above, because FEMA grant payments are administered through several different systems, the technical process for final release of the funds will vary depending on the grant program. However, once the final determination has been made and uploaded into the respective system, the approved funds will be made available to the grantee.

19. If a reimbursement request is denied, grant recipients will be notified and may be able to submit a new reimbursement request.

20. FEMA's manual review process for mitigation grants (e.g. HMGP, BRIC, PDM. FMA, STRLF, NDSP, HHPD, CAP-SSSE) is designed to ensure that federal mitigation funds are appropriately allocated and that projects comply with existing laws and policies. The process requires both a programmatic and financial review of reimbursement requests and ensures that all payments expenses are reasonable, necessary, and allowable under the terms and conditions of the mitigation program, including compliance with existing laws and policies.

21. As to the specific payment requests addressed in Plaintiffs' motion:

22. Hawaii: The Disaster Case Management Program (DCMP) is part of the Individual Assistance manual review. Individual Assistance is conducting a manual review of these grants and is collecting information regarding the request for payment referenced in the motion regarding more specifics as to the identity of the providers of the services, and the nature of the services provided. Once this information is collected, it will be provided to the Department for review and approval. This is consistent with the Secretary's January 28, 2025 memorandum and the concerns expressed in that memorandum. I understand that Hawaii has expressed concerns about the timing of its payments; FEMA is actively reviewing

Hawaii's payment requests but cannot commit to a particular timeframe for doing so given the Department's concerns about ensuring that federal funds provided to nongovernmental organizations do not promote illegal activities, as expressed in the Secretary's January 28, 2025 memorandum.

FEMA is currently reviewing payment requests from Hawaii under the following grant programs under the manual review process described above in paragraphs 16 to 18.

- FY 2023    Assistance to Firefighters Grants (AFG)
- FY 2023    Cooperating Technical Partners (CTP)
- FY 2023    Homeland Security National Training Program- National Domestic Preparedness Consortium (HSNTP-NDPC)
- As of the filing of this Declaration, payments are set to be made for Hawaii's FY 2022, FY 2023, and FY 2024 Emergency Management Performance Grants (EMPG) pending final approval. FEMA is working as quickly as possible on the final approval process.

23. Oregon:  FEMA is currently reviewing payment requests from Oregon under the following grant programs under the manual review process described above in paragraphs 16 to 18.

- FY 2023    Cooperating Technical Partners (CTP)
- FY 2024    Cooperating Technical Partners (CTP)
- FY 2019    Staffing for Adequate Fire and Emergency Response (SAFER)
- FY 2020    Staffing for Adequate Fire and Emergency Response (SAFER)
- FY 2021    Staffing for Adequate Fire and Emergency Response (SAFER)
- FY 2022    Staffing for Adequate Fire and Emergency Response (SAFER)
- FY 2023    Assistance to Firefighters Grants (AFG)

The Individual State Earthquake Assistance (ISEA) grant program is still under review by FEMA and DHS for further direction on the best process for conducting a manual review. FEMA is working as quickly as possible to implement the manual review for such programs.

As of the filing of this Declaration, payments are set to be made for Oregon's FY 2023 and FY 2024 EMPG, its FY 2022 State Homeland Security Grant Program (SHSGP), and a Staffing for Adequate Fire and Emergency Response (SAFER) award for Marion County Fire District No. 1 pending final approval. FEMA is working as quickly as possible on the final approval process.

24. Colorado: FEMA is currently reviewing payment requests from Colorado under the following grant programs under the manual review process described above in paragraphs 16 to 18.

