## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | |
| v. | C.A. No. 1:25-cv-00039 |
| DONALD TRUMP, in his official capacity as President of the United States; et al., | |
| Defendants. | |

## PLAINTIFFS' REPLY IN SUPPORT OF RENEWED SECOND MOTION TO ENFORCE

Defendants have been halting Federal Emergency Management Agency ("FEMA") disbursements for "manual review" since early February, with no clear statement or explanation of when this process will end. Defendants do not dispute this fact. They say that, under their "manual review process," FEMA funds may disburse "within 90 days." ECF 172 at 13. That said, as to disaster assistance for the victims of the Maui wildfires, "FEMA cannot commit to a particular timeframe for acting on the pending payment requests." *Id.* at 14. This policy, by whatever name Defendants choose to call it, constitutes "a categorical pause or freeze of funding appropriated by Congress" and violates the Court's preliminary injunction order. ECF 161 at 44 ¶ 2. Moreover, a March 20, 2025, FEMA memorandum and accompanying chart of programs sorted by "risk" of "touch[ing] in any way on immigration" or involving "sanctuary jurisdictions," which Plaintiff States did not obtain until March 27, 2025, and which Defendants have never disclosed, strongly suggests that the current funding freeze at FEMA stems directly from the January 20, 2025 executive order titled "Protecting the American People Against Invasion" (*Invasion* EO). Exec. Order 14159, 90 Fed. Reg. 8443 (Jan. 29, 2025). The memorandum and its attachments are attached as Exhibit 1. The freeze at FEMA therefore was also "dictated, described, or implied by

Executive Orders issued by the President before rescission of the OMB Directive." ECF 161 at 44 ¶ 2.

The Department of Homeland Security ("DHS") and its subdivision FEMA are in violation of the Court's preliminary injunction order. Plaintiff States seek only the limited relief of a more specific command that FEMA halt its unlawful funding freeze, which inflicts ever-increasing harms on the States and their sub-grantees. That relief should be granted.

## BACKGROUND

Because new facts come to light daily in this matter, Plaintiff States will again lay out a comprehensive timeline of events.

On January 20, 2025, the President issued the *Invasion* EO, which contained two provisions relating specifically to federal funding pleaded in the First Amended Complaint. *See* ECF 114 ¶ 109. First, section 17 provides that the Secretary of DHS "shall … evaluate and undertake any lawful actions to ensure that so-called 'sanctuary' jurisdictions … do not receive access to Federal funds." 90 Fed. Reg. at 8446. Second, section 19 requires a "funding review" under which the Secretary of DHS "shall: (a) Immediately review and, if appropriate, audit all contracts, grants, or other agreements providing Federal funding to non-governmental organizations supporting or providing services, either directly or indirectly, to removable or illegal aliens … [and] (b) Pause distribution of all further funds pursuant to such agreements pending the results of the review in subsection (a)." *Id.* at 8447.

Within a week, and the day after OMB issued its funding freeze directive (OMB M-25-13), DHS took specific actions to implement sections 17 and 19 of the *Invasion* EO. As to section 19 of the *Invasion* EO, on January 28, 2025, in a document that Defendants have previously disclosed, DHS Secretary Kristi Noem mandated what she called a "freeze" on "all Department grant disbursements" that "(1) go to non-profit organizations or for which non-profit organization are

eligible, and (b) touch in any way on immigration." ECF 166-2 at 1. DHS put all such funds "on hold pending review." *Id.* Then, as to section 17, on February 19, 2025, Secretary Noem issued a memorandum titled "Restricting Grant Funding for Sanctuary Jurisdictions." This memorandum has not been disclosed by Defendants, was not available to Plaintiff States at the filing of their pending Motion, and is attached here as Exhibit 2. The memorandum provides a list of criteria to define the term "sanctuary jurisdictions," which was left undefined by the *Invasion* EO. *See* Ex. 2 at 1–2. It then directs "[a]ll components" of DHS, such as FEMA, to "cease providing federal funding to sanctuary jurisdictions." *Id.* at 2.

FEMA instituted the ongoing funding freeze in order to comply with these directives, as is demonstrated by the March 20, 2025, memorandum attached as Exhibit 1. This memorandum, authored by the Acting FEMA Administrator, Cameron Hamilton, and directed to Secretary Noem, proposes FEMA's plan for compliance with Secretary Noem's January 28 and February 19 memoranda. Ex. 1 at 1. The FEMA memorandum proposes a "review process" in order "to align with *Administration* and Secretary priorities on non-governmental organizations, immigration, and sanctuary jurisdictions," *id.* (emphasis supplied)—priorities stemming from the *Invasion* EO. Secretary Noem signed her approval to the process on March 25, 2025. *Id.* at 3–4.

It appears from the memorandum and the appended chart, *id.* at 5 tbl. A, that every single FEMA grant program has been under a review process to assess whether to "Apply Sanctuary Jurisdiction," a clear reference to section 17 of the *Invasion* EO, and to assess the "Risk of NGO / Immigration," a clear reference to section 19 of the *Invasion* EO. As the FEMA memorandum explains, "FEMA has begun and will continue the individual grant award manual payment review process in preparation for the approach and methodology being approved." *Id.* at 10. In other

3

words, the "manual payment review process" that Defendants identify is an effort to implement the *Invasion* EO.

The public timeline, and facts to which Defendants have already admitted, corroborate what the FEMA memorandum plainly says. On February 10, 2025, Stacey Street, Director of the Office of Grants Administration at FEMA, sent an email to all staff directing them to "put financial holds on *all* of your awards – all open awards, all years." ECF 166-4 (emphasis in original). The next day, Street sent another email trying to emphasize that **"these are not 'holds.'"** ECF 166-5 at 2 (emphasis in original). She stated that "'[h]olds' implies what we were directed to originally due [sic] with OMB M-25-13, which was rescinded and a TRO injunction placed." *Id*. She claims that "we will still be processing our awards but will be adding a level of internal controls." *Id.*

Nearly two months later, Plaintiff States are still waiting for this "processing" to happen. Plaintiff States have put abundant evidence in the record that their FEMA grants remain frozen to this day, with no public explanation offered. ECF 168-1 ¶ 12; ECF 168-2 ¶ 20; ECF 168-3 ¶ 6; ECF 168-4 ¶¶ 5–7. Defendants do not dispute that reality; rather, they argue that it is the result of a "manual review." The most recent declaration from Acting Administrator Hamilton repeatedly intones that "FEMA is working as quickly as possible on the final approval process." ECF 172-1 ¶¶ 22–26. "FEMA believes it will be able to fully clear the backlog of grant payment requests within 90 days of the writing of this Declaration," *id*. ¶ 10, meaning June 25, 2025. As to earthquake preparedness grants, all FEMA can say is that it is "working as quickly as possible to implement the manual review." *Id.* ¶ 27. FEMA musters only two limited examples of any funds at all being disbursed, and those only on March 19. *Id.* ¶ 8. For instance, the Emergency Management Performance Grant Program funds core operations of state emergency management

agencies, ECF 68-99 ¶¶ 5, 12, yet only Missouri has apparently received any money at all under that program since the FEMA freeze went into effect, ECF 172-1 ¶ 8.

**ARGUMENT**

## I.    FEMA has instituted "a categorical pause or freeze of funding appropriated by Congress."

The crux of Defendants' argument is that their purported "review process" is not, as a matter of law, a "categorical pause or freeze of funding" in violation of the preliminary injunction. ECF 172 at 7–8. But this is fundamentally a factual question, not a legal one. The factual question is whether the practice that FEMA has instituted—Defendants can call it whatever they want— constitutes "a categorical pause or freeze of funding appropriated by Congress." ECF 161 at 44 ¶ 2. Likewise, the preliminary injunction makes clear that Defendants "may not take any steps to implement, give effect to, or reinstate under a different name or through other means the directive in the OMB Directive." *Id.* at 44 ¶ 3.

