UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-39 (JJM) |

**DEFENDANTS' MEMORANDUM ON SCOPE OF FINAL RELIEF**

## INTRODUCTION

As the two-year anniversary of the challenged Office of Management and Budget ("OMB") Directive approaches, circumstances are dramatically different than when the Court entered its preliminary injunction halting the so-called federal funding freeze. The Nation is no longer in the midst of a presidential transition. Federal financial assistance has been flowing steadily (notwithstanding individualized actions taken pursuant to agencies' independent authorities to pause or terminate funding). The vast majority of obligated funds that were at issue two fiscal years ago are no longer relevant today, as they have either been spent, reprogrammed, or rescinded by Congress. Defendants have conceded the merits of Plaintiffs' Administrative Procedure Act ("APA") claims. And the United States Court of Appeals for the District of Columbia Circuit has found that a challenge to the very OMB Directive at issue here is moot because the rescinded directive is unlikely to recur any time in the near future. All this calls for a narrowly tailored scope of final relief, to the extent this case still poses a live controversy at all.

The cleanest and most appropriate form of relief—and indeed the only form of relief the APA authorizes—is vacatur of the challenged agency actions. An order setting aside the directive to freeze federal financial assistance and the Defendant Agencies' actions to comply with that directive will fully resolve the actual injury asserted by Plaintiffs; namely, the significant and indeterminate loss of federal funding that loomed over the presidential transition period. The Court need go no further, since issuing a permanent injunction would inappropriately encroach upon a coequal branch of government by restricting the President's ability to oversee and direct his subordinates and by prematurely restraining a future incoming presidential administration from

issuing a similar directive overseeing government spending while curing the legal infirmities established in this case.

If the Court is nonetheless persuaded that injunctive relief is still warranted, however, Defendants have attached a proposed order narrowing the language of the preliminary injunction to align with the First Circuit's opinion in this case, which vacated language directing the payment of money under federal contracts as contrary to the Tucker Act. The proposed order also incorporates other well-established limits on equitable relief—including principles that the President and his Executive Orders may not be enjoined and that injunctions should be as minimally burdensome as possible to afford complete relief.

**PROCEDURAL HISTORY**

This case challenges the government-wide freeze of federal financial assistance directed by OMB Memorandum M-25-13 (the "OMB Directive"), which was issued during the first days of the second Trump Administration to provide the new administration the opportunity to review federal spending for consistency with policy priorities spelled out in several Executive Orders, so long as it was consistent with law. *See* ECF 1-1. On March 6, 2025, the Court entered a preliminary injunction halting the freeze and requiring the disbursement of already-awarded funding. ECF No. 161. Defendants appealed that Order.

A year later, on March 16, 2026, the United States Court of Appeals for the First Circuit vacated the injunction in part and affirmed it in part. *New York v. Trump*, 171 F.4th 1 (1st Cir. 2026). While agreeing with the Court's merits conclusions, the First Circuit determined that the relief entered was likely overbroad insofar as it "ordered

specific performance with respect to payment to remedy the States' contractual injuries as to 'awarded grants' and 'executed contracts.'" *Id.* at 27. It found that "under the Supreme Court's recent pronouncements regarding the interaction between the APA and the Tucker Act, it is likely the District Court cannot do so." *Id.* at 27-28.

Upon remand to this Court, Defendants conceded the merits of Plaintiffs' APA claims but sought the opportunity to brief the appropriate scope of any final relief. ECF No. 200. The Court granted Defendants' request to brief the appropriate scope of relief by Text Order dated August 20, 2026, directing Defendants to file this memorandum by September 30, 2026.

## LEGAL STANDARD

Under the APA, a reviewing court may "set aside" agency actions it concludes are unlawful. 5 U.S.C. § 706. Vacatur is the ordinary remedy when courts find agency action unlawful. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826 (2024) (Kavanaugh, J. concurring); *but see also United States v. Texas*, 599 U.S. 670, 701–702 (2023) (Gorsuch, J. concurring) (doubting whether the APA "authorizes vacatur of agency action," rather than a party-limited form of relief and inviting "the considered views of our lower court colleagues" on the question). Though it is the Department of Justice's view that vacatur under the APA is limited to the parties, Defendants acknowledge this Court has already established its disagreement. *Rhode Island v. Trump*, 810 F. Supp. 3d 283, 311–312 (D.R.I. 2025) (McConnell, J.).

"[W]hen a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *Maine Med. Ctr. v.*

*Burwell*, 841 F.3d 10, 16 (1st Cir. 2016) (quoting *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999)); *see also Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (under APA review, a "district court had no jurisdiction to order specific relief.").

