UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | No. 1:25-cv-00039-JJM-RLA |

**PLAINTIFFS' RESPONSE TO PROPOSED ORDER**

Plaintiff States brought this action to challenge a "sweeping and unprecedented 'freeze' of federal financial assistance" that "federal agencies . . . implemented soon after President Trump took office on January 20, 2025." *New York v. Trump*, 171 F.4th 1, 9 (1st Cir. 2026). Specifically, Plaintiff States challenged a directive issued by the Office of Management and Budget ("OMB") ordering federal agencies to immediately "pause all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that may be implicated by the executive orders" within 24 hours—"the OMB Directive," ECF 1-1 at 2—and the agencies' own decisions to freeze funding. This Court entered a preliminary injunction barring OMB and the federal agencies from "impeding the disbursement of appropriated federal funds to the States," ECF 161 at 4, and the First Circuit affirmed the injunction, *New York*, 171 F.4th 1. The First Circuit explained that defendants had likely acted arbitrarily and capriciously in instituting "agency-wide categorical freezes" of federal funds without "making reasoned assessments about the impacts of those actions and the scope of their legal authority," and that those actions would irreparably injure the States if not enjoined, including by prompting "layoffs, reductions in service, and closures" of basic social services, and "upending state budgets." *Id.* at 21, 24-25 (cleaned up).

Defendants no longer dispute any of these findings. They do not contest that their actions were arbitrary and capricious, nor that those actions caused Plaintiff States to suffer irreparable injury remediable through equitable relief. Defendants nevertheless mistakenly insist that permanent injunctive relief is unavailable to APA litigants, and that even if an injunction were appropriate here, the scope of any injunction should be so narrow as to deny Plaintiff States any forward-looking remedy at all.

Defendants cannot avoid the consequences of their unlawful conduct by asking the Court to enter a final judgment over objection that would fall far short of the relief to which Plaintiff States are entitled. Just last month, another court rejected a similar maneuver by the federal government, explaining that the court lacked the authority to "resolve this lawsuit without further adjudicating the merits by entering [a] permanent injunction over Plaintiffs' objections." Order at 2, *New York v. Admin. for Children & Families*, No. 26-cv-172 (S.D.N.Y. Sept. 24, 2026) (ECF 164) (attached as Ex. A). There, the court emphasized that it was not aware of any legal authority supporting the propriety of such a tactic. This Court should likewise reject defendants' attempt to end the case on terms that fall far short of complete relief over Plaintiffs' objection, and allow the litigation to proceed so that the Plaintiff States can further substantiate the need for appropriately scoped permanent injunctive relief.

## ARGUMENT

### I. Plaintiff States Are Entitled to Press Forward Toward Complete Relief.

Plaintiff States are entitled to seek "complete relief" for their injuries. "The equitable tradition has long embraced the rule that courts generally 'may administer complete relief.'" *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025) (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)); *see also In re PHC, Inc. S'holder Litig.*, 894 F.3d 419, 435 (1st Cir. 2018) ("The hallmark of equitable relief is its protean nature and—within wide limits—a court sitting in equity

may tailor relief to fit the circumstances of a particular case."). And the plaintiff, as the filer of the complaint, determines what claims to press and what relief to seek from the district court. Fed. R. Civ. P. 8(a); *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025).

Indeed, Federal Rule of Civil Procedure 68 provides a specific process for a defendant to tender an offer of judgment to the plaintiff, which the plaintiff has total discretion to either accept or reject. *See* Fed. R. Civ. P. 68(a). "[T]he entire structure of [Rule 68] leaves it to the plaintiff to decide whether to accept the offer." *Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 52 (1st Cir. 2015). "When a plaintiff rejects [a settlement] offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016) (quotation omitted). That rule carries equal force in the current procedural posture, where the Court has entered a preliminary injunction and the parties have fully litigated an appeal of that injunction. The goal of a preliminary injunction is "to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir. 1995). This litigation must proceed to allow Plaintiffs to continue to litigate the scope of appropriately tailored permanent injunctive relief, with the appropriate next step the filing of the administrative record and the litigation of Plaintiff States' claims on the merits.

