UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-39 (JJM) |

**<u>REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MEMORANDUM ON SCOPE OF FINAL RELIEF</u>**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The Case Is Moot, and Further Litigation Would Be Contrary to Constitutional Avoidance Principles .......... 2

II. Vacatur Offers Plaintiffs Complete Relief. .......... 4

III. The Government Must Not Be Enjoined from Taking Funding Actions Consistent with Law or Complying with Executive Orders. .......... 7

CONCLUSION .......... 10

## INTRODUCTION

Plaintiffs repeat their push for unnecessary further litigation notwithstanding the fact that the case is moot, and constitutional avoidance principles preclude the Court from ruling on their constitutional claims now that Defendants have conceded the Administrative Procedure Act ("APA") claims. Further litigation is not necessary, and if the case is not moot, the Court can enter final judgment right now.

If a live controversy still exists (and there is good reason to think it does not, as the D.C. Circuit recently concluded), vacatur is the appropriate remedy under present circuit precedent. That is, after all, the default remedy in APA cases in this jurisdiction. Plaintiffs' response does not even attempt to identify a harm that vacatur would fail to address—to say nothing of the *irreparable* harm necessary to obtain a permanent injunction—yet they still object that vacatur would be incomplete relief. They insist that the decisions made nearly two years ago to freeze federal funds caused the sum of their harms but offer no reason to think vacating those very same decisions would not offer a complete remedy. It would.

Even if the Court finds injunctive relief is still necessary, however, Plaintiffs offer no compelling reason it should apply to funds that have yet to be appropriated, let alone awarded or obligated. Prejudging how a future President manages those funds goes far beyond the controversy at issue in this case and strains the separation of powers. Overbroad, ambiguous language limiting agencies' ability to comply with existing and future Executive Orders where consistent with law is equally troublesome. That being said, Defendants are amenable to modifying their proposed

order in ways that would address what Plaintiffs claim is the "crux" of their concern, as discussed further below and reflected in the attached modified proposed order.

## ARGUMENT

### I. The Case Is Moot, and Further Litigation Would Be Contrary to Constitutional Avoidance Principles.

At the status conference held on July 29, 2026, the Court suggested this case might now be moot, and at the very least, it should move toward an expedient resolution. It then rejected Plaintiffs' proposal to extend this litigation well into its third year in favor of Defendants' proposal that the Parties brief the scope of any final relief following Defendants' concession of the APA claims. Regardless, Plaintiffs try again to persuade the Court that further litigation is necessary. It is not.

*First*, the Court's intuition that the case may be moot is correct. Plaintiffs suggest mootness is foreclosed by the First Circuit's March 2026 opinion affirming this Court's March 2025 finding of a live controversy. *See* Pls.' Resp. to Defs.' Mem. on Scope of Relief, ECF No. 204 at 5-6 n. 1 ("Pls.' Resp."). It is now November 2026, however, and it is appropriate for the Court to reexamine the issue. Mootness is "the doctrine of standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Nat'l Ass'n of Consumer Advocates v. Uejio*, 521 F. Supp. 3d 130, 146 (D. Mass. 2021) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997)). Thus, a case that posed a live controversy in March 2025 may no longer pose one in November 2026. Indeed, the D.C. Circuit concluded as much several months ago, finding the latest "circumstances reinforce the lack of expectation

that the government would want to (re)institute a blanket funding freeze akin to the alleged one." *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 188 F.4th 400, 409 (D.C. Cir. 2026). Thus, "an across-the-board funding freeze cannot reasonably be expected to recur (to the extent it occurred to begin with)." *Id.* So too here.

*Second*, as the Court also pointed out during the status conference, it would be neither necessary nor appropriate to reach Plaintiffs' constitutional claims if Defendants conceded the APA claims (as they later did). "[F]ederal courts are not to reach constitutional issues where alternative grounds for resolution are available." *Vaquería Tres Monjitas, Inc. v. Pagan*, 748 F.3d 21, 26 (1st Cir. 2014) (quotation omitted). The canon of constitutional avoidance is binding upon district courts. *Id.* Even where the constitution is not concerned, courts are generally "not to resolve issues that need not be resolved if other issues are dispositive." *United States v. Tsarnaev*, 96 F.4th 441, 446 (1st Cir. 2024). It has often been said that "if it is not necessary to decide more, it is necessary not to decide more[.]" *PDK Lab'ys Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).

The "constitutional" claims Plaintiffs raise, in any event, are *Dalton* style claims that simply restate statutory violations as constitutional ones in a way that the Supreme Court explicitly rejected just this week. *Mullin v. Friends of the Ruidosa Church*, 610 U.S. __ (2026) ("we have long recognized that 'claims simply alleging' that the Executive Branch has exceeded its 'statutory authority are not "constitutional" claims.'" (quoting *Dalton v. Specter*, 511 U.S. 462, 472–74 (1994)); *see*

*also* Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim Inj., ECF No. 113 at 47-48 (discussing *Dalton*'s application here).