- FY 2020    Assistance to Firefighters Grants (AFG)
- FY 2021    Assistance to Firefighters Grants (AFG)
- FY 2021    Staffing for Adequate Fire and Emergency Response (SAFER)
- FY 2022    Assistance to Firefighters Grants (AFG)
- FY 2022    Fire Prevention and Safety (FP&S)
- FY 2023    Cooperating Technical Partners (CTP)
- FY 2023    Homeland Security National Training Program- National Domestic Preparedness Consortium (HSNTP-NDPC)
- FY 2023    Staffing for Adequate Fire and Emergency Response (SAFER)

The Hazardous Materials Emergency Preparedness, grant program is still under review by FEMA and DHS for further direction on the best process for conducting a manual review. As noted above, FEMA is working as quickly as possible to implement the manual review for such programs.

25. Arizona: FEMA is currently reviewing payment requests from Arizona under the following grant programs under the manual review process described above in paragraphs 16 to 18.

- FY 2020    Fire Prevention and Safety (FP&S)
- FY 2020    Staffing for Adequate Fire and Emergency Response (SAFER)
- FY 2021    Assistance to Firefighters Grants (AFG)
- FY 2021    Fire Prevention and Safety (FP&S)
- FY 2022    Assistance to Firefighters Grants (AFG)
- FY 2022    Fire Prevention and Safety (FP&S)
- FY 2022    Staffing for Adequate Fire and Emergency Response (SAFER)
- FY 2023    Assistance to Firefighters Grants (AFG)
- FY 2023    Fire Prevention and Safety (FP&S)
- FY 2023    Staffing for Adequate Fire and Emergency Response (SAFER)
- FY 2023    Urban Search and Rescue (US&R)
- FY 2024    Urban Search and Rescue (US&R)

As of the filing of this Declaration, payments are set to be made for Arizona's FY 2022 State and Local Cybersecurity (SLCGP) and FY 2022 Urban Area Security Initiative (UASI) grant program pending final approval. FEMA is working as quickly as possible on the final approval process.

26. Illinois: FEMA is currently reviewing payment requests from Illinois under the following grant programs under the manual review process described above in paragraphs 16 to 18.

- FY 2020    Staffing for Adequate Fire and Emergency Response (SAFER)
- FY 2021    Assistance to Firefighters Grants (AFG)
- FY 2021    Staffing for Adequate Fire and Emergency Response (SAFER)

- FY 2022    Assistance to Firefighters Grants (AFG)
- FY 2022    Staffing for Adequate Fire and Emergency Response (SAFER)
- FY 2023    Assistance to Firefighters Grants (AFG)
- FY 2023    Fire Prevention and Safety (FP&S)
- FY 2023    Staffing for Adequate Fire and Emergency Response (SAFER)

As of the filing of this Declaration, payments are set to be made for Illinois's FY 2022 and FY 2023 State Homeland Security Grant Program (SHSGP) and its FY 2021 Urban Area Security Initiative (UASI) grant program pending final approval. FEMA is working as quickly as possible on the final approval process.

27. In addition, it is my understanding that after business hours on March 26, 2025, Plaintiffs filed a Notice of Supplemental Filing attaching an Affidavit of R. Henry Weaver regarding Illinois grants. In the Affidavit, Mr. Weaver states that on March 25, 2025, a FEMA employee responded to Mr. Weaver's notice that he had submitted a grant payment request under the manual review process and stated: "Currently, all grants are still pending review for compliance with Executive Orders. We are waiting for further guidance for when we can approve payment requests. I'll provide an update as soon as possible." This email is not accurate. FEMA is not holding grant payments "pending review for compliance with Executive Orders." FEMA has identified this employee and has corrected this employee's misunderstanding. This employee has also been instructed to immediately attend the manual review training on March 27, 2025. Moreover, FEMA has informed the employee that if the employee sent the same or a similar message to any other grant recipients to immediately notify these recipients that FEMA is not withholding grant payments pending review for compliance with Executive Orders. As to the grant identified in Mr. Weaver's Affidavit, the Individual State Earthquake Assistance (ISEA) grant program is still

under review by FEMA and DHS for further direction on the best process for conducting a manual review. FEMA is working as quickly as possible to implement the manual review for such programs.

Executed this 27th day of March 2025

Cameron Hamilton
Senior Official Performing the Duties of Administrator