The undisputed facts show that the manual review implements a categorical freeze by another name. First, it is a freeze. Plaintiff States have not seen any substantial disbursement of funds on important grants since early February. ECF 168-1 ¶ 12; ECF 168-2 ¶ 20; ECF 168-3 ¶ 6; ECF 168-4 ¶¶ 5–7. Plaintiff States' experience aligns with the fact that internal FEMA emails show that "hold toggles" or "financial holds" were placed on "*all* of [FEMA] awards" on February 10, 2025. ECF 166-4. And Acting Administrator Hamilton admits that this situation is functionally indefinite in duration. For some grants, he cannot make any commitment at all as to when it will end. ECF 172-1 ¶¶ 22, 27. For others, there is a vague promise of June 25. *Id.* ¶ 10. Bafflingly, Defendants simultaneously maintain that issues with the PARS payment system have somehow been "corrected." ECF 172 at 14. But the citation for this fact is merely Administrator Hamilton's

description of the latest manual review process, ECF 172-1 ¶ 11, which appears only to be a road toward more indefinite pauses, ECF 169-1 at 22.

Second, the pause is categorical: in FEMA's words, "all open awards, all years." ECF 166-4. Acting Administrator Hamilton was able to name only a single program with disbursements to multiple States of the dozens that FEMA administers. ECF 172-1 ¶ 8. His March 20, 2025, memorandum to Secretary Noem shows that FEMA has been withholding funds while it is reviewing every single program for compliance with the *Invasion* EO, as discussed further in the next section. Ex. 1 at 5–9.

None of this review has anything to do with "applicable statutory, regulatory, or grant terms." ECF 161 at 43. First, as to grant terms, Defendants identify none. They make a vague suggestion that Tucker Act preclusion could apply due to "the specific terms and conditions of the relevant grant agreements," ECF 172 at 3, but they do not actually point to any term or condition that they could be relying on. Plaintiff States are not raising "individual contract or grant disputes." *Id.* at 4. FEMA chose to apply a categorical freeze on all disbursements under all grants without reference to any specific grant terms.

Finally, Defendants are wrong that general OMB regulations about award administration, 2 C.F.R. § 200.300, and allowable costs, *id.* § 200.403, create "independent regulatory authority" for their indefinite, categorical freeze. *See* ECF 172 at 10–11. These regulations describe overarching principles for federal grant administration but do not permit indefinite withholding of funds. The first requires the administering agency to appropriately communicate to grantees requirements to comply with the Constitution and federal nondiscrimination law. 2 C.F.R. § 200.300. It gives no power to a federal agency to freeze disbursement of obligated funds with no notice or explanation. The second merely sets forth categories of allowable costs. 2 C.F.R.

§ 200.403. Notably absent from Defendants' arguments are the actual remedies available to FEMA were it to believe a recipient in noncompliance, which are set forth in 2 C.F.R. §§ 200.208 and -.339. That is because there is no connection between Defendants' actions and the requirements of the applicable regulations. No regulation Defendants point to authorizes an agency to engage in an indefinite review of payments to the factual result that funds appropriated by Congress and obligated by FEMA are indefinitely impounded.

II.    **The categorical freeze was "dictated, described or implied by Executive Orders issued by the President before rescission of the OMB Directive."**

The March 20, 2025, FEMA memorandum now makes abundantly clear that the FEMA freeze has served specifically "to align with Administration and Secretary priorities on non-governmental organizations, immigration, and sanctuary jurisdictions." Ex. 1 at 1. The "manual payment review process" has been "in preparation for" FEMA's new review process to the same end. *Id.* at 10. The "priorities" of the "Administration" on "non-governmental organizations, immigration, and sanctuary jurisdictions" are laid out in the *Invasion* EO. *See* 90 Fed. Reg. 8443.

Acting Administrator Hamilton does not dispute that the indefinite pause stems, at least in substantial part, from Secretary Noem's January 28, 2025, memorandum. ECF 166-1 ¶ 11; ECF 172-1 ¶ 14. That memorandum, in turn, implemented section 19 of the *Invasion* EO on precisely the same subject. 90 Fed. Reg. at 8447. That it does not mention the *Invasion* EO by name does not change the analysis, as it is evident from the timing and content of the various memoranda that Secretary Noem and Acting Administrator Hamilton are in fact implementing the *Invasion* EO. *See Dep't of Comm. v. New York*, 588 U.S. 752, 785 (2019) (Courts "are 'not required to exhibit a naiveté from which ordinary citizens are free'" (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977)).

7

The situation on Maui illustrates the dire consequences of this indefinite review for compliance with the *Invasion* EO. The Lahaina fire "killed over 100 people and displaced thousands of Hawai'i residents from their homes." ECF 168-1 ¶ 3. Hawai'i relies on FEMA funds to "work with survivors to create unique disaster recovery plans that are individualized to each household." *Id.* ¶ 6. These services "will cease on **Friday, April 4, 2025**, due to insufficient funding." *Id.* ¶ 18. Yet FEMA avers that it "cannot commit to a particular timeframe" for funds to come back online, specifically because it is seeking to comply with "the Secretary's January 28, 2025 memorandum," ECF 172-1 ¶ 22, which imposed a "freeze," ECF 166-2 at 1, just as the *Invasion* EO required a "[p]ause [on] distribution of all further funds." 90 Fed. Reg. at 8447, § 19(b).

FEMA has not before revealed, however, that the ongoing freeze also stems from section 17 of the *Invasion* EO, directing agencies to cut off funding to "sanctuary jurisdictions." 90 Fed. Reg. at 8446. The March 20, 2025, FEMA memorandum makes that plain as well. The memorandum describes a process to ensure compliance with Secretary Noem's February 19, 2025 memorandum, including by "Apply[ing]" a "Sanctuary Jurisdiction" filter to every grant program that FEMA administers. Ex. 1 at 1, 5. Secretary Noem's February 19 memorandum, in turn, was issued in order to fulfill the purpose of section 17 of the *Invasion* EO. *See* Ex. 2.

Simply put, it has become clear that "FEMA's process for reviewing payment requests" was indeed "undertaken pursuant to OMB Memo M-25-13 or any of the Executive Orders," specifically the *Invasion* EO. *Contra* ECF 172 at 9. A FEMA employee, perhaps inadvertently, revealed exactly that in an email to the Illinois Emergency Management Agency – Office of Homeland Security on March 25, 2025. *See* ECF 169-1 at 22 ("Currently, all grants are still pending review for compliance with Executive Orders."). Acting Administrator Hamilton states

that this email was "not accurate" and that the employee in question has been sent for additional

training. ECF 172-1 ¶ 27. Administrator Hamilton also states that employee training on the manual

review process just started on March 25, *id.* ¶ 12, even though he also swore that the manual review

has been in place at least since February 10, ECF 166-1 ¶¶ 4, 6.

### III.    The Court should grant relief calculated to ensure that FEMA complies with the Court's preliminary injunction order going forward.

Finally, Defendants present arguments about the scope of the specific relief that should be

granted in response to Plaintiff States' motion. They request, first, that any enforcement order

require FEMA "to act on the Plaintiff States' payment requests within seven days of any such

request." ECF 172 at 15.  Defendants give no reasoning for this deadline, merely plucking it from

a range of timelines in which Plaintiff States *received* payment in the past, not on which FEMA

"act[ed] on" payment requests.  And it does not seem to be rooted in regulation; the regulation

FEMA has cited in communications with the Plaintiff States regarding payment timing requires

payment "'as close as is administratively feasible to a state's actual cash outlay . . . .'"  ECF 168-

4, Exhibit B (quoting 31 C.F.R. § 205.33(a)). It is also not clear what Defendants mean by "act

on," given that FEMA has communicated that one potential disposition of a payment request is

infinite requests for information, with 30-day periods of review, until FEMA is satisfied with the

response.   *Id.* Accordingly, Plaintiff States request immediate compliance with the Court's

preliminary injunction order, and a status report by Defendants within 48 hours on their

compliance.