A permanent injunction "is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Thus, "[i]f a less drastic remedy" such as vacatur is "sufficient to redress [the] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Id.* at 165–66; *see also Califano v. Yamasaki*, 442 U. S. 682, 702 (1979) (relief must not be "more burdensome [to the defendant] than necessary to redress the complaining parties."). Furthermore, relief must "be limited to the inadequacy that produced [the] injury in fact." *Gill* v. *Whitford*, 585 U. S. 48, 50 (2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

## ARGUMENT

### I. Final relief should be limited to vacatur, which is sufficient to redress Plaintiffs' injuries.

Vacatur is sufficient to redress Plaintiffs' injuries, therefore the Court should go no further than vacating the final agency actions it identified in its March 6, 2025, opinion. ECF No. 161. Those actions were "the OMB Directive" to "execute a categorical, indefinite funding freeze" and "the Agency Defendants['] swift actions to execute the categorical funding freeze." *Id.* at 23. At this juncture, vacating and setting aside each of those actions will fully resolve Plaintiffs' injury, which the Court identified as "a significant, indefinite loss of obligated federal funding." *Id.* at 19.

Even assuming the APA authorizes something beyond vacatur of the challenged

action, and it does not, *see Maine Med. Ctr.*, 841 F.3d at 16 (citing *Palisades*, 426 F.3d at 403), as the Supreme Court has recently emphasized, relief must be no "'more burdensome than necessary to redress' [a plaintiff's] asserted harms." *Trump v. CASA, Inc.*, 606 U.S. 831, 853 (2025) (quoting *Califano*, 442 U.S. at 702). Plaintiffs' asserted injuries concerned funds that were obligated two fiscal years ago when they commenced suit. Most of that funding has either been spent, reprogrammed, or rescinded by Congress. *See, e.g.*, One Big Beautiful Bill Act, Pub. Law. No. 119-21, 139 Stat. 72 (July 4, 2025) (rescinding hundreds of millions in fiscal year 2025 funds). And as the D.C. Circuit recently concluded, the current "circumstances reinforce the lack of expectation that the government would want to (re)institute a blanket funding freeze akin to the alleged one." *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 25-5148, 2026 WL 2451517, at *8 (D.C. Cir. Aug. 21, 2026). Thus, "an across-the-board funding freeze cannot reasonably be expected to recur (to the extent it occurred to begin with)." *Id.*

Because vacatur is "sufficient to redress [the] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto*, 561 U.S. at 165–66. Furthermore, as "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," it is unlikely that the Court continues to have jurisdiction to enter injunctive relief at this time. *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *see also City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

## II. Any relief must only target funding that was already awarded to Plaintiffs at the time of the complaint, and may not require the disbursement of funding pursuant to contract.

Should the Court nonetheless determine that additional injunctive relief is warranted, it should narrow any relief to focus on the funds that were at issue at the

time the OMB Directive was issued, since "the scope of injunctive relief is dictated by the extent of the violation established." *Califano*, 442 U.S. at 702. No violation has been established with respect to funds Congress appropriated after this case was commenced, therefore any injunction must be crafted to avoid burdening Defendants' activities with respect to new funding. *See id.* And as the First Circuit has now clarified, no injunction may enter which requires the "specific performance with respect to payment to remedy the States' contractual injuries as to 'awarded grants' and 'executed contracts.'" *New York v. Trump*, 171 F.4th 1, 27 (1st Cir. 2026).[1]

A permanent injunction risks seriously imposing upon the prerogatives of the Executive Branch and future presidential administrations. A future president may wish to conduct a similar review of federal funding to safeguard valuable taxpayer resources. *See Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 452 (D.R.I. 2025), *aff'd in part, vacated in part*, 186 F.4th 25 (1st Cir. 2026) ("[E]lections have consequences and the President is entitled to enact his agenda."). A future president should not be restrained from implementing a funding pause curing any of the deficiencies that led this Court to conclude that the OMB Directive did not follow a sufficiently "deliberate, thoughtful approach" and that the instruction to only pause funds "consistent with the law" was rendered hollow by the "mere twenty-four hours" agencies were given to discern which funds to pause. ECF No. 161 at 34. For this reason, any relief should be limited to the funds and circumstances that gave rise to this case.[2]

---

[1] Consistent with the First Circuit's opinion, Defendants' proposed order strikes the paragraph of the Court's preliminary injunction that was vacated because it required the specific performance of a contractual obligation to pay money.