## II. Defendants' Proposed Order Would Deny Plaintiff States Complete Relief.

Defendants have submitted a proposed order that they assert "align[s] with" both the First Circuit's opinion in this case and "well-established limits on equitable relief." ECF 203 ("Br.") at 3. But Defendants' proposed order—which Plaintiffs reject—falls far short of complete relief in multiple respects. The Court should decline to enter it, and it should instead permit the litigation to proceed.

### A. Plaintiff States Are Entitled to Seek Injunctive Relief.

Defendants begin by contending that the Court should enter *no* permanent injunction, but should instead "go no further than vacating the final agency actions" that Plaintiffs challenged in their APA claims. Br. 5. Defendants argue that the APA does not authorize injunctive relief, and that even if it did, vacatur alone would be sufficient to remedy Plaintiff States' injuries. *Id.* at 5-6. That argument is flawed on multiple levels.

First, Defendants are incorrect that the only remedy available at the conclusion of the case would be vacatur. Most basically, Defendants overlook the fact that Plaintiffs brought constitutional and nonstatutory claims in addition to APA claims, and that Defendants notably have not conceded the merits of these claims. *See* ECF 114 at 51-59; ECF 203 at 2 (conceding "Plaintiffs' [APA] claims"). Although the Court's preliminary injunction rested on Plaintiff States' APA claims, Defendants cannot dispute that injunctive relief would be available if Plaintiffs were to obtain judgment on the non-APA claims. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).

Regardless, Defendants are wrong to suggest (Br. 5-6) that the only remedy available in an APA case is vacatur. The First Circuit has repeatedly affirmed district courts' authority to enter permanent injunctions to remedy APA violations, where an injunction is necessary to provide plaintiffs with complete relief. *See, e.g.*, *Massachusetts v. NIH*, 164 F.4th 1, 6 (1st Cir. 2026); *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 69, 77 (1st Cir. 2018); *R.I. Comm. on Energy v. GSA*, 561 F.2d 397, 405 (1st Cir. 1977). And the Supreme Court has never questioned the availability of injunctive relief in APA cases. *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 160 (2010); *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Defendants identify no contrary authority. They cite two APA cases in which courts concluded that vacatur, not injunctive relief, was appropriate for case-specific

reasons. *See* Br. 5-6 (citing *Me. Med. Ctr. v. Burwell*, 841 F.3d 10, 16 (1st Cir. 2016) and *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005)). But neither case establishes any categorical rule that a plaintiff in an APA case cannot seek or obtain permanent injunctive relief if it makes the appropriate showing.

Defendants argue that vacatur is "sufficient to redress" Plaintiff States' injuries, Br. 6, but that argument is likewise flawed. For one, this Court found otherwise at the preliminary-injunction stage, ECF 161 at 34-43, and the First Circuit affirmed that conclusion, explaining that the States had shown through uncontroverted evidence that Defendants' actions would irreparably injure them and that an injunction was necessary to prevent those harms, *New York*, 171 F.4th at 24-26 (describing "catastrophic disruption" to basic human services). Indeed, Defendants' own behavior throughout this litigation demonstrates the need for injunctive relief. As the First Circuit explained, Defendants purported to "rescind" the OMB Directive the day after Plaintiffs filed this case, but "continued" to freeze "federal financial assistance" even after the Directive's rescission, *id.* at 16—a fact that, this Court explained in its preliminary injunction opinion, created a significant concern that federal agencies would fail to "fulfill their obligations in the future" absent preliminary injunctive relief, ECF 161 at 42. Indeed, this Court was obliged to enforce the preliminary injunction through further order because an agency continued to implement its funding freeze long after the OMB Directive was allegedly rescinded. ECF 175. Defendants' suggestion that vacatur alone would be enough to redress Plaintiff States' injuries cannot be squared with their own conduct during this litigation, including well after the "rescission" of the Directive.[1]

---

[1] Defendants briefly suggest that the Court may lack "jurisdiction to enter injunctive relief" given the passage of time. Br. 6. But the First Circuit rejected the argument that Plaintiff States' claims are moot. *New York*, 171 F.4th at 15-16. Defendants point to the D.C. Circuit's opinion in *National Council of Nonprofits v. OMB*, 188 F.4th 400, 407 (D.C. Cir. 2026), but that opinion expressly

Regardless, Defendants' argument is premature. Again, Plaintiff States are entitled to seek permanent injunctive relief based on the factual record compiled during the course of the litigation. But the Court should not deny Plaintiff States the opportunity to even *seek* such relief in the first place.