*Third*, the Southern District of New York's decision supplied by Plaintiffs as an exhibit is plainly distinguishable. *See* Ex. A, ECF No. 204-1 (Order, *New York v. Admin. for Children & Families*, No. 26-cv-172 (S.D.N.Y. Sept. 24, 2026) (ECF No. 164) ("*ACF*")). That decision itself states that a permanent injunction is appropriate "after a court has already decided a claim on the merits." *Id.* (quoting *Subaru Distributors Corp. v. Subaru of Am., Inc.*, No. 98-CV-5566, 2002 WL 188473, at *30 (S.D.N.Y. Feb. 5, 2002)). This Court has already decided Plaintiffs' APA claims (or is imminently prepared to do so in light of Defendants' concessions), and Plaintiffs have not identified a material fact still in dispute, therefore it is proper to enter final judgment, should the Court determine a live controversy exists.

**II. Vacatur Offers Plaintiffs Complete Relief.**

Plaintiffs fail to articulate any harm that would remain following vacatur (or, in the alternative, entry of Defendants' proposed order) such that relief would be incomplete. Tellingly, their response does not mention any ongoing harm *at all*. Instead, they continue to rely upon "harms that the Court found last year would flow from Defendants' decision to freeze access to federal funds." Pls.' Resp. at 7. Those are the very decisions the Court would be vacating, however.

Vacatur is the ordinary remedy in this circuit when courts find agency action unlawful. *See Town of Weymouth v. Mass. Dep't of Envtl. Prot.*, 961 F.3d 34, 58 (1st Cir. 2020) (finding petitioner's argument persuasive that "under the federal APA,

vacatur is the default remedy"); *but see United States v. Texas*, 599 U.S. 670, 701–02 (2023) (Gorsuch, J. concurring) (doubting the APA "authorizes vacatur of agency action"). If vacatur is "sufficient to redress [the] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010); *see also Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (under APA review, a "district court had no jurisdiction to order specific relief."); *Me. Med. Ctr. v. Burwell*, 841 F.3d 10, 16 (1st Cir. 2016) (same).

Plaintiffs argue *Palisades* and *Maine Medical Center* do not establish a "categorical rule that a plaintiff in an APA case cannot seek or obtain permanent injunctive relief if it makes the appropriate showing." Pls.' Resp at 5. *Palisades* speaks directly to the relief available in APA cases, however, and is unequivocal in its pronouncement that "[t]he district court had no jurisdiction to order specific relief." *Palisades*, 368 U.S. at 403. This was not tied to "case-specific reasons," as Plaintiffs suggest. Pls.' Resp. at 4–5. Similarly, *Maine Medical Center* announced a general rule that a "case must be remanded" whenever "an agency ma[kes] an error of law[.]" 841 F.3d at 16. It also cited *Palisades* for the proposition that district courts have "jurisdiction only to vacate [an] agency's decision, and then [] to remand." *Id.* The D.C. Circuit's and First Circuit's recitation of fundamental APA principles were in no way limited in the manner Plaintiffs suggest, and it is telling that they do not identify any of the "case-specific reasons" those cases may be distinguishable. Pls. Resp. at 4–5.

Even if "the appropriate showing," *id.*, could justify injunctive relief, Plaintiffs fail to make it. Rather than identify any harm vacatur would fail to relieve, Plaintiffs argue any final relief narrower than the preliminary relief would necessarily be incomplete. *See id.* at 9. But it is not the scope of preliminary relief that determines the scope of complete permanent relief—it is the scope of harm remaining to be remedied that does that work. *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 40 (1st Cir. 2002) ("courts must closely tailor injunctions to the harm that they address[]" (quotation omitted)). Were it otherwise, every preliminary injunction would effectively predetermine the scope of permanent relief regardless of the merits record ultimately developed. A "preliminary injunction preserves the court's ability to grant final relief," but it does not establish a baseline for complete relief, as Plaintiffs suggest. *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022). In other words, what is necessary to preserve the status quo does not always equate to what is necessary to provide complete permanent relief. *See id.* In commenting that "Defendants are free to seek a narrower injunction" after further litigation, Pls. Resp. at 10, Plaintiffs contradict their own premise that preliminary relief dictates the scope of complete final relief.

Plaintiffs object that if the Court were to stop at vacatur, it would deny them "the opportunity to even *seek* [injunctive] relief in the first place." *Id.* at 6. It is a strange objection to raise in the same briefing in which the Parties are debating the appropriate scope of final relief, including possible injunctive relief. Stranger still, Plaintiffs argue that entering final judgment would be the equivalent to "dismissing

the case." *Id.* at 8. Defendants are unaware of any instance in which a case has been dismissed while simultaneously vacating the challenged agency action—likely because it would be paradoxical under the federal rules of procedure. *Compare* Fed. R. Civ. P. 12 (motions to dismiss), *with* Fed. Rs. Civ. P 54, 56 to 58 (judgments).