Next, Defendants argue that there is no need to inform the Court of the employees who

received notice of this Court's order. Plaintiff States disagree. FEMA has engaged in blatant

disregard of the preliminary injunction in order to pursue the policy goals of the *Invasion* EO. *See*

Exs. 1 & 2. Requiring FEMA to file the list of employees who receive notice is a comparatively

mild method of ensuring that such notice was delivered. Defendants' privacy concerns, ECF 172 at 16, can be fully addressed by filing the list of individuals under seal, to which Plaintiff States would not object.

## **CONCLUSION**

For the foregoing reasons, and for those set forth in their motion, Plaintiff States respectfully request that the Court, under its inherent powers, order FEMA to immediately halt the challenged practice and to direct that notice of such order, along with notice of the court's preliminary injunction, or any forthcoming orders the Court deems relevant, be provided to FEMA's leadership, as well as all FEMA staff who administer these grants and other federal financial assistance, with confirmation of such notice, including the names of recipients of the notice, no later than 48 hours after such order.

Dated: March 31, 2025                              Respectfully Submitted,

**PETER F. NERONHA**                              **LETITIA JAMES**
Attorney General for the State of Rhode Island    Attorney General for the State of New York

By: */s/ Kathryn M. Sabatini*                     By: */s/ Rabia Muqaddam*
Kathryn M. Sabatini (RI Bar No. 8486)             Rabia Muqaddam*
Civil Division Chief                              Special Counsel for Federal Initiatives
Special Assistant Attorney General                Michael J. Myers*
Sarah W. Rice (RI Bar No. 10465)                  Senior Counsel
Deputy Chief, Public Protection Bureau            Molly Thomas-Jensen*
Assistant Attorney General                        Special Counsel
Leonard Giarrano IV (RI Bar No. 10731)            Colleen Faherty*
Special Assistant Attorney General                Special Trial Counsel
150 South Main Street                             Zoe Levine*
Providence, RI 02903                              Special Counsel for Immigrant Justice
(401) 274-4400, Ext. 2054                         28 Liberty St.
ksabatini@riag.ri.gov                             New York, NY 10005
srice@riag.ri.gov                                 (929) 638-0447
lgiarrano@riag.ri.gov                             rabia.muqaddam@ag.ny.gov
                                                  michael.myers@ag.ny.gov
                                                  Molly.Thomas-Jensen@ag.ny.gov
                                                  colleen.Faherty@ag.ny.gov
                                                  zoe.Levine@ag.ny.gov

**ROB BONTA**
Attorney General for the State of California

By: */s/ Laura L. Faer*
Laura L. Faer*
Supervising Deputy Attorney General
Christine Chuang*
Supervising Deputy Attorney General
Nicholas Green*
Carly Munson*
Kenneth Sugarman*
Theodore McCombs*
Marie Logan*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
Laura.Faer@doj.ca.gov
Christine.Chuang@doj.ca.gov
Nicholas.Green@doj.ca.gov
Carly.Munson@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Theodore.McCombs@doj.ca.gov
marie.logan@doj.ca.gov

**KWAME RAOUL**
Attorney General for the State of Illinois

By: */s/ Alex Hemmer*
Alex Hemmer*
Deputy Solicitor General
R. Henry Weaver*
Assistant Attorney General
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
Alex.Hemmer@ilag.gov
Robert.Weaver@ilag.gov

**ANDREA JOY CAMPBELL**
Attorney General for the Commonwealth of
Massachusetts

By: */s/ Katherine B. Dirks*
Katherine B. Dirks*
Chief State Trial Counsel
Turner Smith*
Deputy Chief, Energy and Environment
Bureau
Anna Lumelsky*
Deputy State Solicitor
1 Ashburton Pl.
Boston, MA  02108
(617.963.2277)
katherine.dirks@mass.gov
turner.smith@mass.gov
anna.lumelsky@mass.gov

**MATTHEW J. PLATKIN**
Attorney General for the State of New
Jersey

By: */s/ Angela Cai*
Angela Cai*
Executive Assistant Attorney General
Jeremy M. Feigenbaum*
Solicitor General
Shankar Duraiswamy*
Deputy Solicitor General
25 Market St.
Trenton, NJ 08625
(609) 376-3377
Angela.Cai@njoag.gov
Jeremy.Feigenbaum@njoag.gov
Shankar.Duraiswamy@njoag.gov

12

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: */s/ Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General
Nathan Arrowsmith*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Nathan.Arroswmith@azag.gov

**WILLIAM TONG**
Attorney General for the State of
Connecticut

By: */s/ Michael K. Skold*
Michael K. Skold*
Solicitor General
Jill Lacedonia*
165 Capitol Ave
Hartford, CT 06106
(860) 808 5020
Michael.skold@ct.gov
Jill.Lacedonia@ct.gov

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: */s/ Shannon Stevenson*
Shannon Stevenson*
Solicitor General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
shannon.stevenson@coag.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Vanessa L. Kassab*
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8413
vanessa.kassab@delaware.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Andrew Mendrala*
Andrew Mendrala*
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General for the District
of Columbia
400 Sixth Street, NW
Washington, DC 20001
(202) 724-9726
Andrew.Mendrala@dc.gov

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
Special Assistant to the Attorney General
Kalikoʻonālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

**AARON M. FREY**
Attorney General for the State of Maine

By: */s/ Jason Anton*
Jason Anton*
Assistant Attorney General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333
207-626-8800
jason.anton@maine.gov

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Linus Banghart-Linn*
Linus Banghart-Linn*
Chief Legal Counsel
Neil Giovanatti*
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov
GiovanattiN@michigan.gov

**AARON D. FORD**
Attorney General of Nevada

*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Adam D. Kirschner*
Adam D. Kirschner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6424
AKirschner@oag.state.md.us

**KEITH ELLISON**
Attorney General for the State of Minnesota

By: */s/ Liz Kramer*
Liz Kramer*
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
Liz.Kramer@ag.state.mn.us

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
Deputy Counsel
NM Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
505-270-4332
asamant@nmdoj.gov

**JEFF JACKSON**
Attorney General for the State of North Carolina

By: */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
Associate Deputy Attorney General
PO Box 629
Raleigh, NC 27602
919-716-6026
Dmosteller@ncdoj.gov


**CHARITY R. CLARK**
Attorney General for the State of Vermont

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
Solicitor General
109 State Street
Montpelier, VT 05609
(802) 793-1646
Jonathan.rose@vermont.gov


**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: */s Aaron J. Bibb*
Aaron J. Bibb*
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
BibbAJ@doj.state.wi.us


**DAN RAYFIELD**
Attorney General for the State of Oregon

By: */s/ Christina Beatty-Walters*
Christina Beatty-Walters*
Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Tina.BeattyWalters@doj.oregon.gov


**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: */s Andrew Hughes*
Andrew Hughes*
Assistant Attorney General
Leah Brown*
Assistant Attorney General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
leah.brown@atg.wa.gov

**OFFICE OF THE GOVERNOR** *ex rel.*
**ANDY BESHEAR**
in his official capacity as Governor of the
Commonwealth of Kentucky

By: /s/ S. Travis Mayo
S. Travis Mayo**
General Counsel
Taylor Payne**
Chief Deputy General Counsel
Laura C. Tipton**
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov


*Admitted *Pro Hac Vice*
***Pro Hac Vice* Motion forthcoming

EXHIBIT 1

**TABLE A: All FEMA Grant Programs and Recommended Review**

| AFT | Program | # of Open Awards | ULO Balance* | Risk of NGO / Immigration | Apply Sanctuary Jurisdiction | Recommended Determination |
|---|---|---|---|---|---|---|
| DRF | Community Disaster Loans (CDL) | 44 | $93,791,763 | Low | No | Cleared by FEMA |
| DRF | Disaster Unemployment Assistance (DUA) | 18 | $49,847,337 | Low | No | Cleared by FEMA |
| DRF | Fire Management Assistance Grants (FMAG) – previously included as part of Public Assistance – Grants to State & Local | 124 | $52,479,916 | Low | No | Cleared by FEMA |
| DRF | Hazard Mitigation Grant Program (HMGP) | 386 | $4,414,617,261 | Low | No | Cleared by FEMA |
| DRF | Hazard Mitigation Grant Program Post Fire (HMGP Post Fire) | 269 | $58,007,937 | Low | No | Cleared by FEMA |
| DRF | Individual and Households Program (IHP) | N/A | $380,898,640 | Low | No | Cleared by FEMA |
| DRF | Public Assistance – Grants to State & Local | 44,266 | $73,241,454,318 | Low | No | Cleared by FEMA |
| DRF | Urban Search and Rescue (US&R) | NA | $141,254,817 | Low | No | Cleared by FEMA |
| FA | Alliance for System Safety of Unmanned Aircraft Systems through Research Excellence (ASSURE) | 4 | $4,669,770 | Low | No | Cleared by FEMA |
| FA | Assistance to Firefighter Grants (AFG) | 3801 | $464,132,184 | Low | No | Cleared by FEMA |
| FA | Building Resilient Infrastructure and Communities (BRIC) | 1365 | $1,154,059,629** | Low | No | Cleared by FEMA |
| FA | Chemical Stockpile Emergency Preparedness Program (CSEPP) | 9 | $26,180,310 | Low | No | Cleared by FEMA |
| FA | Community Assistance Program State Support Services Element (CAP-SSSE) | 76 | $11,587,984 | Low | No | Cleared by FEMA |

| AFT | Program | # of Open Awards | ULO Balance* | Risk of NGO / Immigration | Apply Sanctuary Jurisdiction | Recommended Determination |
|---|---|---|---|---|---|---|
| FA | Cooperating Technical Partners (CTP) | 480** | $239,537,976** | Low | No | Cleared by FEMA |
| FA | Emergency Management Baseline Assessments Grant (EMBAG) | 3** | $127,416** | Low | No | Cleared by FEMA |
| FA | Emergency Operations Center (EOC) | 95 | $228,725,861 | Low | No | Cleared by FEMA |
| FA | Fire Prevention and Safety (FP&S) | 373 | $80,643,658 | Low | No | Cleared by FEMA |
| FA | Flood Mitigation Assistance (FMA) | 473 | $909,252,393 | Low | No | Cleared by FEMA |
| FA | Flood Mitigation Assistance Swift Current (FMA Swift) | 14 | $0** | Low | No | Cleared by FEMA |
| FA | Homeland Security Preparedness Technical Assistance Program (HSPTAP) | 4 | $406,557 | Low | No | Cleared by FEMA |
| FA | Homeland Security National Training Program (HSNTP) - National Domestic Preparedness Consortium (NDPC) | 17 | $134,067,348 | Low | No | Cleared by FEMA |
| FA | HSNTP– National Cybersecurity Preparedness Consortium | 5 | $16,906,852 | Low | No | Cleared by FEMA |
| FA | Intercity Bus Security Grant Program (IBSGP) | 59 | $2,905,029 | Low | No | Cleared by FEMA |
| FA | National Dam Safety Program and Rehabilitation of High Hazard Potential Dams Grant Program (HHPD) | 207 | $244,022,266 | Low | No | Cleared by FEMA |
| FA | National Earthquake Hazards Reduction Program (NEHRP) and Multi-State and National Earthquake Assistance (MSNEA) Grant Program | 62 | $4,876,775 | Low | No | Cleared by FEMA |
| FA | National Fire Academy Training Assistance (NFATA) | 10 | $1,446,388 | Low | No | Cleared by FEMA |

| AFT | Program | # of Open Awards | ULO Balance* | Risk of NGO / Immigration | Apply Sanctuary Jurisdiction | Recommended Determination |
|---|---|---|---|---|---|---|
| FA | National Incident Management System (NIMS) | 3 | $2,208,411** | Low | No | Cleared by FEMA |
| FA | National Urban Search and Rescue (US&R) | 153 | $66,105,406 | Low | No | Cleared by FEMA |
| FA | Next Generation Warning System Grant Program (NGWSGP)[1] | 3 | $134,196,015 | Low | No | Cleared by FEMA |
| FA | Pre-Disaster Mitigation (PDM) | 99 | $504,369,174 | Low | No | Cleared by FEMA |
| FA | Safeguarding Tomorrow Revolving Loan Fund/Safeguarding Tomorrow through Ongoing Risk Mitigation Act (STORM) | 9 | $51,397,697 | Low | No | Cleared by FEMA |
| FA | Staffing For Adequate Fire and Emergency Response (SAFER) | 1125 | $1,148,541,961** | Low | No | Cleared by FEMA |
| FA | State and Local Cybersecurity Grant Program (SLCGP) | 161 | $760,367,208 | Low | No | Cleared by FEMA |
| FA | State Fire Training Systems Grants (SFT) | 59 | $876,377 | Low | No | Cleared by FEMA |
| FA | Tribal Cybersecurity Grant Program (TCGP) | 31 | $17,620,204 | Low | No | Cleared by FEMA |
| FA | Tribal Homeland Security Grant Program (THSGP) | 77 | $42,539,321 | Low | No | Cleared by FEMA |
| DRF | Crisis Counseling Program (CCP) | 63 | $53,020,947 | Medium | No | Pending Review |

[1] The Corporation for Public Broadcasting has filed a lawsuit in the District of Columbia District Court on March 13, 2025, contending that FEMA's manual payment review process for NGWSGP awards was arbitrary and capricious in violation of the Administrative Procedures Act. If FEMA's recommended approach to categorizing the NGWSGP as "Cleared by FEMA" is approved, FEMA will make appropriate payments to the CPB using the manual payment review process.

| AFT | Program | # of Open Awards | ULO Balance* | Risk of NGO / Immigration | Apply Sanctuary Jurisdiction | Recommended Determination |
|---|---|---|---|---|---|---|
| DRF | Disaster Case Management (DCM) | 44 | $182,577,136 | Medium | No | Pending Review |
| DRF | Disaster Legal Services (DLS) | 11 | $95,000 | Medium | No | Pending Review |
| DRF | Public Assistance – NGOs | 7,234 | $8,498,374,550 | Medium | No | Pending Review |
| DRF | Public Assistance – Non-Congregate Sheltering | 284 | $1,297,129,208 | Medium | No | Pending Review |
| FA | Emergency Food and Shelter Program (EFSP) | 12 | $251,590,333 | Medium | No | Pending Review |
| FA | Nonprofit Security Grant Program (NSGP)[2] | 400 | $943,940,157 | Medium | No | Pending Review |
| FA | Emergency Management Performance Grant (EMPG) | 206 | $476,990,846 | Low | Yes | DHS Review |
| FA | Homeland Security Grant Program – Operation Stonegarden (OPSG) | 87 | $170,946,880 | Low | Yes | DHS Review |
| FA | Homeland Security Grant Program – State Homeland Security Program (SHSP) | 203 | $761,745,900 | Low | Yes | DHS Review |
| FA | Homeland Security Grant Program – Urban Area Security Initiative (UASI) | 104 | $1,919,725,009 | Low | Yes | DHS Review |
| FA | Homeland Security National Training Program (HSNTP) - Continuing Training Grants Program - Competitive (CTG) | 15 | $15,525,591 | Low | Yes | DHS Review |
| FA | Port Security Grant Program (PSGP) | 787 | $266,441,010 | Low | Yes | DHS Review |
| FA | Presidential Residence Protection Assistance (PRPA) | 2 | $2,241,788** | Low | Yes | DHS Review |
| FA | Regional Catastrophic Preparedness Grant Program (RCPGP) | 41 | $36,087,421 | Low | Yes | DHS Review |

[2] While State Administrative Agencies (SAA) are the direct recipients of NSGP funding, awards are passed through to nonprofit organizations that are not subject to the sanctuary jurisdiction conditions or restrictions as described in the criteria above. Management and Administration costs are allowable under this grant program and may be retained by SAAs.

| AFT | Program | # of Open Awards | ULO Balance* | Risk of NGO / Immigration | Apply Sanctuary Jurisdiction | Recommended Determination |
|---|---|---|---|---|---|---|
| FA | Targeted Violence and Terrorism Prevention Grant Program (TVTP) | 122 | $34,939,702 | Medium | Yes | DHS Review |
| FA | Transit Security Grant Program (TSGP) / Intercity Passenger Rail (IPR)*** | 84 | $283,147,532 | Low | Yes | DHS Review |
| FA | Case Management Pilot Program (CMPP) | 4 | $47,201,306 | High | Yes | DHS Review for Termination |
| FA | Emergency Food and Shelter Program – Humanitarian (EFSP-H)[3] | 3** | $46,050,064** | High | No | DHS Review for Termination |
| FA | Shelter and Services Program (SSP) | 156** | $887,107,461 | High | Yes | DHS Review for Termination |
| **TOTAL** | | | **$100.859B** | | | |

* ULOs are as of Jan. 28, 2025.