[2] Defendants' proposed order reflects this principle by specifying its application to obligated funding under "grants, contracts, or other financial obligations awarded or

As the APA does not itself authorize permanent injunctive relief, the Court must also comply with the Supreme Court's direction that federal courts sitting in equity may provide—at most—"complete relief between the parties." *CASA, Inc.*, 606 U.S at 851 (quotation omitted). As the Court explained, Congress "has granted federal courts no" power to issue such "universal injunction[s]." *Id.* at 841. Thus, to the extent the Court enters injunctive relief, it should only prohibit reliance upon the challenged actions with respect to the Plaintiffs' own grant awards.

### III. The Executive Orders referenced by the OMB Directive cannot and should not be enjoined.

Plaintiffs cannot seek relief directly against the President or his Executive Orders. Courts have no authority to second-guess "discretion[ary]" acts taken by the President "in the performance of his official duties." *State of Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *see also Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part). Courts' refusal to police the President's discretionary acts is "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history." *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982); *see also Newdow*, 603 F.3d at 1013 ("With regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief." (citation omitted)).

Because the agencies' actions causing Plaintiffs' harms were "several steps

executed as of January 28, 2025." Thus, the proposed order would not apply to funds first awarded or obligated after January 28, 2025—the date of the OMB Directive—even if new funds were added to awards that existed as of that date through a supplemental award, continuation, renewal, amendment, modification, option, or other subsequent funding action.

removed from—and [] not guaranteed by—the challenged Executive Order[s]," *Louisiana v. Biden*, 64 F.4th 674, 684 (5th Cir. 2023), any relief should be aimed only at those actions and not toward future agency efforts to comply with the President's orders. This is consistent with traditional APA relief in which "a court may remand for the agency to . . . 'deal with the problem afresh' by taking *new* agency action." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20–21 (2020) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947) (*Chenery II*)).

Accordingly, should the Court enter injunctive relief, Defendants propose striking the language contained in the preliminary injunction enjoining Defendants from implementing

> funding freezes dictated, described, or implied by Executive Orders issued by the President that were referenced by the Court in its preliminary injunction Order or any other materially similar order, memorandum, directive, policy, or practice under which the federal government imposes or applies a categorical pause or freeze of funding appropriated by Congress.

ECF No. 161 at 44.

There are lawful ways for agencies to comply with the Executive Orders—indeed, that is why the orders themselves specify that agencies shall only act when they can do so consistent with law. *Cf. Trump v. California*, No. 26A124, 2026 WL 2473573, at *2 (U.S. Aug. 24, 2026) (staying injunction of agency's implementation of an Executive Order because the district court impermissibly "guess[ed] how the Secretary might tailor his implementation to be 'consistent with applicable law'"). Agencies' ability to take new actions to comply with the President's orders should not be enjoined, as such an injunction would effectively enjoin the President's orders. *See Trump v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 2635, (2025) (Sotomayor, J. concurring) (agency's implementation

of an Executive Order directing compliance "consistent with applicable law" should not be enjoined when the implementation "plans themselves are not before th[e] Court"). Enjoining compliance with "similar order[s]," moreover, effectively constrains the President's ability to issue new Executive Orders, which goes far beyond the relief the Court may permissibly enter.

At a minimum, even if the Court is not inclined to strike this language, it should clarify that it does not intend the language to interfere with essential Presidential and Executive Branch funding activities. It can do so by replacing the word "categorical" with the phrase "indiscriminate, government-wide," as this would more accurately reflect the Court's concern in this case and be far more administrable for the Government. As currently written, there has been a great deal of confusion over what constitutes a "categorical" freeze, especially when considered in conjunction with the phrase "materially similar": Does pausing all of a single agency's funds where consistent with law count as categorical? What about a single program? Or a single discretionary stream of funding within a program misaligned with agency priorities, if it is paused without reviewing each individual contract's terms? Agencies have struggled to discern which activities they may pursue under the preliminary injunction, even if they appear lawful under governing statutes, regulations, and contract terms. This is contrary to Federal Rule of Civil Procedure 65(d), which requires an injunction to "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."

## CONCLUSION

To the extent the Court determines a live controversy still exists, Defendants

respectfully request limiting any relief to vacating the challenged agency actions. If the Court is inclined to enter injunctive relief, Defendants respectfully request the Court enter the attached proposed order.

Date: September 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH BORSON
Assistant Director
Civil Division, Federal Programs Branch

CHRISTOPHER M. LYNCH
Chief Litigation Counsel
Civil Division, Federal Programs Branch

*/s/ Eitan Sirkovich*
EITAN R. SIRKOVICH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel.: (202) 353-5525
Email: eitan.r.sirkovich@usdoj.gov

*Counsel for Defendants*