### B. Defendants' Proposed Order Would Deny Plaintiff States Complete Relief in Multiple Respects.

Defendants alternatively argue that, if the Court is inclined to enter a permanent injunction, it should sharply "narrow" the preliminary injunction, and they attach a proposed order reflecting their preferred limitations. ECF 203-1. But the proposed order would deny Plaintiff States the complete relief to which they are entitled in multiple respects, and the Court should decline to enter it "over Plaintiffs' objections." Order at 2, *New York v. Admin. for Children & Families*, No. 26-cv-172 (S.D.N.Y. Sept. 24, 2026) (ECF 164) (Ex. A).[2]

#### 1. Funds "awarded or executed as of January 28, 2025"

Defendants' primary proposal is that the Court enter an order that would enjoin Defendants from freezing only funds that had been "awarded or executed as of January 28, 2025," ECF 203-1 at 1 ¶ 1, a limitation found nowhere in the preliminary injunction.

---

distinguished this case from that one, in that (1) this case "not only challenged the [Directive] and OMB's implementation of it, but also challenged 'other agency actions,' including agencies' implementation of funding freezes under preexisting executive orders," and (2) Plaintiffs here showed that the Directive's "substantive effect carried on even though the Memorandum had been rescinded," *id.* at 412. Regardless, if Defendants believe that the Court lacks jurisdiction to enter injunctive relief, they can advance that argument during litigation on the merits of Plaintiff States' claims.

[2] Defendants separately argue that any permanent injunction should omit language ordering them to "release and transmit any disbursements to the States," ECF 161 at 45 ¶ 4, given the First Circuit's conclusion that federal district courts likely lack jurisdiction to enter such relief. Br. 7 & n.1. Plaintiff States do not anticipate seeking any such language in an injunction at the conclusion of the litigation.

An injunction limited to funds obligated as of January 28, 2025, would transparently leave Plaintiff States without complete relief. As Defendants themselves explain, "[t]he vast majority of" such funds "have either been spent, reprogrammed, or rescinded by Congress," Br. 2, meaning that an injunction limited to such funds will have little real-world impact, including to prevent the harms that the Court found last year would flow from Defendants' decision to freeze access to federal funds. And an injunction so limited would permit Defendants to resume exactly the conduct that they engaged in last year—conduct that the preliminary injunction appropriately prohibits. *See New York*, 171 F.4th at 16 (record showed that defendants "carried on" freezing federal financial assistance even after the Directive's purported rescission).

Defendants defend such a paper-thin injunction by arguing that any relief should be limited to "the funds that were at issue at the time the OMB Directive was issued." Br. 6-7. But neither Plaintiffs' claims nor their asserted injuries were limited to funds obligated as of January 28, 2025. Plaintiffs challenged both the OMB Directive and the agency defendants' own decisions to freeze federal funds consistent with the Directive and the President's executive orders. *See New York*, 171 F.4th at 18 ("[T]he States are challenging the discrete, agency-wide categorical freeze that each of the Agency Defendants allegedly put in place, as well as the OMB Directive."). Defendants' view appears to be that the challenged agency actions were time-limited, but they point to no support for that claim in the record. The OMB Directive described the funding freeze as "temporary," ECF 1-1 at 2, but did not contain an expiration date, and the agency actions that are documented in the record likewise contain no express end dates, *e.g.*, ECF 68-124 at 2-3 (Energy Department freeze would apply "until further notice"); ECF 166-4 (Federal Emergency Management Agency implemented indefinite "financial holds"). Likewise, Plaintiff States alleged—and this Court found ample evidence of, ECF 161 at 34-42—irreparable injuries that were not tethered to the

2025 fiscal year, including "catastrophic disruption to student instruction; possible layoffs, reductions in service, and closures of childcare programs; and significant impediments to the delivery of basic health care services to vulnerable populations." *New York*, 171 F.4th at 24-25.