Plaintiffs have been invited to seek injunctive relief at this juncture; they decline to make a firm argument for it, however, because there is little reason to believe they "would suffer irreparable injury in the absence of injunctive relief[.]" *Healey v. Spencer*, 765 F.3d 65, 74 (1st Cir. 2014). That is because "circumstances reinforce the lack of expectation that the government would want to (re)institute a blanket funding freeze akin to the alleged one." *Nat'l Council of Nonprofits*, 188 F.4th at 409. Thus, "an across-the-board funding freeze cannot reasonably be expected to recur (to the extent it occurred to begin with)." *Id.*

At bottom, it is appropriate for any final relief to recognize that the Parties are situated very differently than they were nearly two years ago. To the extent any harm remains, vacatur would completely relieve it. The Court should go no further, as relief must be no "'more burdensome than necessary to redress' [a plaintiff's] asserted harms," *Trump v. CASA, Inc.*, 606 U.S. 831, 853 (2025) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

### III. The Government Must Not Be Enjoined from Taking Funding Actions Consistent with Law or Complying with Executive Orders.

In the event the Court deems injunctive relief necessary, Defendants' proposed order appropriately modifies the preliminary injunction to ensure administrability and respect for the separation of powers. Defendants fear that Plaintiffs' objections

to these modifications, however, would permanently tie the hands of the Executive Branch and future Presidents from taking certain funding actions even where consistent with law. That would be untenable. Nonetheless, Defendants believe the Court can easily address the concerns Plaintiffs have raised and do not object to modifications discussed below and reflected in the attached modified proposed order.[1]

Plaintiffs object to deleting or modifying language effectively enjoining the Executive Orders. *See* Defs.' Mem. on Scope of Final Relief, ECF No. 203 at 9 ("Defs.' Br.") (the block quoted language); Pls.' Resp. at 8-10. Defendants' chief concern is that the Executive Orders instruct agencies to freeze funds to the extent they can do so "consistent with law," but the current injunction's ambiguous language suggests there are pauses that may be enjoined for being "categorical" despite otherwise being consistent with law. For example, freezing an entire award program, or a stream of funding within that program, may be consistent with law but still subjectively "categorical." Defendants do not believe the Court intends to sweep such lawful activity into its injunction, however. The phrase "indiscriminate, governmentwide," better encapsulates the type of pause that was at issue in this case.

Plaintiffs raise a concern, however, that this phrase only addresses OMB's actions and not those of the other Agency Defendants. *See* Pls.' Resp. at 8-9. If adding the term "agency-wide" where appropriate better describes the pause to include the Agency Defendants' actions, then Defendants would not object to its inclusion (subject

[1] Defendants preserve the right to appeal any injunction inconsistent with the terms Defendants included in the original proposed order (ECF No. 204-1) or in the attached modified proposed order.

to any exception for where law permits). Defendants also do not object to substituting the language excerpted in their earlier brief, Defs.' Br. at 9, with what Plaintiffs argue is the "crux" of their concern, such that Defendants would be enjoined from "freezing funds without first considering whether they had the right to do so under the applicable statutes, regulations, and contract terms." Pls.' Resp. at 10. No matter what course the Court pursues, the phrase "materially similar" should be struck, as it tells agencies what to do regarding Executive Orders that have not even been issued and constrains a future President's ability to faithfully execute the law, thereby straining the separation of powers. *See* Defs.' Br. at 8-10.

With respect to Plaintiffs' objections to tailoring the injunction to the final actions taken here, Defendants also continue to insist on language limiting the injunction to funds "awarded or executed as of January 28, 2025," the date of the challenged funding freeze. *Id.* at 7-8 n. 2. Plaintiffs desire an injunction that applies to funds yet to be appropriated by Congress, let alone awarded or obligated. Those funds, however, are far outside any present "case or controversy," and cannot possibly be the subject of judicial relief.

Plaintiffs' primary argument for enjoining Executive Branch activities with respect to funds Congress has not yet appropriated is that "'[t]he vast majority of'" funds at issue in this case "'have either been spent, reprogrammed, or rescinded by Congress,'" and therefore any narrower injunction would "have little real-world impact." Pls.' Resp. at 7 (quoting Defs.' Br. at 2). This is not a valid argument for a more expansive injunction, however; it is further proof that the case is moot. Relief

under the APA is limited to actions it makes reviewable, *i.e.*, final agency actions. 5 U.S.C. §§ 704, 706. There is no final agency action with respect to unappropriated, unawarded, and unobligated funds. Any injunction must "be limited to the inadequacy that produced the injury in fact." *Gill v. Whitford*, 585 U.S. 48, 50 (2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Thus, any relief must be tailored to the funding that was at issue in this case.

## CONCLUSION

If the Court determines a live controversy exists, Defendants respectfully request limiting relief to vacatur of the final agency actions. If the Court is inclined to issue permanent injunctive relief, Defendants respectfully request that it enter either the original proposed order (ECF No. 204-3) or the attached modified proposed order including the changes discussed *supra* Section III.

Date: November 13, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

JOSEPH BORSON
Assistant Director
Civil Division, Federal Programs Branch

CHRISTOPHER M. LYNCH
Chief Litigation Counsel
Civil Division, Federal Programs Branch

*/s/ Eitan Sirkovich*
EITAN R. SIRKOVICH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

1100 L Street NW
Washington, DC 20530
Tel.: (202) 353-5525
Email: eitan.r.sirkovich@usdoj.gov

*Counsel for Defendants*