** Chart updated with revised figures. After further review, inaccuracies were identified in previous data that have now been corrected.[4] Previous FMA Swift Current number reflected unobligated amount rather than unliquidated.

*** Sanctuary jurisdiction conditions would apply to Transit Security Grant Program (TSGP) and not Intercity Passenger Rail (IPR).

---

[3] For EFSP-H, all spending periods for subawards have expired and the provision of services under the sunset program has ended. The remaining amount is funding reserved for management and administration (approximately $4 million) for the grantee and funds returned by the board.

**TABLE B: Summary of Unliquidated Obligation (ULO) by Recommended Risk Determination**

FEMA is reviewing all grants at a programmatic level, and also at the individual grant award level to understand the existing information available, and where additional research within the system can be conducted or where information from recipients will need to be collected. As the policy decisions and process are under development, FEMA has begun and will continue the individual grant award manual payment review process in preparation for the approach and methodology being approved. This manual review process requires significant staff time, but once the backlog is cleared, the process will operate on a much shorter processing time.

| Risk Determination | Disaster Grants ULO | Non-Disaster Grant ULO | Total | Backlog Processing Time* |
|---|---|---|---|---|
| Cleared by FEMA | $78,432,351,989 | $6,251,770,170 | $84,684,122,159 | 45 days |
| Pending FEMA Review | $10,031,196,841 | $1,195,530,490 | $11,226,727,331 | 90 days |
| Recommend DHS Review | N/A | $3,967,791,679 | $3,967,791,679 | 60 days |
| Recommended Terminated Programs | N/A | $980,358,831 | $980,358,831 | 60 days |
| **Total** | **$88,463,548,830** | **$12,395,451,170** | **$100.859B** | |

*This estimate includes the approximately 1,450 payment requests already submitted in FEMA grants systems only. It is not inclusive of the total ULO because payment requests will continue to be submitted for these programs as the work is completed throughout the period of performance, which for some programs may be up to three years.

**Appendix A**
**Federal Emergency Management Agency Grant Programs Overview**
**Background/Purpose**

On Feb. 19, 2025, Secretary Noem issued a memorandum *Restricting Grant Funding for Sanctuary Jurisdictions* and directed all components to review all federal financial assistance awards to determine if Department funds, directly or indirectly, are going to sanctuary jurisdictions (hereinafter "S1 Memo"). Appendix A below provides an overview of each FEMA administered grant program, to include the purpose of each grant program and the award criteria (i.e. whether the award criteria are discretionary or governed by statutory or regulatory competition, allocation, or eligibility criteria).

<span style="color:green">**Recommended Determination: Cleared by FEMA**</span>

1. **Community Disaster Loans (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: Provides funding for local governments to operate their essential community services after substantial revenue loss caused by a disaster.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

2. **Disaster Unemployment Assistance (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: Assistance to individuals unemployed as a result of a major disaster administered through a grant to the declared state or tribe.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

3. **Fire Management Assistance Grants (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: The mitigation, management, and control of any fire on public or private forest land or grassland that threatens such destruction as would constitute a major disaster.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

4. **Hazard Mitigation Grant Program (42 U.S.C. § 5170c)**

   <u>Purpose</u>: To help communities implement hazard mitigation measures, such as elevation, acquisition, and flood control projects, to reduce or eliminate long-term risk to people and property from natural hazards following a presidential major disaster declaration under the Stafford Act.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

5. **Hazard Mitigation Grant Program – Post Fire (42 U.S.C. § 5170c(a); 42 U.S.C. § 5187(d))**

<u>Purpose</u>: Makes assistance available to help communities implement hazard mitigation measures after wildfire disasters.

<u>Award Criteria</u>: Statutory and regulatory eligibility criteria. States, federally recognized tribes and territories affected by fires resulting in a Fire Management Assistance Grant (FMAG) declaration on or after Oct. 5, 2018, are eligible to apply.

**6. Individual and Households Programs (IHP) (42 U.S.C. §§ 5121, et seq.)**

<u>Purpose</u>: Provides financial and direct services to eligible individuals and households affected by a disaster, who have uninsured or under-insured necessary expenses and serious needs. IHP assistance is not a substitute for insurance and cannot compensate for all losses caused by a disaster. The assistance is intended to meet your basic needs and supplement disaster recovery efforts.

<u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

**7. Urban Search & Rescue (US&R) (42 U.S.C. §§ 5121, et seq)**

<u>Purpose:</u> Provides reimbursement for lifesaving rescue operations that were performed by Federal Urban Search and Rescue teams during declared disaster.

<u>Award Criteria</u>**:** Statutory and regulatory eligibility criteria.

**8. Public Assistance – State and Local (42 U.S.C. §§ 5121, et seq.)**

<u>Purpose</u>: Financial assistance to states, tribal, territorial, and local governments for debris removal, for emergency work to support public safety, and for the repair, restoration, reconstruction, or replacement of a public facility damaged or destroyed by a major disaster.

<u>Award Criteria</u>: Noncompetitive, but with statutory and regulatory eligibility criteria.

**9. Homeland Security National Training Program (HSNTP) – Alliance for System Safety of Unmanned Aircraft Systems through Research Alliance (Title III of the Department of Homeland Security Appropriations Act, 2024, (Pub. L. No. 118-47); Joint Explanatory Statement accompanying the Department of Homeland Security Appropriations Act, 2024)**

<u>Purpose</u>: Provides funding for Mississippi State University's Federal Aviation Administration Center of Excellence for Unmanned Aircraft Systems (ASSURE) to support and target training solutions for state, local, tribal and territorial partners, which supports the objective of the National Preparedness System to facilitate an integrated, whole community, risk-informed, capabilities-based approach to preparedness.

Award Criteria: Discretionary, limited statutory award criteria. Award goes to Mississippi State University's Federal Aviation Administration Center of Excellence for Unmanned Aircraft Systems.

### 10. Assistance to Firefighters (15 U.S.C. § 2229)

Purpose: Financial assistance to fire departments, EMS organizations, and state fire training academies to enhance their ability to protect the health and safety of the public, as well as that of firefighting and EMS personnel against fire, fire-related, and other hazards.

Award Criteria: Competitive award with statutorily mandated criteria and peer review and statutory allocation requirements.

### 11. Building Resilient Infrastructure and Communities (42 U.S.C. §§ 5133, 5136)

Purpose: Makes federal funds available to states, the District of Columbia, U.S. territories, federally recognized Tribal governments, and local governments for hazard mitigation activities. BRIC aims to shift the focus of federal investments away from reactive, post-disaster spending and toward research-supported, proactive investments in community resilience. These investments aim to reduce future disaster losses, including loss of life and property as well as future spending from the Disaster Relief Fund (DRF). BRIC focuses on cost-effective mitigation measures including protecting public infrastructure so that critical services can withstand or more rapidly recover from future disasters, as well as other projects and activities to increase resilience throughout the nation.

Award Criteria: For the FY23 NOFO, there was a State/Territory allocation, a Tribal Set-Aside, and a National Competition with the remaining funds that are not awarded from the State/Territory Allocation and Tribal Set-Aside.

### 12. Chemical Stockpile Emergency Preparedness Program (50 U.S.C. § 1521)

Purpose: To assist state, local, and tribal governments in carrying out functions related to emergency preparedness and response in connection with the disposal of the lethal chemical agents and munitions in the United States' lethal chemical agents and munitions that existed on Nov. 8, 1985.