Plaintiff States are entitled to seek complete relief from the unlawful funding freezes they challenged and the harm those freezes would inflict if implemented. Allowing the litigation to go forward will, if anything, shed light on the nature of the challenged agency actions and the injuries that those actions might have caused had the preliminary injunction not been entered. *Cf. Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (in equity, "the scope of injunctive relief is dictated by the extent of the violation"). By contrast, entering Defendants' time-limited injunction would have the effect of dismissing the case and leaving Plaintiff States with inadequate relief—the result that Defendants unsurprisingly would prefer. *Cf.* Br. 2 ("All this calls for a narrowly tailored scope of final relief, to the extent this case still poses a live controversy at all."). The Court should decline that invitation.

**2. "Government-wide pause"**

Defendants separately contend that any injunction entered by the Court should be limited in a second way: it should apply only to agency actions "based on the indiscriminate, government-wide pause contemplated by the OMB Directive," rather than actions taken by agency defendants to implement the President's executive orders. Br. 8-10. This proposal, too, would leave Plaintiff States without complete relief.

From the outset, this case has been about the agency defendants' own actions in freezing funds, not just OMB's promulgation of the Directive. The original complaint named 23 agency defendants and sought to enjoin them from freezing funding, ECF 1 at 8-12; this Court understood the case's scope as encompassing agencies' own conduct, not just OMB's, ECF 161 at 17-18, 23-

24; and the First Circuit affirmed that understanding, explaining repeatedly that the "scope of the States' challenge" encompassed not only the Directive, but "the agency-wide, categorical funding freezes allegedly implemented by each Agency Defendant," *New York*, 171 F.4th at 18. Indeed, the First Circuit explained that Plaintiffs challenged "some agency actions to freeze federal funds that began *before* the OMB [Directive] issued," *id.* at 16 (emphasis in original), rather than on the basis of the Directive itself.

Plaintiffs, in other words, sought—and obtained—a preliminary injunction that went beyond just what Defendants now characterize as "the indiscriminate, government-wide pause contemplated by the OMB Directive." ECF 203-1 at 1. Plaintiffs sought and obtained an injunction that prohibited the defendant agencies from freezing federal funds in compliance with the President's January 2025 executive orders, many of which directly instructed them to carry out such a freeze. *E.g.*, Exec. Order No. 14,154, *Unleashing American Energy* (Jan. 20, 2025) (agencies shall "immediately pause the disbursement of funds" appropriated under two "Green New Deal" statutes). Plaintiffs are entitled to seek similar relief in a permanent injunction.

Defendants advance various arguments about why such relief might not be appropriate, Br. 8-10, but they do not seriously dispute that their proposed order would provide Plaintiffs with *less* relief, in that it would bar Defendants from freezing funding only "based on" the OMB Directive or a functionally equivalent order directing a "government-wide pause" of disbursements. ECF 203-1 at 1-2 ¶ 2. That alone shows that this proposed limitation would leave Plaintiff States with less than complete relief.

Regardless, Defendants' arguments lack merit. Defendants contend that the relevant text of the preliminary injunction is tantamount to an injunction against the President's executive orders, Br. 8, but that is incorrect. The preliminary injunction does not enjoin the President, ECF 161 at

44 & n.16, and it does not bar agency defendants from "tak[ing] new actions to comply with" executive orders, Br. 9, as long as those actions do not amount to a categorical freeze on federal funding. Indeed, the preliminary injunction, as the First Circuit explained, does not affect—in any way—the agency defendants' ability to implement *future* executive orders, only "the executive orders issued by President Trump before the rescission of the OMB Memorandum." *New York*, 171 F.4th at 25. And to the extent Defendants' argument is that the preliminary injunction has over the last year "interfere[d] with essential . . . funding activities" that are themselves lawful under the applicable statutes, regulations, and contract terms, Br. 10, the First Circuit considered the same argument and rejected it, explaining that the limits already present in the preliminary injunction make it unlikely that it "chills the Agency Defendants' exercise of lawful conduct," *New York*, 171 F.4th at 26. In any event, Defendants are free to seek a narrower injunction based on the evidentiary record developed during the litigation.