Award Criteria: Eligibility limited to communities in close proximity to military installations storing chemical weapons. FEMA currently awards a cooperative agreement to Kentucky who in turn pass-through subawards to local governments.

### 13. Community Assistance Program – State Support Services Element (CAP-SSSE) (42 U.S.C. §§ 4101, 4102)

Purpose: CAP-SSSE is a cooperative agreement which provides funding to state National Flood Insurance Program (NFIP) Coordinators to monitor community adoption and enforcement of the minimum floodplain management standards required for participation in the NFIP. CAP-SSSE funding is used to provide technical assistance to NFIP communities, evaluate community performance in implementing floodplain management activities, and conduct community assistance contacts and visits to ensure communities are compliant with NFIP minimum requirements and flood insurance remains available for sale within the communities.

Award Criteria: Discretionary, non-competitive award to State NFIP Coordinators, which may subaward funding to local or municipal floodplain management authorities.

## 14. Cooperating Technical Partners (CTP) Program (42 U.S.C. § 4101)

Purpose: To provide assistance to state, local, tribal, university, and nonprofit organizations to increase local involvement in and ownership of flood hazard identification and assessment programs. Recipients assist in the development and maintenance of flood risk data, which is used to develop or amend Flood Insurance Rate Maps and provide the baseline for communities to prepare for and mitigate against flood risks.

Award Criteria: Discretionary. No statutory criteria.

## 15. Emergency Management Baseline Assessment Grant (6 U.S.C. § 112 (b)(2))

Purpose: To assist the updating and enhancement of a set of standards for emergency preparedness and response and a related assessment methodology for the evaluation of state, local, and territorial emergency management operations.

Award Criteria: Discretionary, no statutory award criteria.

## 16. Emergency Operations Center Grant Program (42 U.S.C. § 5196c)

Purpose: Grants made available to State Administrative Agencies (SAAs) for equipping, upgrading, and constructing state, local, and tribal emergency operations centers.

Award Criteria: Eligible Emergency Operations Center projects identified in the Joint Explanatory Statement.

## 17. Fire Prevention and Safety (15 U.S.C. § 2229)

Purpose: Financial assistance to fire prevention programs and support for firefighter health and safety research and development.

Award Criteria: Competitive award with statutorily mandated criteria and peer review and statutory allocation requirements.

**18. Flood Mitigation Assistance (42 U.S.C. § 4104c)**

Purpose: To fund mitigation projects such as elevation, acquisition, floodproofing, and planning that reduces or eliminates long-term risk of flood damage to structures insured under the NFIP.

Award Criteria: Statutory eligibility criteria. Award determinations and funding allocations among eligible jurisdictions are made on a competitive basis with discretion to add criteria.

**19. Flood Mitigation Assistance – Swift Current (42 U.S.C. § 4104c)**

Purpose: Provides funding to mitigate buildings insured through the National Flood Insurance Program (NFIP) after a major disaster declaration following a flood-related disaster event to reduce risk against future flood damage. Funds are made available to states, territories, and federally recognized tribal governments that receive a major disaster declaration following a flood-related disaster event and meet all other eligibility criteria.

Award Criteria: Funding is only available to property owners that have a current flood insurance policy under the National Flood Insurance Program (NFIP) and a history of repetitive or substantial damage from flooding.

**20. Homeland Security Preparedness Technical Assistance Program (6 U.S.C. § 112 (b)(2))**

Purpose: To help private organization recipients to conduct planning, coordination, and training activities related to emergency management and preparedness.

Award Criteria: Discretionary, no statutory award criteria.

**21. Homeland Security National Training Program (HSNTP) - National Domestic Preparedness Consortium (NDPC) (6 U.S.C. §§ 1102 and 112 (b)(2))**

Purpose: To assist statutorily designated National Domestic Preparedness Consortium members to identify, develop, test, and deliver training to state, local, and tribal emergency response providers; provide on-site and mobile training; and facilitate delivery of training.

Award Criteria: Discretionary, limited statutory award criteria. Awards may only go to one of the six non-Federal members of the National Domestic Preparedness Consortium named in statute, which consist of five state universities and one private entity.

**22. National Cyber Security Preparedness Consortium (National Cybersecurity Preparedness Consortium Act, 2021 (Pub. L. No. 117-122))**

Purpose: Delivers over 40 training courses for more than 1,000 SLTT emergency managers, cyber network managers, and critical infrastructure professionals, annually to strengthen local, state, and national cyber and information systems and defend against and recover from cyber-attacks including attacks with cascading physical consequences.

Award Criteria: Awards may only go to one of the six non-federal members of the National Domestic Preparedness Consortium named in statute, which consist of five state universities and one private entity.

**23. Intercity Bus Security Grant Program (6 U.S.C. § 1182)**

Purpose: To make awards to eligible private operators providing transportation by an over-the-road bus for security improvements.

Award Criteria: Discretionary, competitive award based on statutory criteria that require funding decisions to prioritize security risks. The eligible applicants are private bus operators and not states or local governments.

**24. National Dam Safety Program (33 U.S.C. § 467f)**

Purpose: To enable states to increase dam safety through increased inspections, emergency action planning, improved state and federal coordination, training and workshops, and purchasing of equipment.

Award Criteria: Awards are based on eligibility criteria that are set by statute with funding allocations based on a statutory formula.

**25. Rehabilitation of High Hazard Potential Dam Program (33 U.S.C. § 467f-2)**

Purpose: Provide technical, planning, design, and construction assistance in the form of grants for rehabilitation, repair, and removal of eligible high hazard potential dams.

Award Criteria: For FY 2024, FEMA made funding available in allocations for 32 states and one territory.

**26. National Earthquake Hazards Reduction Program – Multi-State and National Earthquake Assistance (MSNEA) (42 U.S.C. § 7704(a)(2)(B), (b)(2)(A)(i))**

Purpose: The National Earthquake Hazards Reduction Program (NEHRP) Multi-State and National Earthquake Assistance (MSNEA) grant program makes funds available to nonprofit organizations and institutions of higher education that possess the critical skills necessary to develop and implement regional (multi-state) and/or national earthquake risk mitigation activities.

Award Criteria: Discretionary. The program's authorizing statutes do not prescribe specific criteria for recipients. FEMA awards competitive grants to nonprofit organizations and institutions of higher education that possess the critical skills necessary to develop and implement regional (multi-state) and/or national earthquake risk mitigation activities, on behalf of states and territories participating in the FEMA NEHRP State Assistance program.

**27. National Earthquake Hazards Reduction Program – Individual State Earthquake Assistance (ISEA) (42 U.S.C. § 7704(b)(2)(A)(ix) and 42 U.S.C. § 7704(b) (2)(B))**

<u>Purpose:</u> FEMA awards non-competitive grants to eligible states and territories with high to very high seismic risks to fund one or more of the following allowable activities. The purpose is to support the establishment of earthquake hazards reduction programming and the implementation of earthquake safety, mitigation, and resilience activities at the state and local level.

<u>Award Criteria:</u> Statutory and regulatory eligibility criteria. Eligibility is limited to states and territories that have been determined to have a high or very high risk of earthquakes. Eligibility is further limited to those states and territories who can provide the statutory 25% non-federal cost share.

**28. National Fire Academy Training Assistance (Section 7 of the Federal Fire prevention and Control Act 15 U.S.C. 2206 (i)(1))**

<u>Purpose:</u> Provides travel stipends (air or mileage) to SLTT fire and EMS personnel who attend resident classes at the National Fire Academy.

<u>Award Criteria:</u> Assistance to individuals reimbursing for part of cost to attend trainings in Emmitsburg, MD

**29. National Incident Management System (NIMS) / Emergency Management Assistance Compact Program (EMAC) Program (6 U.S.C. § 761)**

<u>Purpose:</u> To assist the administrator of the Emergency Management Assistance Compact (EMAC) to administer EMAC operations, to implement NIMS, and to continue coordination with FEMA and state, local, and tribal governments.

<u>Award Criteria:</u> Eligibility limited to administration of the Emergency Management Assistance Compact (EMAC).