Defendants finally argue that, at a minimum, any permanent injunction entered in this case should "replac[e] the word 'categorical' with the phrase 'indiscriminate, government-wide.'" Br. 10. Although Plaintiff States are open to any injunction calibrated "to remedy discerned wrongs," *CMM Cable Rep.*, 48 F.3d at 620, an injunction limited to "government-wide" funding freezes would leave Plaintiffs short of complete relief, for the reasons already stated. The crux of Plaintiffs' "concern in this case," Br. 10, was that Defendants were freezing funds without first considering whether they had the right to do so under the applicable statutes, regulations, and contract terms. Plaintiff States are entitled to seek an injunction that prohibits Defendants from continuing to do so.

## III. The Court Should Enter A Briefing Schedule.

Plaintiff States remain amenable to resolving this case with an agreed-upon permanent injunction that would fully remedy their injuries.

If Defendants remain unwilling to enter a permanent injunction that provides Plaintiffs with complete relief, however, the Court should enter a briefing schedule for resolution of Plaintiff States' claims on the merits. Plaintiff States proposed such a schedule on August 5, 2026, *see* ECF 199, but that proposal is now out of date. Plaintiff States stand ready to confer with Defendants to propose an alternative schedule along substantially the same lines if the Court so orders.

## CONCLUSION

The Court should decline to enter Defendants' proposed order and instead direct the parties to propose a schedule for further proceedings.

Dated: October 30, 2026

Respectfully submitted,

**PETER F. NERONHA**
Attorney General of Rhode Island

/s/ Kathryn M. Sabatini
Kathryn M. Sabatini
*Chief, Civil Division*
*Special Assistant Attorney General*
Sarah W. Rice
*Deputy Chief, Public Protection Bureau*
*Assistant Attorney General*
Leonard Giarrano IV
*Special Assistant Attorney General*
150 South Main St.
Providence, RI 02903
(401) 274-4400, Ext. 2054
ksabatini@riag.ri.gov
srice@riag.ri.gov
lgiarrano@riag.ri.gov

**LETITIA JAMES**
Attorney General of New York

/s/ Rabia Muqaddam
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Michael J. Myers
*Senior Counsel*
Molly Thomas-Jensen
*Special Counsel*
Colleen Faherty
*Special Trial Counsel*
Zoe Levine
*Special Counsel for Immigrant Justice*
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
michael.myers@ag.ny.gov
molly.thomas-jensen@ag.ny.gov
colleen.faherty@ag.ny.gov
zoe.levine@ag.ny.gov

**ROB BONTA**
Attorney General of California

**KWAME RAOUL**
Attorney General of Illinois

/s/ Christine Chuang
Christine Chuang
*Supervising Deputy Attorney General*
Theodore McCombs
Marie Logan
*Deputy Attorneys General*
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
christine.chuang@doj.ca.gov
theodore.mccombs@doj.ca.gov
marie.logan@doj.ca.gov

/s/ Alex Hemmer
Alex Hemmer
*Deputy Solicitor General*
R. Henry Weaver
*Public Interest Counsel*
Kathleen Naccarato
*Assistant Attorney General*
115 S. LaSalle St.
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov
robert.weaver@ilag.gov
kathleen.naccarato@ilag.gov

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

/s/ Katherine B. Dirks
Katherine B. Dirks
*Chief State Trial Counsel*
Turner Smith
*Deputy Chief, Energy and Environment Bureau*
Anna Lumelsky
*Deputy State Solicitor*
1 Ashburton Pl.
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov
turner.smith@mass.gov
anna.lumelsky@mass.gov

**JENNIFER DAVENPORT**
Attorney General of New Jersey

/s/ Shankar Duraiswamy
Shankar Duraiswamy
*Deputy Solicitor General*
25 Market St.
Trenton, NJ 08625
(609) 376-3377
shankar.duraiswamy@njoag.gov

**KRISTIN K. MAYES**
Attorney General of Arizona

/s/ Joshua D. Bendor
Joshua D. Bendor
*Solicitor General*
Nathan Arrowsmith
2005 North Central Ave.
Phoenix, AZ 85004
(602) 542-3333
joshua.bendor@azag.gov
nathan.arrowsmith@azag.gov