**30. National Urban Search and Rescue (US&R) Response System (42 U.S.C. § 5165f, 6 U.S.C. § 722)**

<u>Purpose:</u> The purpose of these Readiness Cooperative Agreements is to support the continued development and maintenance of a national urban search and rescue capability among the 28 task forces within the National Urban Search and Rescue Response System.

<u>Award Criteria:</u> Statutory and regulatory eligibility criteria. Only the 28 sponsoring agencies currently designated by FEMA as members of the National Urban Search and Rescue Response System are eligible for readiness and response cooperative agreements.

**31. Next Generation Warning System (Annual DHS Appropriations Acts)**

Purpose: Enables public television broadcasters to upgrade to the Advanced Television Systems Committee broadcast standard (ATSC 3.0) that enables public projects that improve the ability of remote rural areas to receive alerts and warnings.

Award Criteria: The Corporation for Public Broadcasting is the only awardee of the grant. Per the FY24 NOFO, the awardee will then manage a competitive process to solicit sub-grant applications from eligible subrecipients to use these funds in accordance with the requirements and priorities set forth in the NOFO.

### 32. Pre-Disaster Mitigation (42 U.S.C. § 5133)

Purpose: Makes federal funds available to state, local, tribal, and territorial governments to plan for and implement sustainable cost-effective measures designed to reduce the risk to individuals and property from future natural hazards, while also reducing reliance on federal funding from future disasters.

Award Criteria: The FY 2024 PDM Grant Program provided funding to projects identified in the 2024 DHS Appropriations Act's Joint Explanatory Statement (JES) in the table starting on page 59 entitled "Homeland Security Community Project Funding/Congressionally Directed Spending."

### 33. Safeguarding Tomorrow Through Ongoing Risk Mitigation Loan Fund Program (42 U.S.C. § 5135)

Purpose: Provides capitalization grants to states, eligible federally recognized tribal governments, territories and the District of Columbia to establish revolving loan funds that provide hazard mitigation assistance for local governments to reduce risks from natural hazards and disasters.

Award Criteria: Awards are based on eligibility criteria that are set by statute with funding allocations based on a statutory formula.

### 34. Staffing for Adequate Fire and Emergency Response (15 U.S.C. § 2229a)

Purpose: Financial assistance for increasing the number of firefighters to help communities meet industry standards and attain 24-hour staffing to provide adequate protection from fire and fire-related hazards.

Award Criteria: Competitive award program with statutorily mandated minimum application criteria and peer review.

### 35. State and Local Cybersecurity Grant Program (6 U.S.C. § 665g)

Purpose: To assist state, local, and territorial governments with managing and reducing systemic cyber risk.

Award Criteria: Mandatory, allocations to each state and territory based on statutory formula with the remainder to the states based on population.

**36. State Fire Training Systems Grants (15 U.S.C. § 2206(f))**

Purpose: To assist state fire service systems in providing training programs.

Award Criteria: Discretionary, no statutory award criteria.

**37. Tribal Cybersecurity Grant Program (6 U.S.C. § 665g)**

Purpose: To assist tribal governments with managing and reducing systemic cyber risk.

Award Criteria: Statutory requirement that the Secretary of DHS shall consult with the Secretary of the Interior and tribal governments in determining whether the grant would be competitive or allocated equally among the tribal governments of the federally recognized tribal nations.

**38. Tribal Homeland Security Grant Program (6 U.S.C. § 606)**

Purpose: Financial assistance to tribal governments to build and sustain capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

Award Criteria: Competitive award based on statutory criteria.

**39. Intercity Passenger Rail (6 U.S.C. § 1163)**

Purpose: To assist Amtrak in protecting critical surface transportation infrastructure and the traveling public from acts of terrorism and to increase the resilience of the Amtrak rail system.

Award Criteria: Sole source award to Amtrak. No funding is granted to states or local governments.

**Recommended Determination: Pending Review**

**1. Crisis Counseling Program (42 U.S.C. §§ 5121, et seq.)**

Purpose: Assistance to provide professional counseling services or training of disaster workers to survivors of major disasters to relieve mental health problems caused or aggravated by major disasters or their aftermath.

Award Criteria: Statutory and regulatory eligibility criteria.

**2. Disaster Case Management (42 U.S.C. §§ 5121, et seq.)**

Purpose: Case management services to survivors of major disasters to identify and address unmet needs.

Award Criteria: Statutory and regulatory eligibility criteria.

3. **Disaster Legal Services (DLS) (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: Provides confidential, free legal assistance to survivors who need legal help due to a major disaster, but who do not have the means to secure adequate legal services. For individuals seeking DLS, there is no formal application process. Individuals can access these services by contacting the phone number designated for the specific major disaster, which is established once the program has been authorized. In addition to this phone number, individuals can visit FEMA Disaster Recovery Centers where DLS attorneys may be physically located.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

4. **Public Assistance – Non-Governmental Organizations (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: Financial Assistance to NGOs that perform essential community services for emergency work to ensure public safety, and for the repair, restoration, reconstruction, or replacement of an eligible facility damaged or destroyed by a major disaster.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

5. **Public Assistance – Non-Congregate Sheltering (42 U.S.C. §§ 5121, et seq.)**

   <u>Purpose</u>: Financial Assistance to state, local, tribal and territorial governments for eligible sheltering expenses caused by a disaster.

   <u>Award Criteria</u>: Statutory and regulatory eligibility criteria.

6. **Emergency Food and Shelter Program (42 U.S.C. §§ 11331-11346)**

   <u>Purpose</u>: To supplement and expand ongoing efforts to provide shelter, food and supportive services for hungry and homeless people across the nation.

   <u>Award Criteria</u>: Mandatory, subaward determinations made by external board based on statutory criteria.

7. **Nonprofit Security Grant Program (6 U.S.C. § 609a)**

   <u>Purpose</u>: To assist non-profit organizations in target hardening and other physical security enhancements and activities.

   <u>Award Criteria</u>: By statute, only nonprofits that are located within a FEMA designated Urban Area for purposes of the Urban Area Security Initiative (UASI) program are eligible to apply for funding. The criteria for competitive award include a risk prioritization that is statutorily required, providing limited discretion to add grant conditions. There is no discernible connection between an award for a nonprofit organization and 8 U.S.C. §§ 1324(a)(1)(A)(ii)-(iv), 1373, and 1644 and the other criteria established in the S1 Memo.

**Recommended Determination: DHS Review**

1. **Emergency Management Performance Grant (6 U.S.C. § 762)**

   <u>Purpose</u>: To assist state, local, tribal, and territorial governments "in preparing for all hazards" and all phases of emergency management.

   <u>Award Criteria</u>: Mandatory, allocations to each state based on a statutory formula.

2. **State Homeland Security Grant Program (6 U.S.C. §§ 601 – 613)**

   <u>Purpose</u>: Assists states and local and tribal governments in building and sustaining capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

   <u>Award Criteria</u>: Statutory minimum allocation for each state with remaining awarded based on risk calculated using statutory criteria.

3. **Urban Area Security Initiative (6 U.S.C. §§ 601 – 613, DHS Appropriations Acts)**

   <u>Purpose</u>: Financial assistance to high-risk urban areas in building and sustaining capabilities related to preventing, preparing for, protecting against, and responding to acts of terrorism.

   <u>Award Criteria</u>: Awards based on risk calculated using statutorily required criteria. Discretion in determining how many high-risk urban areas shall receive funding through a State, but that discretion is often limited or guided by Congress through the annual appropriations process.

4. **Operation Stonegarden (6 U.S.C. §§ 601 – 613, DHS Appropriations Acts)**

   <u>Purpose</u>: Operation Stonegarden funds target expenditure by local governments for the purpose of border protection and border security.

   <u>Award Criteria</u>: Discretionary, competitive awards to states with 100% of funds sub-awarded to local law enforcement. The Department adopts the requirement for competition and criteria for award that is provided for in the legislative history of the appropriations act funding the program.