**WILLIAM TONG**
Attorney General of Connecticut

/s/ Michael K. Skold
Michael K. Skold
*Solicitor General*
Jill Lacedonia
165 Capitol Ave.
Hartford, CT 06106
(860) 808 5020
michael.skold@ct.gov
jill.lacedonia@ct.gov

**PHILIP J. WEISER**
Attorney General of Colorado

/s/ Shannon Stevenson
Shannon Stevenson
*Solicitor General*
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
(720) 508-6000
shannon.stevenson@coag.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

/s/ Vanessa L. Kassab
Vanessa L. Kassab
*Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8413
vanessa.kassab@delaware.gov

**BRIAN L. SCHWALB**
Attorney General of the District of Columbia

/s/ Andrew Mendrala
Andrew Mendrala
*Assistant Attorney General*
*Public Advocacy Division*
Office of the Attorney General
for the District of Columbia
400 Sixth Street, NW
Washington, DC 20001
(202) 724-9726
andrew.mendrala@dc.gov

**ANNE E. LOPEZ**
Attorney General of Hawai‘i

/s/ Kaliko‘onālani D. Fernandes
Kaliko‘onālani D. Fernandes
*Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

**AARON M. FREY**
Attorney General of Maine

/s/ Jack Dafoe
Jack Dafoe
*Assistant Attorney General*
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333
207-626-8868
jack.dafoe@maine.gov

**ANTHONY G. BROWN**
Attorney General of Maryland

/s/ Adam D. Kirschner
Adam D. Kirschner
*Senior Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6424
akirschner@oag.state.md.us

**DANA NESSEL**
Attorney General of Michigan

**KEITH ELLISON**
Attorney General of Minnesota

/s/ Linus Banghart-Linn
Linus Banghart-Linn
*Chief Legal Counsel*
Neil Giovanatti
*Assistant Attorney General*
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
banghart-linnl@michigan.gov
giovanattin@michigan.gov

/s/ Brian S. Carter
Brian S. Carter
*Special Counsel*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 757-1010
brian.carter@ag.state.mn.us

**AARON D. FORD**
Attorney General of Nevada

/s/ Heidi Parry Stern
Heidi Parry Stern
*Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
hstern@ag.nv.gov

**RAÚL TORREZ**
Attorney General of New Mexico

/s/ Anjana Samant
Anjana Samant
*Deputy Counsel*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
(505) 270-4332
asamant@nmdoj.gov

**JEFF JACKSON**
Attorney General of North Carolina

/s/ Daniel P. Mosteller
Daniel P. Mosteller
*Associate Deputy Attorney General*
P.O. Box 629
Raleigh, NC 27602
(919) 716-6026
dmosteller@ncdoj.gov

**DAN RAYFIELD**
Attorney General of Oregon

/s/ Christina Beatty-Walters
Christina Beatty-Walters
*Senior Assistant Attorney General*
100 SW Market St.
Portland, OR 97201
(971) 673-1880
tina.beattywalters@doj.oregon.gov

**CHARITY R. CLARK**
Attorney General of Vermont

/s/ Jonathan T. Rose
Jonathan T. Rose
*Solicitor General*
109 State St.

**NICHOLAS W. BROWN**
Attorney General of Washington

/s/ Andrew Hughes
Andrew Hughes
Leah Brown
*Assistant Attorneys General*
Office of the Washington State Attorney

Montpelier, VT 05609
(802) 793-1646
jonathan.rose@vermont.gov

General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
leah.brown@atg.wa.gov

**OFFICE OF THE GOVERNOR *ex rel.* ANDY BESHEAR**
in his official capacity as Governor of the Commonwealth of Kentucky

/s/ S. Travis Mayo
S. Travis Mayo
*General Counsel*
Taylor Payne
*Chief Deputy General Counsel*
Laura C. Tipton
*Deputy General Counsel*
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

**JOSHUA L. KAUL**
Attorney General of Wisconsin

/s/ Aaron J. Bibb
Aaron J. Bibb
*Assistant Attorney General*
Wisconsin Department of Justice
17 West Main St.
P.O. Box 7857
Madison, WI 53707
(608) 266-0810
aaron.bibb@wisdoj.gov