5. **Homeland Security National Training Program - Continuing Training Grants – Competitive (Annual DHS Appropriations Acts)**

   <u>Purpose</u>: To help training partners develop and deliver training to prepare whole communities to prevent, protect against, mitigate, respond to, and recover from acts of terrorism and natural, man-made, and technological hazards.

   <u>Award Criteria</u>: Discretionary, no statutory award criteria. Per the FY24 NOFO, the Joint Explanatory Statement accompanying the FY 2024 DHS Appropriations Act (Pub. L. No.

118-47) directs Continuing Training Grants to be competitively awarded for FEMA-certified rural and tribal training.

6. **Port Security Grant Program (46 U.S.C. § 70107)**

   <u>Purpose</u>: Assistance to port authorities, facility operators, and state and local governments for maritime transportation infrastructure security.

   <u>Award Criteria</u>: Statute requires that funds be allocated based on risk, but otherwise discretionary.

7. **Presidential Residence Protection Assistance Program (Annual DHS Appropriations Acts)**

   <u>Purpose:</u> Provides funds to reimburse state and local enforcement agencies (LEAs) and emergency management agencies (EMAs) for extraordinary law enforcement or other emergency personnel costs incurred while protecting any non-governmental residence of the President that is designated or identified to be secured by the U.S. Secret Service.

8. **Regional Catastrophic Preparedness Grant Program. (Annual DHS Appropriations Acts)**

   <u>Purpose:</u> Supports the building of core capabilities essential to achieving the National Preparedness Goal of a secure and resilient nation by providing resources to close known capability gaps in Housing and Logistics and Supply Chain Management, encouraging innovative regional solutions to issues related to catastrophic incidents, and building on existing regional efforts.

   <u>Award Criteria</u>: Discretionary program with no statutory award criteria. This program is administered through a competitive selection process.

9. **Targeted Violence and Terrorism Prevention (6 U.S.C. § 112 (b)(2); Annual DHS Appropriations Acts)**

   <u>Purpose</u>: To help prepare for, prevent and respond to emergent threats from violent extremism through planning, developing, implementing, or expanding educational outreach, community engagement, social service programs, training and exercises.

   <u>Award Criteria</u>: Discretionary program with no statutory award criteria. This program is administered through a competitive selection process.

10. **Transit Security Grant Program (6 U.S.C. § 1135)**

    <u>Purpose</u>: The purpose of the grant is to build and sustain transit agency security capabilities that protect national security.

    <u>Award Criteria</u>: Discretionary, competitive awards based on statutory criteria that require prioritization of funding based on risk.

**Recommended Determination: DHS Review for Termination**

1. **Case Management Pilot Program (Annual DHS Appropriation Acts)**

   <u>Purpose:</u> Makes funds available to local governments and/or nonprofits to provide voluntary case management and other services to aliens in immigration removal proceedings.

   <u>Award Criteria:</u> Discretionary; the CMPP National Board makes funds available to local governments and/or nonprofits (subrecipients) to provide case management and culturally, trauma-informed, and linguistically responsive services to eligible noncitizens who affirmatively volunteer to participate in the program.

2. **Emergency Food and Shelter Program – Humanitarian (42 U.S.C. §§ 11331-11346)**

   <u>Purpose:</u> To provide shelter and other services to families and individuals encountered by the Department of Homeland Security.

   <u>Award Criteria</u>: Mandatory, subaward determinations made by external board based on statutory criteria.

3. **Shelter and Services Program. (Annual DHS Appropriations Acts)**

   <u>Purpose:</u> To provide funds to non-federal entities for sheltering and related activities to aliens following their release from DHS. The intent is to support Customs and Border Protection in the safe, orderly, and humane release of aliens from short-term holding facilities.

   <u>Award Criteria:</u> SSP-Competitive: Competitive grants made available to local governments, federally recognized tribal governments, nonprofit organizations, and states that serve aliens recently released from DHS custody to provide shelter, food, transportation, acute medical care, personal hygiene supplies, and case management services and to increase the non-federal entities capacity to shelter aliens recently released from DHS custody, including renovations and modifications to existing facilities.

   SSP-Allocated: Funding in the FY24 NOFO is allocated to eligible applicants listed in a table in the NOFO. The allocations were based on release and destination data received from CBP over the time period of July 1, 2023, to Dec. 31, 2023, along with operational information available to CBP.

EXHIBIT 2



*Secretary*

**U.S. Department of Homeland Security**
Washington, DC 20528

February 19, 2025

MEMORANDUM FOR ALL AGENCIES AND OFFICES

FROM:     Kristi Noem
          Secretary

SUBJECT:  **Restricting Grant Funding for Sanctuary Jurisdictions**

---

Following the horrific attacks on this country on September 11, 2001, the American people
trusted their leaders to make sure it would never happen again. Among the circumstances that led
to those attacks was the failure to treat immigration as a national security issue. The 9/11
Commission Report, for example, recognized that "the institutions charged with protecting our
borders . . . did not understand how grave th[e] threat could be." 9/11 Commission Report at xvi.
The Commission also specifically noted that there were, at that time, "9 million people . . . in the
United States outside the legal immigration system." *Id.* at 390. A second factor recognized by
the Commission was the failure of different law enforcement entities to share information. The
Report recognized "pervasive problems of managing and sharing information across a large and
unwieldy government." *Id.* at xvi.

The year after those terrible attacks, President George W. Bush signed into the law the Homeland
Security Act of 2002. The Act created the Department of Homeland Security (DHS), and it
transferred into that new agency a number of important national security components, including
those responsible for immigration enforcement. Congress expressly found that "State and local
personnel have capabilities and opportunities to gather information on suspicious activities and
terrorist threats not possessed by Federal agencies." 6 U.S.C. § 481(b)(8). Congress also found
that "[t]he Federal Government relies on State and local personnel to protect against terrorist
attack." *Id.* § 481(b)(2).

The bottom line is that partnership is an essential element of our national security and public
safety mission. And that mission undoubtedly includes immigration enforcement. State and local
governments that refuse to cooperate with, refuse to share information with, or even actively
obstruct federal immigration enforcement reject these ideals and the history we share in common
as Americans. If any government entity chooses to thumb its nose at the Department of
Homeland Security's national security and public safety mission, it should not receive a single
dollar of the Department's money unless Congress has specifically required it.

For purposes of this memorandum, "sanctuary jurisdictions" include the following:

- Jurisdictions that fail to comply with the information sharing requirements of 8 U.S.C.
  §§ 1373 and 1644.

Prohibiting Grant Funding for Sanctuary Jurisdictions
Page 2

- Jurisdictions that violate other relevant laws, including prohibitions on encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv), prohibitions on transporting or moving illegal aliens, *id.* § 1324(a)(1)(A)(ii), prohibitions on harboring, concealing, or shielding from detection illegal aliens, *id.* § 1324(a)(1)(A)(iii), and any applicable conspiracy, aiding or abetting, or attempt liability respecting these statutes.

- Jurisdictions that fail to honor requests for cooperation, such as participation in joint operations, sharing of information, or requests for short term detention of alien pursuant to a valid detainer. A jurisdiction, however, is not a sanctuary jurisdiction merely because it lacks the necessary resources to assist in a particular instance.

- Any jurisdiction that fails to provide access to detainees, such as when an immigration officer seeks to interview a person who might be a removable alien.

- Any jurisdiction that leaks the existence of an enforcement operation.

All components are to review all federal financial assistance awards to determine if Department funds, directly or indirectly, are going to sanctuary jurisdictions. To the extent consistent with relevant legal authorities and the applicable terms and conditions of each award, each component must cease providing federal funding to sanctuary jurisdictions. Components should also make appropriate criminal referrals to the Department of Justice where illegal conduct is discovered.

For questions regarding applicable legal authorities, components must consult with the General Counsel or his designee. For questions regarding whether a particular jurisdiction is a sanctuary jurisdiction, components must consult with the Director of Immigration and Customs Enforcement and the Commissioner of Customs and Border Protection or their designees.

Within 30 days, each component shall provide a report to the Undersecretary for Management with a summary of actions taken to comply with this memorandum.